UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ANGELO DENNINGS, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>CLEARWIRE CORPORATION,<br><br>                Defendant. | Case No.<br><br>**COMPLAINT — CLASS ACTION**<br><br>JURY TRIAL DEMANDED |

Plaintiff Angelo Dennings, by and through his undersigned attorneys, brings this action on behalf of himself and all others similarly situated. On personal knowledge as to himself and his own activities, and on information and belief as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1.    Clearwire Corp., through several subsidiaries (collectively, "Clearwire" or "Defendant"), sells wireless Internet access to consumers. Clearwire promises that its high-speed Internet service provides a "fast" and "always on, always secure" Internet connection allowing users to "[d]ownload pictures, music and videos." *See* http://www.clearwire.com/wireless-broadband/overview.php (last visited November 15, 2010).

2.    But Clearwire does not provide an "always on," "high-speed" connection as it

promises. Clearwire purposefully slows the connection of its users because it cannot accommodate the high volume of traffic. Clearwire engages in a practice known as "throttling," which is the intentional delay and/or blocking of Internet communications. This practice deprives Clearwire customers of the ability to "[d]ownload music and videos," and leads to slow connection speeds.

3. Clearwire engages in throttling at times when demand for Internet use is highest, beginning at approximately 7:30 p.m. and ending at about 1:00-to-2:00 a.m.

4. If users attempt to cancel their service, Clearwire claims that, pursuant to its "contract" with them, it is entitled to collect an early termination or a re-stocking fee. The "contract" referred to by Clearwire is not a contract between it and its customers. The contract between Clearwire and its customers is simply that the customers will pay for, and Clearwire will provide, "unlimited" Internet usage at certain speeds, depending on the speed and payment plan selected in Clearwire's stores, kiosks, or online.

5. The remaining "terms" invoked by Clearwire at its convenience are embedded in a document that consumers never see prior to subscribing to Clearwire's service. Clearwire sells its services in its stores, kiosks at shopping centers, and online. Clearwire's stores and kiosks do not have copies of this "contract" on hand for potential subscribers to read before they "agree" to its terms. Users who subscribe through Clearwire's website never see the contract either because the link to it is at the bottom of a page, in substantially smaller font and lighter shade than all of the other text on the page. The text states: "Want to read the fine print (and who doesn't read the fine print?) It's all there in the CLEAR Legal Index." No one wants to read fine print legalese and almost no one does. The statement is obviously and sharply ironic, and mocks anyone who may have been fussy enough to have considered continuing.

6. Despite not showing its terms to consumers, Clearwire refuses to allow users to

COMPLAINT - 2 -

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7003
Tel: (425) 868-7813 ● Fax: (425) 868-7870

cancel their service without paying the unconscionable fees it claims it is owed under this "contract." These fees include an early termination fee ("ETF"), which penalizes consumers that want out before the end of the two-year term. Although Clearwire breached its contract with its customers, Clearwire insists on the payment of this ETF when customers realize they are not getting what they bargained for.

7. This class action complaint seeks to end Clearwire's practices and to recover the subscription and early termination fees that subscribers paid for services they did not receive. It alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; breach of contract; breach of the implied covenant of good faith and fair dealing; and unjust enrichment.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the Computer Fraud and Abuse Act claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1337. This Court also has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiff and members of the Class exceed the sum or value of $5,000,000, and there is diversity of citizenship between at least one member of the proposed Class and Clearwire.

9. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2). Clearwire conducts substantial business in this District through the promotion, sale, marketing, and provision of its services in this District, and is headquartered in this District.

**PARTIES**

10. Plaintiff Angelo Dennings is a citizen of Texas residing in Fort Worth, Texas. During the Class Period, Mr. Dennings subscribed to Clearwire's "Take Two Home" high-speed Internet service. According to Clearwire's website, the Take Two Home package has "no preset [download] speed cap" and an upload speed of "1.0 Mbps." *See*

COMPLAINT - 3 -

http://www.clear.com/shop/services (last accessed November 15, 2010).

11. Pursuant to a promotion at a Clearwire mall kiosk, Mr. Dennings agreed to pay $50 per month for the service. The cost of the Take Two Home service, according to Clearwire's website, is typically $60 per month. Mr. Dennings subscribed to Clearwire in August of 2010. In early October of 2010, Mr. Dennings noticed that his Internet speeds dropped drastically at around 8 p.m. each day, when he was trying to stream movies from Netflix.com, a ubiquitous online movie rental service, to watch with his family. Using third-party Internet speed testing software, Mr. Dennings determined that at about 8 p.m. each day, his Internet speed dropped to approximately 0.03 Mbp/s, far too slow for him to stream movies or otherwise perform the sorts of activities for which users typically purchase high-speed Internet.

12. Mr. Dennings contacted Clearwire to inquire about this problem and spoke to a representative who identified herself as "Peggy." During that conversation, Mr. Dennings jokingly asked "Are you guys throttling me?" Peggy replied "Let me check" and then said "Yes, you are on a managed account." Peggy elaborated that Clearwire had signed up more customers than its cell towers could accommodate, and that therefore it was "managing" users' accounts.

13. Mr. Dennings demanded that Clearwire cease throttling his account. The Clearwire representative, "Peggy," stated that this was impossible because the throttling is performed by an automated system over which she had no control.

14. The next day, when Mr. Dennings attempted to contact Clearwire's corporate headquarters in Kirkland, Washington to resolve the situation, he was told to contact customer service. Mr. Dennings has since spoken to two other Clearwire technicians and each verified that the throttling is performed by a uniform, automated system that is beyond their control.

15. Mr. Dennings next called Clearwire to cancel his service. Although Mr. Dennings explained the problem, and although Clearwire had not lived up to its end of the

COMPLAINT - 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

bargain, the Clearwire representative nonetheless told Mr. Dennings that he would have to pay an ETF. As of November 1, 2010, that fee was $219.[1]

16. Clearwire did not disclose its throttling practice or its practice of charging ETFs even when it engaged in throttling. If Clearwire had disclosed these facts, Mr. Dennings would not have paid a premium for Clearwire's service, and would not have agreed to an ETF.

17. Defendant Clearwire is a corporation organized under the laws of Delaware, headquartered at 4400 Carillon Point, Kirkland, Washington 98033. Defendant's most recent form 10-Q, filed with the Securities and Exchange Commission on August 5, 2010, states that as of June 30, 2010, Defendant's "networks covered an estimated 62.2 million people," including "approximately 940,000 retail and 752,000 wholesale subscribers as of June 30, 2010."

**CLEARWIRE PROMISES, BUT DOES NOT DELIVER,
HIGH-SPEED ALWAYS-ON INTERNET SERVICES**

18. Clearwire provides wireless Internet access for a monthly fee.

19. Clearwire's website, which is prominently displayed on monitors in its stores, promises "fast" and "reliable" "high-speed Internet" suitable for "[d]ownload[ing] movies and music." *See* http://www.clearwire.com/wireless-broadband/overview.php (last visited October 28, 2010).

20. Clearwire's website contains a FAQ section that reads, in relevant part:

> Q: Is Clearwire as reliable as cable or dial-up?
> A: Yes. With Clearwire, you'll enjoy an always-on, always-secure connection that never ties up your phone line.
> Q: How does Clearwire's speed compare to DSL, cable and dial-up?

---

[1] The amount of the Early Termination Fee varies based on the equipment that the subscriber has purchased and the length of time a subscriber has had the service. It can be as high as $250 or as low as $10. Additionally, if subscribers lease their equipment rather than purchase it, there is a flat $40 "re-stocking" fee. *See* http://www.clear.com/legal/etf (last accessed November 15, 2010).

COMPLAINT - 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

> A: Clearwire lets you connect at broadband speeds of up to 2.0Mbps. That's up to 25 times faster than typical dial-up! Check out our comparison chart or speed demo to see how Clearwire compares to other Internet services.
>
> The following is a comparison of the average time to download a 3.75MB video clip:
> 28.8Kbps dial-up modem: 17 minutes, 47 seconds
> 56Kbps dial-up modem: 9 minutes, 9 seconds
> Clearwire's 1.5Mbps: 20 seconds!

http://www.clearwire.com/support/faqs.php (last accessed November 15, 2010).

21. Elsewhere, Clearwire's website states:

> Why is Clearwire better?
>
> Fast – Up to 25x faster than dial-up
> - Download pictures, music and videos
> - Up to 2.0Mbps download / 256k upload speeds
>
> Reliable – Always on, always secure
> - No waiting for connections
> - It's our network – we own it, we operate it

http://www.clearwire.com/wireless-broadband/overview.php (last accessed November 15, 2010).

22. Clearwire offers several different service plans with different caps on download speeds. Even Clearwire's slowest plan, however, has a purported download speed of 1.5 Mbps, which is approximately the same speed as a T-1 line used by large businesses. This plan is advertised as a "fast and affordable alternative to DSL or Cable." *See* http://www.clear.com/shop/services (last accessed November 15, 2010).

23. Clearwire's other plans expressly represent that there is "No preset speed cap." *Id.* Clearwire represents that these plans are its "fastest Home Internet [plan] with the speed you need for gaming, streaming videos, downloading large files and more." *Id.* All of the service

COMPLAINT                              - 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

plans offered by Clearwire for home Internet access purport to offer "Unlimited usage – All the Internet you want with no extra service fees." *Id.*

24.     The literature provided to potential subscribers by sales staff in Clearwire's stores and kiosks similarly promises "Unlimited Internet service," with either "No cap" or "Up to 1.5 Mbps" download speeds.

25.     Clearwire's representations have allowed it to charge prices comparable to the DSL and Cable Internet services it claims are its competitors: Clearwire's prices for Internet access range from $35/month to $110/month.

26.     Unbeknownst to consumers, Clearwire caps its Internet users at speeds significantly below 1.5 Mbps. Consequently, none of Clearwire's plans are "fast [] alternative[s] to DSL or Cable." The usage also is not "unlimited"; it is limited, intentionally, by Clearwire. This practice renders Clearwire's services a bad choice for any application, and especially bad for "gaming, streaming videos, downloading large files," or anything else requiring high-speed access.

27.     Clearwire lacks sufficient cell towers to transmit all of the data generated by its Internet customers. In order to cope with demand, Clearwire reduces the amount of data that any one user can transmit. Clearwire places a hidden "cap" on each user's data. Once a user has exceeded this undisclosed "cap," Clearwire drastically reduces that user's Internet speed during peak hours of usage. This is commonly known as "throttling."

28.     Clearwire throttles online traffic by transmitting information back and forth between Clearwire's servers and customers' computers. That information is used by Clearwire's servers to track how much data a customer has uploaded or downloaded. When a customer reaches his or her "cap," Clearwire's servers transmit another message, this time to the router that prioritizes Internet traffic on Clearwire's network. That message essentially instructs the

COMPLAINT - 7 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

router to lower the priority of data transferred by those users who have exceeded their "cap."

29. Clearwire's throttling results in users experiencing download speeds of approximately .03 Mbps during the peak Internet usage hours between 7:30 or 8 p.m. and 1:00a.m. to 2:00 a.m.  A download speed of 0.03 Mbps is insufficient for users to perform any of the functions for which broadband or "high-speed" Internet is necessary, and is anachronistically inadequate for any reasonable use.  During these hours, users cannot "stream movies" or "download music and video" as Clearwire promises, and simply surfing the web becomes an exercise in patience.

30. When users complain to Clearwire, they are told that nothing can be done because the throttling is automatic.  When they then seek to cancel their contracts, they are told that Clearwire will not waive the early termination fee contained in its one-sided contract. Users are given the unappealing "choice" of paying a monthly fee for a service that is not what was promised, paying a lump sum in advance to cancel that service, or not paying anything and facing collection actions and damaged credit.

31. Plaintiff has been damaged and has incurred losses as a result of Clearwire's conduct.  Plaintiff is paying for fast Internet service but is getting slow Internet service that he could have bought for a fraction of the cost.  Plaintiff is unable to use certain features that were promised by Clearwire, including "streaming video and music," because of the slow speed.

32. Clearwire does not disclose its throttling policy and practice to potential customers.  Although Clearwire's ETFs are referred to in some of its literature, nothing tells potential subscribers that Clearwire will still claim that the fee must be paid when Clearwire itself is in breach of the contract.

33. Instead of properly disclosing these practices, Clearwire provides potential customers in its stores and kiosks with a pamphlet emphasizing the purported "benefits" of its

COMPLAINT - 8 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

service. On the last page of the pamphlet, in type smaller than the rest of the text, the pamphlet states "Actual CLEAR network performance may vary and is not guaranteed. See relevant pages at www.clear.com for coverage map, rate plan, equipment purchase/lease, and additional information and restrictions." To say that performance may vary and is not guaranteed, and then direct consumers to divine for themselves the "relevant pages" of a website, is very different from what actually occurs – the intentional and dramatic slowing of customers' Internet connections by Clearwire. Consumers in stores or kiosks are not given the terms and conditions, and agree only to purchase internet service for a certain duration at a certain price.

34. Similarly, the "Terms and Conditions" are not provided to users who subscribe online. Consumers subscribing to Clearwire through the Internet are asked only to select a plan, provide their home address, and input credit card information. Only at the bottom of the page, in text substantially smaller and in lighter color than the rest of the page, does Clearwire state ironically: "Want to read the fine print (and who doesn't want to read the fine print)? It's all there in the Clear Legal Index." This dismissive phrase fails to disclose to users that the "fine print" contains important information. Instead of urging consumers to read important information about their subscription, Clearwire belittles this segment as "fine print" that Clearwire ironically acknowledges no one wants to read.

## CLASS ALLEGATIONS

35. Plaintiff incorporates and realleges the above paragraphs.

36. Plaintiff brings this action as a Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class consisting of: all persons in the United States who purchased Internet access from Clearwire during the period from November 15, 2004 until the final disposition of this action (the "Class Period"). Excluded from the Class are Clearwire, any entity that has a controlling interest in Clearwire, and Clearwire's current or former directors, officers,

COMPLAINT - 9 -

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

and counsel.

37. The requirements of Rule 23 are satisfied because:

(a) Numerosity: The Class is so numerous that joinder of all members as individual plaintiffs is impracticable.  While the exact number of Class members is unknown and can only be ascertained via discovery, Plaintiff believes that there are hundreds of thousands, if not millions, of Class members.

(b) Commonality: There are questions of law and fact common to the Class, including:

    (i) whether Clearwire has violated the Computer Fraud and Abuse Act;

    (ii) whether Clearwire has breached its contract with consumers;

    (iii) whether it is unconscionable for Clearwire to charge users an ETF;

    (iv) whether Clearwire has breached its duty of good faith and fair dealing;

    (iv) whether Clearwire has been unjustly enriched by the practices alleged herein; and

    (v) whether, because of Clearwire's misconduct, Plaintiff and the Class are entitled to damages, restitution, equitable relief or other relief, and the amount and nature of such relief.

(c) Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff and members of the Class each sustained damages arising out of Clearwire's wrongful conduct as complained of herein; and

(d) Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class as a whole, and has engaged competent counsel, who are highly experienced in class actions and complex litigation.

COMPLAINT - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

1   (e) The prosecution of separate actions by the members of the Class would create a
2   risk of adjudications with respect to individual members of the Class that would, as a practical
3   matter, be dispositive of the interests of the other members not parties to the adjudications, or
4   substantially impair or impede their ability to protect their interests; (b) the prosecution of
5   separate actions by the members of the Class would create a risk of inconsistent or varying
6   adjudications with respect to the individual members of the Class, which would establish
7   incompatible standards of conduct for Clearwire; (c) Clearwire acted or refused to act on grounds
8   generally applicable to the Class; (d) questions of law and fact common to members of the Class
9   predominate over any questions affecting only individual members, and a class action is
10  manageable and superior to other available methods for the fair and efficient adjudication of the
11  controversy.

## THEORIES OF RELIEF

### Count I:

### VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT, 18 U.S.C. § 1030

15  38. Plaintiff incorporates and realleges the above paragraphs as if set forth fully
16  herein.
17  39. This theory of relief arises under 18 U.S.C. § 1030.
18  40. Plaintiff's and class members' computers are "protected computers" within the
19  meaning of 18 U.S.C. § 1030(e)(2)(B).
20  41. As set forth above, Clearwire is violating 18 U.S.C. § 1030(a)(5)(A) by
21  intentionally causing the transmission of a program, information, code, or command that has
22  impaired and damaged the integrity or availability of data, information, and/or a system.
23  42. As a result of Clearwire's violation of the CFAA, Plaintiff and the other class
24  members have suffered, and will continue to incur damage and loss, the aggregate amount of

COMPLAINT - 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

which is at least $5,000 for a 1-year period during the Class Period.

43. Such damage includes the inability of Plaintiff and Class members to access data, information and/or systems, including without limitation the Internet and data typically retrieved from the Internet, via their computers due to Clearwire's throttling practices.

44. Such loss includes, but is not limited to, the aggregate payment by Plaintiff and Class members for high-speed Internet services that were not received due to Clearwire's improper practices, the aggregate costs incurred by Plaintiffs and Class members to prevent the effects of Clearwire's throttling, and the aggregate costs incurred by Plaintiff and Class members to obtain information elsewhere once it became apparent that they could not receive it from their computers due to Clearwire's throttling, including their payment of Clearwire's ETF or re-stocking fees.

45. Moreover, Plaintiff and the Class have incurred costs of at least $5,000 because the costs associated with bringing the instant lawsuit, including attorney fees and expert fees, would not have been incurred had it not been for the interruption of services caused by Clearwire.

46. Clearwire's intentional interference with its subscribers' connection to the Internet, violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Plaintiff and the Class are, thus, entitled to economic damages subject to proof at trial.

## Count II:

## BREACH OF CONTRACT

47. Plaintiff incorporates and realleges the above paragraphs as if set forth fully herein.

48. Plaintiff and the Class members entered into a contract with Clearwire to pay monthly fees in exchange for unlimited high-speed Internet service.

COMPLAINT - 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

49. Plaintiff and Class members, for their consideration, promised to make monthly payments for high-speed Internet service having the characteristics detailed above. Clearwire, for its consideration, promised to deliver high-speed Internet service having the characteristics detailed above.

50. Plaintiff and the Class members performed their obligations under the contract by paying their monthly fees.

51. Clearwire unjustifiably breaches the contract by intentionally interfering with Plaintiff and Class members' access and use of Clearwire's high-speed Internet service and, therefore, Plaintiff and the class are entitled to damages subject to proof at trial.

## Count III:

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

52. Plaintiff incorporates and realleges the above paragraphs as if set forth fully herein.

53. Clearwire, through its advertising and marketing of its high-speed Internet service, makes uniform representations and offers regarding the quality of its high-speed Internet service.

54. Plaintiff and Class members' acceptance of Clearwire's offer was premised on Clearwire's promises regarding the quality of its high-speed Internet service and gave consideration to Clearwire by paying their monthly fees. Plaintiff and Class members performed all their obligations under the contracts by paying for their service.

55. Clearwire breached the implied covenant of good faith and fair dealing by knowingly failing to provide Plaintiff and Class members with the service they desired, paid consideration for, and thought they would receive.

56. Clearwire further breached the implied covenant of good faith and fair dealing by

COMPLAINT - 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

charging ETF or re-stocking fees to Plaintiff and the Class members, while knowing that it had failed to hold up its end of the bargain.

57. As a direct and proximate result of the breaches set forth herein, Plaintiff and Class members have suffered, and continue to suffer, damages in an amount to be proven at trial.

### Count IV:

### UNJUST ENRICHMENT

58. Plaintiff incorporates and realleges the above paragraphs as if set forth fully herein.

59. Clearwire's conduct unjustly enriched Clearwire, to the detriment of the Class, by causing Clearwire to receive payments for a high-speed Internet service that it did not provide, and allowing it to reap early termination fees or re-stocking fees from those who would not abide by Clearwire's breach of contract.

60. Plaintiff and Class members have been injured by paying for a high-speed Internet service that they did not receive, or by paying to terminate Clearwire's service.

61. Clearwire's retention of funds paid by Plaintiff and Class members violates the fundamental principles of justice, equity, and good conscience.

62. Clearwire, therefore, should be ordered to return any funds obtained as a result of its deceptive scheme to the Class.

### PRAYER FOR RELIEF

Plaintiff and all Class members pray that this Court provide the following relief:

A. Certify this action as a class action under Rule 23;

B. Order Clearwire to pay Plaintiff and Class members an amount of actual, direct, incidental, consequential, and exemplary damages (to the extent available) to be determined at trial;

COMPLAINT - 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1  C.  Declare that Clearwire's ETF or re-stocking fees are unconscionable under these circumstances;

2  D.  issue an injunction preventing Clearwire from continuing its deceptive marketing campaign and preventing it from charging early termination fees;

3  E.  award pre- and post-judgment interest, to the maximum extent permissible;

4  F.  award attorney's fees and costs of suit, to the maximum extent permissible; and

5  G.  for such other and further relief this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

Dated:  November 15, 2010      Respectfully submitted,

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
By: s/ Cliff Cantor, WSBA # 17893
cacantor@comcast.net
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: 425-868-7813 (direct)
Fax:  425-868-7870

MILBERG LLP
Sanford P. Dumain
sdumain@milberg.com
Peter E. Seidman
pseidman@milberg.com
Andrei V. Rado
arado@milberg.com
Roland Riggs
rriggs@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Tel:  (212) 594-5300
Fax:  (212) 868-1229

REESE RICHMAN LLP
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor

1
2  New York, NY  10169
   Tel:  (212) 579-4625
3  Fax:  (212) 572-4272

   Counsel for Plaintiff

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

COMPLAINT — - 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870