1

2

The Honorable James L. Robart

3

UNITED STATES DISTRICT COURT

4

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

5

6
7
8
9
10
11
12

MICHAEL BOBOWSKI, ALYSON BURN, STEVEN COCKAYNE, BRIAN CRAWFORD, DAN DAZELL, ANGELO DENNINGS, CHEYENNE FEGAN, SHARON FLOYD, GREGORY GUERRIER, JOHANNA KOSKINEN, ELENA MUNOZ-ALAZAZI, ELAINE POWELL, ROBERT PRIOR, ALIA TSANG, and KYLE WILLIAMS, on behalf of themselves and all others similarly situated,

Case No. C10-1859 JLR

**AMENDED AND SUPPLEMENTED COMPLAINT — CLASS ACTION**

JURY TRIAL DEMANDED

13

                    Plaintiffs,

14

        vs.

15

CLEARWIRE CORPORATION,

16

                    Defendant.

17

18
19
20
21

        Plaintiffs Michael Bobowski, Alyson Burn, Steven Cockayne, Brian Crawford, Dan Dazell, Angelo Dennings, Cheyenne Fegan, Sharon Floyd, Gregory Guerrier, Johanna Koskinen, Elena Munoz-Alazazi, Elaine Powell, Robert Prior, Alia Tsang, and Kyle Williams ("Plaintiffs"), by and through their attorneys, allege as follows.

22

                    **<u>INTRODUCTION</u>**

23
24
25

        1.      Defendant Clearwire Corporation and/or its operating subsidiaries (collectively, "Clearwire") providers wireless Internet access to the public.  Plaintiffs are subscribers or former subscribers of Clearwire's Internet service.

26
27

        2.      Clearwire continually advertises "**High Speed Internet**" or "**faster Internet**" service (or substantially identical phrases) to induce prospective customers to

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

1    subscribe to the service.  In reality, Clearwire throttles down the speed of its Internet service to

2    speeds similar to dial-up telephone modem speeds.  These speeds make it difficult or impossible

3    to use the Internet in many ways that now are considered routine.

4         3.    Customers soon realize they are not receiving the service that was advertised and

5    they were promised.  If they seek to terminate the service, Clearwire adds insult to injury by

6    collecting or trying to collect certain early termination fees.

7         4.    Clearwire's practice is akin to a bandwidth Ponzi scheme in the sense that

8    Clearwire advertises and sells a service, knowing in advance that there is no way it can provide

9    such service on an ongoing basis — *i.e.*, Clearwire sells subscriptions prior to build-out of

10   sufficient infrastructure to support the "High Speed Internet" it advertises.  Someday, if

11   Clearwire sells enough subscriptions, it may have sufficient funds to go back and create the

12   infrastructure to support its Internet service and make good on its promises.

13        5.    In the meantime, Plaintiffs, on behalf of themselves and all others similarly

14   situated, seek to end Clearwire's wrongful practices and to recover the subscription and

15   termination fees that subscribers paid for services they did not receive.  They allege violations of

16   state statutes forbidding unfair and deceptive acts or practices in Plaintiffs' home states.  They

17   also allege breach of contract, breach of the implied covenant of good faith and fair dealing, and

18   unjust enrichment.

19        6.    Plaintiffs' allegations, which include acts and omissions that occurred after the

20   date of the filing of the initial complaint in this action up to the present date, are made on

21   personal knowledge as to themselves and their own activities, and on information and belief

22   based in part on counsel's research as to all other matters.

23                                     **<u>PARTIES</u>**

24   **Plaintiffs**

25        7.    Plaintiff Michael Bobowski is a citizen of Illinois residing in Des Plaines, Illinois.

26   During the Class Period, Mr. Bobowski subscribed to Clearwire's purportedly high-speed

27   Internet service and was exposed to the false, misleading, and/or deceptive representations and

AMENDED & SUPPLEMENTED COMPLAINT          - 2 -
No. C10-1859 JLR

1  omissions made by Clearwire regarding that high-speed Internet service.  Mr. Bobowski paid for

2  service that was not as advertised and not worth what he paid.

3       8.       Plaintiff Alyson Burn is a citizen of Wisconsin residing in Janesville, Wisconsin.

4  During the Class Period, Ms. Burn subscribed to Clearwire's purportedly high-speed Internet

5  service and was exposed to the false, misleading, and/or deceptive representations and omissions

6  made by Clearwire regarding that high-speed Internet service while a resident of Oregon.  Ms.

7  Burn paid for service that was not as advertised and not worth what she paid.

8       9.       Plaintiff Steven Cockayne is a citizen of Oregon residing in Beaverton, Oregon.

9  During the Class Period, Mr. Cockayne subscribed to Clearwire's purportedly high-speed

10  Internet service and was exposed to the false, misleading, and/or deceptive representations and

11  omissions made by Clearwire regarding that high-speed Internet service.  Mr. Cockayne paid for

12  service that was not as advertised and not worth what he paid.

13       10.       Plaintiff Brian Crawford is a citizen of Washington residing in Monroe,

14  Washington.  During the Class Period, Mr. Crawford subscribed to Clearwire's purportedly high-

15  speed Internet service and was exposed to the false, misleading, and/or deceptive representations

16  and omissions made by Clearwire regarding that high-speed Internet service.  Mr. Crawford paid

17  for service that was not as advertised and not worth what he paid.

18       11.       Plaintiff Dan Dazell is a citizen of Washington residing in Seattle, Washington.

19  During the Class Period, Mr. Dazell subscribed to Clearwire's purportedly high-speed Internet

20  service and was exposed to the false, misleading, and/or deceptive representations and omissions

21  made by Clearwire regarding that high-speed Internet service. Mr. Dazell paid for service that

22  was not as advertised and not worth what he paid.

23       12.       Plaintiff Angelo Dennings is a citizen of Texas residing in Fort Worth, Texas.

24  During the Class Period, Mr. Dennings subscribed to Clearwire's purportedly high-speed

25  Internet service and was exposed to the false, misleading, and/or deceptive representations and

26  omissions made by Clearwire regarding that high-speed Internet service.  Mr. Dennings paid for

27  service that was not as advertised and not worth what he paid.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ▪ Fax:  (425) 868-7870

13.     Plaintiff Cheyenne Fegan is a citizen of Florida residing in St. Petersburg, Florida. During the Class Period, Ms. Fegan subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Ms. Fegan paid for service that was not as advertised and not worth what she paid.

14.     Plaintiff Sharon Floyd is a citizen of Illinois residing in Chicago, Illinois.  During the Class Period, Ms. Floyd subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Ms. Floyd paid for service that was not as advertised and not worth what she paid.

15.     Plaintiff Gregory Guerrier is a citizen of New York residing in New York, New York.  During the Class Period, Mr. Guerrier subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Mr. Guerrier paid for service that was not as advertised and not worth what he paid.

16.     Plaintiff Johanna Koskinen is a citizen of Missouri residing in Kansas City, Missouri.  During the Class Period, Ms. Koskinen subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Ms. Koskinen paid for service that was not as advertised and not worth what she paid.

17.     Plaintiff Elena Munoz-Alazazi is a citizen of New York residing in New York, New York.  During the Class Period, Ms. Munoz-Alazazi subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service. Ms. Munoz-Alazazi paid for service that was not as advertised and not worth what she paid.

18.     Plaintiff Elaine Powell is a citizen of Washington residing in Renton, Washington.  During the Class Period, Ms. Powell subscribed to Clearwire's purportedly high-

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Ms. Powell paid for service that was not as advertised and not worth what she paid.

19.   Plaintiff Robert Prior is a citizen of Washington residing in Vancouver, Washington.  During the Class Period, Mr. Prior subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Mr. Prior paid for service that was not as advertised and not worth what he paid.

20.   Plaintiff Alia Tsang is a citizen of California residing in Davis, California. During the Class Period, Ms. Tsang subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Ms. Tsang paid for service that was not as advertised and not worth what she paid.

21.   Plaintiff Kyle Williams is a citizen of Oregon residing in Portland, Oregon. During the Class Period, Mr. Williams subscribed to Clearwire's purportedly high-speed Internet service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service.  Mr. Williams paid for service that was not as advertised and not worth what he paid.

**Defendant**

22.   Defendant Clearwire is a corporation organized under the laws of Delaware, headquartered at 4400 Carillon Point, Kirkland, Washington 98033.  Defendant's most recent form 10-Q, filed with the Securities and Exchange Commission on November 11, 2010, states that, as of September 30, 2010, Defendant's "networks in launched markets cover an estimated 70.5 million people," including "approximately 1.0 million retail and 1.8 million wholesale subscribers as of September 30, 2010."

AMENDED & SUPPLEMENTED COMPLAINT
No. C10-1859 JLR

- 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

## SUBSTANTIVE ALLEGATIONS

23.     Clearwire made materially false, misleading, and/or deceptive representations and omissions about the speed and capacity of its Internet service.  Clearwire sells what it purports to be "High Speed Internet" or "Faster Internet" access.  These promises (or substantially identical phrases) are included in virtually all Clearwire promotions and presented in large bold-faced type as shown immediately below:

# High Speed Internet

[or]

# faster Internet

*See, e.g.*, Clearwire, http://www.clearwire.com/learn/broadband (last visited Mar. 3, 2011) & Clear, http://www.clearwirelessinternet.net/ (last visited Mar. 3, 2011).  Clearwire also promises to provide reliable "always on, always secure" Internet access that allows users to "[d]ownload pictures, music and videos," *id.*, and its website also represents the following:

> Is data usage really unlimited?  Are there any additional charges?

> **Usage is unlimited – believe it.**  You can upload, download, and surf as much as you want for one low price with any of the CLEAR Internet plans.  We don't slow down your connection –the way some Internet providers do – if we think you are using too much bandwidth.  CLEAR.

> **Internet is just fast no matter how much you use your Internet** — with no additional usage charges. [Emphasis added].

24.     Similarly, Clearwire promises "fast" and "reliable" "high-speed Internet" suitable for "[d]ownload[ing] movies and music."  *See* Clearwire, http://www.clearwire.com/learn/ broadband (last visited Mar. 3, 2011).  Other Clearwire website representations are as follows:

> Q:     Is Clearwire as reliable as cable or dial-up?

> A:     Yes.   With Clearwire, you'll enjoy an always-on, always-secure connection that never ties up your phone line.

AMENDED & SUPPLEMENTED COMPLAINT
No. C10-1859 JLR

- 6 -

Q:      How does Clearwire's speed compare to DSL, cable and dial-up?

A:      Clearwire lets you connect at broadband speeds of up to 2.0Mbps.[1] That's up to 25 times faster than typical dial-up!  Check out our comparison chart or speed demo to see how Clearwire compares to other Internet services.

The following is a comparison of the average time to download a 3.75MB video clip:

28.8Kbps dial-up modem: 17 minutes, 47 seconds

56Kbps dial-up modem: 9 minutes, 9 seconds

Clearwire's 1.5Mbps: 20 seconds!

Clearwire, http://www.clearwire.com/support/faqs.php (last visited Mar. 3, 2011).

25.     Elsewhere, Clearwire's website states:

Why is Clearwire better?

Fast – Up to 25x faster than dial-up

•       Download pictures, music and videos

•       Up to 2.0Mbps download / 256k upload speeds

Reliable – Always on, always secure

•       No waiting for connections

•       It's our network – we own it, we operate it

Clearwire, http://www.clearwire.com/learn/broadband (last accessed Mar. 3, 2011).

26.     All but two of Clearwire's plans promise a minimum Internet speed of 1.0 mbps with "No preset speed cap." Clear, http://www.clear.com/plans (last visited Mar. 3, 2011).[2]

---

[1]      "Mbps" means megabits per second.

[2]      The two exceptions are the "base home" and "base home + voice" plans as to which Clearwire promises a minimum speed of 500 kbps and a maximum speed of 1.5 mbps. Clearwire's representations with respect to these plans, however, are deceptive because subscribers receive Internet service that is substantially slower than the 500 kbps that Clearwire promises. Moreover, some Clearwire statements regarding the speed and capacity of its service are not qualified by reference to a particular plan.  Anyone reading the "base home" and "base home + voice" limitations in conjunction with these general statements would have no reason to

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

Clearwire represents that it will provide the "fastest Home Internet [plan] with the speed you need for gaming, streaming videos, downloading large files and more." *Id*.  All of the service plans offered by Clearwire for home Internet access purport to offer "Unlimited usage."  *Id*.  Moreover, it represents it will provide "All the Internet you want with no extra service fees." *Id*.

27.   These representations are repeated with substantially uniform language throughout Clearwire's promotions regarding Internet speed and capacity.  This allows Clearwire to charge prices comparable to the DSL and cable Internet service providers it claims are its competitors: Clearwire's prices for Internet access range from $35/month to $110/month.  However, these representations and omissions were materially false, deceptive, and misleading because, in truth and in fact, Clearwire subscribers cannot "upload, download, and surf" as much as they want, and Clearwire does not provide an "always on," "high-speed" connection.  On the contrary, Clearwire purposefully slows its subscribers' connections to speeds well below the promised minimum and well below the speeds necessary for use of the Internet in routine ways.

28.   Why would Clearwire purposefully slow its subscribers' service?  In the face of well-publicized financial pressure, Clearwire executed an aggressive campaign to increase its subscriber base and thereby increase its revenues.  On February 17, 2011, Clearwire CEO Bill Morrow admitted that Clearwire achieved "aggressive network expansion goals [and] **grew [its] subscriber base at an incredible rate."**  *Clearwire Reports Record Fourth Quarter and Full Year 2010 Growth*, GlobeNewswire, Feb. 17, 2011, *available at* http://www.globenewswire.com/newsroom/news.html?ref=rss&d=214093 [emphasis added].  Thus, rather than limiting its subscribers to a number that its broadband infrastructure can accommodate — such that Clearwire can make good on its representations regarding high-speed service and capacity — Clearwire signed up many more subscribers than it could handle so as to maximize revenue and profit.

suspect that such a plan would be inadequate for reasonable and customary Internet activities such as web browsing, downloading movies, and sending email.

AMENDED & SUPPLEMENTED COMPLAINT                - 8 -
No. C10-1859 JLR

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

**Increased Internet Bandwidth Usage Automatically Triggers the Clearwire Cap**

29.     Clearwire's strategy for cramming as many subscribers as possible onto its network relies on a policy pursuant to which, if a subscriber uses what Clearwire considers to be too much Internet bandwidth, Clearwire's systems automatically trigger a throttle on the speed of that subscriber's Internet connection.  Clearwire throttles speeds down to rates well below the promised minimums and as low as approximately 0.03 Mbps during peak Internet usage hours. Clearwire's throttled speeds are insufficient for users to perform any of the functions for which broadband or "high-speed" Internet is necessary and, indeed, insufficient for any reasonable Internet use; users cannot "stream movies" or "download music and video" as Clearwire promises, and simply surfing the web becomes an exercise in patience.  Thus Clearwire ensures that at least during "peak hours" — which are "peak" because this is precisely when the most Clearwire subscribers want to use the Internet — their service is at its slowest and least reliable.

30.     This practice renders all Clearwire Internet service plans a bad choice for any application, and especially bad for "gaming, streaming videos, downloading large files," or anything else requiring high-speed access.  Even if a customer's Internet service is unlimited and fast when the customer's service is activated, as promised, it is only a matter of time before it is throttled down to a rate that makes routine Internet use excruciatingly slow.

**Subscriber Complaints are Unavailing**

31.     Subscriber complaints about this practice are legion — but unavailing. As of the date of this complaint there are at least six online forums where customers vent their frustration with Clearwire's misconduct.

32.     The following are just a few examples of the many complaints regarding Clearwire's slow service:

(a)      "I wish that Clear was telling the truth. They will cap your account if you use more than they want you to use. My account is capped below 300 kbps. I just ran a speed test and it said .27 kbps, and that is better than usual. I am paying for 1.5 Mbps and

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

I am only getting .27Mbps?." Facebook, http://www.facebook.com/posted.php?id=12579 8100763901&share _id=101105949 953180&comments=1 (last visited Mar. 3, 2011);

    (b)    weeks I have been given the run-around, reading the mac address over the phone, rebooting my modem, telling my mother's middle name, culminating in this fraudulent business behavior of modifying my account so that [C]learwire can get more money for services not rendered (its already documented by a ticket that the speed is crappy)." Consumer Complaints Board, http://www.complaintsboard.com/complaints/ clearwire-c326200.html (last visited Mar. 3, 2011);

    (c)    "I have been with Clear for about 1.5 years and daily I lose internet several times with slower downloads than Comcast which I used to have and Quest. Recently my speeds fell to dial up slow and they said they could not fix it . . . the employees were not helpful but annoyed with my call . . . excuse I'm paying for this service now it's messed up and they're the inconvenienced ones? If considering this joke of an internet provider...think again! Quest . . . here I come." My3cents.com, http://www. my3cents.com/showReview.cgi?id=94413 (last visited Mar. 3, 2011); and

    (d)    "I have spent hours with various levels of technical support and no one can explain why my speeds are great at times and almost useless at other times. I have canceled my service due to the lack of dependability." DSLReports, http://www.dsl reports.com/comments/1592 (last visited Mar. 3, 2011).

    33.    It is not surprising that customers are so angry.  When they complain directly to Clearwire, the company tries to pass off the problem as a technical glitch.  Alternatively, customer service representatives may reluctantly admit that Clearwire automatically caps or "throttles" its Internet service but, pursuant to a "contract" with its subscribers — *i.e.*, its "Terms of Service,"  Clearwire is entitled to do so — even though it has elsewhere and more prominently promised its subscribers "No Preset Speed Cap."  Clearwire thus takes the oxymoronic position that it is authorized it engage in conduct that it already has said is unauthorized — *i.e.*, imposing a speed cap and reducing speeds below advertised minimums.  Hence, under these

AMENDED & SUPPLEMENTED COMPLAINT
No. C10-1859 JLR

- 10 -

**LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.**
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

circumstances, the contract / Terms of Service that Clearwire customer service representatives refer to cannot really be the operative contract between Clearwire and its customers.  Rather, the operative contract between Clearwire and its customers is simply that the customers will pay for, and Clearwire will provide, as promised in large, bold-faced letters, "unlimited," "High Speed Internet" service.

34.    Clearwire sells its services in stores, kiosks at shopping centers, online, and by phone.  Electronics stores and Clearwire's kiosks do not have copies of the terms of service on hand for potential subscribers to read before they "agree" to them.  Rather, the purported contract (or "Terms of Service") that Clearwire invokes is deeply embedded in a document that customers never even see, much less agree to, before subscribing to Clearwire's service.  Consequently, if many Clearwire customers ever see the "terms," it is only after they have purchased Clearwire's service plan.  Thus, when these customers leave a store or kiosk having purchased Clearwire service, they have NOT agreed to Clearwire's purported "terms of service."

35.    Customers who subscribe through the Internet or by phone are asked only to select a plan, provide their home address, and input credit card information.  Only at the bottom of the page, in text substantially smaller and in lighter color than the rest of the page, does Clearwire state ironically: "Want to read the fine print (and who doesn't want to read the fine print?)  It's all there in the CLEAR Legal Index." (approximate actual size and color) ["Want to read the fine print (and who doesn't want to read the fine print?)  It's all there in the CLEAR Legal Index"].  *See* Clear, http://www.clear.com/plans (last visited Mar. 3, 2011).  This statement is obviously dismissive and sharply ironic; mocks anyone who may have been fussy enough to have considered continuing; and fails to disclose to users that the "fine print" contains important information — which is itself ambiguous.  Instead of urging prospective customers to read this important information about their subscriptions, Clearwire belittles this segment as "fine print" that Clearwire ironically acknowledges no one wants to read, but it then invokes this very same "fine print" to justify its wrongful practices.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

36.     Moreover, if Clearwire subscribers ever in any way signal agreement to the "fine print" it is only after they have received in their homes the modem required to enable their service, at which point it is too late to back out without incurring the substantial inconvenience of repackaging and returning the modem — not to mention the initial research required to obtain Clearwire service.

37.     Even if potential customers do click on the micro-sized self-mocking link, they are not taken to the Terms of Service on which Clearwire relies but, rather, to a "Legal Index" where they are presented with a confusing menu of 19 miscellaneous links on the left and 26 more links on the right, some of which are the same as each other but not in the same order.  This menu happens to include, as one of many menu items, "Terms of Service."  The web page gives no special prominence to this item.  On the contrary, it is less prominent than some of the multitude of links.

38.     Clearwire's failure to show its Terms of Service to its customers at the time of purchase does not stop it from enforcing a purported contract term that requires users to pay cancellation and so-called "re-stocking" fees (together, "early termination fees" or "ETFs").  Thus, although Clearwire breached its contract with its customers and deceptively induced its customers to purchase and pay for Clearwire Internet service, Clearwire insists on the payment of these ETFs when customers realize they are not getting what they bargained for.  Many customers are damaged in this regard because Clearwire generally does not allow them to cancel their contracts unless they first pay the ETF contained in Clearwire's one-sided contract.  Clearwire gives users the unappealing "choice" of paying a monthly fee for a service that is not what was promised, paying a lump sum in advance to cancel that service, or not paying anything and facing collection actions and damaged credit.

39.     No one would deliberately make the decision to buy the slow and inconsistent Internet access that Clearwire actually provides.  Had Clearwire customers known the truth about Clearwire's practices, they would not have subscribed to Clearwire, particularly since most

AMENDED & SUPPLEMENTED COMPLAINT
No. C10-1859 JLR

- 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   customers had other high-speed Internet service options available to them.  Or at the very least,

2   they would have paid a much lower price for the inferior Internet service they actually received.

3   **JURISDICTION AND VENUE**

4       40.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28

5   U.S.C. § 1332(d) because the aggregate claims of Plaintiffs and members of the Class exceed the

6   sum or value of $5,000,000 and there is diversity of citizenship between at least one member of

7   the proposed Class and Clearwire.

8       41.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2).  Clearwire

9   conducts substantial business in this District through the promotion, sale, marketing, and

10  provision of its services in this District, and is headquartered in this District.

11  **CLASS ALLEGATIONS**

12      42.     Plaintiffs incorporate and reallege the above paragraphs.

13      43.     Plaintiffs bring this action as a class action pursuant to Rule 23 on behalf of a

14  Class consisting of all persons in the United States (or, in the alternative, California, Florida,

15  Illinois, Missouri, New York, Oregon, Texas, and Washington) who purchased Internet access

16  from Clearwire during the period from November 15, 2004, until the final disposition of this

17  action (the "Class Period").  Excluded from the Class are Clearwire, any entity that has a

18  controlling interest in Clearwire, and Clearwire's current or former directors, officers, and

19  counsel.

20      44.     The requirements of Rule 23 are satisfied because:

21          (a)     Numerosity: The Class is so numerous that joinder of all members as

22  individual plaintiffs is impracticable.  While the exact number of Class members is unknown and

23  can only be ascertained via discovery, Plaintiffs reasonably believe that there are many

24  thousands of Class members.

25          (b)     Commonality: There are questions of law and fact common to the Class

26  and which predominate over individual questions, including:

27

AMENDED & SUPPLEMENTED COMPLAINT          - 13 -
No. C10-1859 JLR

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

(i)     whether Clearwire's practices constitute unfair and deceptive acts and practices under California, Illinois, Missouri, New York, Texas, and Washington law;

(ii)    whether Clearwire has breached its contract with customers;

(iii)   whether it is unconscionable for Clearwire to charge users service fees for Internet service that was not as advertised and for Internet service that was not worth the service fees paid;

(iv)    whether it is unconscionable for Clearwire to charge users ETFs under the circumstances alleged;

(v)     whether Clearwire has breached its duty of good faith and fair dealing;

(vi)    whether Clearwire has been unjustly enriched by the practices alleged herein; and

(vii)   whether, because of Clearwire's misconduct, Plaintiffs and the Class are entitled to damages, treble damages, restitution, equitable relief or other relief, and the amount and nature of such relief.

(c)     Typicality: Plaintiffs' claims are typical of the claims of the Class because Plaintiff and members of the Class each sustained damages arising out of Clearwire's centralized wrongful conduct as complained of herein; and

(d)     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of the Class as a whole, and have engaged competent counsel who are highly experienced in class actions and complex litigation.

(e)     The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; (b) the prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 • Fax:  (425) 868-7870

1  incompatible standards of conduct for Clearwire; (c) Clearwire acted or refused to act on grounds

2  generally applicable to the Class; (d) questions of law and fact common to members of the Class

3  predominate over any questions affecting only individual members, and a class action is

4  manageable and superior to other available methods for the fair and efficient adjudication of the

5  controversy.

## COUNT I

**By Plaintiff Tsang**
**for violation of California Business and Professions Code § 17200 et seq.,**
**Unlawful, Unfair, or Fraudulent Business Acts or Practices,**
**on behalf of a California subclass**

45.    Plaintiffs incorporate and reallege the above paragraphs.

46.    Clearwire has engaged and continues to engage in California in the unlawful,
unfair, and fraudulent business acts and practices described above, in violation of California
unfair competition law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL").

47.    Clearwire's acts and practices are unlawful under the UCL by virtue of violating
Cal. Bus. & Prof. Code § 17500 et seq., which forbids unfair, deceptive, untrue, or misleading
advertising.   Clearwire's acts and practices are also unlawful under the California Consumer
Legal Remedies Act, Cal. Civ. Code § 1770(a), including at least subparts (5), (7), (9), (14), (16),
and (19).  Clearwire is therefore in violation of the "unlawful" prong of the UCL.

48.    Clearwire's acts and practices are unfair because they cause harm and injury in
fact to Plaintiff and members of the California subclass and for which Clearwire has no
justification other than to increase, beyond what Clearwire would have otherwise realized, its
profit from subscription fees and/or certain ETFs.   Clearwire's conduct lacks reasonable and
legitimate justification in that Clearwire has benefited from such conduct while Plaintiff and the
members of the California subclass have been misled as to the nature and integrity of Clearwire's
Internet service and have, in fact, suffered material disadvantage in the form of subscription fees
and/or certain ETFs.  Clearwire is therefore in violation of the "unfair" prong of the UCL.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

49.     Clearwire's acts and practices are fraudulent within the meaning of the UCL because they are likely to mislead a substantial portion of the members of the public to whom the practices are directed.   As evidence that Clearwire's practices are likely to mislead, those practices actually did mislead a great many people, as indicated in the forums described in this complaint.  Clearwire is therefore in violation of the "fraudulent" prong of the UCL.

50.     The practices that Clearwire has used, and continues to use to its significant gain, also constitute unlawful competition and provide an unlawful advantage over Clearwire's competitors, as well as injury to Plaintiff Tsang.

51.     As a direct and proximate result of such violations of the UCL, Plaintiff Tsang and the members of the California subclass have suffered, and/or continue to suffer, injury in fact and have lost money and/or property in an amount that will be proved at trial.

52.     Plaintiff Tsang and the California subclass seek restitution of all funds that Clearwire may have acquired in violation of the UCL, in an amount that will be proved at trial.

## COUNT II

**By Plaintiff Tsang
for violation of California Business and Professions Code § 17500 et seq.,
Unfair, Deceptive, Untrue, or Misleading Advertising,
on behalf of a California subclass**

53.     Plaintiffs incorporate and reallege the above paragraphs.

54.     Plaintiff Tsang asserts this cause of action against Clearwire for violations of California's false advertising law, Business and Professions Code § 17500, et seq. for unfair, deceptive, untrue, or misleading advertising.

55.     At all material times, Clearwire, with the intent to sell its purported high-speed Internet service in California, made and disseminated to the public in California substantially uniform promotional statements concerning its services and facts connected with its proposed provision of those services, that were unfair, deceptive, untrue, or misleading; and which Clearwire knew or in the exercise of reasonable care should have known were unfair, deceptive, untrue, or misleading.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

56.     Clearwire made and disseminated those statements as part of a plan or scheme with the intent not to sell its Internet service as advertised.  Among other things, "High Speed Internet" meant slow-speed Internet; "fast" meant slow; suitable for "[d]ownload[ing] movies and music" meant unsuitable for downloading movies and music; "unlimited" meant limited, and "no preset cap" meant there was a preset cap.

57.     Clearwire's advertising statements were likely to mislead reasonable consumers to whom they were directed, including Plaintiff Tsang, by obfuscating the truth about Clearwire's throttling and charging subscription fees and/or certain ETFs even though the service it provided was not as advertised.

58.     Clearwire thereby violated California's false advertising law.

59.     Plaintiff Tsang and the California subclass are entitled to judgment that may be necessary to restore to them any money that Clearwire acquired by means of its unlawful conduct.

## COUNT III

**By Plaintiffs Bobowski and Floyd**
**for damages under the Illinois Deceptive Trade Practices Act, 815 ILCS 505/1 et seq.,**
**on behalf of an Illinois subclass**

60.     Plaintiffs incorporate and reallege the above paragraphs.

61.     Plaintiffs Bobowski and Floyd and the Illinois class bring suit under the Illinois Consumer Fraud Act.  Plaintiffs and the Class are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*

62.     Clearwire's wrongful acts, as set forth throughout this complaint, constitute unfair methods of competition, deceptive business practices, misrepresentation, and concealment, suppression or omission of material facts with the intent that consumers will rely on the concealment, suppression or omission of the material facts in violation of the Illinois Consumer Fraud Act.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

63.     Defendant's unlawful acts have occurred in commerce and have caused serious and irreparable injury to Plaintiffs Bobowski and Floyd and the Illinois Class.

64.     Clearwire's actions constitute a deception, false pretense, false promise, and misrepresentation in connection with the sale of its Internet service in that Clearwire failed to disclose that it would throttle Plaintiffs and the other Illinois Class members, and that Plaintiffs and the other Illinois Class members would be required to pay subscription fees and/or certain ETFs, even when Clearwire was throttling their Internet service.  These unfair, immoral and unscrupulous acts and practices constitute deceptive and unfair business practices in violation of the Illinois Consumer Fraud Act.

65.     Clearwire knowingly concealed, suppressed, and omitted the material fact that Plaintiffs' and the other Illinois Class members' Internet service would not perform as represented and that Plaintiffs' and the other Illinois Class members would be required pay, subscription fees and/or certain ETFs, even when Clearwire was throttling their Internet service.

66.     As a direct and proximate result of the deceptive, unfair, unscrupulous and unconscionable practices of Defendant set forth above, Plaintiffs Bobowski and Floyd and the Illinois Class members are entitled to actual and compensatory damages, penalties, attorneys' fees, and costs as set forth in § 10(a) of the Illinois Consumer Fraud Act, 815 ILCS 505/10(a), in an amount to be determined at trial.

## COUNT IV

**By Plaintiff Koskinen**
**for violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.020 et seq.,
on behalf of a Missouri subclass**

67.     Plaintiffs incorporate and reallege the above paragraphs.

68.     Plaintiff Koskinen brings this claim pursuant to Mo. Rev. Stat. § 407.020 et seq.

69.     At all relevant times, Clearwire provided merchandise and thereby engaged in trade or commerce, as defined in Mo. Rev. Stat. § 407.010 et seq.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

70.     Clearwire engaged in unlawful practices, including, but not limited to, the act, use, or deception, false pretense, false promise, misrepresentation, unfair practice and/or concealment, suppression, and omission of material facts in connection with the sale or advertisement of merchandise in trade or commerce, in or from the State of Missouri in violation of the Missouri Merchandising Practices Act § 407.020 et seq. by stating that it would provide a certain level of Internet service without plainly disclosing to Plaintiff and the members of the Missouri Class that that Internet service would be throttled.  As a result, when Plaintiff Koskinen and the other members of the Missouri class purchased their Internet service, they were unaware that they were not going to receive the Internet service promised.

71.     Clearwire's unlawful practices have directly damaged Plaintiff Koskinen and the other members of the Missouri Class.  Plaintiff Koskinen and the other members of the Missouri Class paid subscription fees and/or certain ETFs relating to fast Internet service they did not receive.  Instead Plaintiff Koskinen and the other members of the Missouri Class received a level of Internet service that could have been bought for a fraction of the cost.  Thus, Clearwire has unjustly profited at the expense of Plaintiff Koskinen and the other members of the Missouri Class because Defendant has received payments for Internet service it would not have received if not for its unlawful conduct.

72.     Plaintiff Koskinen and the other members of the Missouri Class have suffered and/or continue to suffer an ascertainable loss of money directly and proximately caused by Clearwire's use or employment of a method, act, and/or practice declared unlawful under the Missouri Merchandising Practices Act, as more fully described herein.

73.     Further, Clearwire has engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

74.     Upon information and belief, Clearwire acted and continues to act in an identical or substantially similar manner with respect to the entire putative Missouri Class by adopting or implementing identical or substantially similar practices.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

75.     Plaintiff Koskinen has retained the services of the undersigned attorneys who are entitled to reasonable attorneys' fees.

76.     Plaintiff Koskinen seeks to obtain a pecuniary benefit for the Missouri Class in the form of all actual or consequential damages recoverable from Clearwire.   Plaintiff Koskinen's counsel are entitled to recover their reasonable attorneys fees and expenses as a result of the pecuniary and non-pecuniary benefits obtained on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## COUNT V

### By Plaintiffs Munoz-Alazazi and Guerrier
### for violation of New York General Business Law § 349: Deceptive Acts and Practices
### on behalf of a New York subclass

77.     Plaintiffs incorporate and reallege the above paragraphs.

78.     Through Clearwire's false representations described above about its high-speed Internet service, Clearwire has engaged in material, deceptive, consumer-oriented acts, in the conduct of its business, that has injured Plaintiffs Munoz-Alazazi and Guerrier and all others similarly situated in violation of N.Y. Gen. Bus. Law § 349 because Clearwire has intentionally interfered with its subscribers' connections to the Internet by delaying and/or blocking altogether certain communications and because Plaintiffs Munoz-Alazazi and Guerrier and the other New York Class members have been charged or will be charged subscription fees and/or certain ETFs, even if Plaintiffs were canceling their service as a result of Clearwire's throttling.

79.     The speed and accessibility of a high-speed Internet service is important to Plaintiffs Munoz-Alazazi and Guerrier and the other New York Class members, and likely to affect their choices concerning these products and services.   Plaintiffs Munoz-Alazazi and Guerrier and the other New York Class members purchased Clearwire's high-speed Internet service at a premium price believing it would provide the speed, accessibility, and quality that Defendant promised.   Plaintiffs and all others similarly situated were injured by Clearwire's deceptive acts because they unknowingly paid a premium for a service that intentionally

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

interfered with their connections to the Internet by delaying and/or blocking altogether certain communications.

80.     As a direct and proximate cause of Clearwire's violation of N.Y. Gen. Bus. Law § 349, Plaintiffs Munoz-Alazazi and Guerrier and the other New York Class members and all others similarly situated have been damaged in an amount that will be proven at trial.

### COUNT VI

**By Plaintiff Dennings**
**for violation of Texas Deceptive Trade Practices – Consumer Protection Act,**
**V.T.C.A. § 17.41 et seq., on behalf of a Texas subclass**

81.     Plaintiffs incorporate and reallege the above paragraphs.

82.     This cause of action is brought under the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. and Com. Code § 17.41 *et seq*. (the "TDTP-CPA").

83.     Plaintiff Dennings and other Texas Class members are "consumers" and Clearwire's Internet service is a "service" as defined by §17.45 of the TDTP-CPA.

84.     The TDTP-CPA prohibits false, misleading and deceptive acts and practices.

85.     Clearwire violated the TDTP-CPA by engaging in the following practices prohibited by § 17.46(b) in transactions with Plaintiff Dennings and other Texas Class members which were intended to and did cause Plaintiff Dennings and other Texas Class members to purchase Clearwire's Internet service:

(a)     representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;

(b)     representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(c)     advertising goods or services with intent not to sell them as advertised;

(d)     failing to disclose information concerning goods or services, which was known at the time of the transaction if such failure to disclose such information was intended to

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

1    induce the consumer into a transaction into which the consumer would not have entered had the

2    information been disclosed[.]

3         86.    Clearwire's false, misleading and deceptive acts or practices were made in

4    connection with the advertisement and sale of services within the scope of the TDTP-CPA.

5         87.    Clearwire misrepresented the speed of Internet service to be provided and failed

6    to notify consumers that they would be charged certain ETFs if consumers cancel their service,

7    even if consumers cancel their service when their service is being throttled.

8         88.    Clearwire's acts, omissions, misrepresentations, practices and non-disclosures, as

9    alleged herein, also constitute "unconscionable" business acts or practices within the meaning of

10   the TDTP-CPA.  Clearwire took advantage of Plaintiff Dennings's and Class members' lack of

11   knowledge, ability, experience and/or capacity to a grossly unfair degree by misrepresenting the

12   speed of Internet service to be provided in Clearwire's advertising, and marketing materials and

13   by failing to notify consumers that they would be charged certain ETFs if consumers cancel their

14   service, even if consumers cancel their service when their service is being throttled.

15        89.    As the provider of Internet services to consumers, Clearwire possesses specialized

16   knowledge regarding its capacity to provide the Internet speed promised.  This information was

17   not known by or available to the public.  As a result, Clearwire knew, should have had reason to

18   know, or recklessly disregarded that their representations were false, misleading, and deceptive.

19   Further, there is a gross disparity between the value of the Internet service consumers received

20   and the price they paid for the Internet service that was actually provided.

21        90.    Clearwire's misrepresentations in its adverting and marketing regarding the speed

22   of Internet service to be provided was intended to, had the capacity to and did, deceive Plaintiff

23   Dennings and the other Texas Class members into purchasing the Clearwire's Internet service.

24        91.    Plaintiff Dennings and all other Texas Class members purchased Clearwire's

25   Internet service when Clearwire's advertising and marketing uniformly misrepresented the

26   Internet speed that would be provided.

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

92.     Neither Plaintiff Dennings nor any of the other Texas Class members knew about or were privy to any information at the time they purchased Clearwire's service about the Internet speeds that Clearwire would actually provide and/or that they would be subject to certain ETFs, even if Clearwire throttled their Internet service.

93.     Plaintiff Dennings and the other Texas Class members read Clearwire's representations in Defendant's marketing and advertising and relied on them in purchasing Clearwire's Internet service.

94.     Plaintiff Dennings and the other Texas Class members have been damaged by Clearwire's deceptive acts described herein.

95.     Plaintiff Dennings and the other Texas Class members are entitled to equitable relief in the form of restitution, including all monies paid for Clearwire's Internet service and/or certain ETFs when Internet service was cancelled because of Clearwire's unlawful acts, disgorgement of the profits Clearwire received from sales of the Internet service.

96.     This cause of action does not seek monetary damages at this point.  Plaintiff Dennings will seek leave to amend this Amended Class Action Complaint to seek damages in accordance with the TDTP-CPA after providing the Defendant with notice pursuant to Pursuant to § 17.505 of the TDTP-CPA.

<u>**COUNT VII**</u>

**By Plaintiffs Crawford, Dazell, Powell, and Prior**
**for violation of the Washington Consumer Protection Act, RCW § 19.86.010 et seq.**
**on behalf of a Washington subclass**

97.     Plaintiffs incorporate and reallege the above paragraphs.

98.     The Washington Consumer Protection Act ("CPA") declares unlawful (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) with a public interest impact, and (iv) which causes injury to Plaintiffs.

99.     At all relevant times, Clearwire has engaged in unfair and deceptive acts and practices in the conduct of its business by (a) misleadingly and deceptively charging certain

AMENDED & SUPPLEMENTED COMPLAINT          - 23 -
No. C10-1859 JLR

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

ETFs and/or (b) misleadingly and deceptively promising to provide a certain level Internet service while, at the same time, impeding the Internet service of Plaintiffs Crawford, Dazell, Powell, and Prior, and the other members of the Washington class.

100.    Clearwire's unfair and deceptive business acts and practices impact the public interest.  Clearwire committed the unfair and deceptive acts described herein in the course of its business as part of a pattern and generalized course of conduct.  Clearwire's unfair and deceptive business acts and practices have affected, and continue to affect, a great many consumers.

101.    As a result of Clearwire's unfair and deceptive acts and practices in the conduct of its business, Plaintiffs Crawford, Dazell, Powell, and Prior and the other members of the Washington Class have suffered financial damages.

## COUNT VIII

### By all Plaintiffs for Breach of Contract

102.    Plaintiffs incorporate and reallege the above paragraphs.

103.    Plaintiffs and the Class members entered into a contract with Clearwire to pay monthly fees in exchange for unlimited high-speed Internet service.

104.    Plaintiffs and Class members, for their consideration, promised to make monthly payments for high-speed Internet service having the characteristics detailed above.  Clearwire, for its consideration, promised to deliver high-speed Internet service having the characteristics detailed above.

105.    Plaintiffs and the Class members performed their obligations under the contract by paying their monthly fees.

106.    Clearwire unjustifiably breaches the contract by intentionally interfering with Plaintiff and Class members' access and use of Clearwire's high-speed Internet service and, therefore, Plaintiffs and the class are entitled to damages subject to proof at trial.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax:  (425) 868-7870

## COUNT IX

### By all Plaintiffs for Breach of the Covenant of Good Faith and Fair Dealing

107.   Plaintiffs incorporate and reallege the above paragraphs.

108.   Clearwire, through its advertising and marketing of its high-speed Internet service, makes uniform representations and offers regarding the quality of its high-speed Internet service.

109.   Plaintiffs and Class members' acceptance of Clearwire's offer was premised on Clearwire's promises regarding the nature of its high-speed Internet service and gave consideration to Clearwire by paying their monthly fees.   Plaintiffs and Class members performed all their obligations under the contracts by paying for their service.

110.   Clearwire breached the implied covenant of good faith and fair dealing by knowingly, unreasonably, and/or arbitrarily failing to provide and interfering with Plaintiffs' and Class members' ability to receive with the service they desired, paid consideration for, and thought they would receive.

111.   Clearwire further breached the implied covenant of good faith and fair dealing by unreasonably and/or arbitrarily charging ETF or re-stocking fees to Plaintiffs and the Class members, while knowing that it had failed to hold up its end of the bargain.

112.   As a direct and proximate result of the breaches set forth herein, Plaintiffs and Class members have suffered, and continue to suffer, damages in an amount to be proven at trial.

## COUNT X

### By all Plaintiffs for Unjust Enrichment

113.   Plaintiffs incorporate and reallege the above paragraphs.

114.   Clearwire's conduct unjustly enriched Clearwire, to the detriment of the Class, by causing Clearwire to receive payments for a high-speed Internet service that it did not provide, and allowing it to reap early termination fees or re-stocking fees from those who would not abide by Clearwire's breach of contract.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

115. Plaintiffs and Class members have been harmed by paying for a high-speed Internet service that they did not receive and/or by paying ETFs.

116. Clearwire's retention of funds paid by Plaintiffs and Class members violates the fundamental principles of justice, equity, and good conscience.

117. Clearwire was aware it was retaining such funds paid by Plaintiffs and the Class members.

118. Clearwire, therefore, should be ordered, to the extent there is no remedy provided by law, to return any funds obtained as a result of its deceptive scheme to the Class.

## PRAYER FOR RELIEF

Plaintiffs and all class and subclass members pray that this Court provide the following relief:

A. Certify this action as a class action under Rule 23;

B. Order Clearwire to pay Plaintiffs and Class members an amount of actual, direct, incidental, consequential, exemplary, additional, and treble damages (to the extent available) to be determined at trial;

C. Declare that the monthly service fees and other related fees charged by Clearwire were unconscionable under these circumstances;

D. Declare that Clearwire's ETFs were unconscionable under these circumstances;

E. Award pre- and post-judgment interest, to the maximum extent permissible;

F. Award attorney's fees and costs of suit, to the maximum extent permissible; and

G. For such other and further relief this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

DATED:        March 3, 2011                    Respectfully submitted,

                                               LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
                                               By:  s/ Cliff Cantor, WSBA # 17893
                                               627 208th Ave. SE
                                               Sammamish, WA  98074-7033
                                               Telephone:     (425) 868-7813
                                               Facsimile:     (425) 868-7870
                                               cacantor@comcast.net

                                               MILBERG LLP
                                               Sanford P. Dumain
                                               Peter E. Seidman
                                               Josh Keller
                                               One Pennsylvania Plaza
                                               New York, NY  10119-0165
                                               Telephone:     (212) 594-5300
                                               Facsimile:     (212) 868-1229
                                               sdumain@milberg.com
                                               pseidman@milberg.com
                                               jkeller@milberg.com

                                               REESE RICHMAN LLP
                                               Michael R. Reese
                                               Kim E. Richman
                                               875 Avenue of the Americas, 18th Floor
                                               New York, NY  10169
                                               Telephone:     (212) 579-4625
                                               Facsimile:     (212) 572-4272
                                               michael@reeserichman.com
                                               krichman@reeserichman.com

                                               Attorneys for Plaintiffs


                               Certificate of Service

       I certify that, on Mar. 3, 2011, I caused this document to be filed with the Clerk of the
Court by means of the CM/ECF system, which will send notification of filing to all counsel of
record.

                                               s/ Cliff Cantor, WSBA # 17893

AMENDED & SUPPLEMENTED COMPLAINT
No. C10-1859 JLR

- 27 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave, SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870