1

2

3

4

5

6

7

8

9

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICHAEL BOBOWSKI, ALYSON BURN, STEVEN COCKAYNE, BRIAN CRAWFORD, DAN DAZELL, ANGELO DENNINGS, CHEYENNE FEGAN, SHARON FLOYD, GREGORY GUERRIER, JOHANNA KOSKINEN, ELENA MUNOZ-ALAZAZI, ELAINE POWELL, ROBERT PRIOR, ALIA TSANG, and KYLE WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No. C10-1859-JLR<br><br>CLEARWIRE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM<br><br>*Note on Motion Calendar*<br>June 6, 2011 |
|                        Plaintiff, | ) ) | *Oral Argument Requested* |
|    vs. | ) ) | |
| CLEARWIRE CORPORATION, | ) ) | |
|                      Defendant. | ) ) | |

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL BACKGROUND................................................................................2

        A.   The Initial Complaint...............................................................................2

        B.   Plaintiffs' "Amended and Supplemented" Allegations ..............................3

        C.   Plaintiffs' Agreement to Clearwire's Network Management Practices .......4

        D.   Plaintiffs' Agreement to Pay an ETF .......................................................5

        E.   Clearwire's Representations Concerning Service. ......................................5

        F.   The Agreed Remedy for Plaintiffs' Connection Speed Complaints ...........6

III.    LEGAL STANDARD ..........................................................................................7

IV.     ARGUMENT.......................................................................................................8

        A.   The Court Should Dismiss Plaintiffs' Consumer Protection Act Claims....8

             1.   Plaintiffs Fail to Allege Causation or Injury, Necessary Elements under Each State's Consumer Protection Act.......................8

             2.   Plaintiffs Fail to Allege a Deceptive Act Because Clearwire Disclosed, and Plaintiffs Accepted, the Practice They Now Challenge. ...................................13

             3.   Plaintiffs' CPA Claims Rest on Statements That Are Not Actionable...............15

        B.   The Court Should Dismiss Plaintiffs' Breach of Contract Claims............16

             1.   Plaintiffs Fail to Allege Breach of Any Contract Term. ...................16

             2.   Plaintiffs' Failure to Allege Compliance with the Notice and Exclusive Remedy Provisions Bars Their Contract Claims. ..............20

        C.   The Law Bars Plaintiffs' Unjust Enrichment Claims Because a Contract Governs the Same Subject Matter. ...............................22

        D.   Plaintiffs Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ...............................23

V.      CONCLUSION..................................................................................................24

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**FEDERAL CASES**

4

5

*Al-Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co.*,
  571 F.3d 754 (8th Cir. 2009) ....................................................................... 22, 23

6

*Ashcroft v. Iqbal*,
7    129 S. Ct. 1937 (2009) ....................................................................... 8, 10, 11

8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 7, 8, 10

9

10

*Berry v. Indianapolis Life Ins. Co.*,
  608 F. Supp. 2d 785 (N.D. Tex. 2009) ........................................................ 12

11

*Blake v. Career Educ. Corp.*,
12    2009 U.S. Dist. LEXIS 3432 (E.D. Mo. Jan. 20, 2009) ..................................... 12

13

*Bowden v. AT&T Mobility, LLC*,
  2009 U.S. Dist. LEXIS 116787 (W.D. Wash. Dec. 15, 2009) ............................. 21

14

*Brownfield v. Bayer Corp.*,
15    2009 WL 1953035 (E.D. Cal. July 6, 2009) ................................................. 11

16

*Carney v. Verizon Wireless Telecom, Inc.*,
17    2010 U.S. Dist. LEXIS 47161 (S.D. Cal. May 13, 2010) ..................................... 8

18

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................... 7

19

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
20    911 F.2d 242 (9th Cir. 1990) .................................................................... 15

21

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
22    349 F.3d 376 (7th Cir. 2003) ................................................................... 23

23

*Doyle v. Nutrilawn U.S., Inc.*,
  2010 U.S. Dist. LEXIS 48613 (W.D. Wash. May 17, 2010) ................................ 24

24

*E360insight, LLC v. Comcast Corp.*,
25    546 F. Supp. 2d 605 (N.D. Ill. 2008) ......................................................... 13

26

*Gerber v. First Horizon Home Loans Corp.*,
27    2006 WL 581082 (W.D. Wash. Mar. 8, 2006) .......................................... 1, 21

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Griggs v. Credit Solutions of Am., Inc.*,
   2010 U.S. Dist. LEXIS 76590 (N.D. Tex. July 28, 2010) ............................................. 12, 13

*Guketlov v. HomeKey Mortg., LLC*,
   2009 U.S. Dist. LEXIS 104504 (W.D. Wash. Nov. 9, 2009)............................................. 22

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
   767 F. Supp. 1269 (S.D.N.Y. 1991)................................................................................. 23

*Hickman v. Wells Fargo Bank N.A.*,
   683 F. Supp. 2d 779 (N.D. Ill. 2010) ............................................................................. 22

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .............................................................................................4

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
   2008 WL 552482 (N.D. Cal. Feb. 27, 2008)........................................................... 15, 17, 23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................................... 12

*Lowden v. T-Mobile USA Inc.*,
   378 Fed. Appx. 693 (9th Cir. 2010).............................................................................. 13

*Lyons v. Coxcom, Inc.*,
   2009 U.S. Dist. LEXIS 122849 (S.D. Cal. Feb. 6, 2009) ..................................... 12, 18, 19

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) ........................................................................ 18

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ...........................................................................................4

*McFerrin v. Old Republic Title, Ltd.*,
   2009 WL 2045212 (W.D. Wash. July 9, 2009) ............................................................ 16

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010) ............................................................ passim

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................................... 15

*Owen v. GMC*,
   533 F.3d 913 (8th Cir. 2008) ...........................................................................................9

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ...........................................................................................4

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................................. 14

*Peviani v. Natural Balance, Inc.*,
   2011 U.S. Dist. LEXIS 18110 (S.D. Cal. Feb. 24, 2011) ....................................... 8

*Reliance Ins. Co. v. Fed. Express Corp.*,
   1985 WL 2241 (S.D.N.Y. Aug. 1, 1985) ............................................................. 21

*Smale v. Cellco P'ship*,
   547 F. Supp. 2d 1181 (W.D. Wash. 2008) .......................................................... 13

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ........................................................................... 4

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ......................................................... 14, 15

*Thunderwave, Inc. v. Carnival Corp.*,
   954 F. Supp. 1562 (S.D. Fla. 1997) ................................................................... 22

*U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
   290 F.3d 1199 (9th Cir. 2002) ......................................................................... 22

*Webb v. UnumProvident Corp.*,
   507 F. Supp. 2d 668 (W.D. Tex. 2005) .............................................................. 12

*Williams v. Fed. Express Corp.*,
   1999 WL 1276558 (C.D. Cal. Oct. 6, 1999) ...................................................... 21

**STATE CASES**

*Autohaus, Inc. v. Aguilar*,
   794 S.W.2d 459 (Tex. App. 1990) .................................................................... 15

*Badgett v. Security State Bank*,
   116 Wn.2d 563 (1991) ............................................................................... 23, 24

*Baron v. Pfizer, Inc.*,
   840 N.Y.S.2d 445 (N.Y. App. Div. 2007) ......................................................... 12

*Burnside v. Simpson Paper Co.*,123
   Wn. 2d 93 (1994) ........................................................................................ 16

*Carlile v. Harbour Homes, Inc.*,
   147 Wn. App. 193 (2008) ............................................................................... 23

*Chandler v. Wash. Toll Bridge Auth.*,
   17 Wn.2d 591 (1943) ..................................................................................... 22

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Cianfichi v. White House Motor Hotel*,
   921 S.W.2d 441 (Tex. App. 1996)..................................................................9

*Consumer Advocates v. Echostar Satellite Corp.*,
   8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003) ........................................................15

*Cox v. CSX Intermodal, Inc.*,
   732 So. 2d 1092 (Fla. Dist. Ct. App. 1999)...................................................23

*Cox v. NAP Constr. Co.*,
   10 NY.3d 592 (N.Y. 2008) .............................................................................22

*De Bouse v. Bayer AG*,
   922 N.E.2d 309 (Ill. 2009) ...............................................................................9

*Douglas v. Delp*,
   987 S.W.2d 879 (Tex. 1999) ...........................................................................15

*Elliott Bay Seafoods, Inc. v. Port of Seattle*,
   124 Wn. App. 5 (2004) ...................................................................................16

*Emerald Forest Util. Dist. v. Simonsen Const. Co.*,
   679 S.W.2d 51 (Tex. App. 1984).....................................................................21

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000) .............................................................................22

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
   86 Wn. App. 732 (1997).............................................................................23, 24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778 (1986) ......................................................................................9

*Humble Nat'l Bank v. DCV, Inc.*,
   933 S.W.2d 224 (Tex. App. 1996)...................................................................15

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ....................................................................................8

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (Cal. 2011) ..............................................................................8

*Lacoff v. Buena Vista Publ'g, Inc.*,
   705 N.Y.S.2d 183 (N.Y. Sup. Ct. 2000) ........................................................15

*MacDonald v. Hayner*,
   43 Wn. App. 81 (1986) ...................................................................................22

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Moody v. Fed. Express Corp.,*
  858 N.E.2d 918 (Ill. App. Ct. 2006) ................................................................ 21

*Mount Hood Cmty. Coll. v. Fed. Ins. Co.,*
  111 P.3d 752 (Or. Ct. App. 2005) ..................................................................... 22

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.,*78
  Wn. App. 707 (1995) ......................................................................................... 16

*Oliveira v. Amoco Oil Co.,*
  776 N.E.2d 151 (Ill. 2002) ................................................................................ 12

*Owens v. Harrison,*120
  Wn. App. 909 (2004) ......................................................................................... 16

*Plotkin v. Sajahtera, Inc.,*
  131 Cal. Rptr. 2d 303 (Cal. Ct. App. 2003) ..................................................... 13

*Poulsbo Grp., LLC v. Talon Dev., LLC,*
  155 Wn. App. 339 (2010) .................................................................................. 16

*Rice v. Dow Chem. Co.,*
  124 Wn.2d 205 (1994) ....................................................................................... 16

*Ross v. Harding,*
  64 Wn.2d 231 (1964) ......................................................................................... 19

*Sands v. Ticketmaster-New York, Inc.,*
  207 A.D.2d 687 (N.Y. App. Div. 1994) ............................................................ 13

*Shvarts v. Budget Grp., Inc.,*
  97 Cal. Rptr. 2d 722 (Cal. Ct. App. 2000) ....................................................... 22

*Stutman v. Chem. Bank,*
  731 N.E.2d 608 (N.Y. 2000) ............................................................................... 9

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.,*
  84 S.W.3d 212 (Tex. 2002) ............................................................................... 23

*Taylor v. BMG Direct Mktg. Inc.,*
  299 A.D.2d 181 (N.Y. App. Div. 2002)............................................................. 13

*Tombs v. Nw. Airlines, Inc.,*
  38 Wn.2d 157 (1973) .................................................................................. 20, 21

*Willener v. Sweeting,*
  107 Wn.2d 388 (1986) ................................................................................ 16, 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Yaw v. Walla Walla Sch. Dist. No. 140*,
    106 Wn.2d 408 (1986) ................................................................................. 20

*Zygar v. Johnson*,
    10 P.3d 326 (Or. Ct. App. 2000).................................................................. 23

**FEDERAL STATUTES**

18 U.S.C. § 1030 ..................................................................................... 2, 3

CLEARWIRE'S MOTION TO DISMISS  AM. COMPL.
(No. C10-1859-JLR)
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I.    INTRODUCTION

Plaintiffs' Amended Complaint alleges Clearwire Corporation deceived its customers by promising "high-speed" Internet when "[i]n reality, Clearwire throttles down the speed of its Internet service." ¶ 2.[1]  But *no* plaintiff alleges that Clearwire slowed or "throttled" her Internet service.  Nor does any plaintiff allege that she saw or relied on any particular Clearwire representation about its service.  Instead, all fifteen plaintiffs vaguely allege they were "exposed to" representations about Clearwire's "high-speed" Internet service and did not consistently receive that level of service.  Plaintiffs confuse what they wanted—flawless "high-speed" Internet at all times and under all circumstances—with what was advertised, and with what each plaintiff accepted by contract.  Based on their allegations, and in light of the materials referenced in the Amended Complaint, plaintiffs have not stated claims on which relief can be granted and the Court should dismiss the Amended Complaint, for the following reasons: [2]

*First,* the Court should dismiss plaintiffs state consumer protection act ("CPA") claims.  Plaintiffs fail to allege any facts showing that they suffered injury or that Clearwire's conduct caused that injury, both necessary elements under each state's CPA.  Further, plaintiffs' CPA claims fail because Clearwire fully disclosed—and plaintiffs agreed to—the network management practices and early termination fees ("ETF") that form the core of plaintiffs' claims.  And plaintiffs do not state CPA claims because the few statements they identify as "deceptive" amount to general, non-factual representations that cannot support an actionable CPA claim.

*Second*, the Court should dismiss plaintiffs' breach of contract claim.  Plaintiffs do not allege any contract term that Clearwire breached.  And they cannot do so because the Terms of Service ("TOS"), to which plaintiffs assented when they activated their service, expressly authorize Clearwire to manage its network and collect ETFs—the very conduct they now attack.  Moreover, plaintiffs' contract claim fails because they do not allege that they complied with the

---

[1] This motion will cite the Amended Complaint by referring to the paragraph number.

[2] Clearwire has filed concurrently a Motion to Compel Arbitration of the claims of 10 of the 15 plaintiffs.  The court need not consider the Motion to Dismiss as to these plaintiffs if it grants Clearwire's Motion to Compel Arbitration.

contractual written notice and exclusive remedy provisions, which function as conditions precedent to their ability to bring the present claims.

**Third**, plaintiffs cannot state an unjust enrichment claim because the TOS govern the subject matter of his claim.  Under settled law, a plaintiff cannot bring an unjust enrichment claim based on matters covered by an express contract.

**Fourth**, the Court should dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because the law rejects an implied duty under these circumstances.

## II.     FACTUAL BACKGROUND

### A.     The Initial Complaint

Plaintiff Angelo Dennings, a Texas resident, filed this action on November 15, 2010 [Dkt. 1].  The original complaint included a single plaintiff, Mr. Dennings, and alleged Clearwire promised him an "always on," "high-speed" Internet connection but failed to deliver on that promise. ¶¶ 1, 2.  Instead, Mr. Dennings alleged Clearwire unlawfully restricted his Internet download speeds during high traffic times and informed him that he may be subject to an ETF if he were to cancel his service before fulfilling his contract term.  ¶¶ 10-16.  Mr. Dennings asserted claims against Clearwire for violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), breach of contract, breach of an implied covenant of good faith and fair dealing, and unjust enrichment.  ¶¶ 38-62.

Like all Clearwire customers, Mr. Dennings agreed to Clearwire's TOS, by which he agreed to arbitrate any claims related to his Internet service.  Clearwire therefore moved to compel arbitration of Mr. Dennings's claims based on that agreement [Dkt. 16], invoking Texas law pursuant to the parties' agreement.  Clearwire also moved to dismiss Mr. Denning's complaint [Dkt. 17] and showed that all of Mr. Dennings's claims suffered from a core deficiency:  the TOS expressly **permitted** Clearwire to engage in the conduct underlying all of his complaints.  Specifically, the TOS authorize Clearwire to manage its network for the good of most subscribers by reducing bandwidth consumption by disproportionately heavy users and to recover ETFs if subscribers choose to terminate their agreements before the end of their contract terms.

### B.    Plaintiffs' "Amended and Supplemented" Allegations

After Clearwire showed that Mr. Dennings must arbitrate his claims on an individual basis under Texas law and laid bare his failure to plead a claim for relief, Mr. Dennings's counsel filed an amended complaint adding fourteen plaintiffs for a total of fifteen plaintiffs from nine different states [Dkt. 23].  The new complaint abandoned the meritless CFAA claim, but added claims under seven different state consumer protection statutes.  *Id.* ¶¶ 45-101.

The fifteen plaintiffs allege they reside in Illinois, Wisconsin, Oregon, Washington, Texas, Florida, New York, Missouri, and California, and entered into agreements for Clearwire's wireless Internet service.  ¶¶ 7-21.  All plaintiffs claim (in identical language, except for their names and states of residence) that they were "exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service" and that they "paid for service that was not as advertised and not worth what [they] paid."  *Id.*  They assert ten claims.  The first seven causes of action allege Clearwire engaged in deceptive advertising in violation of the consumer protection statutes of six states.  *See* ¶¶ 45–101.  Plaintiffs further claim Clearwire breached its contract with them by "intentionally interfering" with their "access and use of Clearwire's high-speed Internet service," ¶¶ 102–106; Clearwire breached the implied covenant of good faith and fair dealing by failing to provide subscribers "with the service they desired, paid consideration for, and thought they would receive," ¶¶ 107–112; and Clearwire was unjustly enriched by receiving "payments for a high-speed Internet service that it did not provide" and collecting ETFs, ¶¶ 113–18.

Plaintiffs purport to assert these claims on behalf of "all persons in the United States (or, in the alternative, California, Florida, Illinois, Missouri, New York, Oregon, Texas, and Washington) who purchased Internet access from Clearwire during the period from November 15, 2004, until the final disposition of this action," presumably without regard to whether Clearwire "intentionally interfered" with their connection speed or charged an ETF.  ¶ 43.  Plaintiffs seek (i) "actual, direct, incidental, consequential, exemplary damages, additional, and treble damages"; (ii) a declaration that "the monthly service fees and other related fees charged by Clearwire were

unconscionable"; (iii) a declaration that "Clearwire's ETFs were unconscionable"; (iv)  interest, attorney's fees, and costs.  Am. Compl., Prayer.

### C.      Plaintiffs' Agreement to Clearwire's Network Management Practices

Plaintiffs allege that they and other subscribers "entered into a contract with Clearwire to pay monthly fees in exchange for unlimited high-speed Internet." ¶ 103.  (The Court may consider the terms of plaintiffs' "contracts"—their TOS, as well as the other documents referred to in this motion, under settled Ninth Circuit authority.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).)[3]  Plaintiffs assented to Clearwire's TOS.  Camacho Decl., ¶¶ 4–14.  The TOS explains Clearwire's right to manage its network by reducing bandwidth consumption by disproportionately heavy users (what plaintiffs pejoratively refer to as "throttling"):

> **Network Management.** You acknowledge that speed and bandwidth available to each computer or device connected to the network may vary for reasons including … the amount of data being transferred over the network, and available bandwidth. ***You also agree that Clearwire reserves the right to engage in reasonable network management*** to protect the overall network, including … through techniques ***such as limiting the aggregate bandwidth available to bandwidth intensive users*** during periods of congestion.…

*Id.*, Exs. E-G, ¶ 12 (emphasis added).  *See also* Exs. A-B, ¶ 10, Exs. C-D, ¶ 12, Exs. H-J, ¶ 3.c.  The TOS also incorporate Clearwire's Acceptable Use Policy ("AUP"), *id.* ¶ 15, which further explains how Clearwire manages the network to protect its viability for all users:

> **Excessive Utilization of Network Resources**. Wireless networks have capacity limits and all customers can suffer from degraded or denied service when one or a small group of users consumes disproportionate amounts of a wireless network's resources. Clearwire, therefore, will monitor both overall network performance and individual resource consumption to determine if any user is consuming a disproportionate amount of available resources and creating the potential to disrupt or degrade the Clearwire network or network usage by others. … ***Clearwire reserves the right to engage in reasonable network management to protect the overall network***, including analyzing traffic patterns and preventing the distribution of viruses or other malicious code. ***During periods of congestion, Clearwire uses various techniques such as reducing the data rate of individual bandwidth intensive users whose use is negatively impacting other users***. .…

---

[3] Plaintiff's Complaint refers to and thereby incorporates Clearwire's information posted on its website (*e.g.*, ¶¶ 23–26) and its subscription contracts and terms of service (*e.g.*, ¶¶ 7–21, 103).  The Court may consider these documents in support of this Rule 12 motion. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).  "[E]ven if the plaintiff's complaint does not explicitly refer to" documents, if plaintiffs' claims turn on those documents, defendants may rely on them in a motion to dismiss. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  Further, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

CLEARWIRE'S MOTION TO DISMISS AM. COMPL.
(No. C10-1859-JLR) – 4
DWT 16739022v8 0065187-001078

Camacho Decl., Exs. M & N, Excessive Utilization of Network Resources (emphasis added).  *See also id.*, Ex. L, Excessive Utilization of Network Resources.  The Complaint avoids mentioning either of these provisions, even though plaintiffs assented to them when they activated their Clearwire service.

### D. Plaintiffs' Agreement to Pay an ETF

Plaintiffs allege that "Clearwire failed to notify consumers that they would be charged certain ETFs if consumers cancel their service, even if consumers cancel their service when their service is being throttled."  ¶ 87.  *See also* ¶¶ 65, 88, 92.  In fact, the first page of the TOS emphasized in bold, capitalized letters that subscribers should read the TOS "**CAREFULLY BECAUSE IT INCLUDES MANY IMPORTANT TERMS, INCLUDING: … · FEES FOR EARLY TERMINATION.**"  Camacho Decl., Exs. A-G.  *See also id.*, Exs. H-J, ¶ 1.  The TOS called out in paragraphs with bolded headings labeled "**Termination Fees**" that term subscribers had the option to end their one- or two-year monthly payment obligation early by paying a declining ETF.  *Id.*, Exs. A-B, ¶ 31, Exs. C-G, ¶ 2, Exs. H-J, ¶ 4.  The Agreement explains:

> If you purchase any Service under a rate plan requiring you to maintain Service for a Term Commitment, **THEN UNLESS STATED OTHERWISE IN THESE TERMS OR ON YOUR ORDER CONFIRMATION, AN EARLY TERMINATION FEE WILL APPLY IF YOU CHOOSE TO CANCEL YOUR SERVICE BEFORE THE END OF YOUR TERM COMMITMENT, OR IF CLEARWIRE TERMINATES YOUR SERVICE FOR CAUSE BEFORE THE END OF YOUR TERM COMMITMENT**."

*Id.*, Exs. H-J, ¶ 4.e (emphasis in original).  *See also id.*, Exs. C-G, ¶ 2, Exs. A-B, ¶ 31.[4]  Plaintiffs do *not* allege that Clearwire charged them or that they paid an ETF.  *See generally* Am. Compl.

### E. Clearwire's Representations Concerning Service.

Plaintiffs allege Clearwire promises "High Speed Internet" or "faster Internet" service. ¶ 2.  But the Complaint does not point to *any* statement through which Clearwire promised that *every* customer would *always* receive an Internet connection of a given speed.  In fact, the TOS (posted on the Web site at http://www.clearwire.com/company/legal/terms.php) expressly

---

[4] Of course, plaintiffs were free to choose a month-to-month plan *with no ETF* as Ms. Munoz-Alazazi, Mr. Prior, Mr. Cockayne, and Ms. Koskinen did.  Camacho Decl. ¶ 20.

explained Clearwire's network management practices, as discussed above, in addition to the

inherent variation in the availability and speed of wireless Internet service:

> **Availability of Service/Variation of Speed**.  You acknowledge that Clearwire Service, including any mobile VoIP service or product, may not be available in all areas, and even within coverage areas service availability, quality, signal strength and network speeds may vary, be lower than advertised or be insufficient for use of the Service.

Camacho Decl., Ex. C-G, ¶ 7.  *See also id*., Exs. H-J, ¶ 3.a.  The TOS further explained that

"speed and bandwidth available to each computer or device connected to the network may vary

for reasons including … the amount of data being transferred over the network, and available

bandwidth."  *Id*. Exs. C-G, ¶ 12.  *See also id.*, Exs. H-I, ¶ 3.d.

Plaintiffs also allege that Clearwire does not deliver on its offer of "Unlimited usage":

"All the Internet you want with no extra service fees."  ¶ 26.  But, for plaintiffs who signed up for

unlimited plans,[5] the AUP expressly explains what customers get with an "unlimited" use plan:

> **Unlimited Use Plans**.  If you subscribe to a service plan that does not impose limits on the amount of data you may download or upload during a month, you should be aware that such "unlimited" plans are nevertheless subject to the provisions of this AUP.  What this means is that all of the provisions described in this AUP, including those that describe how Clearwire may perform reasonable network management such as reducing the data rate of bandwidth intensive users during periods of congestion, will apply to your use of the Service.  The term "unlimited" means that we will not place a limit on ***how much data*** you upload or download during a month or other particular period, however, it does not mean that we will not take steps to reduce your ***data rate*** during periods of congestion or take other actions described in this AUP when your usage is negatively impacting other subscribers to our Service.[6]

Camacho Decl., Exs. M & N (emphasis added).  Plaintiffs do not allege Clearwire limited the

amount of data they could download; they allege only that Clearwire temporarily "slows its

subscribers' connections to speeds."  ¶ 27.  But Clearwire specifically disclosed and explained this

practice in the Service Agreement and AUP.

### F.    The Agreed Remedy for Plaintiffs' Connection Speed Complaints

Plaintiffs' TOS set forth both a written notice and an exclusive remedy provision.  The

---

[5] Mr. Dazell, Ms. Munoz-Alazasi, and Ms. Tsang ***did not*** sign up for unlimited plans.  Camacho Decl. ¶ 20.  Of course they cannot state claims based on Clearwire's representations about plans to which they did not subscribe.

[6] The TOS also explain that other factors beyond Clearwire's control might affect service quality, including performance capabilities of customers' equipment and the equipment of third parties, terrain and foliage, weather and atmospheric conditions, and building structure and materials.  Camacho Decl., Exs. H-J, ¶ 3(d).  *See also id*. Exs. C-G, ¶ 12.

TOS required plaintiffs to provide written notice of any dispute related to Clearwire charges, or risk waiving any such dispute.  The TOS to which most plaintiffs assented provides:

> If you have a dispute about your invoice, including any charge to your account or any Service for which you were billed, you agree to notify Clearwire of the dispute within thirty (30) days after the initial posting on My Clear of the invoice on which the disputed charge or Service first appears.  Such notice shall be in the form of a writing to Clearwire at its following customer service address: http://www.clearwire.com/company/contact.php.  **IF YOU DO NOT PROVIDE WRITTEN NOTICE OF YOUR DISPUTE TO CLEARWIRE AT THIS ADDRESS WITHIN THIS TIME PERIOD, THEN YOU AGREE THAT YOU HAVE FOREVER WAIVED YOUR RIGHT TO DISPUTE THE INVOICE, CHARGE OR SERVICE, AND THAT YOU CANNOT PURSUE SUCH DISPUTE (OR RAISE SUCH DISPUTE AS A DEFENSE) IN ANY LEGAL OR EQUITABLE ACTION, IN COURT, ARBITRATION, MEDIATION, OR OTHERWISE.**

Camacho Decl., Exs. H-J, ¶ 13.a.  The other plaintiffs' TOS contain substantially similar terms.  *Id.*, Exs. A-B, ¶ 4, Exs. C-G, ¶ 5.  Though plaintiffs " seek … to recover the subscription and early termination fees," ¶ 5, they do not allege they provided Clearwire with written notice of their disputes with these charges.

The TOS also provide an agreed remedy for any service degradation:  the "sole and exclusive remedy for any interruption or degradation of the Service" is a credit allowance for service interruptions that continue for twenty-four hours or more.  *Id.*, Exs. A-G, ¶ 11, Exs. H-J, ¶ 3.e.  "To be eligible for any such credit," the customer "must request the credit in writing within sixty (60) days of the commencement of the interruption or degradation" *id.*, Exs. A-G, ¶ 11.[7] The Complaint does not allege plaintiffs made, or Clearwire refused, such a written request.

## III.   LEGAL STANDARD

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court abrogated the rule of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," concluding that "the phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  550 U.S. at 563.  *Twombly* holds that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

---

[7] For some plaintiffs the period is 15 days.  Camacho Decl., Exs. H-J, ¶ 3.e.

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555 (citations and footnote omitted) (alterations in original).  Under current practice, Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1953 (2009).  Instead, a plaintiff must offer "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. 570.  Plausibility is especially important in complex class actions because of the "potentially enormous expense of discovery" in such cases.  *Id.* at 559.  "[S]omething beyond the mere possibility" of a claim "must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value."  *Id.* at 557-58 (citations omitted).

Plaintiffs cannot meet this standard.  Because the Amended Complaint's factual allegations have not "nudged [Plaintiffs'] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.* at 570.

## IV.    ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Consumer Protection Act Claims.

#### 1.    Plaintiffs Fail to Allege Causation or Injury, Necessary Elements under Each State's Consumer Protection Act.

Plaintiffs' first seven causes of action allege Clearwire engaged in deceptive advertising in violation of the consumer protection acts ("CPA") of six states.  *See* ¶¶ 45–101.  Although the precise elements of the state CPAs vary considerably, each requires—at a minimum—a causal nexus between the alleged deceptive conduct and the plaintiff's resulting injury.  Plaintiffs fail to plead adequately the required causation or injury elements.

In California, a plaintiff asserting a false advertising claim "must show that the misrepresentation was an immediate cause of the injury-producing conduct."  *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009); *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326–27, n.9

(Cal. 2011) (*Tobacco II* "causation requirement" applies to all claims of consumer deception).[8]  In Illinois, "to maintain an action under the [Consumer Fraud] Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant."  *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009).  "If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause."  *Id.*  In Missouri, "the plain language of the [Merchandising Practices Act] demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice."  *Owen v. GMC*, 533 F.3d 913, 922 (8th Cir. 2008).  In New York, a plaintiff suing "under [General Business Law] section 349 must prove … that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).  The Texas CPA requires that "the plaintiff must show an 'unbroken causal connection' between the misrepresentation and the injury."  *Cianfichi v. White House Motor Hotel*, 921 S.W.2d 441, 443 (Tex. App. 1996).  Finally, Washington's CPA likewise requires a "causal link … between the unfair or deceptive acts and the injury suffered by plaintiff."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 793 (1986).

Here, plaintiffs allege ***no facts*** showing Clearwire's conduct caused them any injury.  The core of plaintiffs' deceptive advertising claims is that Clearwire promises "high-speed" Internet but then "throttles down" some subscribers' speeds during peak hours.  ¶¶ 2, 3.  Yet ***no*** plaintiff alleges that Clearwire ever throttled ***her or his*** Internet speed.[9]  Plaintiffs instead offer only vague allegations about "Clearwire customers" generally.  Plaintiffs allege, for example, that "Clearwire slows its subscribers' connections to speeds … well below the speeds necessary for use of the Internet in routine ways," at least "during peak Internet usage hours."  ¶¶ 27, 29; *id.* ¶ 27. ("Clearwire subscribers cannot 'upload, download, and surf' as much as they want, and Clearwire

---

[8] This causation requirement applies to plaintiffs' claims under California's UCL and FAL.  *See Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 47161, at *7 (S.D. Cal. May 13, 2010); *Peviani v. Natural Balance, Inc.*, 2011 U.S. Dist. LEXIS 18110, at *7 (S.D. Cal. Feb. 24, 2011).

[9] The only specific factual allegations of injury or causation are online posts by unidentified Clearwire customers who purportedly had problems with ***their*** service.  ¶ 32.  These allegations have ***nothing*** to do with plaintiffs, and notably, plaintiffs do ***not*** allege they suffered any of the problems described in the anonymous online posts.

does not provide an 'always on,' 'high-speed' connection"), ¶ 39 ("Had Clearwire customers known the truth about Clearwire's practices, they would not have subscribed to Clearwire [or] they would have paid a much lower price for the inferior Internet service they actually received."). Plaintiffs also allege that Clearwire had misleading information on its website—but do not allege that they actually **read** any website materials, let alone that those materials **caused them** to sign up for Clearwire service. *See, e.g.*, ¶¶ 23–26.

Rather than allege facts, plaintiffs offer only "labels and conclusions" and provide too little beyond "formulaic recitation of the elements of a cause of action" to state cognizable CPA claims. *Twombly*, 550 U.S. at 555. Each plaintiff recites **identical**, conclusory allegations of Clearwire's supposedly deceptive conduct in advertising its Internet services:

> [Plaintiff] subscribed to Clearwire's purportedly high-speed Internet Service and was exposed to the false, misleading, and/or deceptive representations and omissions made by Clearwire regarding that high-speed Internet service. [Plaintiff] paid for service that was not as advertised and not worth what he [or she] paid.

*Compare* ¶ 7 (Bobowski) *with* ¶ 8 (Burn), ¶ 9 (Cockayne), ¶ 10 (Crawford), ¶ 11 (Dazell), ¶ 12 (Dennings), ¶ 13 (Fegan), ¶ 14 (Floyd), ¶ 15 (Guerrier), ¶ 16 (Koskinen), ¶ 17 (Munoz-Alazazi), ¶ 18 (Powell), ¶ 19 (Prior), ¶ 20 (Tsang), and ¶ 21 (Williams). Plaintiffs do not allege (1) which purported "false, misleading, and/or deceptive representations and omissions made by Clearwire" they saw or relied upon, (2) what about Clearwire's advertising allegedly deceived them, or (3) how the service they received was "not as advertised and not worth what [they] paid."

Indeed, plaintiffs frame their allegations of deception so broadly as to suggest that they have no idea what Clearwire might have done **to them** that was objectionable. *See, e.g.*, ¶ 48 ("Plaintiff and the members of the California subclass have been misled as to the nature and integrity of Clearwire's Internet service and have, in fact, suffered material disadvantage in the form of subscription fees and/or certain ETFs."), ¶ 71 ("Plaintiff Koskinen and other members of the Missouri class paid subscription fees and/or certain ETFs relating to fast Internet service they did not receive."), ¶ 79 ("Plaintiffs Munoz-Alazazi and Guerrier and the other New York Class members purchased Clearwire's high-speed Internet service at a premium price believing it would provide the speed, accessibility, and quality that Defendant promised."), ¶ 93 ("Plaintiff Dennings

and all other Texas Class members read Clearwire's representations in Defendant's marketing and advertising and relied on them in purchasing Clearwire's Internet service."). Rule 8 "demands more than [such] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash. 2010) (Pechman, J.), this Court recently held that allegations against Clearwire nearly identical to plaintiffs' allegations here failed to state a Washington CPA claim. There, each plaintiff alleged:

> Defendant's representations regarding its Internet Services, including its claims that the service would be 'high-speed' and a reliable alternative to cable Internet and DSL, had the tendency and capacity to deceive [plaintiff] and members of the class. Because of Defendant's sales tactics, [plaintiff] was in fact deceived and believed that Defendant's Internet service would be of a reasonably acceptable quality. Had [plaintiff] been informed of the significant differences between Defendant's Internet service and that of cable Internet or DSL, he would not have signed up for the Internet service.

*Id.* The plaintiffs also alleged that, after relying on Clearwire's advertisements and subscribing to Clearwire's service, their Internet service "became unreliable, slow, and often would cease to work entirely." *Id.* at 1182. The Court found plaintiffs' "repetitive, conclusory statements" about Clearwire's alleged deception were "simply conclusions of law," insufficient to allege causation under Washington's CPA. *Id.* at 1188. It held: "None of the Plaintiffs identify the relied-upon statements and, therefore, they have not alleged a plausible basis to identify CPA causation." *Id.*

Other courts also dismiss false advertising claims based on similar conclusory allegations. In *Brownfield v. Bayer Corp.*, 2009 WL 1953035, at *4 (E.D. Cal. July 6, 2009), for example, the plaintiffs brought false advertising claims under California's UCL and FAL, alleging they viewed misleading drug advertisements and "were induced to purchase [the drug] by [defendant's] 'deceptive representations,' 'fraud and deceit,' and 'acts, omissions.'" The court dismissed the claims, finding the "conclusory allegations" insufficient to state a claim. *Id.* "Not only have Plaintiffs failed to allege they viewed the Ads, but more importantly, they have failed to allege any injury based on their purchase." *Id.* The court dismissed the CPA claims, finding that (as

1   here) the complaint "fails to adequately allege a connection between the Plaintiffs' injury, if any,

2   and the complained-of conduct of [defendant's] Ads." *Id.*

3          Because plaintiffs do not identify any deceptive statements that ***caused*** injury to ***them***,

4   "they have not alleged a plausible basis to identify CPA causation" and cannot state a claim under

5   any state's CPA. *Minnick*, 683 F. Supp. 2d at 1188 (dismissing Washington CPA claim because

6   the complaint contained "repetitive, conclusory allegations that Clearwire's advertisements have

7   'a tendency and capacity to deceive and did deceive Plaintiffs'" and "[n]one of the Plaintiffs

8   identify the relied-upon statements"); *Lyons v. Coxcom, Inc*., 2009 U.S. Dist. LEXIS 122849, at

9   *34–37 (S.D. Cal. Feb. 6, 2009) (dismissing California UCL and FAL claims because "Plaintiff

10  does not allege that she viewed any advertisement nor that she purchased the service as a result of

11  any advertisement"); *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151, 154–55 (Ill. 2002) (dismissing

12  Illinois CPA claim "on the ground that proximate causation was not adequately pled" because

13  "plaintiff does not allege that he saw, heard or read any of defendant's ads"); *Griggs v. Credit

14  Solutions of Am., Inc.*, 2010 U.S. Dist. LEXIS 76590, at *15 (N.D. Tex. July 28, 2010)

15  (dismissing Missouri CPA claim because, "[a]lthough [plaintiff] makes broad, generalized

16  accusations that [defendant] has misled the class, she does not adequately allege any instance of

17  specific 'ascertainable loss of money or property' as to herself (or any other individual)"); *Baron

18  v. Pfizer, Inc*., 840 N.Y.S.2d 445, 448 (N.Y. App. Div. 2007) (dismissing New York CPA claim

19  "because "plaintiff failed to allege actual harm or that she sustained a pecuniary injury"); *Webb v.

20  UnumProvident Corp*., 507 F. Supp. 2d 668, 679 (W.D. Tex. 2005) (dismissing Texas CPA claim,

21  explaining "[a]t the very least, [plaintiff] must identify what deceptive statement [defendant] made

22

23

24

25

26

27

that she subsequently relied on to her detriment").[10]  This Court should dismiss plaintiffs' various CPA claims for failure adequately to plead injury and causation.[11]

### 2.  Plaintiffs Fail to Allege a Deceptive Act Because Clearwire Disclosed, and Plaintiffs Accepted, the Practice They Now Challenge.

Plaintiffs' CPA claims also fail because a consumer deception claim cannot stand if the practice in question is fully disclosed and agreed to by the consumer.  In *Lowden v. T-Mobile USA Inc.*, 378 Fed. Appx. 693, 694 (9th Cir. 2010), for example, plaintiffs argued, among other things, that T-Mobile's practice of passing through a Universal Service Fund ("USF") fee and a Regulatory Programs Fee ("RPF") was a deceptive practice under Washington's CPA.  *Id.*  The Ninth Circuit affirmed dismissal because "T-Mobile's contracts adequately disclosed that it would pass along regulatory fees such as the USF fee and the RPF to its customers."  *Id.* at 695.  The court held that plaintiffs "fail[ed] to plausibly allege a CPA violation."  *Id.  See also Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash. 2008) (granting motion to dismiss Washington CPA claim where provider's service agreements disclosed challenged fees).

Other courts also dismiss CPA claims where, as here, the defendant discloses the challenged practice.  In *E360insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 606 (N.D. Ill. 2008), for example, the plaintiff alleged Comcast violated the Illinois CPA by filtering or blocking certain emails.  The court dismissed the CPA claim on the pleadings, explaining: "The state law claim for unfair competition is weightless.  Comcast did not deceive [plaintiff] since Comcast told [plaintiff] that Comcast reserved the right to [block emails]."  *Id.* at 609 n.3.  *See also Plotkin v. Sajahtera, Inc.*, 131 Cal. Rptr. 2d 303, 312 (Cal. Ct. App. 2003) (no deception under California's UCL because fees disclosed); *Griggs*, 2010 U.S. Dist. LEXIS 76590, at *11,

---

[10] Missouri and Texas also require that plaintiffs plead their deceptive advertising claims with particularity under Rule 9(b).  *See Blake v. Career Educ. Corp.*, 2009 U.S. Dist. LEXIS 3432, at*5–6 (E.D. Mo. Jan. 20, 2009) (Missouri law) (collecting cases); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (Texas law).  Further, because plaintiffs filed in federal court, Rule 9(b) also applies to their "fraud" claims under California's UCL.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the … UCL").  Plaintiffs, however, make no attempt to allege the "who, what, when, where, and how of the misconduct charged" that Rule 9(b) requires.  *Id.* at 1124 (internal quotation and citation omitted).

[11] To the extent a few plaintiffs vaguely allege CPA claims based on Clearwire's purported failure to disclose ETFs, *see* ¶¶ 57, 64, 87, those claims also fail because *no* plaintiff alleges that she paid or was assessed an ETF.

CLEARWIRE'S MOTION TO DISMISS AM. COMPL.
(No. C10-1859-JLR) – 13
DWT 16739022v8 0065187-001078

1   *15 (dismissing Missouri CPA claim); *Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687,

2   687 (N.Y. App. Div. 1994) (no New York CPA claim where "practices are *fully disclosed* prior to

3   [the customer's purchase]"); *Taylor v. BMG Direct Mktg. Inc.*, 299 A.D.2d 181, 181 (N.Y. App.

4   Div. 2002) (same).

5           Here, plaintiffs allege Clearwire deceived its customers by advertising "high-speed"

6   Internet but then throttled the Internet speed for some subscribers who use "too much Internet

7   bandwidth" during peak hours.  ¶ 29.  But since November 28, 2008, Clearwire disclosed

8   "network management" practices in the governing Service Agreements—contracts plaintiffs

9   accepted and agreed to *before* activating their Internet service.  Most TOS contain an entire

10  section describing "how Clearwire manages the network."  Camacho Decl., Exs. C-G, ¶ 12, Exs.

11  H-J, ¶ 3.c.  In it, Clearwire reserves the right to manage its network to alleviate bandwidth

12  congestion by, among other things, "***reducing, limiting, or otherwise restricting uplink and***

13  ***downlink speeds and transfer rates***," *id.*, Exs. C-G, ¶ 12, "***reducing or limiting peer-to-peer***

14  ***sessions during periods of high network congestion***," *id.*, "***using other tools and techniques to***

15  ***control bandwidth overuse***," *id.*, and "***reducing the aggregate bandwidth available to excessive***

16  ***bandwidth users during periods of congestion***."  *Id.*  Exs. H-J, ¶ 3.c (emphasis added).

17          Further, most TOS emphasized that plaintiffs with term subscriptions would be subject to

18  an ETF should they prematurely cancel their subscription:  "**AN EARLY TERMINATION FEE**

19  **WILL APPLY IF YOU CHOOSE TO CANCEL YOUR SERVICE BEFORE THE END OF**

20  **YOUR TERM**." *Id.*, Exs. H-J, ¶ 4(e) (emphasis in original).  "If … you terminate that Service

21  for any reason … prior to the end of the Initial Term or any Renewal Term, as applicable, you will

22  be liable for an early termination fee." *Id.*, Exs. A-B, ¶ 31, Exs. C-F, ¶ 2.  "If your Clearwire

23  account or your CLEAR account is subject to a minimum Initial Term or Renewal Term and you

24  terminate that Service for any reason … prior to the end of the Initial Term or any Renewal Term,

25  as applicable, you will be liable for … an early termination fee." *Id.*, Ex. G, ¶ 2.c.

26          Plaintiffs agreed Clearwire could (a) reduce bandwidth or speed during congestion or

27  overuse, and (b) assess an ETF.  They cannot claim Clearwire deceived them in doing so.

### 3.      Plaintiffs' CPA Claims Rest on Statements That Are Not Actionable.

The few statements plaintiffs identify as "deceptive" cannot form the basis for an actionable CPA claim.  "Advertisements that amount to mere puffery are not actionable because no reasonable consumer relies on puffery."  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007).  "Puffery is defined as exaggerated general statements that make no specific claims on which consumers could rely."  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003).  Further, "generalized and vague statements of product superiority such as 'superb, uncompromising quality' and 'faster, more powerful, and more innovative than competing machines' are non-actionable puffery."  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).

Plaintiffs' CPA claims rely largely on vague allegations of "high-speed" or "fast" Internet that Clearwire allegedly failed to deliver.  *See, e.g.*, ¶¶ 7–21 (alleging each plaintiff subscribed to "high-speed Internet service and was exposed to … deceptive representations … regarding that high-speed Internet Service"); ¶ 56 (alleging Clearwire's falsely advertised "high speed," "fast," and "unlimited" Internet); ¶ 79 (alleging Clearwire promised "high-speed Internet service").  But these general superlatives about Clearwire's "high-speed" or "fast" Internet service do not give rise to actionable CPA claims.  *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("we're the low cost commercial collection experts" were "general assertions of superiority rather than factual misrepresentations" and not actionable); *Stickrath*, 527 F. Supp. 2d at 998–99 ("high quality," "reliable," and "high performance" are not actionable representations for California CPA claims); *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 231 (Tex. App. 1996) ("A Tradition of Excellence" and policy of "knowing its customers" are non-actionable puffing under Texas CPA); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App. 1990); *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008).

Plaintiffs' CPA claims also fail, therefore, because they do not allege they were deceived by any actionable factual representations by Clearwire.  *See, e.g.*, *Consumer Advocates v.*

1  *Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 (Cal. Ct. App. 2003) (dismissing California UCL

2  and FAL claims based on representations of "crystal clear digital" video or "CD quality" audio);

3  *Oestreicher*, 544 F. Supp. 2d at 973 (dismissing California UCL and FAL because "generalized

4  and vague statements of product superiority … are non-actionable puffery"); *Lacoff v. Buena*

5  *Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 191–92 (N.Y. Sup. Ct. 2000) (dismissing New York CPA

6  claims as non-actionable "puffery or opinion"); *Douglas v. Delp*, 987 S.W.2d 879, 886 (Tex.

7  1999) (affirming dismissal of Texas CPA claim based on a "general representation" that was "at

8  most, nonactionable opinion").

9  **B.      The Court Should Dismiss Plaintiffs' Breach of Contract Claims.**

10  Although plaintiffs allege a breach of contract, they do not plead their contract claim under

11  any particular state's laws.  ¶¶ 103–106.  Absent a showing of "an actual conflict between the

12  laws or interests of Washington and the laws or interests of another state," the "presumptive local

13  law" applies.  *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 210 (1994).[12]

14  To state a contract claim, a plaintiff must plead that (1) a valid contract exists; (2) the

15  plaintiff performed his contract obligations; (3) the defendant breached the contract; and (4) the

16  plaintiff suffered damage as a result of the breach.  *See, e.g.*, *Nw. Indep. Forest Mfrs. v. Dep't of*

17  *Labor & Indus.*,78 Wn. App. 707, 712 (1995); *Willener v. Sweeting*, 107 Wn.2d 388, 394 (1986).

18  Plaintiffs do not state a breach of contract claim.

19  **1.      Plaintiffs Fail to Allege Breach of Any Contract Term.**

20  "A breach of contract occurs when a party to a contract fails to comply with a *specific*

21  *term* therein."  *Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 347 (2010) (emphasis

22  added).  "[T]here is no breach of contract when the alleged term that was breached is absent from

23  the contract."  *McFerrin v. Old Republic Title, Ltd.*, 2009 WL 2045212, at *5 (W.D. Wash. July 9,

24  2009).  *See also Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 12 (2004).

25

26  ―――――――――――――――――
    [12] The party asserting that another state's law should apply has the burden of demonstrating that an "actual conflict"

27  with another state's law exists before the court will engage in a conflict of law analysis.  *Burnside v. Simpson Paper Co.*,123 Wn. 2d 93, 103 (1994).

1   Here, plaintiffs fail to allege any contract term they claim Clearwire breached.  The

2   Amended Complaint says nothing about the terms of plaintiffs' contracts with Clearwire and does

3   not point to any contract term making a promise that Clearwire breached.  This failure alone

4   warrants dismissal of plaintiffs' contract claim.  In *Minnick*, this Court dismissed the plaintiffs'

5   breach of contract claim against Clearwire because, among other reasons, the plaintiffs "failed to

6   identify a contractual provision that would give rise" to the duty allegedly breached.  683 F. Supp.

7   2d at 1188.  The Court therefore found the plaintiffs' claims "defective for failure to identify a

8   controlling contractual duty."  *Id.*  Here, too, plaintiffs can point to no duty ***imposed by contract***

9   that Clearwire breached.[13]  *See id.*; *Owens v. Harrison*, 120 Wn. App. 909, 916 (2004) (dismissing

10  contract claim because plaintiff failed to "allege that [defendant] breached a specific term of the

11  contract"); *see also Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *7 (N.D. Cal. Feb.

12  27, 2008) (dismissing contract claim under California law because plaintiff had "not identified

13  any specific contractual provision in support of its breach of contract claim").

14   Plaintiffs' contract claim also fails because the contract terms—which plaintiffs avoid

15  mentioning—disclose and authorize the conduct they claim is in breach.  Rather than identify a

16  contract term that Clearwire breached, plaintiffs vaguely allege they "entered into a contract with

17  Clearwire to pay monthly fees in exchange for unlimited high-speed Internet service," and that

18  Clearwire breached this contract by "intentionally interfering with Plaintiff [sic] and Class

19  members' access and use of Clearwire's high-speed Internet service."  ¶¶ 103, 106.  But this

20  alleged "interference" with plaintiffs' use of "high-speed Internet" cannot state a contract claim

21  because the governing contract expressly authorizes Clearwire to manage its network.

22   When plaintiffs activated their Clearwire service, each acknowledged and assented to the

23  TOS, including the AUP.  Camacho Decl., ¶¶ 4-14, Exs. A-B, Introductory ¶, Exs. C-G, ¶ 13,

24  Exs. H-J, ¶ 3.c. Plaintiffs agreed that "Clearwire reserves the right to engage in reasonable

25  network management to protect the overall integrity of its network, including … ***reducing the***

---

[13] Plaintiffs vaguely allege Clearwire "promised" as its "consideration" to deliver "high-speed Internet service having the characteristics detailed above."  ¶ 104.  But these "characteristics" plaintiffs reference are general representations on Clearwire's website about its Internet service, ¶¶ 23–26, which their contracts explain and define.

1  *aggregate bandwidth available to excessive bandwidth users during periods of congestion*." *Id.*,

2  Ex. G, ¶ 13, Exs. H-J, ¶ 3(c) (emphasis added).  *See also id.*, Exs. C-F, ¶ 13, Exs. A-B,

3  Introductory ¶.  The TOS also provided that "network speeds may vary, be lower than advertised,

4  or be insufficient for your desired use of the Service."  *Id.*, Exs. C-G, ¶ 7, Exs. H-J, ¶ 3.a.  The

5  AUP further elaborated on the terms of Clearwire's service, explaining that Clearwire manages its

6  network "to ensure the integrity of its wireless broadband network and enhance the use of the

7  Services for all of Clearwire's customers."  *Id.*, Exs. L-N, Introductory ¶.  *See also id.*, Ex. K,

8  Introductory ¶.  To carry out this goal,

9  > Clearwire reserves the right to engage in reasonable network management to protect the overall network, including analyzing traffic patterns ….  During periods of congestion, Clearwire uses various techniques such as *reducing the data rate of individual*
10  > *bandwidth intensive users whose use is negatively impacting other users*.

11  Camacho Decl., Exs. M & N, Excessive Utilization of Network Resources ¶ (emphasis added).

12  *See also id.*, Ex. K, Excessive Utilization of Network Resources.

13  Further, to the extent plaintiffs assert Clearwire promised they would receive flawless

14  "high-speed" and "unlimited" Internet at all times, their contracts—to which they assented *before*

15  activating service—told them otherwise.  The TOS emphasize in bold capital letters:

16  > **THE SPEED AND BANDWIDTH AVAILABLE TO EACH COMPUTER OR DEVICE CONNECTED TO THE CLEARWIRE NETWORK, AND HENCE**
17  > **THE QUALITY OF THE SERVICE, MAY VARY FOR MANY REASONS … INCLUDING WITHOUT LIMITATION: (i) THE NUMBER OF USERS,**
18  > **COMPUTERS OR DEVICES CONNECTED SIMULTANEOUSLY TO THE NETWORK, AND THE TYPES OF USAGE IN WHICH THEY ARE**
19  > **ENGAGED; (ii) THE AMOUNT OF DATA BEING TRANSFERRED OVER THE NETWORK, (iii) NETWORK SIGNAL QUALITY; (iv) PERFORMANCE**
20  > **CAPABILITIES OF YOUR EQUIPMENT AND THE EQUIPMENT OF THIRD PARTIES; (v) TERRAIN AND FOLIAGE; (vi) WEATHER AND**
21  > **ATMOSPHERIC CONDITIONS; AND (vii) BUILDING STRUCTURE AND MATERIALS.**

22  Camacho Decl., Exs. H-J, ¶ 3.d.  *See also id.*, Exs. C-G, ¶ 12.  The AUP also explained what

23  Clearwire's "unlimited" Internet involves:  "The term 'unlimited' means that we will not place a

24  limit on *how much data* you upload or download during a month or other particular period,

25  however, it does not mean that we will not take steps to reduce your *data rate* during periods of

1  congestion or take other actions described in this AUP when your usage is negatively impacting

2  other subscribers to our Service." *Id.*, Exs. M & N, Unlimited Use Plans ¶ (emphasis added).

3       Under similar circumstances, in *Lyons v. Coxcom, Inc.*, the court **twice** dismissed the

4  plaintiff's breach of contract claim against her Internet provider, Cox.  *See* 2009 U.S. Dist. LEXIS

5  122849, at *21 (S.D. Cal. Feb. 6, 2009), and 718 F. Supp. 2d 1232, 1239 (S.D. Cal. 2009).  The

6  plaintiff alleged Cox promised to "provide high speed access to the internet for uploads and

7  downloads at specified speeds" and that Cox "breached the contract by restricting [p]laintiff's

8  access to, and use of, the service at speeds promised in the Agreement."  718 F. Supp. 2d at 1238.

9  Those allegations are nearly identical to those plaintiffs assert here.  *See* ¶¶ 103–106.  And in

10  *Lyons*, as here, the Service Agreement gave Cox "the right to manage its network for the greatest

11  benefit of the greatest number of subscribers including … traffic prioritization" and stated its

12  Internet speeds are "approximate and may vary from time to time."  718 F. Supp.2d at 1238.

13       After reviewing the relevant contract provisions, the *Lyons* court held that plaintiff

14  "fail[ed] to sufficiently plead a breach of contract, as she points to no term of the contract that was

15  breached by Cox."  *Id.*  The court rejected plaintiff's claim that "Cox promised specific speeds of

16  internet access" because "the speeds are maximum speeds attainable by each tier of service, not a

17  promise that at all times a customer's service will deliver those maximums."  *Id.*  Further, plaintiff

18  "d[id] not allege that she never obtained the specified maximums, only that occasionally [Cox]

19  sent reset packets that disrupted certain [peer-to-peer] applications while Plaintiff was

20  downloading or uploading large files."  *Id.* at 1239.  Accordingly, the court dismissed plaintiff's

21  breach of contract claim—for the second time—explaining:  "Plaintiff subscribed to a service and

22  even construing the contract through the lense [sic] of the reasonable consumer as Plaintiff urges,

23  subscribers plainly agreed to use limitations and Cox's discretion to manage its network,

24  including traffic prioritization and decisions concerning overburdening of the network."  *Id.*  As in

25  *Lyons*, the TOS terms here require dismissal of plaintiffs' contract claim.

26

27

### 2. Plaintiffs' Failure to Allege Compliance with the Notice and Exclusive Remedy Provisions Bars Their Contract Claims.

Plaintiffs allege Clearwire breached their contracts by failing to provide the "high-speed" Internet service promised.  *See* ¶ 106.  But where a "contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance." *Willener v. Sweeting*, 107 Wn.2d 388, 394 (1986).  "A plaintiff, in order to maintain an action on a contract, must have complied with the conditions precedent contained therein." *Ross v. Harding*, 64 Wn.2d 231, 240-41 (1964).  Because plaintiffs do not allege compliance with two controlling contract provisions—even though the relevant facts fell within their knowledge—they do not allege a plausible breach of contract claim.

Plaintiffs complain Clearwire provided "slow and inconsistent Internet access" when they paid for "high-speed" Internet.  ¶ 39.  But the TOS contain contractual requirements for plaintiffs to dispute charges based on problems with their Clearwire service.  Most plaintiffs' TOS provide:

> If you have a dispute about your invoice, including any charge to your account or any Service for which you were billed, you agree to notify Clearwire of the dispute within thirty (30) days after the initial posting on My Clear of the invoice on which the disputed charge or Service first appears. Such notice shall be in the form of a writing to Clearwire at its following customer service address: http://www.clearwire.com/ company/contact.php. **IF YOU DO NOT PROVIDE WRITTEN NOTICE OF YOUR DISPUTE TO CLEARWIRE AT THIS ADDRESS WITHIN THIS TIME PERIOD, THEN YOU AGREE THAT YOU HAVE FOREVER WAIVED YOUR RIGHT TO DISPUTE THE INVOICE, CHARGE OR SERVICE, AND THAT YOU CANNOT PURSUE SUCH DISPUTE (OR RAISE SUCH DISPUTE AS A DEFENSE) IN ANY LEGAL OR EQUITABLE ACTION, IN COURT, ARBITRATION, MEDIATION, OR OTHERWISE.**

Camacho Decl., Exs. H-J, ¶ 13.a.  Other plaintiffs' TOS provide "[y]ou must notify Clearwire in writing no later than thirty (30) days [or for two plaintiffs twenty days] after receiving your Card or bank account statement if you dispute any Clearwire charges on that statement or such dispute will be deemed waived." *Id.*, Exs. C-G, ¶ 5 (30 days), Exs. A-B, ¶ 4 (20 days).  This provision required plaintiffs to give written notice of any disputes related to Clearwire's billing—including charges for alleged inadequate Internet speeds—to allow Clearwire a chance to resolve the issue.

The TOS also set forth a specific and exclusive remedy for any service degradation, and explained what plaintiffs must do to claim that remedy:

> No credit or adjustment will be made for interruptions of the Service unless the

interruption continues for a period of twenty-four (24) hours or more, measured from the time that you report the interruption to Clearwire. In the event of an interruption of the Service that continues for a period of twenty-four (24) hours or more, credit allowance will be made, at your written request, for an amount not to exceed the prorated monthly charges for your Service during the affected period…. ***The foregoing credit will be your sole and exclusive remedy for any interruption of the Service or any degradation of performance of the Service.***

*Id.*, Exs. A-G, ¶ 11 (emphasis added).  *See also id.*, Exs. H-J, ¶ 3.e.  Under this TOS term, plaintiffs had a simple, common-sense obligation if they wanted relief for alleged inadequate Internet service:  "request the credit within sixty (60) days [or 15 days] of the commencement of the Service interruption or degradation."  *Id.*, Exs. A-G, ¶ 11 (60 days), Exs. H-J, ¶ 3.e (15 days).

Plaintiffs fail to allege compliance with either provision.  Under settled law, parties must "follow dispute resolving methods they have contracted to before they may resort to the courts."  *Yaw v. Walla Walla Sch. Dist. No. 140*, 106 Wn.2d 408, 411 (1986).  "Where the agreement provides for a method of resolving disputes that may arise between the parties, that method must be pursued before either party can resort to the courts for relief."  *Tombs v. Nw. Airlines, Inc.*, 38 Wn.2d 157, 162 (1973); *see Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, *2 (W.D. Wash. Mar. 8, 2006) (dismissing breach of contract claim plaintiff because plaintiff's failure to satisfy notice provision constituted a "failure to comply with the contractual condition precedent for filing a suit"); *Bowden v. AT&T Mobility, LLC*, 2009 U.S. Dist. LEXIS 116787, at *9-10 n.5 (W.D. Wash. Dec. 15, 2009) (applying Washington law, and finding failure to comply with "100-day notice requirement [in Terms of Service] to be an additional basis for dismissing plaintiff's breach of contract claim").[14]

Indeed, in *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1187 (W.D. Wash. 2010), Judge Pechman dismissed a similar purported class action complaint under Washington law, including a breach of contract claim, against Clearwire for precisely this reason.  There, plaintiffs alleged that Clearwire breached terms of the TOS by failing to provide "a reasonable level of service" during times when its service "became unreliable, slow, and often would cease to

---

[14] Courts in plaintiffs' other home states agree.  *See, e.g.*, *Williams v. Fed. Express Corp.*, 1999 WL 1276558, at *3–4 (C.D. Cal. Oct. 6, 1999); *Moody v. Fed. Express Corp.*, 858 N.E.2d 918, 923 (Ill. App. Ct. 2006); *Reliance Ins. Co. v. Fed. Express Corp.*, 1985 WL 2241, at *3 (S.D.N.Y. Aug. 1, 1985); *Emerald Forest Util. Dist. v. Simonsen Const. Co.*, 679 S.W.2d 51, 54 (Tex. App. 1984).

work entirely." *Id.* at 1182, 1187.  The plaintiffs did not, however, allege that they complied with the same two provisions that control here, which require that they give Clearwire timely, written notice of the alleged service problems and the disputed charges. *Id.* at 1187.  Because "Plaintiffs fail[ed] to allege compliance with either of these provisions," Judge Pechman dismissed their breach of contract claim for failure to state a claim. *Id.*  This Court should do the same.[15]

### C.    The Law Bars Plaintiffs' Unjust Enrichment Claims Because a Contract Governs the Same Subject Matter.

Plaintiffs allege Clearwire has been unjustly enriched "by causing Clearwire to receive payments for high-speed Internet services that it did not provide" and allowing it to keep "early termination fees or re-stocking fees." ¶ 114.[16]  But plaintiffs admit they "entered into a contract with Clearwire to pay monthly fees in exchange for unlimited high-speed Internet service." ¶ 103. And plaintiffs allege that this contract governs the subscriptions payments and the assessment of the ETFs they challenge. ¶¶ 105, 106.  Because a contract governs the challenged payments and fees, plaintiffs may not assert a quasi-contract unjust enrichment claim.

"A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter." *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604 (1943).  Many cases recognize that an unjust enrichment does not lie where express agreements cover the subject matter. *See U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) ("[h]aving affirmed the validity of the [contracts], Walton cannot proceed against Weststar by way of unjust enrichment"); *MacDonald v. Hayner*, 43 Wn. App. 81, 85-86 (1986) (same); *Guketlov v.*

---

[15] Clearwire's most recent TOS, accepted by nine plaintiffs, *see* Camacho Decl., ¶¶ 12-14, contain additional pre-suit notice requirements beyond those found to bar the plaintiffs' claims in *Minnick*.  These TOS provide:

> **You Agree to Provide Clearwire an Opportunity Informally to Resolve Your Dispute.** Before you may pursue or participate in any dispute … in court or arbitration against Clearwire for any claims, including claims related in any way to Clearwire Service, Equipment, these Terms, billing, privacy, advertising, or Clearwire's communications with you, you must first send a written description of your claim to Clearwire Escalations … and you must allow Clearwire a reasonable opportunity to resolve your dispute.

*Id.*, Exs. H-J ¶ 13.b.  These nine plaintiffs' failure to give Clearwire any pre-suit chance to resolve their dispute provides additional grounds for barring their claims.  *See Minnick*, 683 F. Supp. 2d at 1187.

[16] To the extent plaintiffs' unjust enrichment claim rests on ETFs, it necessarily fails because ***no*** plaintiff alleges that she either paid an ETF or had one assessed against her.

CLEARWIRE'S MOTION TO DISMISS AM. COMPL.
(No. C10-1859-JLR) – 22
DWT 16739022v8 0065187-001078

*HomeKey Mortg., LLC*, 2009 U.S. Dist. LEXIS 104504, at *13–14 (W.D. Wash. Nov. 9, 2009) (Robart, J.) ("[A] party to an express contract is bound by the provisions of that contract and may not disregard the same and bring an action on an implied contract relating to the same subject matter.").[17]

Plaintiffs' TOS expressly address Clearwire's service obligations, plaintiffs' subscription payments and ETFs—the subject matter of their quasi-contract claim for unjust enrichment. *See* ¶¶ 114 (alleging Clearwire was unjustly enriched by "receiv[ing] payments for high-speed Internet services that it did not provide" and "early termination fees or restocking fees"). The Court should dismiss the unjust enrichment claim as a matter of law. *See Minnick*, 683 F. Supp. 2d at 1186–87 (dismissing unjust enrichment claims against Clearwire where contract addressed subscription payments and early termination fees at issue).

### D.    Plaintiffs Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiffs' ninth cause of action asserts Clearwire breached the covenant of good faith and fair dealing by "failing to provide and interfering with Plaintiffs' and Class members' ability to receive with [sic] the service they desired, paid consideration for, and thought they would receive," and by "charging ETF or re-stocking fees." ¶¶ 110–111. Plaintiffs fail to state a claim.

Although Washington recognizes that contracts contain an implied covenant of good faith and fair dealing, *Badgett v. Security State Bank*, 116 Wn.2d 563, 569-70 (1991), the covenant has limited application. "The covenant of good faith … does not apply to ***contradict*** contract terms." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738 (1997) (emphasis added). "[T]he duty of good faith ***does not inject substantive terms into the parties' contract***." *Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 215 (2008) (citation omitted) (emphasis added). Thus, a plaintiff cannot "expand the existing duty of good faith to create obligations on

---

[17] The courts in plaintiffs' other home states follow the same principle. *See Shvarts v. Budget Grp., Inc.*, 97 Cal. Rptr. 2d 722, 727 (Cal. Ct. App. 2000); *Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010); *Al-Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 759 (8th Cir. 2009); *Cox v. NAP Constr. Co.*, 10 NY.3d 592, 607 (N.Y. 2008); *Mount Hood Cmty. Coll. v. Fed. Ins. Co.*, 111 P.3d 752, 759 (Or. Ct. App. 2005); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

the parties in addition to those contained in the contract." *Badgett*, 116 Wn.2d at 570.  Like Washington, plaintiffs' other home states limit the duty of good faith consistent with the obligations imposed by contract.[18]

Plaintiffs' good faith and fair dealing claim exceeds the limited reach of the covenant under any of their state's laws.  According to plaintiffs, the implied covenant of good faith and fair dealing required Clearwire to provide them "with the service they desired, paid consideration for, and ***thought*** they would receive."  ¶ 110 (emphasis added).  But the TOS permits Clearwire to engage in the network management conduct about which plaintiffs complain.  Their claim for breach of the covenant of good faith and fair dealing fails, therefore, not only because the new obligations they seek to impose—the highest possible connection speeds at all times—directly contradict the contract terms, *Goodyear Tire & Rubber*, 86 Wn. App. at 740-41, but also because their allegations seek to "inject substantive terms into the parties' contract," *Badgett*, 116 Wn.2d at 569.  As this Court recently explained, "the duty [of good faith and fair dealing] neither obligates a party to accept a material change in the terms of the contract, nor injects substantive terms into the contract."  *Doyle v. Nutrilawn U.S., Inc.*, 2010 U.S. Dist. LEXIS 48613, at *22 (W.D. Wash. May 17, 2010) (Robart, J.).

## V.    CONCLUSION

Clearwire respectfully asks the Court to grant its motion and dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted.

DATED this 31st day of March, 2011.

---

[18] *See, e.g., Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *6-7 (N.D. Cal. Feb. 27, 2008); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098 (Fla. Dist. Ct. App. 1999); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003); *Al-Khalidiya Elecs. & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 759 (8th Cir. 2009); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269, 1281 (S.D.N.Y. 1991); *Zygar v. Johnson*, 10 P.3d 326, 330 (Or. Ct. App. 2000); *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002).

CLEARWIRE'S MOTION TO DISMISS AM. COMPL.
(No. C10-1859-JLR) – 24
DWT 16739022v8 0065187-001078

Davis Wright Tremaine LLP
Attorneys for Defendant


By  *s/ Kenneth E. Payson*
    Stephen M. Rummage, WSBA #11168
    Kenneth E. Payson, WSBA #26369
    John A. Goldmark, WSBA 40980
    1201 Third Avenue, Suite 2200
    Seattle, Washington  98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: steverummage@dwt.com
            kenpayson@dwt.com
            johngoldmark@dwt.com

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on this day I caused to be electronically filed the foregoing document

4   with the Clerk of the Court using the CM/ECF system which will send notification of such filing

    to all parties listed to receive electronic notice.

5

6        DATED this 31st day of March, 2011.

7

                                        By:    s/Kenneth E. Payson
8                                              Kenneth E. Payson, WSBA #26369
                                               Davis Wright Tremaine LLP
9                                              1201 Third Avenue, Suite 2200
                                               Seattle, WA  98101-3045
10                                             Telephone: (206) 622-3150
                                               Fax: (206) 757-7700
11                                             E-mail:   kenpayson@dwt.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27