# Exhibit A

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE


MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR
STEVEN COCKAYNE, BRIAN        )
CRAWFORD, DAN DAZELL, ANGELO  )
DENNINGS, CHEYENNE FEGAN,     )
SHARON FLOYD, GREGORY GUERRIER)
JOHANNA KOSKINEN, ELENA MUNOZ-)
ALAZAZI, ELAINE POWELL, ROBERT)
PRIOR, ALIA TSANG, AND KYLE   )
WILLIAMS, on behalf of        )
themselves and all others     )
similarly situated,           )
Plaintiffs                    )
                              )
V.                            )                              )
                              )
CLEARWIRE CORPORATION,        )
Defendant                     )

---------------------------------------------------------
ORAL DEPOSITION OF
GORDON MORGAN
Volume 1 of 1
December 17, 2012

---------------------------------------------------------

    ORAL DEPOSITION OF GORDON MORGAN, produced as a witness

at the instance of the PLAINTIFF, and duly sworn, was taken in

the above-styled and numbered cause on December 17, 2012 from

1:01 P.M. to 1:40 P.M., before Sylvia D. Trevino, CSR No. 2733

in and for the State of Texas, reported by Stenographic

method, at the offices of U.S. Legal Support, 802 N.

Carancahua, Corpus Christi, Texas, pursuant to the Federal

Rules of Civil Procedure, Notice and any provisions stated on

the record.

```
 1                    A P P E A R A N C E S

 2

    ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA
 3  GARZA

 4            Christopher Bandas
              THE BANDAS LAW FIRM
 5            500 N. Shoreline, Ste. 1020
              Corpus Christi, Tx  78401-0353
 6            (361) 698-5200

 7

    CLASS ACTION ATTORNEY:
 8

              Johnathan K. Tycko
 9            TYCKO & ZAVAREEI
              2000 L. St. N.W. Ste. 808
10            Washington, D.C. 20036
              (202) 973-0900
11            fax (202) 973-0950
              jtycko@tzlegal.com
12

    ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:
13  (Telephonically)

14            John Goldmark
              DAVIS, WRIGHT, TREMAINE
15            1201 Third Avenue
              Seattle, Washington 98101
16            Tel:  (206) 757-8068
              johngoldmark@dwt.com
17

18

19

20

21

22

23

24

25
```

```
 1                              INDEX

 2
       Witness Name                                         Page
 3        Direct By Mr. Tycko . . . . . . . . . . . . . . .   4
          Cross By Mr. Goldmark . . . . . . . . . . . . . .  20
 4        Re-Direct By Mr. Tycko  . . . . . . . . . . . . .  26
          Reporter's Certificate  . . . . . . . . . . . . .  32
 5

 6                             EXHIBITS

 7
       No.     Description                                  Page
 8     1       Agreement                                     11
       2       Notice of Deposition                          15
 9     3       Objection to Proposed Class Settlement        17
       4       Postcard-AllianceOne                          18
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    GORDON MORGAN,

2        having been first duly sworn, testified as follows:

3                   E X A M I N A T I O N

4    BY MR. TYCKO:

5        Q    Good afternoon.  Could you state your full name and

6    address?

7        A    Gordon Blaine Morgan.  Office address, 4701 Ayers,

8    Suite 105, Corpus Christi, Texas 78415.

9        Q    That's an office address?

10       A    Yes.

11       Q    What type of business do you have?

12       A    I sell utility trailers, oil and gas utility

13   trailers, like sand haulers, fuel haulers --

14       Q    Okay.

15       A    -- vacuum trailers.

16       Q    Do you also have a residential address?

17       A    Yes.

18       Q    What would that be?

19       A    14134 Palo Seco.  It's two words.  Corpus Christi,

20   Texas, 74818.

21       Q    And do you understand that you're being deposed here

22   today in connection with an objection that you filed in the

23   Western District of Washington in Seattle?

24       A    Yes.

25       Q    In the Clearwire matter?

1      A    I guess they just went away.

2      Q    Oh, okay.  So did they ever actually charge you the

3    fee?

4      A    No.  I think they tried to charge the fee.

5      Q    But you never paid it?

6      A    Never paid.

7      Q    And since the time that you canceled Clearwire and

8    switched to Time Warner, have you had any other business with

9    Clearwire at all?

10     A    No.

11     Q    Now, I take it at some point you learned about the

12   settlement in our case; is that right?

13     A    Yes; I got a notice.

14     Q    Okay.  And do you recall how you got that notice?

15     A    Came in the mail.

16     Q    Postcard?

17     A    Yes.

18     Q    And what did you do after you got that postcard?

19     A    I contacted Mr. Bandas' office.

20     Q    All right.  And why did you do that?

21     A    Because I know that he handles these types of case

22   and I didn't really understand what was going on with it.

23     Q    Did you -- did you submit a claim?

24     A    Yes.  A claim has been submitted; yes.

25     Q    And how did you do that?

1      A    By paper.  It's a paper claim, I believe.

2      Q    Did you fill that out or did somebody fill it out

3  for you?

4      A    I filled it out.

5      Q    Do you recall anything about the details of

6  the claim form, what you filled in on the claim form?

7      A    It just asks approximately when we had the service

8  and I think that was really the only detail.  It wasn't very

9  long.

10      Q    Do you recall roughly when you sent in the claim

11  form?

12      A    Three weeks ago, perhaps.

13      Q    Did you -- did you review the settlement

14  agreement?

15      A    I looked it over and, like I said, I just sent it on

16  to Mr. Bandas.

17      Q    But you did actually look at the settlement

18  agreement itself?

19      A    I looked at the document.  I don't understand that

20  so I --

21      Q    When you say "document", you mean the postcard they

22  sent you?

23      A    Yeah.

24      Q    So you never went and actually looked at the full

25  settlement agreement?

Page 10

1      A     Oh, no.

2      Q     It's like a 60-page document.

3      A     No.

4      Q     Okay.  So the only document that you personally

5   looked at was the postcard notes that you got; is that right?

6      A     That and the form; the claim form.

7      Q     The claim form.  The postcard notice and the claim

8   form?

9      A     Yes.

10     Q     And do you understand that you have filed an

11  objection asking the Court to disapprove the settlement?

12     A     Yes.

13     Q     And do you have an understanding of what the basis

14  for that objection is?

15     A     No; I just -- I just sent it over to Chris and let

16  him handle it.

17     Q     So do you have any -- do you have any, at this point

18  you yourself, do you have any objection to the terms of the

19  settlement?

20     A     No.

21           MR. BANDAS:  Objection.  You're asking him for

22  a legal opinion.  He has a lawyer, filed an objection, so when

23  you ask him the question do you personally have an objection,

24  obviously he does.  Are you asking him if he has something

25  aside from the pleading I filed as his lawyer as his

1    objection?

2       Q    (BY MR. TYCKO) I'm asking do you personally have an

3    understanding of there being something in the settlement that

4    you object to?

5       A    Like I said, I just -- I'd refer it over to Chris to

6    handle it.

7       Q    Did you read the objection that Mr. Bandas filed in

8    court?

9       A    No.

10      Q    Have you ever read it prior to today?

11      A    No.

12      Q    Do you have any understanding of what the basis for

13   your objection is that you filed in court?

14      A    No.  I just let Chris handle it, like I said.

15      Q    Did you hire Mr. Bandas' lawfirm to represent you as

16   on objector?

17      A    Yes.

18      Q    And what are the terms under which you hired him?

19      A    It's -- we have a -- I guess it's power of attorney

20   agreement.  I think it's -- He's pulling one out.

21              MR. BANDAS:  You want a copy?

22              MR. TYCKO:  Sure.  Thank you.  Maybe we could

23   just mark this as Exhibit 1.

24              (EXHIBIT 1 WAS MARKED)

25              MR. BANDAS:  Look at it.  Make sure it's yours

Page 12

1    and I've produced it in the right case.

2                    THE WITNESS:  Yeah.

3                    MR. BANDAS:  For friend on the phone, Counsel

4    is just looking at a document.  That's why it went silent.

5        Q    (BY MR. TYCKO)  Let me just show you what we've

6    marked as Exhibit 1 of your deposition.  Is that the retention

7    agreement that you entered into with Mr. Bandas' lawfirm in

8    connection with this matter?

9        A    Yes; it is.

10       Q    And that's your signature that appears on the last

11   page?

12       A    Yes.

13       Q    And do you have any other understandings or

14   agreements with Mr. Bandas other than what's shown in this

15   document?

16       A    No.

17       Q    Have you ever objected to other class action

18   settlements prior to the objection that you filed in the

19   Clearwire case?

20       A    No.

21                   MR. BANDAS:  Wait.  We don't want to leave the

22   wrong impression here.  You're in the AllianceOne case.

23                   THE WITNESS:  But that's after.  I think that's

24   after this one.  Anyway --

25                   MR. BANDAS:  I don't know if that's before or

Page 13

1    after.

2                    MR. TYCKO:  I'll ask it a different way.

3                    MR. BANDAS:  Maybe you might want to ask ever.

4                    MR. TYCKO:  Yes.  I'll ask that question.

5         Q    (BY MR. TYCKO)  Have you ever objected to a class

6    action settlement in any matter other than the Clearwire case?

7         A    There's another one called AllianceOne.  I think

8    that's just happening now.

9         Q    You think it's what?

10        A    I think it's new.  I think it was after this one.

11        Q    And what's the nature of the settlement in that

12   case, or what's the case about?

13        A    I can't remember.

14        Q    Do you remember what the case is about?

15        A    I can't remember.  I got notified by it as well.

16        Q    Was it a product or a service that you had purchased

17   at some time?

18        A    I can't remember.  I'm sorry.

19        Q    Do you recall when you filed that objection?

20        A    I don't think it's been filed.

21        Q    Do you know what court it was that was considering

22   the settlement?

23        A    Hum-um.  No.

24        Q    And how did you decide to object in that case?

25        A    I just -- when I got those things, I know that

1    Mr. Bandas' office handles these types of matters and when I

2    got that in, I sent it along as well.

3        Q    Do you have any understanding sitting here today of

4    what the substance of your objection was in the Alliance case?

5        A    I'm sorry.  I don't.

6        Q    So Mr. Bandas represents you in that matter as well?

7        A    Yes, sir.

8        Q    Okay.  Has he represented you in any other cases?

9        A    No.

10       Q    Do you have a personal view, one way or the other,

11   as to whether or not the settlement that we've entered into in

12   the Clearwire case should or shouldn't be approved?

13                MR. BANDAS:  Objection.  Asked and answered.

14   And are you asking him beyond what's already in his pleading,

15   or in addition to or separate from?

16                MR. TYCKO:  Just asking for his personal

17   opinion.

18       Q    (BY MR. TYCKO)  Do you have a personal opinion or a

19   view as to whether or not the settlement that has been entered

20   into in the Clearwire case should or shouldn't be approved be

21   the Court?

22                MR. BANDAS:  I'll tell you before you answer,

23   make sure you don't reveal any attorney/client communications.

24   I know counsel is not asking you for that, but just to be

25   abundantly clear, you don't want to tell him anything that we

1   talked about.  So if you can answer the question without

2   relying on those things and have a personal opinion other than

3   the pleadings and what we discussed, in addition to what

4   you've already filed with the court, I guess to the extent you

5   understand his question, you can answer it.

6                THE WITNESS:  I mean, outside of what has been

7   filed by Mr. Bandas, I really don't have an opinion one way or

8   the other.

9        Q    (BY MR. TYCKO) Well, if you don't -- if you don't

10  have an opinion about the settlement and you haven't read it,

11  can you just tell me why you've objected?

12       A    I just rely on the advice of my counsel and let him

13  handle the legal side of it.

14       Q    So you can't give me -- you can't give me a reason,

15  though?

16       A    No.

17                MR. BANDAS:  Objection.  Asked and answered

18  several times now.

19                MR. TYCKO:  If I could have that marked as

20  Exhibit 2.

21                (EXHIBIT 2 WAS MARKED.)

22       Q    (BY MR. TYCKO)  Mr. Morgan, I'm going to hand you

23  what we've marked as Exhibit 2 of this deposition.  It's just

24  the notice to this deposition, and then attached to it is an

25  exhibit.  It's the subpoena that, I believe, was served upon

1  than two business days to respond, so to the extent we come up

2  with anything that's responsive and relevant and appropriate,

3  we will produce it.

4       Q    But you don't have anything else to produce today?

5       A    No.

6                 (EXHIBIT 3 WAS MARKED)

7       Q    (BY MR. TYCKO)  Mr. Morgan, I'm going to hand you

8  what's been marked as Exhibit 3 as the pleading that your

9  lawyer filed in our case titled Objection to Proposed Class

10 Settlement and Award of Attorneys' Fees and Expenses, which I

11 guess was filed on or about November 30th of this year.  Have

12 you seen this document before today?

13      A    No.

14      Q    Let me just direct you to some of the documents that

15 are included as exhibits to this pleading.  Exhibit 1 to the

16 pleading, is that a copy of the postcard notice that you

17 received?

18      A    Yes.

19      Q    So that was one of the documents that you reviewed?

20      A    That's the document that I received telling me about

21 this class action.

22      Q    Okay.  And you told me that document was the only

23 document that you've read that actually describes the

24 settlement; is that right?

25      A    Yes.

1      Q    Okay.  And then let me show you what's Exhibit 2 to

2   the pleading.  Have you ever seen that before?

3      A    That's confirmation for the filing of the -- what is

4   it -- proof of claim filing; yes.

5      Q    So is that a document you got back after you

6   submitted the claim?

7      A    Well, it came on the screen, but yeah; you could

8   print it out.  It just -- that's a verifications, I think;

9   yeah.

10     Q    Okay.  So when you submitted your claims forms, did

11  you do it online on the settlement website?

12     A    Yes.  I printed -- I think I printed it out as well,

13  but I did it online; yeah.

14     Q    And this is the receipt you got back?

15     A    Yes.

16     Q    Did you keep a copy of your claims form?

17     A    If I did, I sent it to Mr. Bandas' office.

18     Q    Do you know whether you did or not?

19     A    I believe I printed it out and then sent it to

20  Mr. Bandas' office.

21     Q    Okay.  And so this postcard notice and that claims

22  form, those are the only documents that you've looked at

23  related to the case; is that right?

24     A    Yes.

25               MR. TYCKO:  If I can have that marked at next

Page 19

1    exhibit.  I guess it's Exhibit 4.

2                  (EXHIBIT NUMBER 4 WAS MARKED.)

3        Q    (BY MR. TYCKO)  Let me hand you what we've marked as

4    Exhibit 4.  Have you seen this document before?

5        A    I want to say that I've read this, I think on the

6    e-mail.

7        Q    Is that your signature that appears on the second

8    page?

9        A    No, but I probably gave permission for it to be

10   signed.

11       Q    So --

12       A    This is the AllianceOne; yeah.

13       Q    Was this the objection that was filed on your behalf

14   in the AllianceOne case?

15       A    Yes, sir.

16       Q    So that was the other one that you mentioned to me?

17       A    Yes; it is.

18       Q    And does looking at this refresh your recollection

19   at all about what the AllianceOne settlement was about?

20       A    I'm just reading what this card says and it's

21   something to do with cell phone or pager calls AllianceOne was

22   using from an automated telephone dialing system but I don't

23   know anything more than that.

24       Q    Were you a customer of AllianceOne?

25       A    Yes, but I can't -- I don't know exactly in what --

Page 20

1    whether or not we had cell phones through them or what.

2         Q    Okay.  And so the first two pages of this document,

3    who drafted that?

4         A    It was drafted probably by Mr. Bandas' office for

5    me.

6         Q    And then you gave them permission to sign for you?

7         A    Yes; I would have.

8              MR. TYCKO:  I don't think I've got anymore

9    questions for you.  Thanks for coming down.

10             THE WITNESS:  Thank you, sir.

11             MR. TYCKO:  One second.  Do you have any

12   questions from the phone?

13             MR. GOLDMARK:  Yeah.  Sure.  Let me -- just a

14   couple of quick follow-up questions.

15                    E X A M I N A T I O N

16   BY MR. GOLDMARK:

17        Q    Mr. Morgan, you mentioned your subscription to

18   Clearwire.  Do you remember more specifically when you signed

19   up?

20        A    No.  I'm sorry.  I don't.

21        Q    And who signed up for Clearwire?  Was it you or your

22   business?

23        A    It would have been my business.

24        Q    And what's your business's name?

25        A    At that time, it was -- Currently, my business is

1    called Texas International Trailer Sales.  That's current, but

2    that wouldn't have been the same and I'm trying to think back

3    to the timeframe.  It had to be somewhere around 2006, 2007,

4    2008; right in there somewhere, and that would have been --

5    because I've had several different companies, but it probably

6    would have been Canales, Morgan Law Office.

7         Q    I'm sorry.  What was that name?  I couldn't quite

8    hear you.

9         A    Canales, Morgan Law Office, but it could have been

10   different.  We had several different changes over the last few

11   years.

12        Q    And what did -- what was that business?

13        A    It was a law office.

14        Q    And did you operate it?

15        A    Yes.

16        Q    In what capacity?

17        A    As a lawyer.

18        Q    And what kind of practice did you practice with

19   Canales, Morgan Law Office?

20        A    It just -- it was a general practice; nothing

21   specific.

22        Q    Could you give me some examples of the types of

23   cases you worked on?

24        A    Immigration law, criminal law, personal injury law,

25   family law, and whatever else came through the door.

Page 22

1      Q    Fair enough.  And when did you start that practice?

2      A    My practice started in 1989.

3      Q    And the name of the practice -- Am I pronouncing it

4  right?  Canales, Morgan Law Office?

5      A    At the time of the Clearwire, yeah; it was Canales,

6  Morgan.  Could have been Morgan Law Office.  My recollection

7  is it was Canales, Morgan, but I can't remember.

8           MR. TYCKO:  How do you spell Canales?

9      Q    (BY MR. GOLDMARK)  Okay.  And where was that

10 located?

11     A    We were located at a couple of different areas, but

12 719 North Upper Broadway.

13     Q    That would have -- would that have been the location

14 when you signed up for Clearwire?

15     A    Probably.

16     Q    And I'm sorry.  I'm not familiar with the area.  Is

17 this 719 North Upper Broadway, is that in Corpus Christi?

18     A    Yes, sir.

19     Q    And you mentioned that your Clearwire service, you

20 changed it when you moved.  So what happened?  Was this when

21 you moved away from 719 North Upper Broadway?

22     A    Yes.  Yeah.  We -- I don't know if we got rid of it

23 immediately, but we -- I know we got rid -- We were having a

24 lot of trouble with it.

25     Q    And where did you move to?

Page 26

1    right?

2         A    That's right.

3         Q    Did you ever request a refund related to any

4    problems with your Internet connectivity?

5         A    I don't recall.  Like I said, we had a lady that was

6    like an office manager at the time and she may have, but I

7    don't recall.

8              MR. GOLDMARK:  Thank you, Mr. Morgan.  That's

9    all the questions I have.

10             THE WITNESS:  Yes, sir.

11             F U R T H E R   E X A M I N A T I O N

12   BY MR. TYCKO:

13        Q    Just a couple more because I didn't realize that you

14   were a lawyer by background.  Are you still practicing law

15   now?

16        A    No.

17        Q    When did you get out of the practice of law?

18        A    In April of this year.

19        Q    April 2012?

20        A    Yes.

21        Q    And is that when you started the other business that

22   you have?

23        A    I actually started the other business several months

24   before.

25        Q    And what's the nature of the business you have now?

Page 27

1      A     It's an oil and gas field-related utility trailer

2    sales company.  We thinking about two oil tankers.  Not the

3    truck part, but the tanker part, sand carriers, vacuum

4    trailers.  There's a big oil play here.  I don't know if

5    you're familiar, but there's --

6      Q     I've heard oil and taxes going together.

7      A     We have a real, big -- very close to Corpus is a big

8    oil and gas plain, so there's a lot of activity there right

9    now.

10     Q     So it's supplying equipment for the --

11     A     Exactly.

12     Q     -- people who work in those fields?

13     A     Yes, sir.

14     Q     And have you kept your law practice going at all on

15   the side or --

16     A     No.

17     Q     -- are you totally out of it?

18     A     I'm out of it.

19     Q     And why did you decide to make that switch?

20     A     I resigned.

21     Q     Resigned from the bar, you mean totally?

22     A     Yes, sir.

23     Q     Okay.  Why did you resign your bar commission?

24     A     Well, I had a conflict with the State Bar.  Had been

25   going on for a few years and I finally just got tired of

```
 1                    UNITED STATES DISTRICT COURT

 2                  WESTERN DISTRICT OF WASHINGTON

 3                            AT SEATTLE

 4
    MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR
 5  STEVEN COCKAYNE, BRIAN        )
    CRAWFORD, DAN DAZELL, ANGELO  )
 6  DENNINGS, CHEYENNE FEGAN,     )
    SHARON FLOYD, GRERY GUERRIER, )
 7  JOHANNA KOSKINEN, ELENA MUNOZ-)
    ALAZAZI, ELAIN POWELL, ROBERT )
 8  PRIOR, ALIA TSANG, AND KYLE   )
    WILLIAMS, on behalf of        )
 9  themselves and all others     )
    similarly situated,           )
10  Plaintiffs                    )
                                  )
11  V.                            )                             )
                                  )
12  CLEARWIRE CORPORATION,        )
    Defendant                     )
13  ----------------------------------------------------------
14                       ORAL DEPOSITION OF
                           GORDON MORGAN
15                         Volume 1 of 1
                         December 17, 2012
16  ----------------------------------------------------------
17           I, Sylvia D. Trevino, Certified Shorthand Reporter

18  in and for the State of Texas, hereby certify to the

19  following:

20           That the witness, GORDON MORGAN, was duly sworn by

21  the officer and that the transcript of the oral deposition is

22  a true record of the testimony given by the witness;

23           That the deposition transcript was submitted on

24  December 18, 2012, to the witness or to the attorney for the

25  witness for examination, signature and return to Sylvia D.
```

1   Trevino by January 17, 2013;

2           That the amount of time used by each party at the

3   deposition is as follows:

4           Johnathan Tycko – (0:12)

5           John Goldmark – (0:02)

6           That pursuant to information given to the deposition

7   officer at the time said testimony was taken, the following

8   includes counsel for all parties of record:

9   ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA
    GARZA
10
            Christopher Bandas
11          THE BANDAS LAW FIRM
            500 N. Shoreline, Ste. 1020
12          Corpus Christi, Tx  78401-0353
            (361) 698-5200
13

14  CLASS ACTION ATTORNEY:

15          Johnathan K. Tycko
            TYCKO & ZAVAREEI
16          2000 L. St. N.W. Ste. 808
            Washington, D.C. 20036
17          (202) 973-0900
            fax (202) 973-0950
18          jtycko@tzlegal.com

19  ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:
    (Telephonically)
20
            John Goldmark
21          DAVIS, WRIGHT, TREMAINE
            1201 Third Avenue
22          Seattle, Washington 98101
            Tel:  (206) 757-8068
23          johngoldmark@dwt.com

24

25

Page 33

1          I further certify that I am neither counsel for,

2    related to, nor employed by any of the parties or attorneys in

3    the action in which this proceeding was taken, and further

4    that I am not financially or otherwise interested in the

5    outcome of the action.

6          Further certification requirements pursuant to Rule

7    203 of TRCP will be certified to after they have occurred.

8          Certified to by me on December 18, 2012.

9

10                    _Sylvia D. Trevino_____

                      Sylvia D. Trevino, CSR 2733
11                    Expiration Date: 12/31/12
                      U.S. Legal Support
12                    Firm Registration No. 343
                      5910 N. Central Expressway, Ste. 100
13                    (214) 741-6001 – (214)741-6824 (f)

14   Job No. 136957

15                             – – –

16          FURTHER CERTIFICATION UNDER RULE 203 TRCP

17   -------------------------------------------------------------

18          The original deposition was/was not returned to the

19   deposition officer on _____;

20          If returned, the attached Changes and Signature page

21   contains any changes and the reasons therefor;

22          If returned, the original deposition was delivered

23   to _____, Custodial Attorney;

24          That $_____is the deposition officer's charges to

25   the PLAINTIFF for preparing the original deposition transcript

Page 34

1   and any copies of exhibits;

2            That the deposition was delivered in accordance with

3   Rule 203.3, and that a copy of this certificate was served on

4   all parties shown herein and filed with the Clerk.

5            Certified to by me this _____day of _____,

6   2012.

7

                              _____
8                             Sylvia D. Trevino, CSR 2733
                              Expiration Date:  12/31/12
9                             U.S. Legal Support
                              Firm Registration No. 343
10                            5910 N. Central Expressway, Ste. 100
                              (214) 741-6000 (214) 714-6824 (f)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25