UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELO DENNINGS, et al.,

                    Plaintiffs,

          v.

CLEARWIRE CORPORATION,

                    Defendant.

CASE NO. C10-1859JLR

ORDER GRANTING MOTION
FOR ATTORNEY'S FEES AND
EXPENSES

Before the court is class counsel's renewed motion for attorneys' fees and

expenses.  (Mot. (Dkt. # 120).)  The motion relates to the combined settlement (the

"Settlement") of three cases filed as class actions:  *Dennings v. Clearwire Corp.*, No.

C10-1859JLR (W.D. Wash.); *Minnick v. Clearwire US, LLC*, No. C09-912MJP (W.D.

Wash.); and *Newton v. Clearwire Corp.*, No. 2:11-cv-783-WBS-DAD (E.D. Cal.) (the

"Actions").

ORDER- 1

1       After a fairness hearing on December 19, 2012, the court approved the Settlement

2  and entered final judgment upon finding that the Settlement is, "in all respects, fair,

3  reasonable, and adequate to the Plaintiff Settlement Class . . . and the result of extensive

4  arm's length negotiations with the guidance of an experienced mediator." (Settlmt. Ord.

5  and Final Judgmt. (Dkt. # 99) at 2.)  In the same order, the court awarded $2,000.00 to

6  each of the twenty-five class representatives as incentive fees in compensation for the

7  time, effort, and risk they undertook as representatives of the class.  (*Id.* at 7.)  The court

8  deferred ruling on class counsel's motion for attorneys' fees and expenses on the ground

9  that, under the Settlement, the claims filing period was still open and the results of claims

10  processing was a factor that the court could consider in deciding the amount of the award.

11       The claims period is now closed and the court has before it the information

12  necessary to make its ruling.  Accordingly, class counsel have brought a renewed motion

13  for attorneys' fees and expenses.  (Mot. (Dkt. # 120).)  The court addresses that motion

14  now.  Class counsel request awards of $1,887,792.91 as reasonable attorneys' fees and

15  $62,207.09 as reimbursement for their reasonable expenses.  These amounts represent a

16  "mediator's proposal" to which the parties agreed, subject to court approval.  (Suppl.

17  Cantor Decl. (Dkt. # 86) ¶ 5.)  For the reasons explained below, the court GRANTS class

18  counsel's motion and awards reasonable attorneys' fees in the amount of $1,887,792.91

19  and expenses in the amount of $62,207.09.

20                 **I.    BACKGROUND**

21       In the Actions, the various plaintiffs alleged that Clearwire, an Internet service

22  provider headquartered in Kirkland, Washington (Am. Compl. (Dkt. # 23) ¶ 22), had a

1   practice of slowing its subscribers' connection speeds based on the subscriber's usage

2   and the needs of Clearwire's network.  (*Id.* ¶¶ 27-29.)  This caused speed and quality

3   issues (*e.g.*, Cantor Decl. (Dkt. # 73) ¶ 27) notwithstanding advertising to the effect that

4   the service was "unlimited" and "high speed."  (*See, e.g.*, Am. Compl. ¶¶ 23, 33.)

5   Plaintiffs also alleged that Clearwire wrongfully charged early termination fees ("ETFs")

6   when subscribers discontinued service, regardless of service quality.  (*E.g.*, *id.* ¶ 38;

7   Cantor Decl. ¶ 26.)  Collectively, the various plaintiffs claimed that Clearwire violated

8   the Washington Consumer Protection Act, RCW ch. 19.86, similar statutes of several

9   other states that generally prohibit unfair or deceptive trade practices, and the common

10  law.

11       In the *Dennings* and *Newton* Actions, Clearwire moved to compel arbitration

12  against certain plaintiffs, arguing that every subscriber had entered into an agreement

13  with Clearwire that contained an arbitration clause and that those clauses were

14  enforceable under the laws of those plaintiffs' states.  (Cantor Decl. ¶¶ 19-20.)  Those

15  motions were stayed when the Supreme Court decided *Concepcion v. AT&T Mobility,*

16  *LLC*, 131 S. Ct. 1740 (2011).  At that point in time, the *Minnick* Action was on appeal to

17  the Ninth Circuit.  (*See* Cantor Decl. ¶ 24.)

18       After a prolonged negotiation process involving the parties from all three of the

19  Actions (*id.* ¶¶ 29-33), the parties presented to the court a proposed class-action

20  settlement that would resolve the three Actions.  (*See* Settlement Agreement (Dkt. # 61-

21  1); Waiver of Reversionary Rights (Dkt. # 68).)  The court granted final approval on

22  December 19, 2012.  (Settlmt. Ord. and Final Judgmt.)

ORDER- 3

1    The Settlement provides for monetary relief through a streamlined claims process,

2    and other relief—both monetary and programmatic—without a claims process.  The relief

3    can be summarized as follows:

4         Upon submitting a claim, either on the Internet or by mail, class members who

5    paid ETFs will receive a payment (for past subscribers) or a credit (for current

6    subscribers) of 50 % of the amount of the ETF paid.  (Settlement Agreement § 1.03(a).)

7    Also upon submitting a claim, either on the Internet or by mail, class members who

8    checked a box that their Internet speed/quality was impaired will receive a minimum of

9    either $7.00 or $14.00 (depending on when they first signed up for Clearwire service),

10   plus either $2.00, $3.00, or $5.00 per month for every month in which Clearwire shaped

11   their Internet service to below certain specified speeds for at least one hour in that month.

12   (*Id.* § 1.03(b)-(c).)  The Settlement does not provide for any upper limit or cap on

13   Clearwire's liability under these provisions.

14        Apart from submitting claims, Clearwire will waive ETFs for current class

15   members who discontinue their term contracts for reasons expressly related to quality or

16   speed of service for at least two years.  (*Id.* § 5.03.)

17        Further, the Settlement requires two types of programmatic relief:  First, Clearwire

18   will change its advertising to make more conspicuous and complete disclosures about its

19   network management policies, with special restrictions on the word "unlimited."  (*Id.*

20   § 5.01.)  Second, if Clearwire, which no longer offers fixed-term contracts with ETFs,

21   decides to reinstate such contracts during the two-year period after February 27, 2012, it

22

will not charge those future customers an ETF if they withdraw for reasons expressly related to quality or speed of service.  (*Id.* § 5.02.)

After the court granted preliminary approval of the Settlement, the parties engaged in a notice program by email, postcard, and Internet.  The settlement administrator estimates that notice reached 94.6 % of the class.  (Suppl. Decl. of Jennifer Keough (Dkt. # 85) ¶¶ 3.)  Eight class members timely objected, constituting 0.000003 of the class that Clearwire estimates to have 2,733,406 members; and 409 would-be class members timely requested exclusion, constituting 0.00015 of the class.  (*Id.* ¶¶ 3-4.)  By November 4, 2012, immediately before class counsel first filed their motion for attorneys' fees, 72,488 class members had submitted claims.  (*Id.* ¶ 21.)  By December 9, 2012, a week before the court's final approval hearing, 79,066 class members had submitted claims.  (*Id.* ¶ 22.)  When the claims submittal period closed, 83,840 class members had submitted claims.  (Keough Decl. re. Calculation of Distribution Amount (Dkt. # 122) ("Keough Decl.") ¶ 5.)  This number of claimants is about 3.1 % of the class.

Now, the calculations of amounts that Clearwire will pay/credit as a result of the claims process is nearly complete.  The court uses the term "nearly" because there are a number of claimants that Clearwire was unable to identify from the material submitted and/or who did not sign their claims (by clicking a check-box on the Internet claim form or signing by hand on a paper claim form).  The settlement administrator is mailing these claims back to the claimants to obtain more information and/or a signature.  (*Id.* ¶¶ 16-17.)

The results of the Settlement can now be evaluated quantitatively and qualitatively as follows.

*Amount made available:*

The court finds that the monetary amount that Clearwire made available to be claimed by class members, based on sufficient evidence, is in the tens of millions of dollars.  (*See, e.g.*, Cantor Decl. ¶ 50.)

*Amount that Clearwire will actually pay/credit:*

The court finds that the total monetary amount that Clearwire will actually pay/credit to the class members or on the class's behalf, based on sufficient evidence, is the sum of the following amounts:

1. $1,134,927.00      Known reimbursement for 76,199 "shaping" or speed/quality claims.  (*See* Keough Decl. ¶¶ 12-14.) [These figures result in an average claim payment of $14.89 for speed/quality claims.]

2. 114,009.68      Known reimbursement for 2,331 ETF claims.  (*See* Keough Decl. ¶ 8.)  [These figures result in an average claim payment of $48.91 for ETF claims.]

3. 1,418,518.00      ETFs that Clearwire has already waived or will waive for current class members without submitting a claim, estimated.  (*See* Settlement Agreement § 5.03; Suppl. Cantor Decl. at 3-4.)

4. 95,174.82      Reimbursement for 5,941 claims returned to claimants for further information and subsequent processing, estimated (avg. $16.02)

5. 0.      Unknown increase resulting from claims dispute procedure described in the Settlement.  (*See* Settlement Agreement §§ 4.05, 4.07, 4.08.)

6. 50,000.00      Incentive awards to 25 Class Representatives, already

1    ordered.  (Settlmt. Ord. and Final Judgmt. ¶ 15.)

2    7.    513,513.00    Notice and administration charges, excluding additional
                         charges to be incurred as a result of appeal.  (*See*
3                        Keough Decl. re. The Garden City Group, Inc.'s Fees
                         and Expenses for Settlement Administration (Dkt. # 123)
4                        ¶ 5 (mid-point of range).)

5    8.    62,207.09.00  Requested for reimbursement of litigation expenses

6    9.    1,887,792.91. Available for attorneys' fees; remainder, if any, will be
                         used to increase eligible claimants' reimbursements on a
                         pro rata basis.  (Waiver of Reversionary Rights;
7                        Settlement Agreement § 4.02.)

8          $5,276,142.50    TOTAL

9    With respect to item 1 in this list, the evidence shows that the smallest payment/credit

10   will be $7.00; the largest will be $78.00; and the average is $14.89.  (*See* Keough Decl.

11   ¶¶ 12-13.)  With respect to item 2, the evidence shows that the smallest payment/credit

12   will be 1¢; the largest will be $205.00; and the average is $48.91.  (*Id.* ¶ 8.)  The overall

13   average payment/credit is $16.02.  (*Id.* ¶ 15.)

14       *Programmatic relief*:

15       The court finds and concludes that the Settlement requires Clearwire to provide

16   two types of programmatic relief, neither of which is readily quantifiable but each of

17   which has real value:

18   10.    Modification of Clearwire's advertising practices in a manner intended
            to address plaintiffs' allegations of deceptive advertising regarding
19          Internet speeds.  (*See* Settlement Agreement § 5.01.)

20   11.    For two years following February 27, 2012, if Clearwire reinstates
            fixed-term contracts with ETFs, Clearwire will "instruct its customer
21          service representatives not to charge customers an ETF if they
            withdraw from their contract for reasons expressly related to quality or
22          speed of service.  Upon discovery of an ETF charged to a customer in

ORDER- 7

1  violation of its instructions to its customer service representatives . . . ,
   Clearwire will refund that ETF."  (Settlement Agreement § 5.02.)  This
2  relief is distinct from Clearwire's waiver of existing contractual ETFs,
   quantified above.  (*Compare* Settlement Agreement § 5.02 *with*
3  Settlement Agreement § 5.03 (titled "ETF Waiver").

4  With this as background, the court turns to the standards applicable to ruling on counsel's

5  fee request.

6                          **II.    ANALYSIS**

7  **A.    Class counsel are entitled to an award of fees**

8          Jurisdiction in this case (and in all three Actions) is based on diversity of

9  citizenship under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The availability

10 and amount of a fee award are considered substantive issues of state law for *Erie*

11 purposes.  *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)

12 (state law applies to "the method of calculating the fees").

13         "Because Washington is the forum state, Washington law should be applied to the

14 determination of an appropriate fee award."  *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp.

15 2d 1322, 1325 (W.D. Wash. 2009); *Grays Harbor Adventist Christian Sch. v. Carrier*

16 *Corp.*, No. 05-5437, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008).  Under

17 Washington law, counsel are entitled to an award of attorneys' fees and expenses under

18 two doctrines:

19         First, the plaintiffs in the Actions collectively asserted claims under state

20 consumer protection statutes that expressly authorize fee-shifting, including

21 Washington's Consumer Protection Act ("CPA").  *See* RCW § 19.86.090 (A CPA action

22 may include "the costs of the suit, including a reasonable attorney's fee."); *Camacho v.*

1   *Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("In order to encourage private

2   enforcement of the law," some statutes provide that "prevailing parties may recover their

3   attorneys' fees from the opposing side.").

4       Second, class counsel are entitled to a fee award because they have created a

5   substantial benefit for the Settlement Class.  *E.g.*, *Weiss v. Bruno*, 523 P.2d 915, 916

6   (Wash. 1974) (Equity allows attorneys' fees in "situations where a litigant confers [a]

7   substantial benefit on an ascertainable class."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375,

8   392-95 (1970) (Courts award the cost of litigating "in cases where the litigation has

9   conferred a substantial benefit on the members of an ascertainable class."); *Lewis v.*

10  *Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) (The "substantial benefit

11  doctrine . . . permits a plaintiff to recover attorneys' fees if his action has conferred a

12  substantial benefit upon a class.").  In sum, the court concludes that class counsel is

13  entitled to a fee award and turns next to determining the appropriate amount of that

14  award.

15  **B.      Washington law recognizes the lodestar and percentage methods**

16      "Washington law . . . recognizes both the lodestar method and the percentage of

17  the fund methods for determining appropriate attorneys' fees."  *Pelletz*, 592 F. Supp. 2d

18  at 1325 (citing *Bowles v. Wash. Dep't of Ret. Sys.*, 847 P.2d 440, 450-51 (Wash. 1993)).

19  Under the lodestar method, a court

20      multipl[ies] the total number of hours reasonably expended in the litigation
        by the reasonable hourly rate.  Once the lodestar has been calculated, the
21      court may adjust the fee to reflect factors not considered yet.  The two
        categories for adjustment are based on whether the fee was contingent on
22      the outcome and the quality of work performed.

*Clausen v. Icicle Seafoods, Inc.*, 272 P.3d 827, 833 (Wash. 2012).  Under the percentage method, a court

> sets attorney fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery, often in the range of 20 to 30 percent. . . .  [T]he "benchmark" award is 25 percent of the recovery obtained.  Under special circumstances, this figure can be adjusted upward or downward.

*Bowles*, 847 P.2d at 450-51 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  When using the percentage method, Washington courts have looked to the Ninth Circuit for analysis of "special circumstances."  *See, e.g.*, *City of Seattle v. Okeson*, 137 Wn. App. 1051, 2007 WL 884827, at *8 (Wash. Ct. App. 2007) (unpublished).

"The choice between lodestar and percentage calculation depends on the circumstances . . . ."  *Bowles*, 847 P.2d at 450-51 (original brackets omitted).  The court observes that, in these respects, relevant Washington law on fees resembles federal law.  Regardless of the extent to which federal law applies, the court will analyze counsel's fee request with heightened "scrutiny for evidence of collusion" because the Settlement was reached prior to formal class certification.  *See In re Bluetooth Headset Prod's Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

**C.**     **The fee request is reasonable under the lodestar methodology**

Under a lodestar analysis, the court concludes that class counsel has spent a total of 4,265.2 hours on this litigation so far, for a total aggregate lodestar (based on varying rates) of $2,048,563.00.  (*See* Comp. of Decs. (Dkt. # 74); Suppl. Comp. of Decs. (Dkt.

1 | # 124).)  The $1,887,792.91 that they request as a fee award is less than their lodestar.  It

2 | represents a fractional or "negative" multiplier of 0.92.  [$1,887,792.91 ÷ $2,048,563 =

3 | 0.92].

4 |       Details relating to each firm's time, expenses, and rates are contained in the

5 | Compendium of Declarations (Dkt. # 74) and the Supplemental Compendium of

6 | Declarations (Dkt. # 124).  The court has reviewed each law firm's declarations

7 | describing what the firm did to advance these Actions and how much time they spent

8 | doing it.  Based on these declarations and the court's own experience and familiarity with

9 | this matter, the court finds and concludes that the number of hours expended by class

10 | counsel is reasonable in light of the nature of the Actions, the complexity of the issues

11 | involved, and the fact that the Settlement will resolve the three different Actions (with

12 | three sets of counsel) that Plaintiffs combined for purposes of settlement to obtain greater

13 | negotiating strength and leverage.  (*See* Tyeko Decl. (Dkt. # 73) ¶ 29.)

14 |       Reasonable hourly rates are determined by reference to the prevailing market rates

15 | charged by attorneys of comparable skill and experience in the community.  *See Pelletz*,

16 | 592 F. Supp. 2d at 1326-27 (approving hourly rates of firms from New York, Illinois,

17 | Ohio, Washington, D.C., and Seattle as reasonable); *see also Grays Harbor*, 2008 WL

18 | 1901988, at *3 (approving hourly rates of New York, California, and Seattle firms).

19 |       The hourly rates of class counsel that were used to generate the lodestar are

20 |

21 |

22 |

ORDER- 11

1   reasonable and appropriate. (*See* Tyeko Decl. ¶ 127.)[1]  Their lodestar calculation

2   includes time expended by attorneys and, in some instances, professional support staff.

3   See *Grays Harbor Adventist Christian Sch. v. Carrier Corp*., No. 05-5437, 2008 WL

4   1901988, at *5 (W.D. Wash. Apr. 24, 2008) ("The Ninth Circuit and Washington courts

5   recognize that substantive case-related work performed by paralegals and other non-

6   attorney staff may be included in the calculation of recoverable lodestar.").

7           The court finds and concludes that class counsel's lodestar of $2,048,563.00 is

8   reasonable in terms of how it was derived, the hours and rates used, and a how much the

9   work done would be expected to cost.  This lodestar is more than the $1,887,792.91

10  amount that counsel request to be awarded.  Finding no reason that a multiplier less than

11  1.0 would otherwise be warranted here, the court finds and concludes that the amount

12  requested is reasonable under the circumstances of this litigation.

13          In 2011, Judge Pechman, in an order granting attorneys' fees to plaintiffs' counsel,

14  capped hourly out-of-state billing rates at $525.00, which was the rate charged by

15  qualified counsel in the Seattle area (Byrnes Keller Cromwell LLP).  *See In re Wash.*

16  *Mut., Inc. Sec. Litig.*, No. 08-1919, 2011 WL 8190466, at *1 (W.D. Wash. Nov. 4, 2011).

17  Similarly, in 2012, Judge Coughenour, in granting attorneys' fees to plaintiffs' counsel,

18  reduced the hourly rates of two Seattle lawyers to $600.00 and $515.00.  *Clark v. Payless*

19  *Shoesource, Inc.*, No. 09-0915, 2012 WL 3064288, at *3 (W.D. Wash. July 27, 2012).

20  _____

21      [1] It is appropriate to calculate class counsel's lodestar at current billing rates, as the use of
    current rates offsets the delay between counsel's expenditure of time and a court award of

22  attorneys' fees.  *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989).

ORDER- 12

If the court were to cap the hourly billing rates for out-of-state counsel to $525.00, which Judge Pechman deemed suitable for the Seattle community, the re-calculated lodestar would be reduced to $1,933,146.00.  The resulting multiplier using these Seattle rates would still be less than 1.0.  [$1,887,792.91 (requested award) ÷ $1,933,146.00 (recalculated lodestar to date) = 0.98].

Without deciding whether a cap is preferable here, the court finds and concludes that a multiplier of either 0.92 or 0.98 is reasonable, based on the contingency of the fee and the quality of the work performed.  *See Clausen*, 272 P.3d 827, 833-34 (Wash. 2012). Under the Washington Consumer Protection Act, there is no requirement of any particular proportion between monetary recovery and reasonable fees calculated under the lodestar method.  "An [attorneys' fee] award is not unreasonable merely because it exceeds the damages awarded . . . ."  *Keyes v. Bollinger*, 640 P.2d 1077, 1084 (Wash. Ct. App. 1982).  In sum, the court finds and concludes that counsel's fee request is reasonable under the lodestar methodology.

**D.    Applying the percentage methodology as a cross-check**

The court will next apply the percentage methodology as a cross-check.  This methodology appears somewhat problematic under these circumstances because there are at least two different "denominators" that could be used to calculate the relevant percentage:  (i) the amount that the Settlement made available to the class, or (ii) the amount that Clearwire will actually pay/credit to or on behalf of the class.

Under Ninth Circuit law, there is strong support that, when a court conducts a percentage fee analysis, it is the amount or value made available to the class, not the

ORDER- 13

1    amount actually claimed, that is relevant.  *Williams v. MGM-Pathe Commc'ns Co.*, 129

2    F.3d 1026, 1027 (9th Cir. 1997) (per curiam) ("We conclude that the district court abused

3    its discretion by basing the fee on the class members' claims against the fund rather than

4    on a percentage of the entire fund or on the lodestar."); *Stern v. Gambello*, 480 Fed.

5    Appx. 867, 870 (9th Cir. 2012) ("nor was it error to consider, in cross-checking the fees

6    against the recovery, the potential recovery rather than the claims actually made") (citing

7    *MGM-Pathe*).  Various district courts have followed this approach.[2]  The court is aware

8    of no Washington case law on this point.

9            Under this approach to a percentage cross-check, the court finds and concludes

10   that a fee award of $1,887,792.91 is plainly justified as a percentage of the amount made

11   available, which is in the tens of millions of dollars.  Totally apart from other benefits

12   that the Settlement provides, the Settlement guarantees minimum payments/credits of

13   either $7.00 or $14.00 for impaired speeds, depending on when a claimant first

14   subscribed to Clearwire's service.  (*See* Settlement Agreement § 1.03.)  With a class in

15   excess of 2.7 million people, it is plain that the amount made available was substantial.

16   Counsel's fee request, as a percentage of just these quantifiable monetary benefits

17   ───────────────────

18        [2] *See, e.g.*, *Amunrud v. Sprint Commc'ns Co. L.P.*, No. 10-57, 2012 WL 443751, at *2
     (D. Mt. Feb. 10, 2012) ("[I]t is appropriate to base the percentage on the gross cash benefits
19   available for class members to claim, plus the additional benefits conferred on the class by
     Sprint's separate payment of attorney's fees and expenses, and the expenses of administration.");
20   *Hartless v. Clorox Co.*, 273 F.R.D. 630, 643 n.3 (S.D. Cal. 2011) ("Under Ninth Circuit law, it is
     an abuse of discretion to base the percentage recovery on the amount of claimed funds rather
21   than the entire settlement fund."); *Hopson v. Hanesbrands Inc.*, No. 08-844, 2009 WL 928133, at
     *11 (N.D. Cal. Apr. 3, 2009) ("The appropriate measure of the fee amount is against the
22   potential amount available to the class, not a lesser amount reflecting the amount actually
     claimed by the members.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 477-82 (1980)).

1   available to the class, is significantly less than the 25 % benchmark common-benefit for

2   fee awards.  *See Bowles*, 847 P.2d 440, 450-51 (citing *Six (6) Mexican Workers*, 904 F.2d

3   at 1311 (9th Cir. 1990)).  The court could approve the amount of the fee request on this

4   basis alone.

5          But even if the court were to use as the denominator the amount that Clearwire

6   will actually pay/credit to or on behalf of the class, the fee request is reasonable.  As an

7   initial matter, the court finds that the figures listed in the table above are reasonable and

8   based on evidence and may properly be added together to get a total monetary benefit of

9   $5,276,148.50.  The court has discretion to include each of these amounts in determining

10  the total monetary amount that Clearwire will actually be paying/crediting as a result of

11  the Settlement.  *See, e.g.*, *Lopez v. Youngblood*, No. 07-474, 2011 U.S. Dist. Lexis 99289,

12  at *33 (E.D. Cal. Sep. 2, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir.

13  2003)) ("[f]ees and class administration costs are included in determining the size of the

14  fund.").

15         The amount that class counsel request as attorneys' fees, $1,887,792.91, is

16  35.78 % of this total.  [$1,887,792.91 ÷ $5,276,148.50 = 0.3578].  Of the $1,887,792.91

17  that counsel request as fees, any amount that the court does not award for that purpose

18  will instead be used by Clearwire to increase proportionately the amount paid or credited

19  to each Eligible Claimant, which the court approves.  (*See* Waiver of Reversionary

20  Rights.)

21

22

1       While 35.78 % is higher than the benchmark, there are "relevant circumstances"[3]

2 that justify the deviation:  When courts use the percentage method for determining fees,

3 non-quantifiable injunctive relief should not be included in the value of a fund.  *Staton v.*

4 *Boeing Co.*, 327 F.3d at 945-46.  Rather, the presence of this type of relief is a "relevant

5 circumstance" in determining an appropriate fee percentage.  *Id.* at 946 (when using the

6 percentage method, non-quantifiable injunctive relief is "a 'relevant circumstance' in

7 determining what percentage of the common fund class counsel should receive as

8 attorneys' fees, rather than as part of the fund itself").

9       Considering that the Settlement requires programmatic changes that Clearwire has

10 put into effect for the benefit of the class and the public, and the Actions required

11 considerable effort, a percentage cross-check of 35.78 % of the monetary benefits

12 actually paid or to be paid is not necessarily unreasonable.  *See, e.g.*, Final Order

13 Approving Class Action Settlement and Awarding Attorneys' Fees and Expenses at 9,

14 *South Ferry LP #2 v. Killinger*, No. 04-1599 (W.D. Wash. Jun. 5, 2012) (29 %)

15 (previously submitted as Dkt. # 71-1); *Garcia v. Gordon Trucking, Inc.*, No. 10-324,

16 2012 WL 5364575, at **3, 10 (E.D. Cal. Oct. 31, 2012) (33 %); *Schiller v. David's*

17 *Bridal, Inc.*, No. 10-616, 2012 WL 2117001, at *20 (E.D. Cal. Jun. 11, 2012) (32.1 %);

18 *Singer v. Becton Dickinson & Co.*, No. 08-821, 2010 WL 2196104, at **2, 9 (S.D. Cal.

19 Jun. 1, 2010) (33⅓ %); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D.

20 _____

21    [3] Washington courts have looked to the Ninth Circuit for analysis of "relevant

22 circumstances."  *See, e.g.*, *Okeson*, 2007 WL 884827, at *8.

1    Cal. 2010) (33.3 %); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)

2    (33⅓ %).

3    **E.      The fee request is not the product of collusion**

4            The court concludes, based on ample evidence, that neither the requested amount

5    of attorneys' fees nor any other aspect of this Settlement is the product of collusion.  *Cf.*

6    *Bluetooth*, 654 F.3d 935.  The parties' negotiation was strictly at arm's length throughout,

7    guided by a respected mediator.  (Cantor Decl. ¶¶ 13, 30-33, 39, 106-07.)  The parties did

8    not broach the subject of fees until after the benefits to the Settlement Class were agreed

9    upon and the mediator orally declared that no further potential conflict existed regarding

10   negotiation of fees.  (*Id.* ¶ 32.)  There was no hint of trade-off of lesser benefits for the

11   Settlement Class in exchange for greater fees (*id.* ¶¶ 32, 106-07), and the parties

12   ultimately agreed to the mediator's proposal (subject to Court approval).  (Suppl. Cantor

13   Decl. at ¶ 5.)

14           Unlike in *Bluetooth*, any amount of class counsel's request for fees that the court

15   does not award will be distributed proportionately to the eligible claimants, increasing

16   their payments/credits.  (*See* Waiver of Reversionary Rights.)  Though the Settlement

17   contains what *Bluetooth* described as a "clear sailing" provision (*see* Settlement

18   Agreement § 2.03), the court concludes that, under the circumstances of this case, the

19   "clear sailing" feature does not indicate collusion when any amount not awarded will

20   revert directly to the Settlement Class, not to Clearwire.  *See Bluetooth*, 654 F.3d at 947.

21   The court concludes that there is no indication of collusion.

22

**F.      The court's discretion**

The court has substantial discretion as to which fee methodology to use and how to apply it (within applicable rules).  Under the circumstances of this case, the court finds and concludes that it is most appropriate to focus primarily on the lodestar methodology, and secondarily on a percentage cross-check.

The court hereby awards attorneys' fees to compensate class counsel for their time incurred and expenses advanced.  The court has found and concluded that (a) class counsel achieved a favorable result for the class by obtaining Clearwire's agreement to certain non-monetary relief and programmatic changes and by making funds available to class members, subject to submission of valid claims by eligible class members; (b) class counsel devoted substantial effort to pre-and post-filing investigation, legal analysis, and litigation; (c) class counsel prosecuted the class's claims on a contingent fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses; (d) class counsel employed their knowledge of and experience with class action litigation in achieving a valuable settlement for the class, in spite of Clearwire's possible legal defenses and its experienced and capable counsel; (e) class counsel have standard contingent fee agreements with the representative plaintiffs, who have reviewed the Settlement and been informed of class counsel's attorneys' fees and expense application and have approved; (f) the notice informed class members of the amount and nature of class counsel's fee and cost request under the Settlement, class counsel filed and posted their November 8, 2012 fee motion (Dkt. # 71) in time for class members to make a meaningful decision whether

1    to object to the fee motion, and only four class members objected to the request; (g) using

2    the lodestar method, which the court concludes is appropriate, the court determines that

3    class counsel's rates and hours are reasonable, and an award of the requested fees would

4    result in a lodestar multiplier of 0.92 or 0.98, explained above, which supports approval

5    of the fee request; (h) using a percentage-of-the benefit cross-check results in an

6    appropriate percentage, described below, under applicable standards; and (i) there is no

7    indication of collusion or disproportionality of the type that raised concerns in *Bluetooth*.

8         For these reasons, the court awards attorneys' fees in the amount of

9    $1,887,792.91.

10   **G.    Class counsel's requested expenses are reasonable and proper**

11        Class counsel also request that the court allow reimbursement of $62,207.09 in

12   reasonable litigation expenses.  (*See* Suppl. Comp. of Decs.)  These expenses are set forth

13   in the Compendium of Declarations (Dkt. # 74) and the Supplemental Compendium (Dkt.

14   # 124).  Like counsel's fee request, any amount not awarded for this purpose will revert

15   directly to the class, not to Clearwire, in the form of a proportional increase in

16   Clearwire's payments/credits to the eligible claimants, which the court approves.

17   (Waiver of Reversionary Rights.)

18        In class action settlements, courts routinely allow reimbursement of expenses

19   incurred.  *E.g.*, *Arthur v. Sallie Mae, Inc.*, No. 10-198, 2012 WL 4076119, at *2 (W.D.

20   Wash. Sep. 17, 2012) ("The Ninth Circuit allows recovery of pre-settlement litigation

21   costs in the context of class action settlement.") (citing *Staton*, 327 F.3d at 974).  As one

22   commentator observed, "[t]he prevailing view is that expenses are awarded in addition to

1  the fee percentage." ALBA CONTE, ATTORNEY FEE AWARDS § 2:08 (3d ed. 2004).

2       The court finds and concludes that counsel's incurred expenses include fees

3  charged by experts and consultants, costs of legal and factual research, filing/witness

4  fees, fees for mediation services, transportation charges, costs associated with

5  photocopies, printing, and scanning of documents, postage and telephone charges, and

6  costs of messengers and express services.  These expenses were reasonably incurred in

7  light of the work performed, the issues presented, and the results obtained.  The expenses

8  for which class counsel seek reimbursement are the type of expenses routinely charged to

9  hourly-paying clients.  The court finds and concludes that counsel's request for expense

10 reimbursement in the amount of $62,207.09 is reasonable and is approved.

11 **H.    Manner of Payment**

12      Clearwire shall pay the amounts awarded herein for attorneys' fees and expense

13 reimbursement to class counsel, as well as amounts due to eligible claimants, in

14 accordance with and at the times prescribed by the Settlement.  Several Objectors argue

15 that the court is forbidden from granting a single fee award and must instead allocate it

16 among the firms involved in the litigation, but they do not point to any support in Ninth

17 Circuit law or common practice, nor can the court find any.  (*See* Objections (Dkt. # 76)

18 at 4-5.)  Accordingly, The court rejects this argument.

19 //

20 //

21 //

22 //

ORDER- 20

1

### III.    CONCLUSION

2          For the foregoing reasons, the court GRANTS class counsel's motion for

3    attorneys' fees and awards the amounts of $1,887,792.91 as reasonable attorneys' fees

4    and $62,207.09 as reasonable expenses for a total award of $1,950,000.00.

5          Dated this 3rd day of May, 2013.

6

7

8          _____

9          JAMES L. ROBART
           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21