EXHIBIT 3

**No. 13-35491**

## United States Court of Appeals
## for the Ninth Circuit

GORDON B. MORGAN and JEREMY DE LA GARZA,
*Objectors – Appellants,*

ANGELO DENNINGS, et al., on behalf of himself and all others similarly
situated;
*Plaintiffs – Appellees,*

v.

CLEARWIRE CORPORATION,
*Defendant – Appellee.*

Appeal from United States District Court for the
Western District of Washington, Case No. C10-1859 JLR
The Honorable James L. Robart

## APPELLANTS' RESPONSE TO
## PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

Christopher A. Bandas (Admitted *Pro Hac Vice*)
Texas State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, Texas  78401
Telephone:  361-698-5200
Facsimile:  361-698-2222

*Attorneys for Appellants Gordon Morgan and Jeremy De La Garza*

## INTRODUCTION

The appellees below agreed to a settlement that paid the class less than $1.25 million in cash. Dkt. 127 at 6 (attached as Exhibit 1). Yet the attorneys and class representatives collected a total of $2 million, nearly twice what the class got and well over the 25% benchmark. *Id.* at 6, 21. This "claims made" settlement artificially deflates the payout by Defendant and maximizes the fees recovered by class counsel. The fees are disproportionate to the relief the class will receive, an inequity remedied only by the Court reducing the fee award and reverting the excess to undercompensated class members.

Appellants bring not just one, but *four* meritorious grounds for reversing the fee award; plaintiffs' motion to dismiss attacks several strawmen and falsely defames objectors and their counsel, but ignores three of these four issues.

*First*, the objectors' appeal raises the significant and meritorious question of law: can the parties artificially inflate the value of the settlement for purposes of calculating an attorney fee by including ***money paid to class members before a settlement is signed***, money retained by the defendant, and money paid to completely unrelated third parties? Only by including $1.9 million of illusory "recovery" that is not actually recovery was the district court able to assert that the settlement was really a $5.2 million settlement. Exh. 1 at 6-7. If settling parties can include imaginary recovery in the calculation a "percentage of recovery" approach, it completely destroys the rights of absent class members to be protected from an abusive and unfairly disproportionate fee request.

In *In re HP Inkjet Printer Litig.*, No. 11-16097, -- F.3d --, 2013 WL

1986396 (9th Cir. May 15, 2013) (petition for *en banc* review pending), this Court held the answer is no: a percentage-of-the-value calculation must be based on the amount the class actually receives. In *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), the Third Circuit held that a district court in calculating attorneys' fees must value a settlement based on what the class actually received, not on what the class could have hypothetically received. Plaintiffs' motion to dismiss attacks strawmen and fails to mention, much less distinguish, *Inkjet* and *Baby Products*.

Appellants also wish to ask this Court to rule that, under *Baby Products* and related principles, notice costs should not be considered "recovery" in the percentage-of-recovery method. Plaintiffs' motion to dismiss attacks fails to mention this argument or *Baby Products* in claiming there are no substantial issues.

Even if this Court disagrees with appellants on these first two questions and chooses to create a circuit split with the Third Circuit, the district court clearly erred in departing from the 25% benchmark. *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012), is directly on point. There, there was a cash settlement fund of $5.14 million, and the attorneys received $2 million in fees and expenses. *Id.* at 868. The Ninth Circuit held that the 39% attorney award was "clearly excessive," even though, as here, the settlement included changes in advertising. *Id.* at 863, 868. Here, the district court double-counted the injunctive relief in both the valuation of the settlement and in granting an upward departure based on the fact that there was injunctive relief. This third question, also not mentioned in plaintiffs' motion to dismiss, is substantive, and merits full briefing.

Furthermore, there is a fourth substantial question: Rule 23(h) requires a district court to set the payment for each class counsel. Can class counsel instead collude to divvy up the payments amongst themselves based on side agreements never presented to the district court? The Fifth Circuit says no. *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008) (reversing fee award due to failure of district court to permit objections by class members to *ex parte* delegation of fee award). If a district court is not permitted to delegate fee awards in an extrajudicial proceeding, then surely under *High Sulfur*, Milberg LLP, a private law firm, should not be permitted to perform such a delegation. As plaintiffs admit in their motion, this Circuit has not published a precedential opinion on the question whether to adopt the *High Sulfur* rule. Perhaps plaintiffs have arguments for why the Fifth Circuit is wrong, though their brief doesn't mention any. But a question of first impression is not "insubstantial."

Certainly, plaintiffs disagree that reversal is required; they make arguments for affirmance and for rules different than what Third, Fifth, and Ninth Circuit precedent says. But given that these courts of appeals have adopted the arguments objectors make for reversal here, it is impossible for plaintiffs to claim that the questions here are "insubstantial." Summary affirmance is thus inappropriate. A motion for affirmance "should be confined to … cases in which the insubstantiality is manifest from the *face of appellant's brief*." *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (emphasis added); *accord Page v. United States*, 356 F.2d

3

337, 339 n.1 (9th Cir. 1966).[1]

The motion to dismiss should thus be denied for these four independent reasons.

## Background:
## Attorneys get $2 Million, Class Members Get $1.25 million

On August 6, 2012, the parties agreed to a settlement. Dkt. 61-1 (attached as Exhibit 2) ("Settlement"). The main relief in the Settlement for the Class was a claims process that permitted class members to make a claim for a "Distribution Amount" that was a fraction of their alleged damages. Settlement §1.03.

---

[1] Plaintiffs make much hay about the fact that this Court summarily affirmed the separate appeal from the settlement approval. But at the time plaintiffs argued that there was no *Bluetooth* problem because the district court had the discretion to fix problems with the settlement by reducing what appellants called an excessive fee request in a future fee decision. Plaintiffs can't have it both ways, arguing that the fee problem can be considered in the future, and now that the future has arrived, arguing that the fee problem has already been resolved. The fee decision appealed from contains multiple errors of law and fact that this Court never had a chance to consider, and the earlier summary affirmance is entirely irrelevant to a decision that did not even exist when that affirmance issued.

Moreover, that summary affirmance was inconsistent with Ninth Circuit law. *Inkjet, supra*, slip op. at 4 (reversing settlement because of unreasonable fee request) (*citing Bluetooth*, 654 F.3d at 945-46 (noting that vacatur of a fees award necessitates invalidation of a settlement approval order where the parties "expressly negotiated" a potentially unreasonable amount of fees)). Appellants suggest that this Court erred in summarily affirming settlement approval until there were findings regarding the fee request, because under *Bluetooth*, and now confirmed by *Inkjet*, the fairness of the settlement is tied up in the self-dealing by class counsel in their excessive fee request where they receive more cash than the class does. The class members wounded by class counsel's self-dealing are the victims.

The claims process was sufficiently burdensome that fewer than 80,000 class members—three percent of the class—made valid claims, receiving approximately $1.248M in cash, an average of about $16 a class member. Exh. 1 at 6-7.[2] But to justify a Rule 23(h) award of $2 million, class counsel argued that the settlement value should include "ETFs that Clearwire has already waived or will waive" under §5.03 of the Settlement. Months after the fairness hearing, with no opportunity for objectors to respond, class counsel claimed that "[t]his benefit is impossible to quantify with certainty" but estimated that the "dollar amount of ETFs to be avoided in the future would be *up to* $1,418,518." Dkt. 86 at ¶ 12 (attached as Exhibit 5) (emphasis added). Based on this hypothetical guess that class members ***might*** in the future make "up to $1,418,518" in future claims, the district court held that the benefit actually ***was*** $1,418,518. Exh. 1 at 6. Adding in an extraordinary $513,513 for settlement administration expenses paid to a third party—forty cents for every dollar actually paid to class members—and including another $95,174 in claims that ***were not paid*** but might be if class members jumped through the additional hoops imposed by the settlement administrator—the district court held that the settlement was worth $5.276M total, and then awarded

---

[2] By coincidence, class-action expert Ted Frank, who has won multiple appeals of settlement approval in the Ninth Circuit and has expressed to appellants' counsel an interest in briefing and arguing this appeal, predicted precisely this paltry $1.25 million result in a blog post on October 17, 2012, over two months before the fairness hearing. Dkt. 76 at 2-3 (attached as Exhibit 3) (quoting http://www.pointoflaw.com/archives/2012/10/dennings-v-clearwire-corporation-class-action-settlement.php). In that post, Frank concluded "Over a million dollars that should be going to class members will instead be going to attorneys."

36% of that sum to the attorneys. It justified the upward departure from the 25% benchmark to 36% by arguing that the injunctive relief under §5.03 was valuable but impossible to quantify—even though it already included a hypothetical maximum estimate of the value of the injunctive relief in its calculation of the settlement value. *Compare* Exh. 1 at 16 *with* Exh. 1 at 7.

Meanwhile, under §4.02 of the Settlement, it is the law firm of Milberg, rather than the district court, that decides which law firms get paid how much out of a fee award. Objectors argued that this violates Rule 23(h) and Fifth Circuit precedent. Without mentioning, much less distinguishing, the Fifth Circuit precedent or Rule 23(h), the district court okayed this violation on the grounds that the Ninth Circuit had not yet said otherwise. Exh. 1 at 20.

This timely appeal followed. If fees are reduced on remand, class members' recovery will be increased *pro rata* by potentially "[o]ver a million dollars that should be going to class members." *See* Frank, *supra*.

## I.   Summary Affirmance Is Only Available When It Is "Manifest" That Issues Are "Insubstantial."

Summary affirmance is available only if "it is manifest that the questions on which the decision in the appeal depends are so insubstantial as not to justify further proceedings." Ninth Circuit Rule 3-6. "[M]otions to affirm should be made only *after the appellant's brief is on file* and only where... the insubstantiality of the questions raised on appeal is clearly ascertainable from an examination of the record and *the opening brief*." *Page v. United States*, 356 F.2d 337, 339 n.1 (9th Cir. 1966) (emphasis added). Accord United *States v. Hooton*, 693 F.2d 857, 858

(9th Cir. 1982) ("should be confined to ... cases in which the insubstantiality is manifest from the face of appellant's brief."). *Hooton* further stated that "not every case in which appellant files an unimpressive opening brief is appropriate for summary affirmance." Id. at 858 (9th Cir. 1982). If filing an "unimpressive opening brief" may not constitute sufficient cause to grant a motion for summary affirmance, surely the Court should not grant a motion where appellants have not had a fair chance to file a merits brief.

Plaintiffs' motion—filed ***before*** appellants had an opportunity to file their merits brief—unfairly multiplies proceedings by requiring appellants to brief these issues twice, the first time on only two weeks' notice. Appellants' merits brief will be even more substantial than the rushed treatment they are forced to give these issues here: as discussed below, the district court committed multiple reversible errors. Certainly, plaintiffs throw a lot of mud making personal attacks on appellants and their counsel, and refuting strawmen that will not be raised in the merits briefing. No doubt, with the last word in their reply brief, they will raise brand new arguments attempting to explain away the reversible errors discussed in necessarily cursory fashion in this brief. But all of this just demonstrates that there are substantial issues—including issues that plaintiffs admit are of first impression in this Circuit—that require merits briefing to fully and fairly address.

Yes, under Rule 3-6, summary affirmance is available at any time, not just after briefing. But summary affirmance before briefing has taken place is meant for cases where there is plainly no appellate jurisdiction under Fed. R. App. Proc. 4 or where the $455 filing fee has not been paid but the clerk has not yet acted to

dismiss the appeal. There's no claim of such a defect here. Instead, class counsel is making merits-based arguments for affirmance, but they're not even addressing the arguments appellants are actually making. The time for such arguments is in their merits briefs, not in a motion for summary affirmance.

## II.    This Appeal Is Meritorious.

Appellants have filed a meritorious appeal: the district court's fee award contradicts not just the appellate decisions of multiple circuits but its own reasoning. As discussed in Section II.A.3 below, the district court opinion, on its face, contradicted itself and is thus clearly erroneous.

### A. The Attorneys' Fees are Impermissibly Disproportionate Relative to Class Recovery.

The Ninth Circuit has a 25% benchmark for attorney awards as a percentage of *recovery*. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). It is a sign of unfairness in the fee request when it is disproportionate to class recovery. *Id.* at 947.

The district court held that the settlement was worth $5.276M. As shown below, this is legal error: it included $1.5 million in hypothetical recovery that class members *might* make, an approach that this Court rejected in *Inkjet* and the Third Circuit rejected in *Baby Products*. But even if the $5.276M number was legally correct, the district court's reasoning for a 25% departure was clearly erroneous.[3]

---

[3] Separately, the district court erred in applying Washington state law on attorneys' fees to a nationwide class. As the Supreme Court has repeatedly held, under 28 U.S.C. §2072, federal procedural law trumps state procedural law. *Shady*

## 1. It is error to include hypothetical recovery in a percentage of the recovery cross-check.

Class counsel submitted evidence that the future value of §5.03 of the Settlement was potentially "*up to* $1,418,518." Exh. 3 at ¶ 12 (emphasis added). The district court responded by valuing the §5.03 relief at exactly $1,418,518. Exh.1 at 6. In addition, the settlement administrator rejected over $95 thousand in claims from class members. The district court assumed, without any evidence how many rejected claims ultimately result in payment, that this was actually a class benefit to be counted dollar for dollar.

This is wrong. *Baby Products* is instructive. The *Baby Products* settlement established a $35.5 million fund that class members could make claims from; class counsel then requested a percentage of the $35.5 million fund, claiming that this was the "recovery" in the percentage-of-recovery method. 708 F.3d at 170. On appeal, objectors (including one represented by counsel in this case) argued that this was incorrect: the *actual* recovery of the class was much smaller because of the burdensome claims process—as it turned out, a mere $3 million, much less than the attorneys would be paid. *Id.* at 169-70. The Third Circuit agreed and

---

*Grove Orthopedic Associates, P.A. v. Allstate*, 130 S.Ct. 1431 (2010) (federal court cannot apply N.Y. Civ. Prac. Law Ann. §901(b) to abrogate plaintiffs' rights to proceed under Rule 23); *cf. also Makaeff v. Trump University*, No. 11-55016, 2013 U.S. App. LEXIS 7719 (9th Cir. Apr. 17, 2013) (Kozinski and Paez, JJ., concurring). This is a fifth substantive issue that needs full merits briefing, because appellants do not have the space in a Rule 27 motion response to fully develop the issue here and explain why, in the unique context of a fairness hearing, this is a procedural, rather than a substantive, question. This brief is under 6,000 words, and written in under two weeks, compared to 14,000 words for a merits brief not due until September.

reversed: a district court must consider the amount the class *actually* receives, not just what the class might potentially receive.

The Ninth Circuit agrees: "although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *Inkjet*, slip op. at 18. *Inkjet* reversed because the district court based its award on potential value of coupons rather than actual redemption value; here, the district court based its award on the potential value of future waivers, rather than the actual value, which will almost certainly be much less: class members (and future Clearwire customers who aren't class members, but whose waivers are being included in the calculation of the class benefit) will have to know which magic words to invoke to customer-service representatives to get a waiver, and the settlement provides no enforcement or audit mechanism to ensure that the representatives tell customers of the waiver availability. Moreover, with their $2 million in hand, class counsel has no incentive to put any effort to ensure continued enforcement: they've already been compensated as if Clearwire pays 100% of waiver claims.

Thus, the correct rule of law is that percentage of recovery is to be based on the *recovery*, not some imaginary number inflating what recovery might be. The 2003 amendments to Rule 23 and other recent authority make it clear that this is not just good law, but good public policy. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.*

("fundamental focus is the result *actually achieved* for class members" (emphasis added)); American Law Institute, *Principles of the Law of Aggregate Litigation*, §3.13 (2009); Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits *actually delivered*." (emphasis added)).

The district court did not do this when calculating the attorney award. Not only is this is not a manifestly insubstantial issue, but it is an issue that merits reversal and remand.

### 2. It is legal error to include notice and administration costs as "recovery."

The notion that class counsel is entitled to count the costs of notice and claims administration as a benefit to the class is fundamentally mistaken and poor public policy. Awarding attorneys' fees regardless of whether settlement money is paid to settlement administrators, the postal service, or to the class members (who are the attorneys' actual putative clients) creates poor incentives that contradict the purposes behind this Circuit's "percentage of the recovery" fee approach.

Plaintiffs' argument is undoubtedly based on *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003), which asserted "The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class." *Staton* cited no authority and provided no reasoning for this *dicta*. In the context of the *Staton* opinion—which found the attorneys' fee award in that case impermissibly high even including the costs of notice as a class benefit—it appears that this Court was merely assuming that the costs of notice was a class benefit *arguendo*.

11

This Court should reject the argument for three reasons: *first*, as a matter of law, post-settlement notice is something that is done for the benefit of *defendants*, rather than the class, and thus should not be double-counted as a class benefit; *second*, the *Staton* holding, carried as far as plaintiffs would, has absurd results that contradict Rule 23(e) and the Class Action Fairness Act; and *third,* as *Baby Products* notes, class members are not indifferent between money going to class members and money going to people who are not class members.

The sole consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member "later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Defendants therefore have every incentive to ensure that class notice meets constitutional requirements. This is not a hypothetical concern: defendants have found themselves on the end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action) (citing cases); *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same). Notice benefits the defendants by creating claim preclusion that would not otherwise exist. Notice enables class members to make

claims, but those amounts claimed are already included in the final tabulation of settlement value, there is no need for double-counting by including the costs of the notice in addition to its yield. As such, the expense of class notice should not be counted as a benefit on the class's side of the ledger.

Indeed, if this Court adopts the plaintiffs' view about the value of class notice, *the very act of settlement* could be considered "consideration"—even if class members get nothing in exchange for waiving their rights—simply because they received a letter in the mail notifying them of the settlement. For example, one could imagine a nationwide zero-dollar settlement where the defendant is entitled to deduct half the cost of notice from individual customers' accounts to pay for attorneys' fees. This would normally be prohibited by 28 U.S.C. §1713, which bars settlements that leave class members worse off. But under plaintiffs' reading of the law, the very act of notice "substantially outweighs the monetary loss," so the skimming of class members' accounts would be permissible.

Similarly, one can imagine a settlement that requires the defendant to spend $30 million to provide personal service to every class member, hand-delivering an eight-page letter that informs class members that all of their claims will be waived and the class will receive nothing, but the attorneys will get $10 million because they provided such good notice.[4] Such examples demonstrate the absurdity of

---

[4] This example is extreme—but the truth in this case isn't much better. The settlement administrator will collect over $500 thousand for distributing $1.25 million in cash. (Recall that the remaining benefits will supposedly be delivered via customer-service representative.) Combined with the $2 million attorney award (based in part on a 37% commission on the payment to the settlement administrator), class counsel and their settlement-administrator friends have

counting notice as a class benefit.

The recently decided *In re Aqua Dots Prods. Liability Litig.* is informative: the Seventh Circuit recognized that items such as the notice and administration expense of class action litigation are social *costs* that present an argument against class certification; if class notice was a class benefit, *Aqua Dots* would have reached the opposite result. 654 F.3d 748, 751 (7th Cir. 2011) (Easterbrook, J.). *Cf. In re Hotel Tel. Charges*, 500 F.2d 86, 91-92 (9th Cir. 1974) ("Whenever the principal, if not the only beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, *a costly* and time-consuming class action is hardly the superior method for resolving the dispute."). *Cf. also* Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U. Chi. L. Rev. 1, 28 (1991) (social benefits of class action notice in "large-scale, small-claim class action" "appear minimal at best").

*Baby Products* also leads to this conclusion. In response to objector-appellants' argument that a district court should consider whether to discount an attorney-fee award when a substantial portion of the settlement is going to non-class members, the Third Circuit agreed that "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." 708 F.3d at 178. Yet if *cy pres* recipients should not be *per*

---

already received two dollars for every dollar class members will eventually receive. (Under Settlement §4.02, Milberg has already been paid while this appeal is pending, despite the strong likelihood that this Court will reverse.)

*se* counted dollar-for-dollar in settlement value, what are we to say about third-party settlement administrators, who do not even have the fig leaf of being the "next best" recipients of the class's money?

The costs of notice are there to protect the defendants' interests, and are not by themselves something that class counsel should be allowed to use to artificially inflate the size of the class benefit and thus the permissible attorneys' fee. Appellants will ask for this Court to rule on this issue of first impression. Plaintiffs did not discuss this substantive issue in the motion for summary affirmance. They will no doubt make counterarguments that they raise in their reply brief for the first time. But the issue is not so manifestly insubstantial that merits briefing will not be helpful.

### 3. In the alternative, the district court clearly erred and double-counted in rationalizing a substantial upward departure from the 25% benchmark.

Even if the district court did not commit legal or clear error in valuing the "recovery" to include money that will never be recovered, its ultimate attorney award engaged in reasoning that was clearly erroneous.

The district court's cross-check noted that its fee award was 35.78% of a settlement it said to be worth $5.276 million. But it concluded that an upward departure from the 25% benchmark was appropriate because §5.03 of the Settlement awarded injunctive relief that was "impossible" to quantify. Exh. 1 at 16. As the district court correctly said, quoting the Ninth Circuit, "When courts use the percentage method for determining fees, non-quantifiable injunctive relief

should not be included in the value" of a settlement. *Id.*

But the $5.276 million figure ***included the value of the injunctive relief that the court held impossible to quantify!*** Exh. 1 at 6 (valuing that relief at over $1.4 million). *See generally* Section II.A.1, above. By the district court's own admission, it committed an error of law.

As a result, there was double-counting. Under the percentage-of-recovery approach, one multiplies (*i*) the value of the recovery by (*ii*) a percentage figure. Under *Staton*, a district court can engage in an upward departure in factor (*ii*) to compensate class counsel when a court cannot include the value of meaningful relief in factor (*i*). But the district court incorrectly upped the attorney fee award by valuing the injunctive relief in both factors.

Either the §5.03 Settlement relief was impossible to quantify, and should not have been included in the $5.276 million figure (in which case the $2 million award is well over 50% of the total settlement value, and should have been substantially reduced under *Dennis*, which held that 39% of a settlement fund was "clearly excessive" even when there was injunctive relief relating to future advertising), or the §5.03 Settlement relief was already counted in the value of recovery, in which case there should not have been an upward departure from twenty-five percent.[5] Either way, the fee award is clearly erroneous; moreover, it is plainly not a "manifestly insubstantial" issue, no matter what brand new

---

[5] Of course, it is legal error to say that an "injunction" that has a empirically testable quantifiable value is "impossible" to quantify. It should be quantified at the actual value to the class exercising its right to the injunctive relief. Section II.A.1, above.

arguments in their reply brief class counsel makes for double-counting.

## B. The Fee Distribution Violates Rule 23(h).

Appellants raise on appeal the issue of the impermissible assignment of $2 million, which illegally divests the district court of its responsibility to determine attorneys' fees. *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220 (5th Cir. 2008), would require reversal. In that case, the Fifth Circuit focused on the procedure used in allocation of attorneys' fees among plaintiffs' attorneys, stating that the court must "closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards." *Id.* at 227 (5th Cir. 2008). For a district court to allocate fees in an *ex parte* proceeding was "inconsistent with well-established class action principles and basic judicial standards of ... fairness," namely in an *ex parte* proceeding. *Id.*

Here, the allocation in this case is made in an *out of court* backroom agreement among class counsel without *any* judicial involvement. Settlement §4.02. It is impossible to reconcile this with the *High Sulfur* requirement that the allocation be done openly by the court. Class counsel's assertion that there is no dispute amongst the class counsel who will get the money is irrelevant. If one of the law firms has secretly agreed to accept less than lodestar or a smaller multiplier, it is the class that is entitled to that giveback, not the law firm that has secretly extracted a return greater than that approved by the Court. *Cf. Bluetooth,* 654 F.3d at 949 (givebacks to parties instead of class is a sign of impermissible self-dealing because "there is no apparent reason the class should not benefit from the excess

17

allotted for fees"); *cf. also* Fed. R. Civ. Proc. 23(e)(3) (forbidding secret side agreements in class action settlements). Rule 23(h) and this circuit's precedents explicitly require a court to make the distribution. *E.g.*, *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) (fee award is to be determined by a district court, not by the agreement of the parties). As class counsel admits, the Ninth Circuit has never explicitly affirmed an attempt by class counsel to evade the Rule 23(h) process over objection to the improper procedure.

The only reason the district court gave for rejecting this objection is that the Ninth Circuit had not yet ruled on it. But there is no reason to create a circuit split with the Fifth Circuit. The Ninth Circuit creates a circuit split "only after the most painstaking inquiry." *Zimmerman v. Oregon Dep't. of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999). This question of law, reviewed *de novo*, is an issue of first impression in this circuit. The "painstaking inquiry" this circuit requires on *de novo* review means that appellants' argument is not manifestly insubstantial.

## III. Factually False Ad Hominem Arguments Provide No Grounds for Summary Affirmance.

With remarkable *chutzpah*, Milberg—formerly Milberg Weiss, a law firm whose name partner went to prison for illegal kickbacks—impugns the motives of appellants' counsel. They suggest he is bringing a meritless objection to "extort" class counsel. The insinuation is knowingly factually false: class counsel fails to disclose to this Court that appellants' counsel offered to stipulate to an injunction forbidding him from settling his appeal for money. Dkt. 137 (attached as Exhibit 4). If class counsel were really afraid that appellants' counsel was trying to settle

his case for money as a hold-up, they would have agreed to the stipulated injunction; the fact that they both refused and are now misrepresenting the facts to this Court shows that what they're really afraid of is that appellants' counsel will succeed in a meritorious objection, as he did in *Baby Products* and *Dennis*.[6]

More importantly this factual dispute over appellants' counsel's motives is completely legally irrelevant. Under Ninth Circuit law, a bad motive and a party's litigation history does not abrogate the legal right to make a meritorious argument. *Antoninetti v. Chipotle Mexican Grill* is directly on point. 643 F.3d 1165 (9th Cir. 2010). Plaintiff Antoninetti was a serial Americans with Disability Act litigant; a district court refused to grant him an injunction he was entitled to because it questioned his sincerity: "Plaintiff has sued over twenty business entities for alleged accessibility violations, and, in all (but one) of those cases, he never returned to the establishment he sued after settling the case and obtaining a cash payment." 643 F.3d at 1175. Even though the grant of injunctive relief is a question of equity, the Ninth Circuit reversed. For the legislative regime to work, "it may indeed be necessary and desirable for committed individuals to bring serial

---

[6] Class counsel also unfairly portray the deposition testimony of the objectors. The fact that lay witnesses are relying upon their counsel to make technical legal arguments hardly means that their objections are improper. If one were to depose the ***twenty-five*** class representatives—each of whom received $2000 in "incentive" payments, more 4000 times what the average class member received, and 125 times what the average class claimant received—one would be hard pressed to find one who understood why class counsel are claiming they are permitted to pay themselves more money than their putative clients are receiving in this settlement. Under Rule 23(e)(5), ***any*** class member may object, not just those with legal training to meaningfully answer technical legal questions in a deposition.

litigation." *Id. Accord Molski v. MJ Cable,* 481 F.3d 724 (9th Cir. 2007); *see also Safeco Ins. Co. v. AIG, Inc.,* 710 F.3d 754 (7th Cir. 2013) (endorsing settlement of objection at appellate level).

*Antoninetti*'s reasoning is also true under Rule 23(e)(5). For the same reason class action litigation is often superior to other forms of litigation, absent class members do not have the financial incentive to object: often, just the cost of postage exceeds the amount at stake. Absent class members cannot be protected unless experienced counsel for objectors can raise objections to the multiple violations of Rule 23 that occurred here. The improper *ad hominem* attacks against the objectors and their counsel influenced the district court's willingness to approve an abusive fee request at the expense of the class. They should not preclude this Court's addressing seriously problematic errors of law on the merits.

Appellants oppose class counsel's motion for judicial notice, which is improper under F.R.E. 201. While a court may take judicial notice that a filed document exists, a previously filed court document is not competent evidence of the truth of the matters asserted therein solely because the court has taken judicial notice of its existence. *Nantucket Investors II v. California Federal Bank*, 61 F.3d 197, 204 (3d Cir. 1995).

## CONCLUSION

The motion should be denied: not only are the issues here not manifestly insubstantial, reversal will be manifestly required after merits briefing if this Court is to avoid a circuit split.

DATED:  July 8, 2013

Respectfully submitted,

_/s/ Christopher A . Bandas_____

Christopher A. Bandas
(Admitted *Pro Hac Vice*)
Texas State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, Texas  78401-0353
Telephone:  361-698-5200
Facsimile:  361-698-2222

*Attorneys for Appellants Jeremy De La Garza and Gordon Morgan*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via U.S.P.S. First Class mail, postage prepaid, to the following participant at the address listed below:

Robert Prior
2016 E. 6th Street
Vancouver, WA 98661

*/s/ Christopher A. Bandas*
Christopher A. Bandas