Honorable James L. Robart

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ANGELO DENNINGS, et al., | |
| Plaintiffs, | NO. C10-1859-JLR |
| v. | DECLARATION OF MICHAEL IARIA REGARDING MOTION TO CONTINUE SHOW CAUSE HEARING |
| CLEARWIRE CORPORATION, | |
| Defendant. | |

Michael Iaria states as follows:

1. I was contacted by Christopher Bandas by telephone late in the morning of Thursday, July 26, 2013 about representing him at a sanctions hearing in this Court the following Thursday, August 1, 2013. This contact, my first with Mr. Bandas, was preliminary and exploratory for both of us, and did not result in a decision by either of us regarding my representation of him.

2. During the course of the day, I read a few of the pleadings filed in the case, including the Court's show cause order entered on July 19, 2013 at Dkt. No. 154. I discussed the matter with my associate, Susan Wilk, and we both interpreted the show cause order as calling for a hearing on civil contempt. *See Motion and Supporting Memorandum to Continue Show Cause Hearing.* While the type of work that I would want to present to a court made me feel that a continuance of the hearing date would be ideal, I also felt that, if the Court would not continue the hearing, given the limited scope of the potential civil contempt sanctions and of the factual issues related to such potential sanctions, I could be ready for the hearing as scheduled.

3. I was engaged by Mr. Bandas late on Friday afternoon. He did not want a continuance of

DECLARATION OF MICHAEL IARIA
REGARDING MOTION TO CONTINUE
SHOW CAUSE HEARING, Page - 1

LAW OFFICE OF MICHAEL IARIA PLLC
1111 Third Avenue Building
Suite 2220
Seattle, Washington 98101
206.235.4101

the hearing, and, as I felt I could be ready by August 1st with substantial effort by me and Ms. Wilk, I did not seek to move the hearing date. Shortly after I was engaged, I filed a Notice of Appearance, which, according to the ECF system, was a "transaction entered ... at 5:21 p.m." Dkt. No. 157.

4. Ms. Wilk worked through the weekend preparing a memorandum for the court. I changed my weekend plans to be able to assist her. Since we viewed the hearing as one involving civil contempt, which does not turn on good faith or bad faith, and which, as we saw things, allows for sanctions that are either coercive or remedial but not punitive, we made tactical judgments with that target in view. We made judgments about which facts needed to be disputed, the investigation and research necessary to dispute those facts that would be in issue, and the factual and legal concessions we could make without harming our client. Indeed, since Mr. Bandas had already posted the appellate bond, we viewed the coercive-purgative remedy of civil contempt as not necessarily available and focused our efforts on dealing only with issues pertaining to remedial sanctions. Given the target we felt was in front of us, we made decisions, in my view and experience reasonable, to forego investigation and research relevant to good or bad faith, which, as we saw it, would have no bearing on remedial sanctions.

5. Ms. Wilk and I endeavored to have the memorandum ready for filing on Tuesday morning, July 30th. We exchanged four drafts and continued, based on the assumption that only remedial sanctions were available, to hone the presentation and a proposed disposition. We missed our morning deadline, but were literally minutes away from filing the memorandum at about 1:00 p.m., discussing only the technical ECF-issue of how to make the docket indicate that the pleading was on behalf of Mr. Bandas personally and not the Objectors, when, at 1:06 p.m., according to the ECF notation, the Court's *Notice to Objector's and Counsel Regarding Sanctions* was filed. Dkt. No. 158.

6. We read the notice and did not file the memorandum, as it was no longer sufficient. Our *Motion and Supporting Memorandum to Continue Show Cause Hearing*, filed in response to the notice, addresses various legal issues raised by the notice, and I will not repeat that analysis here. While I feel strongly about the correctness of our interpretation of the law regarding sanctions contained therein, I will not protest here that no one could possibly have a different interpretation. I do declare, though, under penalty of perjury, that our interpretation of the law led us to conclude that the July 19th show cause order contemplated only civil sanctions, and that we formulated our approach to the show cause hearing accordingly.

7. The Court's notice dated July 30th makes clear what was not previously clear to me and Ms. Wilk: that the hearing contemplated by the Court is one in which punitive, not merely coercive or remedial sanctions are in play. It may be that the Court intended, in its July 19th order, that punitive sanctions be available, and sought to clarify the issue, or it may be that the Court simply changed its position. In this declaration, I challenge neither the

**DECLARATION OF MICHAEL IARIA REGARDING MOTION TO CONTINUE SHOW CAUSE HEARING, Page - 2**

LAW OFFICE OF MICHAEL IARIA PLLC
1111 Third Avenue Building
Suite 2220
Seattle, Washington 98101
206.235.4101

clarification nor the change, whichever is the case. I do respectfully state, however, that until 1:06 p.m. on July 30th, neither Ms. Wilk nor I believed we were on notice that criminal punishment was a possible outcome of the hearing slightly more than two days away, on August 1st at 2:00 p.m.

8. I suppose it might be argued that there is no real difference between the two hearings, the factual and legal issues involved, and the preparation necessary to litigate those issues. I would point out that the core constitutional protections afforded an alleged contemnor facing punishment – a criminal sanction – but not to one facing coercive or remedial – that is, civil – sanctions, are strong evidence of the difference between the two. It might also be argued that, while bad faith is not relevant to the issue of whether to find a person in civil contempt, it is potentially related in some way to the civil sanction imposed or to the way in which a court views an alleged civil contemnor, and thus the scope of the hearing described in the Court's notice dated July 30th is no different than the hearing we anticipated based on the show cause order dated July 19th. Whatever the merits of such an argument, it does not take into consideration my role as lawyer to make reasonable tactical judgments about what investigation and preparation is necessary or can be foregone based on the notice we assumed were given.

9. Based on my assessment of the landscape depicted in the Court's July 19th order, I, not Mr. Bandas, made certain judgments, including one that it was not necessary to fully investigate the issue of bad faith or to fully challenge it in court, as Ms. Wilk and I viewed it as not fully relevant to the presentation we wanted to make. We certainly did not contemplate presenting testimony on this point. I believe it is entirely unreasonable for a lawyer in my position to not fully investigate all aspects of bad faith. It is equally unreasonable to not fully consider presenting the testimony or affidavits of witnesses, including experts, on various aspects of the issue. Only then can reasonable tactical judgments be made.

10. Additionally, the issue of mitigation is in play, now that punishment is a potential sanction. The Court's notice dated July 30th specifically states that monetary sanctions (that is, a punitive fine), if appropriate, will be determined based on aggravating and mitigating factors. Before that notice was provided, I made the judgment that a mitigation investigation was essentially unnecessary. Now, as I would in any case in which my client faced punishment, I must investigate mitigation, which involves any aspect of the alleged contumacious conduct or of the alleged contemnor's life that calls for a reduced punishment. In my criminal defense practice, and especially in my capital defense practice, this investigation would be far-ranging and lengthy. The death penalty is not in issue here, so I agree that I do not need to perform the type of work associated with such cases. Still, a punitive contempt sanction would be a stain that would follow Mr. Bandas and have a substantial impact on his career. Given the very real and serious potential consequences at stake here based on the Court's July 30th notice, I can say that I have not performed the mitigation investigation appropriate to the issues now at hand, and I have

DECLARATION OF MICHAEL IARIA
REGARDING MOTION TO CONTINUE
SHOW CAUSE HEARING, Page - 3

LAW OFFICE OF MICHAEL IARIA PLLC
1111 Third Avenue Building
Suite 2220
Seattle, Washington 98101
206.235.4101

not made a reasoned tactical choice to forgo such investigation. It simply has not been done and, in my experience, cannot be done before August 1st.

11. Finally, I want to point out that the decision to seek a continuance is mine and Ms. Wilk's, not that of Mr. Bandas, who will be in Seattle on Wednesday, July 31st in order to appear in court on August 1st, if necessary. If I misread the Court's show cause order dated July 19th, or if I made unreasonable assumptions and tactical judgments about the scope of the hearing contemplated by that order, I apologize to the Court, which I understand wants expeditiously to address the show cause issues. In the end, though, given what is at stake, I need more time to represent my client properly.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

       S/Michael Iaria
       Michael Iaria, signed at Bainbridge Island, WA on July 30, 2013

**DECLARATION OF MICHAEL IARIA REGARDING MOTION TO CONTINUE SHOW CAUSE HEARING,  Page - 4**

LAW OFFICE OF MICHAEL IARIA PLLC
1111 Third Avenue Building
Suite 2220
Seattle, Washington 98101
206.235.4101

CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2013, I electronically filed the foregoing with the Clerk of the Court and also served it using the CM/ECF system.

s/Michael Iaria
Michael Iaria

DECLARATION OF MICHAEL IARIA REGARDING MOTION TO CONTINUE SHOW CAUSE HEARING, Page - 5