```
 1                UNITED STATES DISTRICT COURT

 2               WESTERN DISTRICT OF WASHINGTON

 3                        AT SEATTLE

 4

 5   ANGELO DENNINGS, et al., )   NO. C10-1859JLR
                              )
 6        Plaintiff,          )
                              )   August 1, 2013
 7   vs.                      )   Seattle, Washington
                              )   2:00 p.m.
 8   CLEARWIRE CORPORATION,   )
                              )
 9        Defendant.          )

10

11              TRANSCRIPT OF SHOW CAUSE HEARING
            BEFORE THE HONORABLE JAMES L. ROBART
12             UNITED STATES DISTRICT COURT JUDGE

13
     For the Plaintiff Class:   MR. CLIFFORD A. CANTOR
14                              627 208th Ave., SE
                                Sammamish, WA 98074
15                              (425) 868-7813
         and
16                              MR. FELIX G. LUNA
                                1501 4th Ave., Ste. 2800
17                              Seattle, WA 98101-1609
                                (206) 624-6800
18

19   For the Defendant:         MR. CHRISTOPHER BANDAS
                                500 N. Shoreline Blvd., #1020
20                              Corpus Christi, TX 78401

21       and                    MR. DONALD W. HEYRICH
                                1325 4th Ave. Ste., 540
22                              Seattle, WA 98101-2554
                                (206) 838-2504
23
         and
24                              MR. STEPHEN M. RUMMAGE
                                1201 3rd Ave., Ste. 2200
25                              Seattle, WA 98101-3045
                                (206) 757-8136
```

```
 1   APPEARANCES (Continued):
     For Mr. Bandas:            MR. MICHAEL IARIA
 2                              MS. SUSAN F. WILK
                                1111 3rd Avenue, Ste. 2220
 3                              Seattle, WA 98101-3213
                                (206) 235-4101
 4

 5   Court Reporter:            Kari Davidson, CSR
                                3641 N. Pearl Street, Bldg. D
 6                              Tacoma, WA  98407

 7   (Proceedings recorded by mechanical stenography; transcript
     produced with aid of computer.)
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          MADAM CLERK:  All rise, please.  The United States
2     District Court is now in session, the Honorable James L.
3     Robart, Judge, presiding.
4          THE COURT:  Please be seated.  The clerk will call
5     this matter.
6          MADAM CLERK:  Case C10-1859, Angelo Dennings versus
7     Clearwire Corporation.
8        Counsel, please make your appearances for the record.
9          MR. CANTOR:  Good afternoon, Your Honor, Cliff
10    Cantor for the Plaintiff Class.
11         MR. LUNA:  Felix Luna with the Plaintiff Class.
12         MR. RUMMAGE:  Steve Rummage, Your Honor, for the
13    Defendant Clearwire.
14         THE COURT:  All right.
15         MR. IARIA:  Good afternoon, Your Honor, Mike Iaria
16    for Mr. Bandas personally, and this is Susan Wilk, who is
17    with me here on behalf of Mr. Bandas.
18         MR. BANDAS:  Good afternoon, Your Honor,
19    Christopher Bandas.
20         MR. HEYRICH:  Good afternoon, Your Honor, Donald
21    Heyrich for Defendant Clearwire.
22         THE COURT:  Thanks.  Counsel, we are here for a
23    Show Cause Hearing generated by Docket Entry 154, Order to
24    Appear and Show Cause.  What I said at that time was,
25    Counsel for the Objectors, you are ordered to appear in

1  Court and show cause why you should not be sanctioned for
2  failing to comply with the Court's order of July 9, 2013.
3  In that order, the Court directed Objectors to post an
4  appeal bond within a base or withdraw that appeal as found
5  in the record, Docket 149.  They were specifically warned
6  that, quote, "If the bond is not posted or the appeal
7  withdrawn within five days of the date of this order,
8  Objectors and Objectors' Counsel will be subject to
9  sanctions by the Court."  This warning was necessitated by
10 Objectors' conduct leading up to the order.  Despite the
11 warning, Objectors did not post the bond, nor did they
12 withdraw the appeal.
13     Instead, they've appealed the Court's July 9, 2013
14 order, and filed an emergency motion to stay the order.  The
15 9th Circuit denied that motion in the record at 153.  But
16 Objectors still did not post a bond or withdraw their
17 appeal.  As of the date of this Order, which was July 19,
18 2013, they had not complied.  Objectors and their counsels
19 now face sanctions accordingly.  The Court ordered
20 Objectors' Attorneys, Christopher Bandas and Donald Heyrich
21 to appear in person at 2:00 p.m. on Thursday, August 1st,
22 2013 and show cause why the Court should not impose
23 sanctions.  It is now 2:04 on August 1st.
24     Mr. Iaria, you are here on behalf of Counsel,
25 Mr. Bandas, would you care to offer argument before I rule?

1            MR. IARIA:  Yes, Your Honor.
2       May it please the Court, when I -- I first got into this
3    case, as my recent pleadings have indicated, I was operating
4    under a particular impression about the nature of the
5    sanctions that would be at issue.  And I was hopeful that I
6    could appear before, Your Honor, and, in effect, mediate
7    peace.  More recent notice of the Court has changed my
8    perception, obviously, of what is at stake here.  And I am
9    not here to reargue any of the things that I put in the
10   motion to continue, Your Honor, I'm not.  But it has changed
11   me from punitive peacemaker to back on my heels a bit.  And,
12   you know, I was prepared here to -- prepared to come here
13   and fully admit that the conduct did not comply with the
14   Court's order, and that there is not just cause for that
15   failure to comply.  The bond was posted late.  To let you
16   know of, you know, full expression of remorse and contrition
17   that I believe Mr. Bandas has, to let the Court know that I
18   think it has his full attention and that he gets it.  He got
19   it.  To accept responsibility on Mr. Bandas's behalf, so
20   local counsel is absolved, local counsel had no part in the
21   decision-making of the Court's Show Cause Order, nor did the
22   Objectors.  They relied upon Mr. Bandas's advice and
23   judgment, and they are not at fault here at all.  Mr. Bandas
24   assumes responsibility for -- to the extent that the Court
25   is willing to place things on -- completely on his

1  shoulders.  Mr. Heyrich and the Objectors, at least in our
2  view, bear no responsibility.
3      And, you know, we are prepared to come here and fully
4  accept remedial sanctions being associated with the late
5  posting of the bond.  The Court's notice doesn't change the
6  landscape a bit for us, and we have expressed our position
7  there.  But I guess we are still here suggesting that with
8  respect to remedial sanctions, we are ready to accept
9  responsibility for them.  But as a lawyer, I need to be
10 careful, because what appear to me to be punitive
11 sanctions -- and if they are not punitive sanctions, they
12 are of an order of magnitude different than mere
13 compensatory or remedial sanctions that are in play.  They
14 are an issue that the Court has graciously given us more
15 time to investigate partial evidence and present additional
16 argument.  And we would like to take that time to consult
17 with witnesses and to present additional evidence in writing
18 and additional briefing in writing before the deadline.  And
19 I will be asking for a little bit of an extension on that,
20 if the court is willing.
21          THE COURT:  Let me stop you, Mr. Iaria.  What --
22 yeah, what evidence is there?  I mean first off, I don't
23 know the difference between punitive sanctions and remedial
24 sanctions.
25          MR. IARIA:  A fine that is not associated with

1  compensation.  Remediating, say, attorney's fees, if the
2  affiant bears no association of out-of-pocket cost or work
3  expended or something like that, if it is deemed to be
4  vindication of the Court's authority, I believe in good
5  faith that that is a punitive sanction.  And a different
6  process is due, and it may have been given under the Court's
7  extension order, but I don't want to get into that.  I
8  believe a censure --
9          THE COURT:  I think you are going to need to, sir.
10 I mean you jumped in here at the last moment, which is fine.
11 Mr. Bandas -- I am delighted to see he's retained competent
12 counsel.  The first thing you tell me is this is a criminal
13 contempt, which it has absolutely no bearing on, and that
14 you need more time because it is criminal contempt and that
15 is a change in the landscape.  That's -- that's a silly
16 argument, and I think you now recognize it is a silly
17 argument, and you've abandoned it.
18     So what I want to know is -- I mean I issued an order
19 that needed your client, and the leading objectors that he
20 represented, needed to file an appeal bond.  There's a long
21 history that goes behind that, that caused the Court to
22 enter that order, including testimony from the Objectors,
23 that this was none of their doing.  Instead, nothing
24 happened.  And, you know, you went up to the Circuit and the
25 Circuit summarily rejected it.  Then we get this $2,000

1   token payment on the basis that your client feels that his
2   judgment is better than my judgment.  That may be, but I get
3   to sit two feet above him, and, you know, when I enter
4   orders, I expect them to be obeyed, not disregarded.
5       So I guess I am kind of having trouble understanding
6   what this is, other than, Well, let's postpone it for a
7   while and see if the cranky old man calms down.  You know,
8   what evidence are you going to marshal?  What -- what more
9   do I need, other than I issue an order, and it isn't
10  complied with?  And under the inherent authority of the
11  Court to control the jurisdiction before it, I've got a
12  notice to show cause, and I guess I am just at a loss to
13  understand what it is that you are going to present to me
14  that is going to cause me to go, "Oh, apparently an
15  intentional disobedience to a court order is somehow
16  justified."  So that's the question I'd like to hear, that's
17  why I asked for this show cause hearing today.
18          MR. IARIA:  You don't need to reach certain issues
19  if the sanctions are purely remedial, and I agree with that.
20  And we are prepared to accept remedial sanctions and to
21  argue what is appropriate in the nature of remediation or
22  compensation for liquidated type of costs and liquidated
23  types of fees.  To the extent that the Court wants to rely
24  upon a finding not yet made, obviously that Mr. Bandas acted
25  in bad faith, and therefore elevates the sanctions beyond

1   remediation or compensation, we do need a bit of more time.
2   I would like to consult with other practitioners about
3   various decisions and various acts taken by Mr. Bandas,
4   because I believe a compelling argument can be made, again
5   assuming -- assuming that my interviews of witnesses,
6   experts bears me out, that this was done in good faith in an
7   expectation that there would be relief that was similar to
8   what took place in *Azizian*. I know the Court differs, and
9   I'm not holding *Azizian* out there as a holding, Your Honor,
10  I'm not.
11          THE COURT: As it has previously been described to
12  the Court. Would you like to affirmatively disqualify that
13  as opposed to needing --
14          MR. IARIA: I'm sorry, Your Honor.
15          THE COURT: You've -- you've previously taken the
16  positon that *Azizian* was a holding that was directly
17  inconsistent with the Court's order. Are you abandoning
18  that position?
19          MR. IARIA: I don't believe we said it was a
20  holding. We said that Mr. Bandas relied on it and
21  formulated his approach to the bond based on his
22  interpretation of it. He has said that. And, you know, we
23  weren't breaching the issue of bad faith, which can elevate
24  sanctions beyond compensation. I would like to take a
25  closer look at that and get opinions of other folks to say

1  that they believe or not that this was an act taken in good
2  faith.  And it doesn't represent a thumbing of one's nose at
3  the Court, because I believe -- I truly believe that is not
4  what happened here.  I believe that there was a feeling of
5  being boxed-in, and potentially deprived of a right to
6  appeal, and acts were taken in good faith.  And those are
7  the types of issues that I would like the opportunity to
8  have more time on and to investigate and present additional
9  evidence, if we can come up with it, and additional briefing
10 as the Court's order on our motion to continue permits.
11         THE COURT:  What specifically would you accept as
12 remedial sanctions, since you said you came here prepared to
13 accept those.
14         MR. IARIA:  Well, certainly costs that the clerk
15 can tabulate, or that can be reduced, you know, to specific
16 dollar amounts, in terms of the time expended by the Court
17 and associated staff, I believe that would be appropriate.
18 And again, it would have to be associated with, you know,
19 the violation of the order, with the delay itself, and, you
20 know, in terms of responding to the violation of the order.
21         THE COURT:  Would it go back to the fact that this
22 is the second round at this?  Where we went through the
23 machinations of an appeal and no bond, an order, and that's
24 not fulfilled, and then we take a dismissal of the appeal,
25 you know, there are substantial costs associated with that.

1   I expect we're going to get relatively close to a hundred
2   thousand dollars by the time you get these three lawyers
3   figuring out what it costs.  Are you accepting those?
4           MR. IARIA:  Oh, Your Honor, to the extent that
5   there are appeals taken and costs expended dealing with the
6   9th Circuit, those are something that the 9th Circuit will
7   have to deal with in terms of, you know, a remedy under the
8   Federal Rules of Appellate Procedure.  If there are, in this
9   Court, you know, if there is work necessitated in this
10  Court, I suppose it is something that can be put on the
11  table.  You know, I don't want to say we are here on a Show
12  Cause Order that specifies a particular violation of a
13  particular order, because I know the Court can amend that,
14  it can amend it back, I suppose, and include all that other
15  conduct.  Currently it is not within the Show Cause Order,
16  but it would certainly be something that, you know, would be
17  on the table.  But I don't think that the costs are
18  associated with the appeal for something that this Court can
19  order be repaid in the way of a compensatory sanction.
20          THE COURT:  Well, let me ask you, you keep talking
21  about, "That's up in the Circuit, that's up in the Circuit."
22  That's one of the things that has provoked being here today,
23  is this trying to exist in some gray land between the
24  District Court and the Circuit Court.  You know, the Docket
25  156 before the Court is Objectors' Notice of Posting of

1  Appeal Bond and Motion to Vacate Order to Appear and Show
2  Cause.  That is not up in the circuit; that's right here.
3  And there are expenses associated with those.  You know,
4  I'm -- I'm still at a bit of a loss to understand what it
5  is.  I am giving you this time, because I want to be fair.
6  But on the other hand, I'm not going to allow this to get
7  dragged out in what's really quite simple conduct.  This is
8  the second time around, I have ordered a bond to be posted.
9  The first time, I didn't do anything, and what I got greeted
10 with was an intentional disregard of an order to file a
11 bond.  And then some gratuitous payment of what an attorney
12 thinks ought to be the amount of the bond.  And then notice
13 that, well, that's all that I need to do.  I've substituted
14 my judgment for your judgment, and tough luck.  And, you
15 know, we've been up to the Circuit and you have seen what
16 the Circuit has got to say about that.  This legal system
17 does not operate on the basis of attorneys substituting
18 their judgment for the Court's judgment.
19          MR. IARIA:  I understand, Your Honor.
20          THE COURT:  And the appropriate remedy is if you
21 don't like something that I've done, file a motion with the
22 Circuit and say, either under a -- a Writ of Mandamus or
23 appeal of the order, an interlocutory appeal, you know, "The
24 judge got it wrong, and you shouldn't allow him to do this."
25 I am unaware of any authority that says, "Oh, What, I think

1  I will figure out how much I want to send in, and I will
2  send that in, and then everything will be okay," which are
3  the facts that are before me.  And under my inherent
4  authority to control litigation in this Court, I find that
5  behavior to be unacceptable.
6           MR. IARIA:  Your Honor, among the evidence that I
7  would want to investigate would be, you know, the -- and
8  with all due respect, the relatively tight time frame for
9  the posting of the bond on class action litigation is not my
10 area of practice, but it seems like it's a pretty short
11 timeframe.  And it would result in, you know, extraordinary
12 pressure to decide whether to give up one's right to appeal,
13 which does implicate decision-making that --
14          THE COURT:  Is it your belief that the Notice of
15 Appeal had not been filed?
16          MR. IARIA:  The flip-side of the order was that
17 come up with the bond, or dismiss the appeal, so --
18          THE COURT:  Well, the appeal has been filed.
19          MR. IARIA:  Right.
20          THE COURT:  And now the Court has inherent
21 authority to require a bond.  Is there some rule that tells
22 me that I can't set the time period for the bond?
23          MR. IARIA:  No, Your Honor.  But I think the time
24 period, and Mr. Bandas's response to it, would be part of
25 the equation of whether he acted in bad faith, you know, as

1  opposed to holding out the *Azizian* decision as a star to try
2  to reach for, not necessarily holding.  I'm not calling it
3  that.  But in that litigation, there was a particular
4  result.  It's not binding on this Court, it is not binding
5  on the Circuit.  But it's a result that somebody else got in
6  similar context.  And it is certainly something to be hoped
7  for, and to shape one's motivation, rather than assuming
8  that he was simply thumbing his nose at the Court, which is
9  just not the case.
10          THE COURT:  Well --
11          MR. IARIA:  He could -- I'm sorry, Your Honor.
12          THE COURT:  No, I cut you off.  Go ahead.
13          MR. IARIA:  He undoubtedly could have asked for
14 permission to do what he was doing.  He could have asked for
15 more time, he admits that these are failings, and that he is
16 extraordinarily sorry for not asking for those things, and
17 not asking Your Honor's permission to do as he did.
18    But I think the Court's decision, it's -- it's just not
19 based on what the Court thinks it is.  It is not based on
20 saying, "I don't have to follow the orders."  So -- but when
21 it comes to remediation, I don't think the Court even needs
22 to reach that issue.  The mere fact of violation of a court
23 order, in good faith or bad faith, is, you know, it just
24 doesn't matter when it comes to a remedial sanction.  And
25 the order was violated.  There is no question about that.

1    And so taking it all the way back to the first series,
2    again, if you look at what was done, and necessarily
3    expended in this Court, perhaps that is part of a fair
4    compensation.  But, you know, what was done in the Circuit
5    to deal with that, I believe that there are circuit rules
6    that handle sanctions in that context, you know, for
7    previous appeals.
8            THE COURT:  There is not an appeal.  I mean you
9    file it, and then you need to post a bond.  And when you
10   don't post the bond, then the Court orders you to post the
11   bond, and if you don't post the bond then, that is not the
12   Court of Appeals' decision, that's my decision, because it's
13   my order.  And I just don't understand what is mysterious
14   about that.
15      All right.  Well, tell me when you want to file your
16   stuff, you know, now that you are telling me that you need a
17   slight extension for what I thought was a very gracious
18   period of time you were given last time.
19           MR. IARIA:  Like a week?  There are two intervening
20   weekends between now and the Court's deadline, and you know,
21   it leaves relatively few regular workdays.  I know the
22   job -- life of a lawyer is not necessarily limited to Monday
23   through Friday, but I would be very thankful if the Court
24   gave us another week.  I've contacted a potential expert,
25   he's not back -- he is on vacation, and not back in town

1  until the 12th of August.
2          THE COURT:  Then you better start looking for
3  another expert.
4          MR. IARIA:  Your Honor, we're working -- I assure
5  Your Honor, Ms. Wilk and I work hard and we have been
6  working hard, and we are not seeking to delay for the sake
7  of delay.  But, Your Honor, if -- if a fine for the sake of
8  a fine for the sake of vindicating the Court's authority is
9  not an issue, you know, I ask for an opportunity to talk to
10 my client about remedial sanctions.  You know, we could go
11 forward today.  If I do look at the sanction of censure or
12 reprimand as in the nature of punishment, and I know the
13 Court has the inherent authority.  It is not a question of
14 your authority, it is just a question of elevating the
15 sanctions, changing its character a bit.  And I am not even
16 arguing at this point about the process that is due.  I am
17 just saying that there are different facts at issue for the
18 Court to consider, as the Court has recognized, and that it
19 takes a little bit more time to deal with those.
20         THE COURT:  Counsel, I have specifically indicated
21 that this is not remedial sanctions.  I've said that it is
22 sanctions that arise from the conduct of Mr. Bandas in
23 disobeying an order of the Court, in what appears to be a
24 pattern of disobeying orders of the Court.  And as such, it
25 is clearly subject to the authority of the Court, including

```
 1   censure or formal reprimand that is likely -- as I say,
 2   likely not exclusively going to be revoking his authority to
 3   practice in this district.  Fines, attorney's fees and costs
 4   are really less an issue, because I get paid regardless.
 5   I'm not really going to try and assess my own attorney's
 6   fees.  And, you know, if you look at the rest of these, you
 7   know, warnings about possible dismissal if conduct persists,
 8   prohibition of presenting future pleas in the same type of
 9   case without leave of the Court, that is one that is
10   certainly on the table.  And then the monetary
11   considerations which are the nature and quality of the
12   conduct, who is responsible, between the attorney and the
13   client, you told me today that it is the attorney.  Whether
14   there is a pattern which would require a stiffer sanction,
15   the sanction, the party's ability to pay a fine, I know
16   nothing about that.  Whether the opposing party was hindered
17   or prejudiced by the wrong misconduct, that tends to get you
18   back into remedial -- and any other mitigating or
19   aggravating factors.  So -- and those are the questions that
20   I'm looking at.
21       When do you want to file your pleadings?
22           MR. IARIA:  No later than close of business on
23   August 20th, Your Honor.
24           THE COURT:  That's -- that's a lot more than one
25   week.
```

1    MR. IARIA:  Oh, from the deadline you had set, is
2 what I was saying.  I believe your deadline was August 13th.
3    THE COURT:  It was.  We'll compromise.  I'll give
4 you -- I want them on file by the close of business on --
5 actually the opening of business on Monday the 19th.  So by
6 8:00 am on that day.  And I will reset the hearing.
7    I start a trial on the 26th that involves most of the
8 western world, so we are not going to be interfering with
9 that.
10    Is it better for your client to do this in the morning
11 or the afternoon with travel arrangements the way they are?
12    MR. BANDAS:  Your Honor, August 19th is a Monday.
13    THE COURT:  That is when the pleas are due.  I am
14 thinking about August 21st for the hearing.
15    MR. BANDAS:  I apologize, I look to take -- I am
16 taking a kid to college during that week, and so I will try
17 to make sure that whatever date the Court wants, I will be
18 here, morning or afternoon.
19    THE COURT:  Trinity?
20    MR. BANDAS:  Not Trinity.  She is a very smart kid.
21 She's going to the U of Virginia, Your Honor.
22    THE COURT:  I won't mention that to one of my best
23 friends who attended Trinity on baseball scholarships.
24    MR. BANDAS:  They play a lot of baseball.  Trinity
25 is a good school.

| | |
|---|---|
| 1 | THE COURT:  All right, 2:00 on the 21st.  If that's |
| 2 | a problem, someone will let me know. |
| 3 | Mr. Iaria, do you have any other questions about where |
| 4 | we are coming from? |
| 5 | MR. IARIA:  I think my list has been answered, Your |
| 6 | Honor.  So thank you very much. |
| 7 | THE COURT:  We'll be in recess. |
| 8 | MADAM CLERK:  All rise, please.  Court is in |
| 9 | recess. |
| 10 | (Proceedings Concluded.) |

```
 1                    C E R T I F I C A T E

 2   STATE OF WASHINGTON)
                       ) ss.
 3   County of King    )

 4      I, the undersigned Notary Public in and for the State of

 5   Washington, do hereby certify:

 6      That the foregoing transcript of Show Cause Hearing

 7   was transcribed under my direction; that the

 8   transcript is a full, true and complete transcript of the

 9   testimony of said witness, including all questions, answers,

10   objections, motions and exceptions;

11      That I am not a relative, employee, attorney or counsel

12   of any party to this action or relative or employee of any

13   such attorney or counsel, and that I am not financially

14   interested in the said action or the outcome thereof;

15      That I am herewith securely sealing this transcript and

16   delivering the same to the Clerk of the Court via electronic

17   filing.

18      IN WITNESS WHEREOF, I have hereunto set my hand and

19   affixed my official seal this 11th day of August, 2013.

20

21                     /S/Kari Lee Davidson_____
                       Notary Public in and for the State
22                     of Washington, residing at Vashon.

23

24

25
```