HON. JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON (SEATTLE)

| | | |
|---|---|---|
| ANGELO DENNINGS, et. al, | ) | NO. C10-1859-JLR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CHRISTOPHER A. BANDAS'S |
| CLEARWIRE CORPORATION, | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO SANCTIONS |
| Defendant. | ) | |
| _____ | ) | |

    Mr. Bandas did not comply with this Court's order that he pay an appellate bond of

$41,150 or withdraw his appeal within five days. Instead, believing the bond amount exceeded

what the Court lawfully could impose, he paid the portion of the bond that he did not dispute,

moved to stay the order, and then moved for emergency review by the Circuit Court. Nine days

after emergency review was denied, he paid the bond in full. The full bond amount was not

timely posted, and Mr. Bandas agrees that this violated the Court's order.

    The question before the Court is whether Mr. Bandas's failure to timely pay the full

$41,150 amount of the appellate bond is indicative of bad faith or vexatious conduct. It is not.

More broadly, Mr. Bandas's conduct overall does not support an inference of unprofessional or

unethical conduct, even if viewed through the lens of the fact that Mr. Bandas has represented

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 1

objectors in other cases.[1]  The facts do not establish bad faith, and the imposition of sanctions in connection with such a finding would be an abuse of discretion.[2]

**Background**

Gordon Morgan and Jeremy De La Garza (hereafter "Objectors") were customers of Clearwire Corporation ("Clearwire").  (Morgan Deposition at 5-8; De La Garza Deposition at 5-7.)[3]  They received notices regarding the pending settlements in *Dennings v. Clearwire Corp.*, which stated in relevant part, "If you remain a Class Member, you may object to the settlement by writing to the Court and sending copies to counsel…"  (Dkt. 76, Ex. 1, Ex. 3.)  Both Objectors separately retained Mr. Bandas in connection with the settlement litigation.  (Morgan Deposition at 11; De La Garza Deposition at 8).  Their retainer agreements with Mr. Bandas were identical, and functioned essentially as grants of Power of Attorney, giving Mr. Bandas broad authority to act on their behalf in connection with the objections, although a clause stipulated that no settlement would be reached or appeal taken without their prior approval. (Declaration of Christopher A. Bandas (hereafter "Bandas Declaration") App. A, B (Retainer Agreements.))

---

[1] As argued herein, the suggestion that Mr. Bandas is a "serial" objector is not relevant to the question before the court: whether in *this* case Mr. Bandas's conduct is indicative of bad faith.

[2] In denying Mr. Bandas's request for a continuance, (Dkt 160), the Court disagreed that the proceeding was a contempt proceeding, and instead invoked its 'inherent' sanction authority as a basis for going forward. Relying upon this distinction, the Court refused to accord Mr. Bandas the due process protections that must attend a finding of criminal contempt and only partially acceded to Mr. Bandas's alternative request for the due process required in a civil proceeding.  Mr. Bandas maintains that to the extent the Court intends to impose punitive sanctions upon Mr. Bandas to punish a completed act of disobedience, the hearing is criminal, and the limited due process rights accorded Mr. Bandas by the Court are fundamentally inadequate.  *See e.g. Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) (and cases cited therein).

[3] The deposition transcripts previously supplied to the Court by plaintiffs were incomplete.  The complete transcripts of Mr. Morgan and Mr. De La Garza's depositions are attached to Mr. Bandas's Declaration (Ex. 4) as Appendices C and D, respectively.  Citations in this brief are to the complete deposition transcripts.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 2

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

Mr. Bandas filed timely objections to the settlement and proposed attorney fee agreement on Objectors' behalf.  (Dkt 76.)  Plaintiffs promptly moved to depose both Objectors.  (Dkt. 78.) Plaintiffs complained that the objection incorrectly designated Objectors as "Appellants," that some of the citations in the pleading did not contain pin citations, and that the pleading contained loose citations to authority.  (Dkt. 78 at 4-5.)  The true and primary reason for the motion to depose Objectors, however, was Plaintiffs' belief that Mr. Bandas was a "serial" objector.  (Dkt. 78 at 2.)  The Court authorized the depositions.  (Dkt. 82.)

Mr. Bandas filed no further pleadings until the Court approved the settlement agreement, at which point Objectors appealed the settlement.  (Dkt. 101.)  In response, Plaintiffs moved for an appeal bond of $41,150, of which $2,000 comprised Plaintiffs' estimated costs under Fed. R. App. P. 7, and $39,150 comprised anticipated settlement administration costs, calculated on a per-month basis multiplied by the average lifetime of a Ninth Circuit appeal.  (Dkt. 107.)[4] Mr. Bandas objected to the bond, contending that the $39,150 were "costs of delay" and thus could not be included in the bond.  (Dkt. 112 at 6-7.)  The Court disagreed, and by written order directed Mr. Bandas to pay the bond in full or dismiss his appeal.  (Dkt. 117.)  When the bond was not posted, Plaintiffs moved for contempt.  (Dkt. 128.)  Mr. Bandas dismissed the appeal,[5] and the Court denied the motion for contempt, noting that "while the objectors still have not posted an appeal bond, they have effectively complied with the court's order by dismissing their

---

[4] Clearwire joined in the motion for an appeal bond.  (Dkt. 110.)

[5] Mr. Bandas also supplied legal argument as to why he believed the appeal bond was *ultra vires*, (Dkt. 129), and attached orders from the Ninth Circuit and Seventh Circuit staying execution of similar bonds in other cases.  (Dkt. 129-2; 129-3.)

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 3

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

notice of appeal."[6]  (Dkt. 130 at 2.)  The Court ruled that a finding of contempt was "not justified by the objectors' conduct or their attorney's procedural machinations."  *Id.*

**Basis for the instant sanctions motion.**

Mr. Bandas filed a second appeal on Objectors' behalf from the court's order imposing attorney's fees.  Relying on the identical rationale for their previous motion for an appeal bond, Plaintiffs again moved for a bond of $41,150, and the Court again granted the motion, this time giving Mr. Bandas just five days to comply with the order.  (Dkt. 149.)  Mr. Bandas filed an emergency motion to stay the order requiring the appeal bond the same day, in which, relying on *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), he contested the Court's authority to require Objectors to pay a bond of greater than $2,000, the amount Plaintiffs had estimated would be necessary to cover copying, filing costs, and preparation of reporters' transcripts.  (Dkt. 107 at 1; Dkt. 134 at 8; Dkt 151 at 2.)  Objectors indicated their intent to submit a check for $2,000, the undisputed portion of the bond, and to request the Ninth Circuit decide the validity of the remaining $39,150.  (Dkt. 151 at 2.)

Objectors indeed submitted a check for $2,000 the same day, which the Court rejected.  The Court denied the motion to stay by written ruling on July 11, 2013, (Dkt. 152), and the Ninth Circuit denied Objectors Rule 27-3 motion for emergency review on July 15, 2013.  (Dkt. 153.)  The following day, Objectors again attempted to post $2,000 of the bond, but the check was refused.  On July 19, 2013, the Court ordered Objectors and Mr. Bandas to appear and show cause why sanctions should not be imposed for the delay.  (Dkt. 154.)

---

[6] The bond order did not impose a deadline for compliance; in dismissing the appeal, Objectors fully complied with the Court's order.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 4

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

Although Mr. Bandas intended to pay the bond in full and formed this intent once the Ninth Circuit denied his motion for emergency review, his bookkeeper was away from July 13th – 21st, and Mr. Bandas was unable to arrange the payment in her absence.  (Ex. 3, Declaration of Jan Petrus; Ex. 4, Bandas Declaration at 3.)  His error was in failing to advise the Court of his intent to comply with the order and seek additional time in which to post the bond.  He ultimately tendered a check for the full bond amount on July 22, 2013, and the Court documented the payment on July 23, 2013.  (Dkt. 155-1; Dkt. 155-2.)

**ARGUMENT**

**1.   Mr. Bandas's conduct does not support a finding of bad faith.**

<u>Applicable Legal Standards.</u>

"Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."  *Roadway Express, Inc., v. Piper*, 447 U.S. 752, 764 (1980).  A trial court that invokes its inherent authority to impose sanctions acts "as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed."  *F.J. Hanshaw Enterprises, Inc., v. Emerald City Development, Inc.*, 244 F.3d 1128, 1127 (9th Cir. 2001). This "troublesome" absence of limitations and procedures can lead to "unfairness and abuse."  *Id*.  Thus, when a federal court invokes its "inherent" powers to sanction an attorney for bad faith, the Court must explicitly find, by clear and convincing evidence,[7] that an attorney "knowingly or recklessly raise[d] a frivolous argument, or argue[d] a meritorious claim for the purpose of harassing an opponent", or "delay[ed] or disrupt[ed] the litigation or hamper[ed]

---

[7] Proof by clear and convincing evidence is required for the district court's bad faith finding.  *Shepherd*, 62 F.3d at 1477.  If, however, "serious punitive penalties are being imposed, the accused deserves the protection of a higher standard of proof to ensure that an innocent party will not be punished."  *Hanshaw*, 244 F.3d at 1141.

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

enforcement of a court order." *Primus Automotive Financial Services, Inc., v. Batarse*, 115 F.3d 644, 649 (9th Cir. 2007); *Shepherd v. ABC Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995).

This is a "high threshold." *Primus*, 115 F.3d at 649.  The imposition of sanctions "should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Id*. (citation omitted).  An explicit finding is required "because it ensures that 'restraint is properly exercised,' … and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id*. (citation omitted).

These rules apply with equal force to the kinds of sanctions that may be imposed.  In the absence of a fee-shifting statute, a court may only assess attorney fees and costs against a party or his counsel upon explicit proof of bad faith.  *Roadway*, 447 U.S. at 766-67; *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001) (bad faith is required for inherent power sanctions).  Absent clear and convincing evidence of bad faith and an explicit, factually-grounded finding by the trial court, inherent power sanctions may not be imposed.

> Mr. Bandas's Actions in Response to the Bond Order Were Based on his Good Faith Interpretation of *Azizian*.

None of the predicates for a bad faith finding are present.  With regard to the appeal bond order, Mr. Bandas believed in good faith that under *Azizian*, *supra*, the only costs that could be computed for purposes of setting an appeal bond were Fed. R. App. P. 7 costs.  (Bandas Declaration at 4.)  He also reasonably believed that the incremental settlement administration costs were costs of delay, and could not be included in a Fed. R. App. P. 7 bond.[8]

---

[8] In including such costs in the appeal bond at issue here, this Court relied on *In re Cardizem CD Antitrust Litigation*, 391 F.3d 812 (6th Cir. 2004).  (Dkt. 117 at 4.)  The key difference between *Cardizem* and this case, however, is that in *Cardizem* a state consumer protection statute permitted the award of attorney fees and damages.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 6

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

The appellant in *Azizian* did not pay a high appeal bond in full – a bond which the Circuit Court ultimately determined was improperly imposed – but did proffer payment of the portion she did not dispute.  *Id.* at 961-62.  And, although she did not move to stay execution of the bond, she consistently argued that the bond amount was erroneous.  *Id.*  The Court found that all of these factors weighed against dismissal of her appeal, notwithstanding her nonpayment, and did not sanction her further.  *Id*. at 962.

Relying upon *Azizian*, Mr. Bandas first proffered payment of the amount of the bond he did not dispute.  (Bandas Declaration at 4; Bandas Letter Dated 7/9/13); *See Azizian,* 499 F.3d at 962.  Mr. Bandas then moved for a stay in the District Court.  *Cf. Cardizem*, 391 F.3d at 818 ("In the instant case, Sams neither sought a stay in the district court, nor did she make a good faith proffer of a lesser amount").  He then moved for emergency review, and when emergency review was denied, he submitted payment of the full appeal bond.

This Court disagreed that *Azizian* established "steps" to be followed by a litigant who disputes the propriety of an appeal bond order, (Dkt. 156 at 5); however, Mr. Bandas's conduct, and the pleadings and documents he submitted in the course of litigating his challenge to the appeal bond, corroborate that Mr. Bandas's intent was simply to litigate whether the amount of the appeal bond was lawful.  Expert Phil Talmadge confirms that Mr. Bandas's interpretation of *Azizian* may well be correct.  (*See* Ex. 1.)  At the very least, it is not an unreasonable

---

*Cardizem*, 391 F.3d at 817-18.  In this litigation, however, no similar fee-shifting statute exists.  *Compare Azizian*, 499 F.3d at 961 (where no fee-shifting statute exists, the district court may not prospectively award costs in an appeal bond).  A recent decision from the Northern District of Illinois, *In re Navistar Diesel Engine Products Liability Litigation*, 2013 WL 4052673 (No. 11-C-2496, N.D. Ill. August 12, 2013), supports Mr. Bandas's position.  A copy of the decision in *Navistar* is attached hereto as Exhibit 5.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 7

interpretation of that opinion, and his conduct in reliance on the case does not suggest bad faith, or a vexatious intent.[9]

A district court may ***not*** sanction an attorney under its inherent powers if there is nothing in the local rules or norms of professional conduct "which would have placed [the attorney] on reasonable notice" that his conduct was not in conformance with the court's requirements. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1132 (9th Cir. 2008).  Here, Mr. Bandas litigated the propriety of the appeal bond based upon his reasonable understanding of what the law in the Ninth Circuit required of him.  He ultimately paid the appeal bond in full just seven days after the Court denied his emergency request for a stay.[10]  Sanctions based on this conduct are improper.

<u>The Appeal is Legitimate and Not Frivolous</u>.

With regard to the appeal itself, Mr. Bandas genuinely believes in the merits of his challenge to the attorney fee award.  (Bandas Declaration at 2; Ex. 6 (Appellants' Response to Plaintiff-Appellees' Motion for Summary Affirmance, No. 13-35491.))  The Ninth Circuit has not decided some of the questions presented, and authority in other Circuit Courts supports Mr. Bandas's arguments, so it cannot be said that his advancement of the arguments is reckless.  In any event, the ultimate determination of the merits is for the Ninth Circuit to decide; it would be inappropriate for this Court to prejudge the appeal as frivolous, from that determination presume

---

[9] Mr. Talmadge is a former state Supreme Court justice and a highly experienced appellate practitioner who is recognized by his peers as being an exemplary advocate.  In reaching his expert opinion in this case, he reviewed all salient orders from this Court and is fully cognizant of the Court's basis for accusing Mr. Bandas of acting in bad faith.  His opinion that Mr. Bandas's conduct is more consistent with a good-faith reliance on existing law and, moreover, that Mr. Bandas's view is legally correct, while not a definitive interpretation of the law, substantially undermines any determination that clear and convincing evidence of bad faith exists.

[10] Mr. Bandas's declaration sets forth the reasons for the delay.  They are prosaic, and, as he acknowledges, they do not excuse his failure to alert the Court of the difficulties in arranging the payment and request additional time, but they do not meet the "high threshold" of bad faith.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 8

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

bad faith, and levy a sanction.  *Cf. Azizian*, 499 F.3d at 960 ("Award of appellate attorney's fees for frivolousness under Rule 38 is highly exceptional, making it difficult to gauge prospectively, and without the benefit of a fully developed appellate record, whether such an award is likely").

### 2.  Mr. Bandas's prior representation of Objectors does not weigh in favor of a finding of bad faith.

The Court appears inclined to accord weight to Mr. Bandas's prior conduct.  It is not clear whether the Court's view is colored solely by the prior appeal bond order, or if it is also influenced by Plaintiffs' arguments that Mr. Bandas is a "serial" objector.  If the former, the Court expressly, and correctly, found that sanctions were ***not*** warranted based given that Objectors did ultimately comply with the Court's order.  (Dkt. 130 at 2.)  If the latter, that Objectors' counsel has represented objectors in other class actions "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings."  *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010).  *See also In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010) (bad faith conduct in other matters does not give rise to an inference of bad faith in the litigation before the court); *Corpac v. Rubin & Rothman, LLC*, 2012 WL 2923514,  at *2-*3 (E.D.N.Y. July 19, 1012) ("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial one of maximizing [his] recovery, would make any fact of consequence … more or less probable.'") (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984) (alterations in original)).

Objectors' assignment of decision-making authority to their counsel also does not supply a basis to impute improper motives to Mr. Bandas.  In fact, as expert and former Bar Disciplinary

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 9

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

Counsel Kenneth Kagan's declaration establishes, Mr. Bandas has acted entirely consistently with his ethical obligations.  (Ex. 2 (Declaration of Kenneth S. Kagan)).

Even assuming Mr. Bandas is motivated partly by a desire for pecuniary gain (a motive which must at least partly spur the efforts of Plaintiffs' counsel), this incentive is hardly a basis to conclude he is acting in bad faith.  As noted, his challenges to the merits are legitimate, vigorously argued, and diligently pursued.  Mr. Bandas even offered to stipulate to seek this Court's approval before withdrawing from the litigation. Although the Court cannot obligate the parties to enter a stipulation, as argued *infra*, it may impose this requirement upon Mr. Bandas as a remedial sanction for his failure to comply with the court order, should it wish to do so.

> **3.  Since the evidence does not support a finding of bad faith, the only sanctions that may be imposed are remedial sanctions stemming from Mr. Bandas's failure to timely comply with the court's order.**

Inherent power sanctions, including attorney fees and costs, may only be imposed if the Court finds by clear and convincing evidence that Mr. Bandas acted in bad faith.  *Fink v. Gomez*, 239 F.3d at 992-93.  Clear and convincing evidence does not support a bad-faith finding. Censure, formal reprimand, fines, attorney's fees and costs, and prohibitions on practice[11] all derive from the court's "inherent" sanction authority and require an explicit bad faith finding.

Again, Mr. Bandas concedes that he failed to timely post the appeal bond.  His intent was not to slight the court's authority or disrespect the court; nevertheless, he should have informed the Court of his difficulties and sought more time.  Compensation for any costs incurred by the

---

[11] Mr. Bandas respectfully submits that a blanket prohibition on practice, as contemplated in this Court's Notice to Objectors and Counsel Regarding Sanctions (Dkt. 158 at 4) would exceed the Court's authority.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 10

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

court in connection with the delay would be an appropriate sanction.[12]  Even though such an order would arguably reside in the court's "inherent" sanction authority and require a bad faith finding, Mr. Bandas would also agree to abide by an order that any withdrawal from the litigation, including while the case is on appeal, not be done without the Court's express approval.


DATED this 15th day of August, 2013.

Respectfully submitted:


/S Michael P. Iaria
Michael Iaria, WSBA 15312
Susan F. Wilk, WSBA 28250
Attorneys for Christopher A. Bandas
1113 Third Avenue, Suite 2220
Seattle, WA  98101
Ph: 206-235-4101
Fax: 206-274-4939
mpi@iarialaw.com
sfw@iarialaw.com

---

[12] Although the costs incurred by the court may be relatively inconsequential, Mr. Bandas has incurred significant costs in connection with defending against the Court's show cause order, including airfare, lodging in Seattle, and attorney's fees.

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 11

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2013 I electronically filed the foregoing with the Clerk of the Court and also served it on opposing counsel using the CM/ECF system.

<u>S/ Michael P. Iaria</u>
Law Office of Michael Iaria, PLLC

CHRISTOPHER A. BANDAS'S MEMORANDUM
IN OPPOSITION TO SANCTIONS  - 12

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101