HON. JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON (SEATTLE)

|  |  |
|---|---|
| ANGELO DENNINGS, et. al, | NO. C10-1859-JLR |
| Plaintiffs, | |
| v. | |
| CLEARWIRE CORPORATION, | DECLARATION OF CHRISTOPHER A. BANDAS |
| Defendant. | |

Christopher A. Bandas declares under penalty of perjury that the following is true and correct to the best of his knowledge, information and belief:

1. I am an attorney licensed to practice in Texas since 1993.  I am also admitted to practice in the U.S. District Court for the Southern, Northern, Eastern and Western Districts of Texas, the Fifth Circuit, and the United States Supreme Court.  I was named to Texas Super Lawyers twice, in 2006 and 2011, and have been rated "BV" by Martindale-Hubbell.

2. Since 2003, I have owned my own law firm.  My practice for the first several years consisted primarily of catastrophic personal injury cases.  I also did a lot of commercial litigation, representing businesses, doctors, local business men, and even a long-time local judge in an oil contamination lawsuit.

3. With tort reform, my practice has evolved to cases outside of Texas, with a focus on mass torts (pharmaceutical litigation).  I have been doing objections regularly since 2006 or 2007.  Mass torts and personal injury work still represent the majority of my practice.

4. Attached hereto as Appendices A and B, respectively, are the retainer agreements executed by my clients Gordon Morgan and Jeremy De La Garza.  I represented both of these individuals in legal matters prior to my representation of them in this matter.  Also

DECLARATION OF
CHRISTOPHER A. BANDAS  - 1

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

attached hereto as Appendices C and D, respectively, are true and correct copies of the full depositions of Messrs. Morgan and De La Garza.

5. Mr. Morgan and Mr. De La Garza contacted me after receiving notice of the proposed class action settlement in this case. (Morgan Deposition at 8; De La Garza Deposition at 8). Both Mr. Morgan and Mr. De La Garza hired me to handle their interests as class members in the proposed settlement. (Morgan Deposition at 10-12; De La Garza Deposition at 8). The scope of my representation is outlined in my retainer agreements with my clients and I believe that my representation in this matter has been consistent with the scope of representation as set forth in the retainer agreements. The retainer agreements represent the entire agreement between me and my clients. The agreements were executed on November 30, 2012.

6. I did not solicit either one of my clients to serve as objectors in this case. They contacted me to protect their interest as class members and they have relied and continue to rely on my legal judgment in protecting their rights as class members.

7. In accordance with paragraph 2.3 of the retainer agreements, I obtained specific authorization from both of my clients prior to appealing the settlement and attorney fee award.

8. I believe that the claims, defenses, and other legal contentions as set forth in the pleadings I have filed in this Court and the Ninth Circuit are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. I am also aware that this Court, as well as the Ninth Circuit, have not agreed with arguments I have asserted on behalf of my clients. I nevertheless believe that the pleadings I have filed and the arguments contained therein are in keeping with my obligations under Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure, as well as with my obligations to my clients. My arguments in opposition to the attorney's fees award, at issue in the current appeal in Ninth Circuit Case No. 13-35491, are set forth in the Appellants' Response to Plaintiff-Appellees' Motion for Summary Affirmance (a true and correct copy of which is attached to my counsel's pleadings as Exhibit 6).

9. I believe that my good faith in this case is further evidenced by a proposed stipulation sent to Class Counsel and filed with this Court on June 21, 2013 (Dkt. 137), a true and correct copy of which is attached hereto as Appendix 5. That proposed stipulation addresses the suggestion that I have interposed on behalf of my clients meritless objections for the sole purpose of threatening to hold up a legitimate class action settlement to extort a *quid pro quo* payment to drop the objection. The proposed stipulation is modeled directly on a solution to the "professional objector" problem proposed by Vanderbilt Law School Professor Brian Fitzpatrick. The use of an "anti-alienability" injunction or rule has his support as the best means of deterring "blackmail-minded objectors."  *See* Brian Fitzpatrick, *The End of Objector Blackmail?*, 62

DECLARATION OF
CHRISTOPHER A. BANDAS  - 2

Vanderbilt Law Review 1623 (2009).  As articulated by Professor Fitzpatrick, Fed. R. Civ. Proc. 23(e)(5) precludes an objector from withdrawing his or her objection without court approval, but there is no parallel provision in the Federal Rules of Appellate Procedure.  Accordingly, I offered to stipulate to an injunction that would invite the same measure of review by this Court if there was any proposal to withdraw my clients' appeal in the Ninth Circuit.  I am still willing to abide by such a requirement if ordered to do so by the Court.

10. Class Counsel moved for an appeal bond on June 13, 2013, seeking a bond in the amount of $41,150 (Dkt. 134).  I filed a response in partial opposition to the bond motion on June 24, 2013 (Dkt. 138).  Class Counsel filed their reply on June 28, 2013. The Court issued an order on July 9, 2013 in which Objectors were ordered to post a $41,150 bond or dismiss their appeal in five days, or face sanctions (Dkt. 149).

11. Although I formed the legal opinion that $39,150 of the bond order represented "delay costs" that should not have been included as Rule 39 costs, I also understood that this was the Court's order.  As elaborated in greater detail below, I formed then the present intention to challenge the Court's order in good faith to the best of my abilities, which included an emergency motion to stay the bond order (Dkt. 151) and an emergency motion to stay the bond order in the Ninth Circuit (Dkt. 11, 13-35491).  I also formed the present intention that I would post the bond in full if we did not get the relief we sought from this Court or from the Ninth Circuit.  When the Ninth Circuit denied Appellants' emergency motion on July 15, 2013 (Dkt. 14, 13-35491), I had the intention of posting the full $41,150 bond ordered by the Court (Dkt. 149).

12. The reason I did not post the $41,150 immediately after the Ninth Circuit denied Appellants' motion for emergency relief on Monday, July 15, 2013 was because my office manager Jan Petrus was on vacation that week.  Ms. Petrus has been my office manager since approximately 2005.  Her job responsibilities include bookkeeping and handling my law firm's finances, including issuing all checks.  I do not do any of this myself and it has literally been years since I signed a check or handled any of the financial transactions of my law firm.  I also do not know how to operate my firm's accounting software or issue checks, which I understand is done through that software process.  I also did not know whether my firm had enough funds on hand to pay the bond from the firm's operating account or whether we would have to seek an advance from my firm's credit line, which is a banking transaction type that Ms. Petrus also handles.  I knew that Ms. Petrus would be back in the office on Monday, July 22, 2013 and it was always my intention to post the bond upon her return to the office.

13. These are facts that I could have, and in fact should have, communicated to the Court.  I regret not doing so and apologize to the Court.  I also acknowledge that if I needed more time to post the bond (which I did, but only until Ms. Petrus's return to the office), it was my obligation to inform the Court and seek additional time from the Court.  Given the nature of the transaction and the amount of money at issue, it did not even occur to me

DECLARATION OF
CHRISTOPHER A. BANDAS  - 3

that this type of transaction was of a type that Ms. Petrus could have handled remotely, so I also did not contact her to make these arrangements. I handled myself poorly and regret my actions, and I understand how that led to the issuance of the show cause order on Friday, July 19, 2013 (Dkt. 154). I represent to this Court that I would have paid the full bond without the Court's show cause order.

14. On March 11, 2013, the Court issued an appeal bond order (Dkt. 117), that was opposed by Objectors (Dkt. 112) on the same legal basis that the instant bond order was opposed. However, the principal difference between the Court's bond order of March 11, 2013 (Dkt. 117) and the Court's bond order of July 29, 2013 (Dkt. 149) is that the first bond order (Dkt. 117) did not set a deadline by which Objectors/Appellants were required to post the court ordered bond or dismiss their appeal. At the time the Court issued its first bond order (Dkt. 117) there was pending at that time a Motion for Summary Affirmance filed by Class Counsel in the Ninth Circuit (Dkt. 6, 13-35038). Ultimately, that motion was granted by the Ninth Circuit on April 22, 2013 (Dkt. 11, 13-35038). When the Ninth Circuit granted the motion for summary affirmance (Dkt. 11, 13-35038), Objectors/Appellants filed a motion for panel rehearing (Dkt. 12, 13-35038) and Class Counsel almost immediately thereafter filed a motion for contempt against Objectors/Appellants for not having posted the bond ordered by Dkt. 117.

15. Because the Court's order of December 20, 2012 (Dkt. 99) did not make a final, appealable decision about attorney's fees (which had been proposed in Paragraph 16 of the proposed order, but was struck by the Court and deferred for consideration), Objectors' first appeal did not address their central concern: attorney's fees. Knowing that the issue of fees would not be presented or ultimately ruled upon in the then appeal of the Court's first final order (Dkt. 99), Objectors/Appellants made the decision on advice of counsel to abandon that first appeal, and dismiss that appeal (Dkt. 13, 13-35038).

16. My actions in challenging the Court's July 9, 2013 bond order (Dkt. 149) were in keeping with my understanding of *Azizian v. Federated Dept. Stores*, 499 F.3d 950 (9th Cir. 2007). In *Azizian*, the appellant failed to post the appeal bond ordered by the trial court. However, the appellant there "proffered payment of the undisputed portion of the bond." *Id*. at 962. That is why I proffered $2,000 on July 9, 2013 to the Court. I did not and have never disputed that portion of the appeal bond. True and correct copies of the letters accompanying the $2,000 checks submitted on July 9, 2013, and July 15, 2013, are attached hereto as Appendices F and G.

17. Beyond what the appellant did in *Azizian*, and taking as guidance that opinion's discussion of *In re Cardizem CD Antitrust Litigation*, 391 F.3d 812 (6th Cir. 2004), I also filed on behalf of my clients an emergency motion for stay in this Court on July 9, 2013 (Dkt. 151), which was denied, and an emergency motion for relief in the Ninth Circuit (Dkt. 11, 13-35491).

Law Office of Michael Iaria, PLLC
1111 Third Avenue
Suite 2220
Seattle, WA 98101
206.235.4101

18. At every step in this Court and in the Ninth Circuit I, on behalf of my clients, articulated the basis for contesting the $39,150 in costs included in the bond order.  Because I believe that $39,150 could not be counted in the bond order, I took every good faith legal action to contest that portion of the order.

19. As stated above, when I was not able to obtain the emergency relief I sought for my clients in the Ninth Circuit to avoid having to post $39,150 in what I viewed as impermissible delay costs in the bond, I made the decision to post the entire bond amount of $41,150.  As discussed, however, I recognize that I did not post the bond in the time period ordered by the Court and have only the explanation offered in this declaration.

20. With the exception of this Court second bond order (Dkt. 149), I have not failed to act timely with respect to any of this Court's orders to the best of my knowledge.  There was no deadline in the Court's first bond order (Dkt. 117), and I ultimately dismissed my clients' appeal exactly as the Court ordered (Dkt. 13, 13-35038).

DATED this ___15___ day of August, 2013, in Corpus Christi, Texas.

_____

Christopher A. Bandas

DECLARATION OF
CHRISTOPHER A. BANDAS  - 5

APPENDIX A

CLASS ACTION OBJECTOR
POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ("Agreement") is made between <u>Gordon B. Morgan</u> ("Client(s)" or "you")
and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as
follows:

1.     SCOPE AND METHOD OF REPRESENTATION

1.1    **Attorneys' Legal Services.** You agree Attorneys will: Prepare and file on your
behalf an objection to proposed class action settlements in the following matter
and represent you in any appeal therefrom (the "Objection"): Case No. 2:10-cv-
01859-JLR; *Dennings v. Clearwire Corporation*; In the United States District Court for
the Western District of Washington.

1.2    **Method of Representation.** BLF is a Texas law firm located at 500 N. Shoreline,
Suite 1020, Corpus Christi, Texas 78471, (361) 698-5200. Our lawyers are licensed
in Texas and in certain federal courts. However, if necessary, Attorneys will seek
admission before the Court *pro hac vice* and/or as required by the applicable federal
and/or state and/or local rules of practice applicable this litigation and/or will seek
to associate local counsel in order to effectuate this representation in compliance
with any such rules. Client authorizes that Attorneys prepare any Objection(s) for
filing with the Court and, if necessary, any appeals therefrom.

1.3    **Purpose of Representation:** As a member of the above referenced class, your legal
rights are affected by the proposed settlement in that case. As a class member, you
have the right to comment and object to the proposed settlement as prescribed by
the Court in the notice of proposed class action settlement and Rule 23 of the
Federal Rules of Civil Procedure. As a class member, you have the right to seek
legal advice and have a lawyer represent you with respect to making any comments
or objections to the proposed settlement. You acknowledge that, prior to the
execution of this agreement, you contacted me seeking legal advice about your
rights and options as a class member. You further acknowledge the following: (1)
that you were not solicited by me or any other lawyer; (2) you have not been paid
or promised any money, incentive or any other consideration to assert your rights
as a class member with an interest in the proposed settlement; and (3) you
authorize the disclosure of this fee agreement to the Court or any counsel in the
case if requested.

2.     YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR

2.1    You represent that you are a member of the proposed settlement class based upon
your review of the class definition contained in the class notice you have reviewed
at the following website: www.denningssettlement.com.

2.2    If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3    In return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal therefrom without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal therefrom, including the right to approve any settlement or resolution of same.

3.    ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU

3.1    **Class Action Settlement:** If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (If a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so). Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member. You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2    **Incentive Award or Payment:** Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector. This is referred to herein as an Incentive Award or Incentive payment. You understand any incentive award or payment sought will never exceed $5,000. You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all. You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you. No incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award. In the event an incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

3.3    **Attorneys' Fees:** You will not be responsible to pay attorneys' fees or expenses of any kind. Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above. Attorneys are not sharing, and cannot share, any attorneys' fees they might earn in this case with you. You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal therefrom if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws. The

attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any. You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2.

## 4.    CONFLICTS OF INTEREST

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object. You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal therefrom.

## 5.    ADMINISTRATIVE MATTERS

5.1    **Termination:** Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

5.2    **Association of Co-counsel:** Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree in writing to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

5.3    **No Guaranty of Results:** Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter. You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4    **Entire Agreement:** This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto. This Agreement shall not be modified except by written agreement signed by both parties.

I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

Signed and accepted on this 3₀ day of _NOV_ . 2012.

Client(s):

_____

Attorneys:

_____

Christopher A. Bandas

APPENDIX B

## CLASS ACTION OBJECTOR
### POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ("Agreement") is made between <u>Jeremy De La Garza</u> ("Client(s)" or "you") and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as follows:

1. **SCOPE AND METHOD OF REPRESENTATION**

    1.1 **Attorneys' Legal Services.** You agree Attorneys will: Prepare and file on your behalf an objection to proposed class action settlements in the following matter and represent you in any appeal therefrom (the "Objection"): Case No. 2:10-cv-01859-JLR; *Dennings. v. Clearwire Corporation*; In the United States District Court for the Western District of Washington.

    1.2 **Method of Representation.** BLF is a Texas law firm located at 500 N. Shoreline, Suite 1020, Corpus Christi, Texas 78471, (361) 698-5200. Our lawyers are licensed in Texas and in certain federal courts. However, if necessary, Attorneys will seek admission before the Court *pro hac vice* and/or as required by the applicable federal and/or state and/or local rules of practice applicable this litigation and/or will seek to associate local counsel in order to effectuate this representation in compliance with any such rules. Client authorizes that Attorneys prepare any Objection(s) for filing with the Court and, if necessary, any appeals therefrom.

    1.3 **Purpose of Representation:** As a member of the above referenced class, your legal rights are affected by the proposed settlement in that case. As a class member, you have the right to comment and object to the proposed settlement as prescribed by the Court in the notice of proposed class action settlement and Rule 23 of the Federal Rules of Civil Procedure. As a class member, you have the right to seek legal advice and have a lawyer represent you with respect to making any comments or objections to the proposed settlement. You acknowledge that, prior to the execution of this agreement, you contacted me seeking legal advice about your rights and options as a class member. You further acknowledge the following: (1) that you were not solicited by me or any other lawyer; (2) you have not been paid or promised any money, incentive or any other consideration to assert your rights as a class member with an interest in the proposed settlement; and (3) you authorize the disclosure of this fee agreement to the Court or any counsel in the case if requested.

2. **YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR**

    2.1 You represent that you are a member of the proposed settlement class based upon your review of the class definition contained in the class notice you have reviewed at the following website: www.denningssettlement.com.

2.2    If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3    In return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal therefrom without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal therefrom, including the right to approve any settlement or resolution of same.

3.    **ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU**

3.1    **Class Action Settlement:**  If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (If a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so).  Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member.  You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2    **Incentive Award or Payment:** Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector.  This is referred to herein as an Incentive Award or Incentive payment.   You understand any incentive award or payment sought will never exceed $5,000.  You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all.  You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you.  No incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award.  In the event an incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

3.3    **Attorneys' Fees:**  You will not be responsible to pay attorneys' fees or expenses of any kind.  Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above.  Attorneys are not sharing, and cannot share, any attorneys' fees they might earn in this case with you.  You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal therefrom if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws.  The

attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any.  You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2.

4.    CONFLICTS OF INTEREST

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object.  You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal therefrom.

5.    ADMINISTRATIVE MATTERS

5.1    **Termination:**  Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

5.2    **Association of Co-counsel:** Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree in writing to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

5.3    **No Guaranty of Results:**  Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter.  You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4    **Entire Agreement:**  This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto.  This Agreement shall not be modified except by written agreement signed by both parties.

I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

Client(s):

Attorney:

Christopher A. Benson

1                    UNITED STATES DISTRICT COURT
2                   WESTERN DISTRICT OF WASHINGTON
3                            AT SEATTLE
4

MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR
5     STEVEN COCKAYNE, BRIAN         )
      CRAWFORD, DAN DAZELL, ANGELO  )
6     DENNINGS, CHEYENNE FEGAN,     )
      SHARON FLOYD, GREGORY GUERRIER)
7     JOHANNA KOSKINEN, ELENA MUNOZ-)
      ALAZAZI, ELAINE POWELL, ROBERT)
8     PRIOR, ALIA TSANG, AND KYLE   )
      WILLIAMS, on behalf of        )
9     themselves and all others     )
      similarly situated,           )
10    Plaintiffs                    )
                                    )
11    V.                            )                            )
                                    )
12    CLEARWIRE CORPORATION,        )
      Defendant                     )

13    -----------------------------------------------------------

14                        ORAL DEPOSITION OF
                            GORDON MORGAN
15                          Volume 1 of 1
                          December 17, 2012
16
      -----------------------------------------------------------
17         ORAL DEPOSITION OF GORDON MORGAN, produced as a witness
18    at the instance of the PLAINTIFF, and duly sworn, was taken in
19    the above-styled and numbered cause on December 17, 2012 from
20    1:01 P.M. to 1:40 P.M., before Sylvia D. Trevino, CSR No. 2733
21    in and for the State of Texas, reported by Stenographic
22    method, at the offices of U.S. Legal Support, 802 N.
23    Carancahua, Corpus Christi, Texas, pursuant to the Federal
24    Rules of Civil Procedure, Notice and any provisions stated on
25    the record.

G. MORGAN

Page 2

1                    A P P E A R A N C E S
2

    ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA
3    GARZA

4              Christopher Bandas
               THE BANDAS LAW FIRM
5              500 N. Shoreline, Ste. 1020
               Corpus Christi, Tx  78401-0353
6              (361) 698-5200
7

    CLASS ACTION ATTORNEY:
8

               Johnathan K. Tycko
9              TYCKO & ZAVAREEI
               2000 L. St. N.W. Ste. 808
10             Washington, D.C. 20036
               (202) 973-0900
11             fax (202) 973-0950
               jtycko@tzlegal.com
12

    ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:
13   (Telephonically)
14             John Goldmark
               DAVIS, WRIGHT, TREMAINE
15             1201 Third Avenue
               Seattle, Washington 98101
16             Tel:  (206) 757-8068
               johngoldmark@dwt.com
17
18
19
20
21
22
23
24
25

Page 3

1                          INDEX
2

     Witness Name                                   Page
3         Direct By Mr. Tycko . . . . . . . . . . . . .   4
          Cross By Mr. Goldmark . . . . . . . . . . . .  20
4         Re-Direct By Mr. Tycko  . . . . . . . . . . .  26
          Reporter's Certificate  . . . . . . . . . . .  32

5

6                        EXHIBITS
7

     No.      Description                            Page
8    1        Agreement                              11
     2        Notice of Deposition                   15
9    3        Objection to Proposed Class Settlement 17
     4        Postcard-AllianceOne                   18
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1                       GORDON MORGAN,

2          having been first duly sworn, testified as follows:

3                     E X A M I N A T I O N

4    BY MR. TYCKO:

5          Q     Good afternoon.  Could you state your full name and

6    address?

7          A     Gordon Blaine Morgan.  Office address, 4701 Ayers,

8    Suite 105, Corpus Christi, Texas 78415.

9          Q     That's an office address?

10         A     Yes.

11         Q     What type of business do you have?

12         A     I sell utility trailers, oil and gas utility

13    trailers, like sand haulers, fuel haulers --

14         Q     Okay.

15         A     -- vacuum trailers.

16         Q     Do you also have a residential address?

17         A     Yes.

18         Q     What would that be?

19         A     14134 Palo Seco.  It's two words.  Corpus Christi,

20    Texas, 74818.

21         Q     And do you understand that you're being deposed here

22    today in connection with an objection that you filed in the

23    Western District of Washington in Seattle?

24         A     Yes.

25         Q     In the Clearwire matter?

G. MORGAN

Page 5

1      A     Yes.

2      Q     Let me just go over some of the ground rules of the

3  deposition before we get started.   Have you ever been deposed

4  before?

5      A     Yes.

6      Q     How many times, roughly?

7      A     One time.

8      Q     Okay.   So you're probably familiar with the

9  procedures but there's a court reporter sitting there to your

10  left.   She's going to write down my questions and your answers

11  so it's important that we not speak over each other.   She can

12  only write down one thing at a time.   If you think any of my

13  questions are unclear or vague, please let me know and I'll

14  rephrase them.   If you don't let me know, we'll assume that

15  you understood the question.   Do you understand that?

16      A     Yes.

17      Q     Now, are you a current or a former customer of

18  Clearwire?

19      A     Former.

20      Q     And when did you become a Clearwire customer?

21      A     I'd be -- I'm guessing at the date, but it's

22  probably sometime around 2006, 2007.

23      Q     Do you recall what type of service you signed up

24  for?

25      A     I believe it was Internet and telephone.

G. MORGAN

Page 6

1      Q     And for how long a time did you have Clearwire as

2  your internet and telephone provider?

3      A     Again, I'm guessing, but it's probably in the

4  neighborhood of a year to a year and a half.

5      Q     And did you have any trouble with the Clearwire

6  service during that --

7      A     Yes; I remember having a lot of issues with it.  And

8  I remember before we moved locations, we didn't -- we actually

9  picked up Warner Cable.

10     Q     Did you use Clearwire at your business or at your

11  home?

12     A     Business.

13     Q     Business.  Can you just give me some sense of what

14  the issues were -- that you had with Clearwire during the time

15  that you were using that service?

16     A     I'm trying to remember exactly, but it seemed to me

17  like there was a lot of issues with the Internet, either the

18  speed or just the Internet itself failing, and I think we had

19  some telephone issues as well.  I can't remember exactly what

20  it was.

21     Q     Did you ever make any sort of claim against

22  Clearwire as a result of that?

23     A      I know that we called Clearwire for repair work, but

24  I don't believe the claim was ever made; no.

25     Q     Did you ever ask Clearwire to refund any of your

G. MORGAN

Page 7

1    fees during that?

2          A    No.

3          Q    I assume you never brought a lawsuit against them?

4          A    No.

5          Q    When you -- when you switched from Clearwire to Time

6    Warner you said --

7          A    Yes.

8          Q    -- do you know whether Clearwire imposed any sort of

9    termination fee on you?

10         A    I think -- I think they did, actually, but I

11   can't -- You know, I can't remember it's been so long.  I

12   can't remember exact details, but I seem to remember having a

13   bit of an argument with them.

14         Q    Do you recall the amount?

15         A    No.

16         Q    Do you recall what the basis for the fee was;

17   anything like that?

18         A    Yeah.  I think that we -- I think it was alleged

19   that we broke the contract or that we were under contract with

20   them, even though we moved and -- but we didn't continue with

21   them.

22         Q    Okay.  So do you know whether you paid what they

23   call an early termination fee?

24         A    I don't think we paid it.

25         Q    So what happened?

Page 8

1       A     I guess they just went away.

2       Q     Oh, okay.  So did they ever actually charge you the

3    fee?

4       A     No.  I think they tried to charge the fee.

5       Q     But you never paid it?

6       A     Never paid.

7       Q     And since the time that you canceled Clearwire and

8    switched to Time Warner, have you had any other business with

9    Clearwire at all?

10      A     No.

11      Q     Now, I take it at some point you learned about the

12   settlement in our case; is that right?

13      A     Yes; I got a notice.

14      Q     Okay.  And do you recall how you got that notice?

15      A     Came in the mail.

16      Q     Postcard?

17      A     Yes.       '

18      Q     And what did you do after you got that postcard?

19      A     I contacted Mr. Bandas' office.

20      Q     All right.  And why did you do that?

21      A     Because I know that he handles these types of case

22   and I didn't really understand what was going on with it.

23      Q     Did you -- did you submit a claim?

24      A     Yes.  A claim has been submitted; yes.

25      Q     And how did you do that?

G. MORGAN

Page 9

1     A     By paper.  It's a paper claim, I believe.

2     Q     Did you fill that out or did somebody fill it out

3  for you?

4     A     I filled it out.

5     Q     Do you recall anything about the details of

6  the claim form, what you filled in on the claim form?

7     A     It just asks approximately when we had the service

8  and I think that was really the only detail.  It wasn't very

9  long.

10    Q     Do you recall roughly when you sent in the claim

11  form?

12    A     Three weeks ago, perhaps.

13    Q     Did you -- did you review the settlement

14  agreement?

15    A     I looked it over and, like I said, I just sent it on

16  to Mr. Bandas.

17    Q     But you did actually look at the settlement

18  agreement itself?

19    A     I looked at the document.  I don't understand that

20  so I --

21    Q     When you say "document", you mean the postcard they

22  sent you?

23    A     Yeah.

24    Q     So you never went and actually looked at the full

25  settlement agreement?

G. MORGAN

Page 10

1        A     Oh, no.

2        Q     It's like a 60-page document.

3        A     No.

4        Q     Okay.  So the only document that you personally

5   looked at was the postcard notes that you got; is that right?

6        A     That and the form; the claim form.

7        Q     The claim form.  The postcard notice and the claim

8   form?

9        A     Yes.

10        Q     And do you understand that you have filed an

11   objection asking the Court to disapprove the settlement?

12        A     Yes.

13        Q     And do you have an understanding of what the basis

14   for that objection is?

15        A     No; I just -- I just sent it over to Chris and let

16   him handle it.

17        Q     So do you have any -- do you have any, at this point

18   you yourself, do you have any objection to the terms of the

19   settlement?

20        A     No.

21             MR. BANDAS:  Objection.  You're asking him for

22   a legal opinion.  He has a lawyer, filed an objection, so when

23   you ask him the question do you personally have an objection,

24   obviously he does.  Are you asking him if he has something

25   aside from the pleading I filed as his lawyer as his

G. MORGAN

Page 11

1    objection?

2        Q    (BY MR. TYCKO) I'm asking do you personally have an

3    understanding of there being something in the settlement that

4    you object to?

5        A    Like I said, I just -- I'd refer it over to Chris to

6    handle it.

7        Q    Did you read the objection that Mr. Bandas filed in

8    court?

9        A    No.

10        Q    Have you ever read it prior to today?

11        A    No.

12        Q    Do you have any understanding of what the basis for

13    your objection is that you filed in court?

14        A    No.  I just let Chris handle it, like I said.

15        Q    Did you hire Mr. Bandas' lawfirm to represent you as

16    on objector?

17        A    Yes.

18        Q    And what are the terms under which you hired him?

19        A    It's -- we have a -- I guess it's power of attorney

20    agreement.  I think it's -- He's pulling one out.

21                    MR. BANDAS:  You want a copy?

22                    MR. TYCKO:  Sure.  Thank you.  Maybe we could

23    just mark this as Exhibit 1.

24                    (EXHIBIT 1 WAS MARKED)

25                    MR. BANDAS:  Look at it.  Make sure it's yours

G. MORGAN

Page 12

1   and I've produced it in the right case.

2              THE WITNESS:  Yeah.

3              MR. BANDAS:  For friend on the phone, Counsel

4   is just looking at a document.  That's why it went silent.

5        Q    (BY MR. TYCKO)  Let me just show you what we've

6   marked as Exhibit 1 of your deposition.  Is that the retention

7   agreement that you entered into with Mr. Bandas' lawfirm in

8   connection with this matter?

9        A    Yes; it is.

10       Q    And that's your signature that appears on the last

11  page?

12       A    Yes.

13       Q    And do you have any other understandings or

14  agreements with Mr. Bandas other than what's shown in this

15  document?

16       A    No.

17       Q    Have you ever objected to other class action

18  settlements prior to the objection that you filed in the

19  Clearwire case?

20       A    No.

21              MR. BANDAS:  Wait.  We don't want to leave the

22  wrong impression here.  You're in the AllianceOne case.

23              THE WITNESS:  But that's after.  I think that's

24  after this one.  Anyway --

25              MR. BANDAS:  I don't know if that's before or

G. MORGAN

```
                                                    Page 13
 1   after.
 2                   MR. TYCKO:  I'll ask it a different way.
 3                   MR. BANDAS:  Maybe you might want to ask ever.
 4                   MR. TYCKO:  Yes.  I'll ask that question.
 5        Q    (BY MR. TYCKO)  Have you ever objected to a class
 6   action settlement in any matter other than the Clearwire case?
 7        A    There's another one called AllianceOne.  I think
 8   that's just happening now.
 9        Q    You think it's what?
10        A    I think it's new.  I think it was after this one.
11        Q    And what's the nature of the settlement in that
12   case, or what's the case about?
13        A    I can't remember.
14        Q    Do you remember what the case is about?
15        A    I can't remember.  I got notified by it as well.
16        Q    Was it a product or a service that you had purchased
17   at some time?
18        A    I can't remember.  I'm sorry.
19        Q    Do you recall when you filed that objection?
20        A    I don't think it's been filed.
21        Q    Do you know what court it was that was considering
22   the settlement?
23        A    Hum-um.  No.
24        Q    And how did you decide to object in that case?
25        A    I just -- when I got those things, I know that
```

G. MORGAN

Page 14

1    Mr. Bandas' office handles these types of matters and when I

2    got that in, I sent it along as well.

3        Q    Do you have any understanding sitting here today of

4    what the substance of your objection was in the Alliance case?

5        A    I'm sorry.  I don't.

6        Q    So Mr. Bandas represents you in that matter as well?

7        A    Yes, sir.

8        Q    Okay.  Has he represented you in any other cases?

9        A    No.

10       Q    Do you have a personal view, one way or the other,

11   as to whether or not the settlement that we've entered into in

12   the Clearwire case should or shouldn't be approved?

13            MR. BANDAS:  Objection.  Asked and answered.

14   And are you asking him beyond what's already in his pleading,

15   or in addition to or separate from?

16            MR. TYCKO:  Just asking for his personal

17   opinion.

18       Q    (BY MR. TYCKO)  Do you have a personal opinion or a

19   view as to whether or not the settlement that has been entered

20   into in the Clearwire case should or shouldn't be approved be

21   the Court?

22            MR. BANDAS:  I'll tell you before you answer,

23   make sure you don't reveal any attorney/client communications.

24   I know counsel is not asking you for that, but just to be

25   abundantly clear, you don't want to tell him anything that we

1    talked about.  So if you can answer the question without

2    relying on those things and have a personal opinion other than

3    the pleadings and what we discussed, in addition to what

4    you've already filed with the court, I guess to the extent you

5    understand his question, you can answer it.

6                    THE WITNESS:  I mean, outside of what has been

7    filed by Mr. Bandas, I really don't have an opinion one way or

8    the other.

9        Q    (BY MR. TYCKO) Well, if you don't -- if you don't

10   have an opinion about the settlement and you haven't read it,

11   can you just tell me why you've objected?

12       A    I just rely on the advice of my counsel and let him

13   handle the legal side of it.

14       Q    So you can't give me -- you can't give me a reason,

15   though?

16       A    No.

17                    MR. BANDAS:  Objection.  Asked and answered

18   several times now.

19                    MR. TYCKO:  If I could have that marked as

20   Exhibit 2.

21                    (EXHIBIT 2 WAS MARKED.)

22       Q    (BY MR. TYCKO)  Mr. Morgan, I'm going to hand you

23   what we've marked as Exhibit 2 of this deposition.  It's just

24   the notice to this deposition, and then attached to it is an

25   exhibit.  It's the subpoena that, I believe, was served upon

Page 16

1    you and I just ask you to take a look at that.  Have you seen

2    that subpoena before, Exhibit A?

3        A    I think Thursday or Friday of last week it showed

4    up.

5        Q    Okay.  And did you notice that the subpoena asks to

6    you produce certain categories of documents?

7                MR. BANDAS:  By the way, Jonathan, you may or

8    may not know this, but we filed objections with the Court

9    today.

10                THE WITNESS:  Are you talking about here?

11       Q    (BY MR. TYCKO)  Yeah.  Yeah.  And by "here", the

12    witness is pointing at Exhibit A, the subpoena.

13       A    It's specifically production?

14       Q    Correct, yeah.  So have you brought with you any

15    documents responsive to that subpoena?

16       A    No.  Any documents that I would have would be in the

17    hands of my lawyer.

18                MR. TYCKO:  Okay.  I take it you haven't

19    brought anything with you, Chris?

20                MR. BANDAS:  Yeah, we -- well, I gave you the

21    fee agreement, for starters.  I think most of the other things

22    are public record anyway, which I suspect you have access to.

23    Plus our objection was whether the depo was scheduled for

24    tomorrow or today and we moved it -- moved the subpoena depo

25    to today by agreement.  Either way, it give us, you know, less

G. MORGAN

Page 17

1  than two business days to respond, so to the extent we come up

2  with anything that's responsive and relevant and appropriate,

3  we will produce it.

4      Q    But you don't have anything else to produce today?

5      A    No.

6                    (EXHIBIT 3 WAS MARKED)

7      Q    (BY MR. TYCKO)  Mr. Morgan, I'm going to hand you

8  what's been marked as Exhibit 3 as the pleading that your

9  lawyer filed in our case titled Objection to Proposed Class

10  Settlement and Award of Attorneys' Fees and Expenses, which I

11  guess was filed on or about November 30th of this year.  Have

12  you seen this document before today?

13      A    No.

14      Q    Let me just direct you to some of the documents that

15  are included as exhibits to this pleading.  Exhibit 1 to the

16  pleading, is that a copy of the postcard notice that you

17  received?

18      A    Yes.

19      Q    So that was one of the documents that you reviewed?

20      A    That's the document that I received telling me about

21  this class action.

22      Q    Okay.  And you told me that document was the only

23  document that you've read that actually describes the

24  settlement; is that right?

25      A    Yes.

Page 18

1      Q      Okay.  And then let me show you what's Exhibit 2 to

2  the pleading.  Have you ever seen that before?

3      A      That's confirmation for the filing of the -- what is

4  it -- proof of claim filing; yes.

5      Q      So is that a document you got back after you

6  submitted the claim?

7      A      Well, it came on the screen, but yeah; you could

8  print it out.  It just -- that's a verifications, I think;

9  yeah.

10     Q      Okay.  So when you submitted your claims forms, did

11  you do it online on the settlement website?

12     A      Yes.  I printed -- I think I printed it out as well,

13  but I did it online; yeah.

14     Q      And this is the receipt you got back?

15     A      Yes.

16     Q      Did you keep a copy of your claims form?

17     A      If I did, I sent it to Mr. Bandas' office.

18     Q      Do you know whether you did or not?

19     A      I believe I printed it out and then sent it to

20  Mr. Bandas' office.

21     Q      Okay.  And so this postcard notice and that claims

22  form, those are the only documents that you've looked at

23  related to the case; is that right?

24     A      Yes.

25              MR. TYCKO:  If I can have that marked at next

G. MORGAN

Page 19

1    exhibit.  I guess it's Exhibit 4.

2                (EXHIBIT NUMBER 4 WAS MARKED.)

3        Q    (BY MR. TYCKO)   Let me hand you what we've marked as

4    Exhibit 4.  Have you seen this document before?

5        A    I want to say that I've read this, I think on the

6    e-mail.

7        Q    Is that your signature that appears on the second

8    page?

9        A    No, but I probably gave permission for it to be

10   signed.

11       Q    So --

12       A    This is the AllianceOne; yeah.

13       Q    Was this the objection that was filed on your behalf

14   in the AllianceOne case?

15       A    Yes, sir.

16       Q    So that was the other one that you mentioned to me?

17       A    Yes; it is.

18       Q    And does looking at this refresh your recollection

19   at all about what the AllianceOne settlement was about?

20       A    I'm just reading what this card says and it's

21   something to do with cell phone or pager calls AllianceOne was

22   using from an automated telephone dialing system but I don't

23   know anything more than that.

24       Q    Were you a customer of AllianceOne?

25       A    Yes, but I can't -- I don't know exactly in what --

1    whether or not we had cell phones through them or what.

2        Q    Okay.  And so the first two pages of this document,

3    who drafted that?

4        A    It was drafted probably by Mr. Bandas' office for

5    me.

6        Q    And then you gave them permission to sign for you?

7        A    Yes; I would have.

8            MR. TYCKO:  I don't think I've got anymore

9    questions for you.  Thanks for coming down.

10            THE WITNESS:  Thank you, sir.

11            MR. TYCKO:  One second.  Do you have any

12    questions from the phone?

13            MR. GOLDMARK:  Yeah.  Sure.  Let me -- just a

14    couple of quick follow-up questions.

15                E X A M I N A T I O N

16    BY MR. GOLDMARK:

17        Q    Mr. Morgan, you mentioned your subscription to

18    Clearwire.  Do you remember more specifically when you signed

19    up?

20        A    No.  I'm sorry.  I don't.

21        Q    And who signed up for Clearwire?  Was it you or your

22    business?

23        A    It would have been my business.

24        Q    And what's your business's name?

25        A    At that time, it was -- Currently, my business is

Page 21

1    called Texas International Trailer Sales.  That's current, but

2    that wouldn't have been the same and I'm trying to think back

3    to the timeframe.  It had to be somewhere around 2006, 2007,

4    2008; right in there somewhere, and that would have been --

5    because I've had several different companies, but it probably

6    would have been Canales, Morgan Law Office.

7        Q    I'm sorry.  What was that name?  I couldn't quite

8    hear you.

9        A    Canales, Morgan Law Office, but it could have been

10   different.  We had several different changes over the last few

11   years.

12       Q    And what did -- what was that business?

13       A    It was a law office.

14       Q    And did you operate it?

15       A    Yes.

16       Q    In what capacity?

17       A    As a lawyer.

18       Q    And what kind of practice did you practice with

19   Canales, Morgan Law Office?

20       A    It just -- it was a general practice; nothing

21   specific.

22       Q    Could you give me some examples of the types of

23   cases you worked on?

24       A    Immigration law, criminal law, personal injury law,

25   family law, and whatever else came through the door.

Page 22

1    Q    Fair enough.  And when did you start that practice?

2    A    My practice started in 1989.

3    Q    And the name of the practice -- Am I pronouncing it

4   right?  Canales, Morgan Law Office?

5    A    At the time of the Clearwire, yeah; it was Canales,

6   Morgan.  Could have been Morgan Law Office.  My recollection

7   is it was Canales, Morgan, but I can't remember.

8                MR. TYCKO:  How do you spell Canales?

9    Q    (BY MR. GOLDMARK)  Okay.  And where was that

10  located?

11   A    We were located at a couple of different areas, but

12  719 North Upper Broadway.

13   Q    That would have -- would that have been the location

14  when you signed up for Clearwire?

15   A    Probably.

16   Q    And I'm sorry.  I'm not familiar with the area.  Is

17  this 719 North Upper Broadway, is that in Corpus Christi?

18   A    Yes, sir.

19   Q    And you mentioned that your Clearwire service, you

20  changed it when you moved.  So what happened?  Was this when

21  you moved away from 719 North Upper Broadway?

22   A    Yes.  Yeah.  We -- I don't know if we got rid of it

23  immediately, but we -- I know we got rid -- We were having a

24  lot of trouble with it.

25   Q    And where did you move to?

G. MORGAN

Page 23

1        A    Don't remember the exact address on Buffalo Street.

2  We moved from 719 North Upper Broadway to Buffalo Street but I

3  don't remember the street number.

4        Q    And that was still the law office then that was --

5  that had moved?

6        A    Yes.

7        Q    What kind of Clearwire service did the law office

8  subscribe to?

9        A    It would have been phones and Internet.

10       Q    Do you recall what the speed of the plan was that

11  you signed up for?

12       A    No.  I'm sorry.

13       Q    And who would have signed it.  Would it have been

14  you?

15       A    Probably.

16       Q    How did you hear about Clearwire?

17       A    It was a -- There was a lot of activity about

18  Clearwire back then and a lot of advertisement, a lot of

19  information concerning the quality and speed of the service.

20  And I think we had some person that was selling it come to the

21  office and we agreed to switch over.

22       Q    And what was the information concerning the quality

23  and speed of service?

24       A    It's just general, you know.  This is new a deal.

25  This is fast, it's good, it's the -- you know, a good quality

G. MORGAN

Page 24

1    type of service for offices and so forth, but I don't remember

2    any real specifics.  It was just a general push towards their

3    type of product.

4         Q    And what -- when you said someone came to the office

5    and told you about Clearwire, what was your Internet carrier

6    at the time?

7         A    I can't -- I can't honestly -- I cannot remember.

8    It was -- I'm just guessing.  It would have been Southwestern

9    Bell; something like that, but I can't remember.

10        Q    And when did you move locations, because it sounds

11   like that roughly approximates when you changed providers?

12        A    I don't remember the exact date.  I can't remember

13   the dates.

14             COURT REPORTER:  Can you hold on for a second,

15   please?

16                      (SHORT PAUSE.)

17        Q    (BY MR. GOLDMARK)  Mr. Morgan, what about just a

18   year?  Can you remember which year you would have moved and

19   changed service?

20        A    I want to say 2008, but I mean, it could have been

21   2007.

22        Q    Let's turn into -- you mentioned some issues with

23   the Clearwire's Internet.  Can you describe what those issues

24   were?

25        A    Yeah.  I think it's -- my secretaries at the time

Page 25

1    were complaining -- from what I recall, that they were

2    complaining about the -- either the speed of the Internet or

3    that the Internet itself was -- it was -- I don't know what

4    the term is.  It would just stop.  But I remembered that they

5    were very unhappy with it.

6         Q    And did you or someone in your office contact

7    Clearwire to address that issues or to bring that issue to

8    light?

9         A    Yes.  I remember -- Yes; I remember them getting

10   involved and trying to rectify the situation, but I don't

11   think it ever changed anything.

12        Q    Did you contact Clearwire?

13        A    I can't remember if it was me or if it was one of

14   the secretaries.  We had a lady that was kind of running the

15   office at that time and it very well could have been her.

16        Q    I think you mentioned -- you mentioned a fee that --

17   when you changed that Clearwire I think you said tried to

18   charge but you didn't pay; is that right?

19        A    Yeah.  I seem to recall them wanting -- it was like

20   for breaking the contract.

21        Q    And how did you -- how did that come to light?

22        A    I think they made a demand for payment.

23        Q    And what did you do?

24        A    Told them I wasn't going to pay anything.

25        Q    And it sounds like you didn't pay anything; is that

Page 26

1    right?

2         A    That's right.

3         Q    Did you ever request a refund related to any

4    problems with your Internet connectivity?

5         A    I don't recall.  Like I said, we had a lady that was

6    like an office manager at the time and she may have, but I

7    don't recall.

8                   MR. GOLDMARK:  Thank you, Mr. Morgan.  That's

9    all the questions I have.

10                   THE WITNESS:  Yes, sir.

11              F U R T H E R   E X A M I N A T I O N

12    BY MR. TYCKO:

13         Q    Just a couple more because I didn't realize that you

14    were a lawyer by background.  Are you still practicing law

15    now?

16         A    No.

17         Q    When did you get out of the practice of law?

18         A    In April of this year.

19         Q    April 2012?

20         A    Yes.

21         Q    And is that when you started the other business that

22    you have?

23         A    I actually started the other business several months

24    before.

25         Q    And what's the nature of the business you have now?

G. MORGAN

Page 27

1        A     It's an oil and gas field-related utility trailer

2    sales company.   We thinking about two oil tankers.   Not the

3    truck part, but the tanker part, sand carriers, vacuum

4    trailers.   There's a big oil play here.   I don't know if

5    you're familiar, but there's --

6        Q     I've heard oil and taxes going together.

7        A     We have a real, big -- very close to Corpus is a big

8    oil and gas plain, so there's a lot of activity there right

9    now.

10       Q     So it's supplying equipment for the --

11       A     Exactly.

12       Q     -- people who work in those fields?

13       A     Yes, sir.

14       Q     And have you kept your law practice going at all on

15   the side or --

16       A     No.

17       Q     -- are you totally out of it?

18       A     I'm out of it.

19       Q     And why did you decide to make that switch?

20       A     I resigned.

21       Q     Resigned from the bar, you mean totally?

22       A     Yes, sir.

23       Q     Okay.   Why did you resign your bar commission?

24       A     Well, I had a conflict with the State Bar.   Had been

25   going on for a few years and I finally just got tired of

G. MORGAN

Page 28

```
 1    dealing with them.

 2        Q     What was the nature of the conflict?

 3        A     It was over an automobile accident case and whether

 4    or not third party medical care providers had been paid

 5    timely.  Not that they hadn't been paid, but had they been

 6    paid timely.

 7        Q     And that just related to a particular case; one

 8    case?

 9        A     Yes.

10        Q     Was that ever resolved one way or the other?

11        A     It was -- They had been paid.  It was just whether

12    or not it was paid timely was the big -- a giant issue for the

13    Bar here, so after about three years of dealing with that, I

14    said enough's enough.

15        Q     And did your resignation effectively resolve the

16    issue before --

17        A     I had already paid.  Yeah; there was no issue.  The

18    answer to your question is yes, because there was no further

19    interaction between myself and the Bar.

20                  MR. TYCKO:  Okay.  I don't have anything else.

21    Thank you.

22                  MR. BANDAS:  Let's take a short break.

23

24                  (END OF DEPOSITION.)

25
```

G. MORGAN

Page 29

1                     CHANGES AND SIGNATURE

2                 TO THE ORAL DEPOSITION OF

3                     GORDON MORGAN

                      Volume 1 of 1

4

5     PAGE      LINE      CHANGE                      REASON

6     _____

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25    _____

Page 30

1        I, GORDON MORGAN, have read the foregoing deposition

2   and hereby affix my signature that same is true and correct,

3   except as noted above.

4

5                                    _____

6                                    GORDON MORGAN

7

8        I, GORDON MORGAN, have read the foregoing deposition

9   and hereby affix my signature that same is true and correct,

10  except as noted above.

11

12                                   _____

13                                   GORDON MORGAN

14

15

16  STATE OF _____ )

    COUNTY OF _____ )

17       Before me, _____, on this

    day personally appeared GORDON MORGAN, known to me (or proved

18  to me under oath or through _____(description of

    identity card or other document) to be the person whose name

19  is subscribed to the foregoing instrument and acknowledged to

    me that they executed the same for the purposes and

20  consideration therein expressed.

         (Seal)    Given under my hand and seal of office this

21  _____day of _____, _____.

22                                   _____

                                     Notary Public in and for the

23                                   State of_____

24

25

Page 31

1                   UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF WASHINGTON

3                          AT SEATTLE

4

   MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR

5  STEVEN COCKAYNE, BRIAN        )

   CRAWFORD, DAN DAZELL, ANGELO  )

6  DENNINGS, CHEYENNE FEGAN,     )

   SHARON FLOYD, GRERY GUERRIER, )

7  JOHANNA KOSKINEN, ELENA MUNOZ-)

   ALAZAZI, ELAIN POWELL, ROBERT )

8  PRIOR, ALIA TSANG, AND KYLE   )

   WILLIAMS, on behalf of        )

9  themselves and all others     )

   similarly situated,           )

10 Plaintiffs                    )

                                 )

11 V.                            )                              )

                                 )

12 CLEARWIRE CORPORATION,        )

   Defendant                     )

13

   ----------------------------------------------------------

14                     ORAL DEPOSITION OF

                       GORDON MORGAN

15                      Volume 1 of 1

                    December 17, 2012

16 ----------------------------------------------------------

17          I, Sylvia D. Trevino, Certified Shorthand Reporter

18 in and for the State of Texas, hereby certify to the

19 following:

20          That the witness, GORDON MORGAN, was duly sworn by

21 the officer and that the transcript of the oral deposition is

22 a true record of the testimony given by the witness;

23          That the deposition transcript was submitted on

24 December 18, 2012, to the witness or to the attorney for the

25 witness for examination, signature and return to Sylvia D.

G. MORGAN

                                                        Page 32

1    Trevino by January 17, 2013;

2              That the amount of time used by each party at the

3    deposition is as follows:

4              Johnathan Tycko - (0:12)

5              John Goldmark - (0:02)

6              That pursuant to information given to the deposition

7    officer at the time said testimony was taken, the following

8    includes counsel for all parties of record:

9    ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA

     GARZA

10

             Christopher Bandas

11           THE BANDAS LAW FIRM

             500 N. Shoreline, Ste. 1020

12           Corpus Christi, Tx  78401-0353

             (361) 698-5200

13

14   CLASS ACTION ATTORNEY:

15           Johnathan K. Tycko

             TYCKO & ZAVAREEI

16           2000 L. St. N.W. Ste. 808

             Washington, D.C. 20036

17           (202) 973-0900

             fax (202) 973-0950

18           jtycko@tzlegal.com

19   ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:

     (Telephonically)

20

             John Goldmark

21           DAVIS, WRIGHT, TREMAINE

             1201 Third Avenue

22           Seattle, Washington 98101

             Tel:  (206) 757-8068

23           johngoldmark@dwt.com

24

25

G. MORGAN

Page 33

1          I further certify that I am neither counsel for,

2     related to, nor employed by any of the parties or attorneys in

3     the action in which this proceeding was taken, and further

4     that I am not financially or otherwise interested in the

5     outcome of the action.

6          Further certification requirements pursuant to Rule

7     203 of TRCP will be certified to after they have occurred.

8          Certified to by me on December 18, 2012.

9

10          *Sylvia D. Trevino*

          Sylvia D. Trevino, CSR 2733

11          Expiration Date: 12/31/12

          U.S. Legal Support

12          Firm Registration No. 343

          5910 N. Central Expressway, Ste. 100

13          (214) 741-6001 - (214)741-6824 (f)

14     Job No. 136957

15                         - - -

16          FURTHER CERTIFICATION UNDER RULE 203 TRCP

17     ----------------------------------------------------------------

18          The original deposition was/was not returned to the

19     deposition officer on _____;

20          If returned, the attached Changes and Signature page

21     contains any changes and the reasons therefor;

22          If returned, the original deposition was delivered

23     to _____, Custodial Attorney;

24          That $_____ is the deposition officer's charges to

25     the PLAINTIFF for preparing the original deposition transcript

G. MORGAN

Page 34

1    and any copies of exhibits;

2            That the deposition was delivered in accordance with

3    Rule 203.3, and that a copy of this certificate was served on

4    all parties shown herein and filed with the Clerk.

5            Certified to by me this 20th day of December,

6    2012.

7

8            Sylvia D. Trevino, CSR 2733

             Expiration Date:  12/31/12

9            U.S. Legal Support

             Firm Registration No. 343

10           5910 N. Central Expressway, Ste. 100

             (214) 741-6000 (214) 714-6824 (f)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

[& - behalf]                                                                  Page 1

| & |
| --- |
| **&**  2:2,9 32:9,15 |

| 0 |
| --- |
| **0:02**  32:5 |
| **0:12**  32:4 |

| 1 |
| --- |
| **1**  1:15,15 3:8 11:23 11:24 12:6 17:15 29:3,3 31:15,15 |
| **10-1859**  1:4 31:4 |
| **100**  33:12 34:10 |
| **1020**  2:5 32:11 |
| **105**  4:8 |
| **11**  3:8 |
| **12/31/12**  33:11 34:8 |
| **1201**  2:15 32:21 |
| **136957**  33:14 |
| **14134**  4:19 |
| **15**  3:8 |
| **17**  1:15,19 3:9 31:15 32:1 |
| **18**  3:9 31:24 33:8 |
| **1989**  22:2 |
| **1:01**  1:20 |
| **1:40**  1:20 |

| 2 |
| --- |
| **2**  3:8 15:20,21,23 18:1 |
| **20**  3:3 |
| **2000**  2:9 32:16 |
| **20036**  2:10 32:16 |
| **2006**  5:22 21:3 |
| **2007**  5:22 21:3 24:21 |
| **2008**  21:4 24:20 |
| **2012**  1:15,19 26:19 31:15,24 33:8 34:6 |
| **2013**  32:1 |
| **202**  2:10,11 32:17 32:17 |
| **203**  33:7,16 |
| **203.3**  34:3 |

| 206  2:16 32:22 |
| --- |
| **214**  33:13,13 34:10 34:10 |
| **26**  3:4 |
| **2733**  1:20 33:10 34:8 |

| 3 |
| --- |
| **3**  3:9 17:6,8 |
| **30th**  17:11 |
| **32**  3:4 |
| **343**  33:12 34:9 |
| **361**  2:6 32:12 |

| 4 |
| --- |
| **4**  3:3,9 19:1,2,4 |
| **4701**  4:7 |

| 5 |
| --- |
| **500**  2:5 32:11 |
| **5910**  33:12 34:10 |

| 6 |
| --- |
| **60**  10:2 |
| **698-5200**  2:6 32:12 |

| 7 |
| --- |
| **714-6824**  34:10 |
| **719**  22:12,17,21 23:2 |
| **741-6000**  34:10 |
| **741-6001**  33:13 |
| **741-6824**  33:13 |
| **74818**  4:20 |
| **757-8068**  2:16 32:22 |
| **78401-0353**  2:5 32:12 |
| **78415**  4:8 |

| 8 |
| --- |
| **802**  1:22 |
| **808**  2:9 32:16 |

| 9 |
| --- |
| **973-0900**  2:10 32:17 |
| **973-0950**  2:11 32:17 |
| **98101**  2:15 32:22 |

| a |
| --- |
| **abundantly**  14:25 |
| **access**  16:22 |
| **accident**  28:3 |
| **acknowledged** 30:19 |
| **action**  2:7 12:17 13:6 17:21 32:14 33:3,5 |
| **activity**  23:17 27:8 |
| **addition**  14:15 15:3 |
| **address**  4:6,7,9,16 23:1 25:7 |
| **advertisement** 23:18 |
| **advice**  15:12 |
| **affix**  30:2,9 |
| **afternoon**  4:5 |
| **ago**  9:12 |
| **agreed**  23:21 |
| **agreement**  3:8 9:14 9:18,25 11:20 12:7 16:21,25 |
| **agreements**  12:14 |
| **alazazi**  1:7 31:7 |
| **alia**  1:8 31:8 |
| **alleged**  7:18 |
| **alliance**  14:4 |
| **allianceone**  3:9 12:22 13:7 19:12,14 19:19,21,24 |
| **alyson**  1:4 31:4 |
| **amount**  7:14 32:2 |
| **angelo**  1:5 31:5 |
| **answer**  14:22 15:1,5 28:18 |
| **answered**  14:13 15:17 |
| **answers**  5:10 |
| **anymore**  20:8 |
| **anyway**  12:24 16:22 |
| **appeared**  30:17 |
| **appears**  12:10 19:7 |

| appropriate  17:2 |
| --- |
| **approved**  14:12,20 |
| **approximately**  9:7 |
| **approximates**  24:11 |
| **april**  26:18,19 |
| **area**  22:16 |
| **areas**  22:11 |
| **argument**  7:13 |
| **aside**  10:25 |
| **asked**  14:13 15:17 |
| **asking**  10:11,21,24 11:2 14:14,16,24 |
| **asks**  9:7 16:5 |
| **assume**  5:14 7:3 |
| **attached**  15:24 33:20 |
| **attorney**  2:2,7,12 11:19 14:23 31:24 32:9,14,19 33:23 |
| **attorneys**  17:10 33:2 |
| **automated**  19:22 |
| **automobile**  28:3 |
| **avenue**  2:15 32:21 |
| **award**  17:10 |
| **ayers**  4:7 |

| b |
| --- |
| **back**  18:5,14 21:2 23:18 |
| **background**  26:14 |
| **bandas**  2:4,4 8:19 9:16 10:21 11:7,15 11:21,25 12:3,7,14 12:21,25 13:3 14:1 14:6,13,22 15:7,17 16:7,20 18:17,20 20:4 28:22 32:10,11 |
| **bar**  27:21,23,24 28:13,19 |
| **basis**  7:16 10:13 11:12 |
| **behalf**  1:8 19:13 31:8 |

G. MORGAN

[believe - description]

**believe** 5:25 6:24 9:1
15:25 18:19
**bell** 24:9
**beyond** 14:14
**big** 27:4,7,7 28:12
**bit** 7:13
**blaine** 4:7
**bobowski** 1:4 31:4
**break** 28:22
**breaking** 25:20
**brian** 1:5 31:5
**bring** 25:7
**broadway** 22:12,17
22:21 23:2
**broke** 7:19
**brought** 7:3 16:14
16:19
**buffalo** 23:1,2
**burn** 1:4 31:4
**business** 4:11 6:10
6:12,13 8:8 17:1
20:22,23,25 21:12
26:21,23,25
**business's** 20:24

**c**

**c** 1:4 2:1 31:4
**cable** 6:9
**call** 7:23
**called** 6:23 13:7
21:1
**calls** 19:21
**canales** 21:6,9,19
22:4,5,7,8
**canceled** 8:7
**capacity** 21:16
**carancahua** 1:23
**card** 19:20 30:18
**care** 28:4
**carrier** 24:5
**carriers** 27:3
**case** 1:4 8:12,21
12:1,19,22 13:6,12
13:12,14,24 14:4,12
14:20 17:9 18:23

19:14 28:3,7,8 31:4
**cases** 14:8 21:23
**categories** 16:6
**cause** 1:19
**cell** 19:21 20:1
**central** 33:12 34:10
**certain** 16:6
**certificate** 3:4 34:3
**certification** 33:6,16
**certified** 31:17 33:7
33:8 34:5
**certify** 31:18 33:1
**change** 29:5
**changed** 22:20
24:11,19 25:11,17
**changes** 21:10 29:1
33:20,21
**charge** 8:2,4 25:18
**charges** 33:24
**cheyenne** 1:6 31:6
**chris** 10:15 11:5,14
16:19
**christi** 1:23 2:5 4:8
4:19 22:17 32:12
**christopher** 2:4
32:10
**civil** 1:24
**claim** 6:21,24 8:23
8:24 9:1,6,6,10 10:6
10:7,7 18:4,6
**claims** 18:10,16,21
**class** 2:7 3:9 12:17
13:5 17:9,21 32:14
**clear** 14:25
**clearwire** 1:12 2:12
4:25 5:18,20 6:1,5
6:10,14,22,23,25
7:5,8 8:7,9 12:19
13:6 14:12,20 20:18
20:21 22:5,14,19
23:7,16,18 24:5
25:7,12,17 31:12
32:19
**clearwire's** 24:23

**clerk** 34:4
**client** 14:23
**close** 27:7
**cockayne** 1:5 31:5
**come** 17:1 23:20
25:21
**coming** 20:9
**commission** 27:23
**communications**
14:23
**companies** 21:5
**company** 27:2
**complaining** 25:1,2
**concerning** 23:19,22
**confirmation** 18:3
**conflict** 27:24 28:2
**connection** 4:22
12:8
**connectivity** 26:4
**consideration** 30:20
**considering** 13:21
**contact** 25:6,12
**contacted** 8:19
**contains** 33:21
**continue** 7:20
**contract** 7:19,19
25:20
**copies** 34:1
**copy** 11:21 17:16
18:16 34:3
**corporation** 1:12
2:12 31:12 32:19
**corpus** 1:23 2:5 4:8
4:19 22:17 27:7
32:12
**correct** 16:14 30:2,9
**counsel** 12:3 14:24
15:12 32:8 33:1
**county** 30:16
**couple** 20:14 22:11
26:13
**court** 1:1 5:9 10:11
11:8,13 13:21 14:21
15:4 16:8 24:14
31:1

**crawford** 1:5 31:5
**criminal** 21:24
**cross** 3:3
**csr** 1:20 33:10 34:8
**current** 5:17 21:1
**currently** 20:25
**custodial** 33:23
**customer** 5:17,20
19:24

**d**

**d** 1:20 31:17,25
33:10 34:8
**d.c.** 2:10 32:16
**dan** 1:5 31:5
**date** 5:21 24:12
33:11 34:8
**dates** 24:13
**davis** 2:14 32:21
**day** 30:17,21 34:5
**days** 17:1
**dazell** 1:5 31:5
**de** 2:2 32:9
**deal** 23:24
**dealing** 28:1,13
**december** 1:15,19
31:15,24 33:8
**decide** 13:24 27:19
**defendant** 1:12 2:12
31:12 32:19
**delivered** 33:22 34:2
**demand** 25:22
**dennings** 1:6 31:6
**depo** 16:23,24
**deposed** 4:21 5:3
**deposition** 1:14,17
3:8 5:3 12:6 15:23
15:24 28:24 29:2
30:1,8 31:14,21,23
32:3,6 33:18,19,22
33:24,25 34:2
**describe** 24:23
**describes** 17:23
**description** 3:7
30:18

G. MORGAN

[detail - internet]

**detail**  9:8
**details**  7:12 9:5
**dialing**  19:22
**different**  13:2 21:5
 21:10,10 22:11
**direct**  3:3,4 17:14
**disapprove**  10:11
**discussed**  15:3
**district**  1:1,2 4:23
 31:1,2
**document**  9:19,21
 10:2,4 12:4,15
 17:12,20,22,23 18:5
 19:4 20:2 30:18
**documents**  16:6,15
 16:16 17:14,19
 18:22
**door**  21:25
**drafted**  20:3,4
**duly**  1:18 4:2 31:20
**dwt.com**  2:16 32:23

**e**
**e**  2:1,1 4:3 19:6
 20:15 26:11,11
**early**  7:23
**effectively**  28:15
**either**  6:17 16:25
 25:2
**elain**  31:7
**elaine**  1:7
**elena**  1:7 31:7
**employed**  33:2
**enough's**  28:14
**entered**  12:7 14:11
 14:19
**equipment**  27:10
**exact**  7:12 23:1
 24:12
**exactly**  6:16,19
 19:25 27:11
**examination**  31:25
**examples**  21:22
**executed**  30:19

**exhibit**  11:23,24
 12:6 15:20,21,23,25
 16:2,12 17:6,8,15
 18:1 19:1,1,2,4
**exhibits**  3:6 17:15
 34:1
**expenses**  17:10
**expiration**  33:11
 34:8
**expressed**  30:20
**expressway**  33:12
 34:10
**extent**  15:4 17:1

**f**
**f**  26:11 33:13 34:10
**failing**  6:18
**fair**  22:1
**familiar**  5:8 22:16
 27:5
**family**  21:25
**fast**  23:25
**fax**  2:11 32:17
**federal**  1:23
**fee**  7:9,16,23 8:3,4
 16:21 25:16
**fees**  7:1 17:10
**fegan**  1:6 31:6
**field**  27:1
**fields**  27:12
**filed**  4:22 10:10,22
 10:25 11:7,13 12:18
 13:19,20 15:4,7
 16:8 17:9,11 19:13
 34:4
**filing**  18:3,4
**fill**  9:2,2
**filled**  9:4,6
**finally**  27:25
**financially**  33:4
**firm**  2:4 32:11 33:12
 34:9
**first**  4:2 20:2
**floyd**  1:6 31:6

**follow**  20:14
**following**  31:19 32:7
**follows**  4:2 32:3
**foregoing**  30:1,8,19
**form**  9:6,6,11 10:6,6
 10:7,8 18:16,22
**former**  5:17,19
**forms**  18:10
**forth**  24:1
**friday**  16:3
**friend**  12:3
**fuel**  4:13
**full**  4:5 9:24
**further**  28:18 33:1,3
 33:6,16

**g**
**garza**  2:3 32:9
**gas**  4:12 27:1,8
**general**  21:20 23:24
 24:2
**getting**  25:9
**giant**  28:12
**give**  6:13 15:14,14
 16:25 21:22
**given**  30:20 31:22
 32:6
**go**  5:2
**going**  5:10 8:22
 15:22 17:7 25:24
 27:6,14,25
**goldmark**  2:14 3:3
 20:13,16 22:9 24:17
 26:8 32:5,20
**good**  4:5 23:25,25
**gordon**  1:14,17 2:2
 4:1,7 29:3 30:1,6,8
 30:13,17 31:14,20
 32:9
**gregory**  1:6
**grery**  31:6
**ground**  5:2
**guerrier**  1:6 31:6
**guess**  8:1 11:19 15:4
 17:11 19:1

**guessing**  5:21 6:3
 24:8

**h**
**h**  26:11
**half**  6:4
**hand**  15:22 17:7
 19:3 30:20
**handle**  10:16 11:6
 11:14 15:13
**handles**  8:21 14:1
**hands**  16:17
**happened**  7:25
 22:20
**happening**  13:8
**haulers**  4:13,13
**hear**  21:8 23:16
**heard**  27:6
**hire**  11:15
**hired**  11:18
**hold**  24:14
**home**  6:11
**honestly**  24:7
**hum**  13:23

**i**
**identity**  30:18
**immediately**  22:23
**immigration**  21:24
**important**  5:11
**imposed**  7:8
**impression**  12:22
**included**  17:15
**includes**  32:8
**index**  3:1
**information**  23:19
 23:22 32:6
**injury**  21:24
**instance**  1:18
**instrument**  30:19
**interaction**  28:19
**interested**  33:4
**international**  21:1
**internet**  5:25 6:2,17
 6:18 23:9 24:5,23
 25:2,3 26:4

G. MORGAN

[involved - paper]

**involved**  25:10
**issue**  25:7 28:12,16
  28:17
**issues**  6:7,14,17,19
  24:22,23 25:7

**j**

**january**  32:1
**jeremy**  2:2 32:9
**jlr**  1:4 31:4
**job**  33:14
**johanna**  1:7 31:7
**john**  2:14 32:5,20
**johnathan**  2:8 32:4
  32:15
**johngoldmark**  2:16
  32:23
**jonathan**  16:7
**jtycko**  2:11 32:18

**k**

**k**  2:8 32:15
**keep**  18:16
**kept**  27:14
**kind**  21:18 23:7
  25:14
**know**  5:13,14 6:23
  7:8,11,22 8:21
  12:25 13:21,25
  14:24 16:8,25 18:18
  19:23,25 22:22,23
  23:24,25 25:3 27:4
**known**  30:17
**koskinen**  1:7 31:7
**kyle**  1:8 31:8

**l**

**l**  2:9 32:16
**la**  2:2 32:9
**lady**  25:14 26:5
**law**  2:4 21:6,9,13,19
  21:24,24,24,25 22:4
  22:6 23:4,7 26:14
  26:17 27:14 32:11
**lawfirm**  11:15 12:7

**lawsuit**  7:3
**lawyer**  10:22,25
  16:17 17:9 21:17
  26:14
**learned**  8:11
**leave**  12:21
**left**  5:10
**legal**  1:22 10:22
  15:13 33:11 34:9
**light**  25:8,21
**line**  29:5
**located**  22:10,11
**location**  22:13
**locations**  6:8 24:10
**long**  6:1 7:11 9:9
**look**  9:17 11:25 16:1
**looked**  9:15,19,24
  10:5 18:22
**looking**  12:4 19:18
**lot**  6:7,17 22:24
  23:17,18,18 27:8

**m**

**m**  4:3 20:15 26:11
**mail**  8:15 19:6
**manager**  26:6
**mark**  11:23
**marked**  11:24 12:6
  15:19,21,23 17:6,8
  18:25 19:2,3
**matter**  4:25 12:8
  13:6 14:6
**matters**  14:1
**mean**  9:21 15:6
  24:20 27:21
**medical**  28:4
**mentioned**  19:16
  20:17 22:19 24:22
  25:16,16
**method**  1:22
**michael**  1:4 31:4
**months**  26:23
**morgan**  1:14,17 2:2
  4:1,7 15:22 17:7
  20:17 21:6,9,19

22:4,6,6,7 24:17
26:8 29:3 30:1,6,8
30:13,17 31:14,20
32:9
**move**  22:25 24:10
**moved**  6:8 7:20
  16:24,24 22:20,21
  23:2,5 24:18
**munoz**  1:7 31:7

**n**

**n**  1:22 2:1,5 4:3,3
  20:15,15 26:11,11
  32:11 33:12 34:10
**n.w.**  2:9 32:16
**name**  3:2 4:5 20:24
  21:7 22:3 30:18
**nature**  13:11 26:25
  28:2
**neighborhood**  6:4
**neither**  33:1
**never**  7:3 8:5,6 9:24
**new**  13:10 23:24
**north**  22:12,17,21
  23:2
**notary**  30:22
**noted**  30:3,10
**notes**  10:5
**notice**  1:24 3:8 8:13
  8:14 10:7 15:24
  16:5 17:16 18:21
**notified**  13:15
**november**  17:11
**number**  19:2 23:3
**numbered**  1:19

**o**

**o**  4:3 20:15 26:11
**oath**  30:18
**object**  11:4 13:24
**objected**  12:17 13:5
  15:11
**objection**  3:9 4:22
  10:11,14,18,21,22
  10:23 11:1,7,13
  12:18 13:19 14:4,13

15:17 16:23 17:9
19:13
**objections**  16:8
**objector**  11:16
**obviously**  10:24
**occurred**  33:7
**office**  4:7,9 8:19
  14:1 18:17,20 20:4
  21:6,9,13,19 22:4,6
  23:4,7,21 24:4 25:6
  25:15 26:6 30:20
**officer**  31:21 32:7
  33:19
**officer's**  33:24
**offices**  1:22 24:1
**oh**  8:2 10:1
**oil**  4:12 27:1,2,4,6,8
**okay**  4:14 5:8 7:22
  8:2,14 10:4 14:8
  16:5,18 17:22 18:1
  18:10,21 20:2 22:9
  27:23 28:20
**online**  18:11,13
**operate**  21:14
**opinion**  10:22 14:17
  14:18 15:2,7,10
**oral**  1:14,17 29:2
  31:14,21
**original**  33:18,22,25
**outcome**  33:5
**outside**  15:6

**p**

**p**  2:1,1
**p.m.**  1:20,20
**page**  3:2,7 10:2
  12:11 19:8 29:5
  33:20
**pager**  19:21
**pages**  20:2
**paid**  7:22,24 8:5,6
  28:4,5,6,11,12,17
**palo**  4:19
**paper**  9:1,1

[part - secretaries]                                                        Page 5

| | | | |
|---|---|---|---|
| **part**  27:3,3 | **print**  18:8 | **real**  24:2 27:7 | **residential**  4:16 |
| **particular**  28:7 | **printed**  18:12,12,19 | **realize**  26:13 | **resign**  27:23 |
| **parties**  32:8 33:2 | **prior**  1:8 11:10 | **really**  8:22 9:8 15:7 | **resignation**  28:15 |
| 34:4 | 12:18 31:8 | **reason**  15:14 29:5 | **resigned**  27:20,21 |
| **party**  28:4 32:2 | **probably**  5:8,22 6:3 | **reasons**  33:21 | **resolve**  28:15 |
| **pause**  24:16 | 19:9 20:4 21:5 | **recall**  5:23 7:14,16 | **resolved**  28:10 |
| **pay**  25:18,24,25 | 22:15 23:15 | 8:14 9:5,10 13:19 | **respond**  17:1 |
| **payment**  25:22 | **problems**  26:4 | 23:10 25:1,19 26:5 | **responsive**  16:15 |
| **people**  27:12 | **procedure**  1:24 | 26:7 | 17:2 |
| **permission**  19:9 | **procedures**  5:9 | **receipt**  18:14 | **result**  6:22 |
| 20:6 | **proceeding**  33:3 | **received**  17:17,20 | **retention**  12:6 |
| **person**  23:20 30:18 | **produce**  16:6 17:3,4 | **recollection**  19:18 | **return**  31:25 |
| **personal**  14:10,16 | **produced**  1:17 12:1 | 22:6 | **returned**  33:18,20 |
| 14:18 15:2 21:24 | **product**  13:16 24:3 | **record**  1:25 16:22 | 33:22 |
| **personally**  10:4,23 | **production**  16:13 | 31:22 32:8 | **reveal**  14:23 |
| 11:2 30:17 | **pronouncing**  22:3 | **rectify**  25:10 | **review**  9:13 |
| **phone**  12:3 19:21 | **proof**  18:4 | **refer**  11:5 | **reviewed**  17:19 |
| 20:12 | **proposed**  3:9 17:9 | **refresh**  19:18 | **rid**  22:22,23 |
| **phones**  20:1 23:9 | **proved**  30:17 | **refund**  6:25 26:3 | **right**  8:12,20 10:5 |
| **picked**  6:9 | **provider**  6:2 | **registration**  33:12 | 12:1 17:24 18:23 |
| **plain**  27:8 | **providers**  24:11 | 34:9 | 21:4 22:4 25:18 |
| **plaintiff**  1:18 33:25 | 28:4 | **related**  18:23 26:3 | 26:1,2 27:8 |
| **plaintiffs**  1:10 2:2 | **provisions**  1:24 | 27:1 28:7 33:2 | **robert**  1:7 31:7 |
| 31:10 32:9 | **public**  16:22 30:22 | **relevant**  17:2 | **roughly**  5:6 9:10 |
| **plan**  23:10 | **pulling**  11:20 | **rely**  15:12 | 24:11 |
| **play**  27:4 | **purchased**  13:16 | **relying**  15:2 | **rule**  33:6,16 34:3 |
| **pleading**  10:25 | **purposes**  30:19 | **remember**  6:7,8,16 | **rules**  1:24 5:2 |
| 14:14 17:8,15,16 | **pursuant**  1:23 32:6 | 6:19 7:11,12,12 | **running**  25:14 |
| 18:2 | 33:6 | 13:13,14,15,18 | |
| **pleadings**  15:3 | **push**  24:2 | 20:18 22:7 23:1,3 | **s** |
| **please**  5:13 24:15 | | 24:1,7,9,12,12,18 | **s**  2:1 |
| **plus**  16:23 | **q** | 25:9,9,13 | **sales**  21:1 27:2 |
| **point**  8:11 10:17 | **quality**  23:19,22,25 | **remembered**  25:4 | **sand**  4:13 27:3 |
| **pointing**  16:12 | **question**  5:15 10:23 | **repair**  6:23 | **says**  19:20 |
| **postcard**  3:9 8:16,18 | 13:4 15:1,5 28:18 | **rephrase**  5:14 | **scheduled**  16:23 |
| 9:21 10:5,7 17:16 | **questions**  5:10,13 | **reported**  1:21 | **screen**  18:7 |
| 18:21 | 20:9,12,14 26:9 | **reporter**  5:9 24:14 | **seal**  30:20,20 |
| **powell**  1:7 31:7 | **quick**  20:14 | 31:17 | **seattle**  1:3 2:15 4:23 |
| **power**  11:19 | **quite**  21:7 | **reporter's**  3:4 | 31:3 32:22 |
| **practice**  21:18,18,20 | | **represent**  11:15 | **seco**  4:19 |
| 22:1,2,3 26:17 | **r** | **represented**  14:8 | **second**  19:7 20:11 |
| 27:14 | **r**  2:1 26:11,11 | **represents**  14:6 | 24:14 |
| **practicing**  26:14 | **read**  11:7,10 15:10 | **request**  26:3 | **secretaries**  24:25 |
| **preparing**  33:25 | 17:23 19:5 30:1,8 | **requirements**  33:6 | 25:14 |
| | **reading**  19:20 | | |

seen  16:1 17:12 18:2
 19:4
sell  4:12
selling  23:20
sense  6:13
sent  9:10,15,22
 10:15 14:2 18:17,19
separate  14:15
served  15:25 34:3
service  5:23 6:6,15
 9:7 13:16 22:19
 23:7,19,23 24:1,19
settlement  3:9 8:12
 9:13,17,25 10:11,19
 11:3 13:6,11,22
 14:11,19 15:10
 17:10,24 18:11
 19:19
settlements  12:18
sharon  1:6 31:6
shoreline  2:5 32:11
short  24:16 28:22
shorthand  31:17
show  12:5 18:1
showed  16:3
shown  12:14 34:4
side  15:13 27:15
sign  20:6
signature  12:10
 19:7 29:1 30:2,9
 31:25 33:20
signed  5:23 19:10
 20:18,21 22:14
 23:11,13
silent  12:4
similarly  1:9 31:9
sir  14:7 19:15 20:10
 22:18 26:10 27:13
 27:22
sitting  5:9 14:3
situated  1:9 31:9
situation  25:10
somebody  9:2
sorry  13:18 14:5
 20:20 21:7 22:16

23:12
sort  6:21 7:8
sounds  24:10 25:25
southwestern  24:8
speak  5:11
specific  21:21
specifically  16:13
 20:18
specifics  24:2
speed  6:18 23:10,19
 23:23 25:2
spell  22:8
st  2:9 32:16
start  22:1
started  5:3 22:2
 26:21,23
starters  16:21
state  1:21 4:5 27:24
 30:16,23 31:18
stated  1:24
states  1:1 31:1
ste  2:5,9 32:11,16
 33:12 34:10
stenographic  1:21
steven  1:5 31:5
stop  25:4
street  23:1,2,3
styled  1:19
submit  8:23
submitted  8:24 18:6
 18:10 31:23
subpoena  15:25
 16:2,5,12,15,24
subscribe  23:8
subscribed  30:19
subscription  20:17
substance  14:4
suite  4:8
supplying  27:10
support  1:22 33:11
 34:9
sure  11:22,25 14:23
 20:13
suspect  16:22

switch  23:21 27:19
switched  7:5 8:8
sworn  1:18 4:2
 31:20
sylvia  1:20 31:17,25
 33:10 34:8
system  19:22

**t**

t  4:3 20:15 26:11,11
take  8:11 16:1,18
 28:22
taken  1:18 32:7 33:3
talked  15:1
talking  16:10
tanker  27:3
tankers  27:2
taxes  27:6
tel  2:16 32:22
telephone  5:25 6:2
 6:19 19:22
telephonically  2:13
 32:19
tell  14:22,25 15:11
telling  17:20
term  25:4
termination  7:9,23
terms  10:18 11:18
testified  4:2
testimony  31:22
 32:7
texas  1:21,23 4:8,20
 21:1 31:18
thank  11:22 20:10
 26:8 28:21
thanks  20:9
therefor  33:21
thing  5:12
things  13:25 15:2
 16:21
think  5:12 6:18 7:10
 7:10,18,18,24 8:4
 9:8 11:20 12:23
 13:7,9,10,10,20
 16:3,21 18:8,12

19:5 20:8 21:2
 23:20 24:25 25:11
 25:16,17,22
thinking  27:2
third  2:15 28:4
 32:21
three  9:12 28:13
thursday  16:3
time  5:7,12 6:1,14
 7:5 8:7,8 13:17
 20:25 22:5 24:6,25
 25:15 26:6 32:2,7
timeframe  21:3
timely  28:5,6,12
times  5:6 15:18
tired  27:25
titled  17:9
today  4:22 11:10
 14:3 16:9,24,25
 17:4,12
told  17:22 24:5
 25:24
tomorrow  16:24
totally  27:17,21
trailer  21:1 27:1
trailers  4:12,13,15
 27:4
transcript  31:21,23
 33:25
trcp  33:7,16
tremaine  2:14 32:21
trevino  1:20 31:17
 32:1 33:10 34:8
tried  8:4 25:17
trouble  6:5 22:24
truck  27:3
true  30:2,9 31:22
trying  6:16 21:2
 25:10
tsang  1:8 31:8
turn  24:22
two  4:19 17:1 20:2
 27:2
tx  2:5 32:12

G. MORGAN

**[tycko - zavareei]**                                           Page 7

| | | **z** |
|---|---|---|
| | | zavareei   2:9 32:15 |

tycko   2:8,9 3:3,4 4:4
    11:2,22 12:5 13:2,4
    13:5 14:16,18 15:9
    15:19,22 16:11,18
    17:7 18:25 19:3
    20:8,11 22:8 26:12
    28:20 32:4,15,15
type   4:11 5:23 24:1
    24:3
types   8:21 14:1
    21:22
tzlegal.com   2:11
    32:18

**u**

u   26:11
u.s.   1:22 33:11 34:9
um   13:23
unclear   5:13
understand   4:21
    5:15 8:22 9:19
    10:10 15:5
understanding
    10:13 11:3,12 14:3
understandings
    12:13
understood   5:15
unhappy   25:5
united   1:1 31:1
upper   22:12,17,21
    23:2
use   6:10
utility   4:12,12 27:1

**v**

v   1:11 31:11
vacuum   4:15 27:3
vague   5:13
verifications   18:8
view   14:10,19
volume   1:15 29:3
    31:15

**w**

wait   12:21

want   11:21 12:21
    13:3 14:25 19:5
    24:20
wanting   25:19
warner   6:9 7:6 8:8
washington   1:2 2:10
    2:15 4:23 31:2
    32:16,22
way   13:2 14:10 15:7
    16:7,25 28:10
we've   12:5 14:11
    15:23 19:3
website   18:11
week   16:3
weeks   9:12
went   8:1 9:24 12:4
western   1:2 4:23
    31:2
williams   1:8 31:8
witness   1:17 3:2
    12:2,23 15:6 16:10
    16:12 20:10 26:10
    31:20,22,24,25
words   4:19
work   6:23 27:12
worked   21:23
wright   2:14 32:21
write   5:10,12
wrong   12:22

**x**

x   4:3 20:15 26:11

**y**

yeah   7:18 9:23 12:2
    16:11,11,14,20 18:7
    18:9,13 19:12 20:13
    22:5,22 24:25 25:19
    28:17
year   6:4,4 17:11
    24:18,18 26:18
years   21:11 27:25
    28:13

Page 1

1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF WASHINGTON

3                      AT SEATTLE

4

    MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR

5   STEVEN COCKAYNE, BRIAN        )

    CRAWFORD, DAN DAZELL, ANGELO  )

6   DENNINGS, CHEYENNE FEGAN,     )

    SHARON FLOYD, GREGORY GUERRIER)

7   JOHANNA KOSKINEN, ELENA MUNOZ-)

    ALAZAZI, ELAINE POWELL, ROBERT)

8   PRIOR, ALIA TSANG, AND KYLE   )

    WILLIAMS, on behalf of        )

9   themselves and all others     )

    similarly situated,           )

10  Plaintiffs                    )

                                  )

11  V.                            )

                                  )

12  CLEARWIRE CORPORATION,        )

    Defendant                     )

13

    ----------------------------------------------------------

14                      ORAL DEPOSITION OF

                       JEREMY DE LA GARZA

15                      Volume 1 of 1

                       December 17, 2012

16

    ----------------------------------------------------------

17       ORAL DEPOSITION OF JEREMY DE LA GARZA, produced as a

18  witness at the instance of the PLAINTIFF, and duly sworn, was

19  taken in the above-styled and numbered cause on December 17,

20  2012 from  1:48 P.M. to 2:18 P.M., before Sylvia D. Trevino,

21  CSR No. 2733 in and for the State of Texas, reported by

22  Stenographic method, at the offices of U.S. Legal Support, 802

23  N. Carancahua, Corpus Christi, Texas, pursuant to the Federal

24  Rules of Civil Procedure, Notice and any provisions stated on

25  the record.

J. DE LA GARZA

Page 2

```
 1                    A P P E A R A N C E S
 2
     ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA
 3   GARZA
 4            Christopher Bandas
              THE BANDAS LAW FIRM
 5            500 N. Shoreline, Ste. 1020
              Corpus Christi, Tx  78401-0353
 6            (361) 698-5200
 7
     CLASS ACTION ATTORNEY:
 8
              Johnathan K. Tycko
 9            TYCKO & ZAVAREEI
              2000 L. St. N.W. Ste. 808
10            Washington, D.C. 20036
              (202) 973-0900
11            fax (202) 973-0950
              jtycko@tzlegal.com
12
     ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:
13   (Telephonically)
14            John Goldmark
              DAVIS, WRIGHT, TREMAINE
15            1201 Third Avenue
              Seattle, Washington 98101
16            Tel:  (206) 757-8068
              johngoldmark@dwt.com
17
18
19
20
21
22
23
24
25
```

J. DE LA GARZA

Page 3

1                          INDEX

2

     Witness Name                                    Page
3          Direct By Mr. Tycko . . . . . . . . . . . . . . 4

           Cross By Mr. Goldmark . . . . . . . . . . . . 18
4          Reporter's Certificate  . . . . . . . . . . . . 26

5                         EXHIBITS

6

     No.      Description                             Page
7    1        Agreement                               17

     2        Notice of Deposition                    18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J. DE LA GARZA

Page 4

1                         JEREMY DE LA GARZA,

2          having been first duly sworn, testified as follows:

3                         E X A M I N A T I O N

4    BY MR. TYCKO:

5          Q    Could you state your full name and your address for

6    the record?

7          A    My name is Jeremy Brandon De La Garza.  My address

8    is 5334 Everhart Road, Suite 203, Corpus Christi, Texas 78411.

9          Q    And how are you currently employed?

10         A    I'm self-employed.

11         Q    What kind of work do you do?

12         A    I own a real estate company and am a realtor in the

13   State of Texas.

14         Q    When you say a real estate company, what does that

15   mean?

16         A    Real estate company.  Remax, Century 21, for

17   instance.  Real estate company.

18         Q    Do you do anything -- do you act as real estate

19   agent for people?

20                    MR. BANDAS:  Hold on a second.  Were you

21   finished giving your answer before he cut you off?

22                    THE WITNESS:  Yeah.

23         Q    (BY MR. TYCKO)  Just trying to understand what you

24   do.  So you're a real estate agent; is that right?

25         A    Real estate agent.

J. DE LA GARZA

Page 5

1     Q     For how long have you been a real estate agent?

2     A     Approximately 12 years.

3     Q     Now, were you a Clearwire customer at some point in

4     time?

5     A     Yes; I was.

6     Q     Do you recall when you first became a Clearwire

7     customer?

8     A     No; I do not.

9     Q     Did you -- do you recall what you used Clearwire

10    for; what type of service?

11    A     Internet service.

12    Q     And was that for your business or your home?

13    A     Both.

14    Q     Did you have two separate subscriptions or one

15    subscription that you used in both location?

16    A     One subscription.  And at one point, I had the

17    mobile and the home based for tower and the USB is what I had

18    at one time.

19    Q     And for how long a period of time did you use

20    Clearwire?

21    A     Between maybe three and five years.  I'm not sure

22    when I started with them.

23    Q     Do you recall approximately when you stopped using

24    Clearwire?

25    A     I stopped using Clearwire maybe earlier this year

Page 6

1   at -- for work because the service was just unreliable, in my

2   opinion.

3         Q     So did you cancel your subscription at that time?

4         A     I canceled the mobile.  I canceled the two lines and

5   went with one just at my house.

6         Q     So do you still use Clearwire at your house?

7         A     At the present time, we do have Clearwire at our

8   residence.

9         Q     So did you -- what was it then that you canceled?

10        A     We had Clearwire also at our office and it just --

11  half the time when the agents went in there, the Internet was

12  down and it was just, again, unreliable and it affected our

13  business.

14        Q     And so you canceled the office subscription earlier

15  this year; is that what you said?

16        A     Yes.  We had the USB Donegal and the box, I guess

17  you can say, the modem, and yes, so I canceled those and just

18  switched to one modem, which they said would -- is newer is

19  what they say.

20        Q     And that newer modem, you're using at your

21  residence?

22        A     Yes; we're using it at the residence right now.

23        Q     So for how long a period of time did you use

24  Clearwire at your office?

25        A     About a year; about.  Approximately a year.  I'm not

J. DE LA GARZA

Page 7

1  positive on that, but approximately a year maybe.

2      Q    And were you having troubles with it that whole

3  time?

4      A    For the most part.

5      Q    Could you just describe to me what the issues were

6  that you had with the Clearwire service at your office?

7      A    Yes.  I recall several times walking in and seeing

8  the Clearwire modem with the blinking dots going up and down,

9  which by calling the support desk, indicated no service with

10  them, and sometimes they were able to, I guess maybe send a

11  refresh or something.  Sometimes it worked; sometimes it

12  didn't.

13      Q    Where is your office located?

14      A    5334 Everhart Road, Suite 203.  The address I gave

15  you.

16      Q    And where is your home?

17      A    6230 Brockhampton Drive, Corpus Christi, Texas

18  74814.

19      Q    Did you ever pay an early termination fee to

20  Clearwire?

21      A    No.

22      Q    Did you ever seek any sort of refund from Clearwire

23  as a result of the problems you had with the service?

24      A    Not that I can recall.

25      Q    Did you ever bring a lawsuit or a legal claim

J. DE LA GARZA

Page 8

1    against Clearwire?

2         A    No, sir.

3         Q    And how did you find out about the settlement that

4    brings us here today?

5         A    I was e-mailed with it.

6         Q    That was an e-mail you got from Clearwire or from

7    the settlement administrator?

8         A    Yes.

9         Q    And what did you do after you received that e-mail?

10        A    I contacted the Bandas law firm.

11        Q    Did you read the e-mail when you got it?

12        A    I glanced over the header and that was about it.

13        Q    Did you do anything to familiarize yourself with the

14    terms of the settlement?

15        A    No.   I contacted my attorney at that time and relied

16    on his advice.

17        Q    Had you used Mr. Bandas as your attorney in other

18    matters?

19        A    One other time, yes; I have.

20        Q    And what type of matter was that?

21        A    That was a Nokia settlement.

22        Q    Was that also a matter in which you filed an

23    objection?

24        A    Yes; it was.

25        Q    Do you recall what the Nokia settlement was about?

Page 9

1           MR. BANDAS:  Are you asking the underlying

2    case?

3           MR. TYCKO:  Yeah.

4      Q    (BY MR. TYCKO)  What the issue was in that case?

5      A    I don't know.  Something with the cell phone

6    quality, I believe, of a cell phone.

7      Q    And did you own a Nokia cell phone at some point?

8      A    Yes; I did.

9      Q    Do you recall when it was that you filed your

10   objection to that settlement?

11     A    No; I don't.

12     Q    Was it within the last couple of years?

13     A    Within the last couple of years; yes.

14     Q    Do you recall what court that was in?

15     A    No, sir; I do not.

16     Q    Do you recall what the substance of your objections

17   were?

18     A    No; I do not.

19     Q    Do you recall that there was some problem with the

20   settlement that you were objecting to?

21     A    No; I do not.

22     Q    Do you know what the results of your objections was?

23           MR. BANDAS:  At this point, I'm going to

24   instruct the witness not to answer.  The result was a

25   privileged and confidential settlement, the terms of which

J. DE LA GARZA

Page 10

1    cannot be revealed.

2        Q    (BY MR. TYCKO)   Were you paid money as a result of

3    that settlement?

4              MR. BANDAS:  Don't answer any questions

5    regarding settlement because it's privileged and confidential.

6              MR. TYCKO:  Was the settlement agreement itself

7    subject to confidentiality, because the terms of the

8    settlement wouldn't be privileged.

9              MR. BANDAS:  I'm not the witness.  I instructed

10   my client and --

11             MR. TYCKO:  I'm trying to understand the basis

12   for your objection.

13             MR. BANDAS:  It's not an objection.  It's an

14   instruction.  I told him not to answer the question.

15             MR. TYCKO:  Well, how is the terms of the

16   settlement covered by attorney/client privilege?

17             MR. BANDAS:  You can ask your next question.

18   I'm not going to --

19             MR. TYCKO:  Well, I'm trying to understand the

20   basis for your instruction because I don't think it's a proper

21   instruction, unless there's actually something covered by

22   attorney/client privilege.

23             MR. BANDAS:  File your motion; do what you got

24   to do.  I instructed the witness not to answer because it's a

25   privileged and confidential settlement; okay?

Page 11

1               MR. TYCKO:  That's what I'm trying to

2      understand.  Are you saying that the terms of the settlement

3      itself are confidential.

4               MR. BANDAS:  I'm going to take it, if you ask

5      me that question again, that you have no other questions for

6      this witness and we'll be done.

7               MR. TYCKO:  You can take whatever position you

8      want but I'm entitled to ask you to explain the basis for your

9      objection; okay?  Because if I am going to file a motion, I'd

10     like there to be a record so that I understand what your

11     position is.

12              MR. BANDAS:  It's on the record.  You can read

13     it when you get a copy of the transcript.

14         Q    (BY MR. TYCKO)  Okay.  Did you sign a settlement

15     agreement with somebody as a result of the objection that you

16     filed in the Nokia case?

17              MR. BANDAS:  Don't answer any questions

18     regarding settlement in that case.

19         Q    (BY MR. TYCKO)  Are you going to follow your

20     lawyer's instruction?

21         A    Yes; I'm going to follow my attorney's instructions

22     at this point as far as any other questions with that goes.

23         Q    Do you know if the Court in the Nokia case ever

24     ruled on the substance of your objection?

25         A    No; I do not.

J. DE LA GARZA

Page 12

1      Q    Now, other than the Nokia matter, had you ever filed

2    an objection in any other class lawsuit?

3      A    No; I had not.

4      Q    And had you ever used Mr. Bandas as your attorney in

5    any other matter?

6      A    No; I had not.

7      Q    Let's go back to the time that you got the e-mail

8    notice relating to the settlement in the Clearwire case.  Did

9    you at that point in time do anything to familiarize yourself

10   with the terms of the settlement?

11     A    No; I did not.

12     Q    Do you know anything about the terms of the

13   settlement sitting here today?

14     A    No; I do not.

15     Q    Is there something about the settlement that you

16   would change to make it better?

17     A    I don't know about the settlement.  As far as I rely

18   on my attorney's advice for what I'm -- for the settlement.

19     Q    Is there something about the settlement that you're

20   dissatisfied with?

21              MR. BANDAS:  Objection.  Asked and answered.

22   Just answered that question.

23              THE WITNESS:  Going to rely on my attorney's

24   advice for how I proceed with this.

25     Q    (BY MR. TYCKO)  Well, just -- can you tell me in

J. DE LA GARZA

Page 13

1    your own words is there something about the settlement that

2    you think should be changed or that you're dissatisfied with?

3             MR. BANDAS:  He just told you in his own words

4    so asking it a second time for his own words in a different

5    way isn't going to work.

6        Q    (BY MR. TYCKO)  Can you answer the question?

7        A    I'm going to follow my attorney's advice on this --

8        Q    He hasn't told you not to answer.

9             MR. BANDAS:  He given you an answer before,

10   which was --

11            MR. TYCKO:  That's a leading instruction,

12   Chris.

13            MR. BANDAS:  -- and you're harassing

14   the witness with the same question.

15            MR. TYCKO:  I'm not harassing the witness.

16   You're interfering with my examination, Mr. Bandas.

17            MR. BANDAS:  No, no, no.  When you ask the same

18   question over and over and over again hoping to get a

19   different answer, that's called harassment, and I'm simply

20   putting it on the record.

21            THE WITNESS:  The same answer for that

22   question.

23       Q    (By MR. TYCKO)  Okay.  So your answer is you're not

24   able to tell me anything that you find problematic with the

25   settlement; is that right?

```
 1      A     No.

 2                 MR. BANDAS:  Okay.  Wait.  Time out.  You

 3      changed the question before --

 4                 MR. TYCKO:  Okay.  Let me ask -- Withdrawn.

 5      Withdrawn.

 6      Q     (BY MR. TYCKO) Is there anything about the

 7      settlement that you can tell me sitting here today that you

 8      find objectionable?

 9                 MR. BANDAS:  Other than what he's already filed

10      in the pleadings, or are you asking him personally or are you

11      asking him to refer to the pleadings?

12                 MR. TYCKO:  Personally.

13                 MR. BANDAS:  Okay.  Jeremy, before you answer

14      this, be careful not to reveal any communications between you

15      and me.  So you can answer his question and offer a personal

16      opinion without disclosing what you and I talked about.  You

17      can tell him that you have a personal opinion.  You don't have

18      to have one, but you can one.  And if you have one, tell him

19      what it is.

20                 THE WITNESS:  Could you repeat the question,

21      please?

22      Q     (BY MR. TYCKO)  Yes.  Do you have a personal opinion

23      about whether there is something in the settlement that you

24      found objectionable?

25                 MR. BANDAS:  Subject to the same objections, go
```

J. DE LA GARZA

Page 15

1   ahead and answer.

2              THE WITNESS:  Attorneys getting paid quite a

3   bit of money on it.

4        Q    (BY MR. TYCKO)  Okay.  The attorneys representing

5   who?

6        A    The class action lawsuit.

7        Q    Okay.  And what do you know about how much the

8   attorneys are getting paid?

9        A    Just that it's a lot.  I don't.  I just --

10       Q    Do you know?

11       A    I don't know.

12       Q    Do you know how much the attorneys are getting paid?

13       A    No.

14       Q    So how do you know it's too much?

15             MR. BANDAS:  You asked him for personal

16   opinion.  If you have a basis --

17             THE WITNESS:  Just based on -- seems like what

18   the attorneys get paid on a class action lawsuit, they get

19   paid a lot.

20       Q    (BY MR. TYCKO)  Just generally?

21       A    Generally; yes.  Not specifically.  That is my

22   personal opinion answering your question.

23       Q    So other than -- other than what the attorneys are

24   getting paid, do you have any other personal opinions about

25   the settlement?

J. DE LA GARZA

Page 16

1      A    I don't know much about it.

2            MR. BANDAS:  Okay.  Just to be clear, you're

3    not asking him to tell you what's in his pleadings.  Just

4    personal opinions separate and apart from what's in the

5    pleadings.  Is that what you're asking?

6            MR. TYCKO:  Yes.

7            THE WITNESS:  No; I don't.

8      Q    (BY MR. TYCKO)  Did you file a claim in the

9    Clearwire settlement?

10     A    Yes; I did.

11     Q    And do you recall when you did that?

12     A    No; I do not.

13     Q    Do you recall how you did it?

14     A    Electronically.

15     Q    Was that through the settlement website?

16     A    I believe so; yes.  Online.  As best I can say.

17     Q    Have you ever seen the actual settlement

18   agreement?

19     A    That's the 60-page document you said from sitting in

20   here prior to -- I'm guessing, no; I did not look at 60 pages

21   of a settlement agreement.

22     Q    Let me just show it to you and you can tell me if

23   you've ever seen this document before.  I'm handing the

24   witness the settlement agreement and release of claims in the

25   Clearwire case.  Have you seen this document before?

J. DE LA GARZA

Page 17

1     A     I don't know if I saw the top of it or if I didn't

2  see the top of it.  If I did, I did not read all 60 pages of

3  it.  If I did see it, it -- maybe this was on the first page

4  of that e-mail you all sent.  I'm not sure.  I don't know.  So

5  that's the best, most honest answer I can give you.

6     Q     Okay.  Fair enough.  So you don't recall reading

7  anything outside of the e-mail; is that right?

8     A     I don't know on that.

9     Q     Well, do you -- are there other documents relating

10  to this case that you read other than the e-mail notice that

11  you received and the claims form that you prepared?

12     A     No.  That's all, I believe.

13     Q     Let me hand you what's been marked as Exhibit 1 of

14  this deposition.  Have you seen this document before?

15     A     Yes; I have.

16     Q     And is that an agreement that you entered into with

17  Mr. Bandas' law firm?

18     A     Appears to be; yes.

19     Q     Is that your signature that appears on the last

20  page?

21     A     Last page is my signature.

22     Q     Do you recall when you entered into that

23  agreement?

24     A     No.  I mean, I recall going over it.  I don't know

25  the day.  I don't know -- I know it was midday one day, but

J. DE LA GARZA

Page 18

1    that's about as best as I can tell you.

2         Q    Within the last week, two weeks?

3         A    Within the last month, I can tell you.

4         Q    Within the last month?  Sure.  And other than that

5    document that we've marked as Exhibit 1, do you have any other

6    agreement with Mr. Bandas or his law firm relating to this

7    case?

8         A    No, sir.

9                        (EXHIBIT 2 WAS MARKED)

10        Q    (BY MR. TYCKO)  Let me hand you what's been marked

11   as Exhibit 2.  This is the notice of today's deposition.  And

12   I'd ask that you look at Exhibit A, that notice, which is the

13   subpoena that I believe was served on you last week.  Do you

14   recall getting that subpoena?

15        A    Sure do.  I believe it was Thursday, last Thursday

16   maybe.

17        Q    And do you have any documents to produce today

18   pursuant to that subpoena?

19        A    No.  I mean, with the short notice, I don't even

20   know if I'd have any documents I could provide.

21                  MR. TYCKO:  Okay.  I don't have any other

22   questions for you.  Thanks a lot.

23                  THE WITNESS:  Yes, sir.  Thank you.

24                  COURT REPORTER:  Mr. Goldmark, do you have any

25   questions?            MR. GOLDMARK:  Yes; just a few follow-up

Page 19

1    questions.

2                    E X A M I N A T I O N

3    BY MR. GOLDMARK:

4         Q    Mr. De La Garza, you're currently a Clearwire

5    customer; is that right?

6         A    Yes.  Yes; I am a Clearwire.  Same thing; correct?

7         Q    Yes.  That's right.

8         A    Okay.  Yes.

9         Q    You mentioned you used Clearwire at your office.

10   Can you just tell me a little bit about the sequence of

11   events?

12        A    By sequence of events --

13             MR. BANDAS:  I'm just going to object as vague

14   and ambiguous, but if you want to repeat what you answered in

15   detail previously, you can.

16        Q    (BY MR. GOLDMARK)  When did you first get Internet

17   at your office through Clearwire?

18        A    When I moved into my office, I had Clearwire from my

19   previous office and we switched it to -- we moved it over when

20   we moved.

21        Q    And roughly, you think this is sometime in 2008?

22        A    No.  I think it may have -- I don't remember when I

23   moved into the office, but, no.  I think it was a little bit

24   after 2008 maybe, but I'm not positive on that.

25        Q    And was this -- was it a separate account from your

J. DE LA GARZA

Page 20

1    account -- your Clearwire account you had at your home?

2         A    No.  Again, I had two -- I had the mobile and I had

3    a -- I had a modem with you-all, with Clear.

4         Q    And they were under the same account; is that what

5    you're saying?

6         A    Yes.  You-all had a two-for-one price deal, I think;

7    the promotion you-all had, or that Clear had.  Excuse me.

8         Q    And do you recall when you signed up for that

9    promotion?

10        A    No; I do not.

11        Q    Do you know why you chose Clear?

12        A    There was a big promotion down here in South Texas

13   and that's -- I mean, they were on the radio, you know, and

14   advertising, you know, all types of great service and stuff

15   and so I gave them a shot.

16        Q    And to my understanding, you're still giving them a

17   shot; right?

18        A    I have that at my house because we do not have cable

19   at my house and that -- and it would cost too much to run all

20   my lines.

21        Q    Do you have any issues with the Clearwire service at

22   your home?

23        A    It's still hit and miss, but I have to have

24   something and, you know, it's somewhat my last resort

25   unless -- you know, that's the way I look at it right now.

1    And that's, you know, my opinion on it.

2         Q    And why is it your last resort?

3         A    Just it -- the cable lines at my house are all

4    screwed up and they want to -- they want like $800 to run new

5    cable lines to my house, so I just thought that was excessive

6    and, you know, that's the reason I don't have hard-wired cable

7    such as Roadrunner at my house.

8         Q    So Clearwire or Clear costs less than cable?

9         A    No.  They don't have lines is why I use them.  Not

10   that it costs less or anything to do monetary-wise.  I just --

11   I don't have the lines in place currently to go with AT&T or

12   Grande, which serves our area.  At my office, I have switched

13   to another provider that provides reliable service to my

14   office now.

15        Q    What provider is that?

16        A    We switched to AT&T.

17        Q    And why can't you do that at home?

18        A    As I stated previously, the cable lines going from

19   the box that they ran the cable to my house do not exist and

20   they want to charge me to run those lines.

21        Q    So I guess going back to my earlier question, it

22   would cost more to switch over than it's worth it to stay with

23   Clearwire?

24        A    Not necessarily.  I'm not set up for that at my

25   house.  If I was, I would probably have them right now at my

Page 22

1    house as well; AT&T.

2        Q    And what about -- what were the issues with your

3    service at your office with Clearwire?

4        A    What was it previously, the issues I had?

5        Q    Yeah.

6        A    Okay.  Half the time when I'd do in there, the modem

7    would be lit up going up and down.  And we'd either have to

8    unplug the modem, wait to see if it would, you know, refresh

9    or we'd have to call customer service to see if they could do

10   something, and it became more of an issue than it was worth.

11   And some of my agents that worked at the office didn't know

12   what to do or they weren't knowledgeable on how to reset it,

13   so it ended up affecting my business in a negative way and I

14   decided to go another route.

15       Q    Did you ever call and seek a refund from Clearwire

16   for any problems with your service?

17       A    No, sir; I did not.

18       Q    Did you ever call and submit a claim or a complaint

19   or anything of that nature to Clearwire?

20       A    No, sir.  I just sought the help of the customer

21   service to try to fix it and sometimes it worked; sometimes it

22   did not.

23       Q    You stated earlier you weren't charged any early

24   termination fee when you canceled your office subscription; is

25   that right?

J. DE LA GARZA

Page 23

1    A    Correct.  I was not charged an early termination fee

2    because I don't believe -- I'm not sure if I terminated the

3    plan or if it was switched, but it may have been terminated

4    under that and signed up -- it was -- the first line was under

5    my name and I don't know if I canceled the first service and

6    just signed up with the new one.  I'm not positive on that so

7    I don't know if my current account is the same as the old

8    account I had.

9    Q    Are you currently under a contract with Clearwire?

10   A    I'm not sure.

11              MR. GOLDMARK:  That's all the questions I

12   have.  Thanks a lot.

13              THE WITNESS:  Yes, sir.  Thank you.  Have a

14   great day.

15              MR. TYCKO:  Off the record.

16              (DEPOSITION CONCLUDED AT 2:18 P.M.)

17

18

19

20

21

22

23

24

25

J. DE LA GARZA

Page 24

1          CHANGES AND SIGNATURE

2         TO THE ORAL DEPOSITION OF

3           JEREMY DE LA GARZA

             Volume 1 of 1

4

5    PAGE     LINE     CHANGE                    REASON

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

J. DE LA GARZA

Page 25

1          I, JEREMY DE LA GARZA, have read the foregoing

2    deposition and hereby affix my signature that same is true and

3    correct, except as noted above.

4

5                                    _____

6                                    JEREMY DE LA GARZA

7

8          I, JEREMY DE LA GARZA, have read the foregoing

9    deposition and hereby affix my signature that same is true and

10   correct, except as noted above.

11

12                                   _____

13                                   JEREMY DE LA GARZA

14

15

16   STATE OF _____ )

     COUNTY OF _____ )

17          Before me, _____, on this

     day personally appeared JEREMY DE LA GARZA, known to me (or

18   proved to me under oath or through _____

     (description of identity card or other document) to be the

19   person whose name is subscribed to the foregoing instrument

     and acknowledged to me that they executed the same for the

20   purposes and consideration therein expressed.

            (Seal)    Given under my hand and seal of office this

21   _____day of _____, _____.

22

23

                                     _____

24                                   Notary Public in and for the

                                     State of_____

25

J. DE LA GARZA

Page 26

```
 1                UNITED STATES DISTRICT COURT
 2               WESTERN DISTRICT OF WASHINGTON
 3                        AT SEATTLE
 4
    MICHAEL BOBOWSKI, ALYSON BURN,) CASE NO. C-10-1859 JLR
 5  STEVEN COCKAYNE, BRIAN        )
    CRAWFORD, DAN DAZELL, ANGELO  )
 6  DENNINGS, CHEYENNE FEGAN,     )
    SHARON FLOYD, GRERY GUERRIER, )
 7  JOHANNA KOSKINEN, ELENA MUNOZ-)
    ALAZAZI, ELAIN POWELL, ROBERT )
 8  PRIOR, ALIA TSANG, AND KYLE   )
    WILLIAMS, on behalf of        )
 9  themselves and all others     )
    similarly situated,           )
10  Plaintiffs                    )
                                  )
11  V.                            )                        )
                                  )
12  CLEARWIRE CORPORATION,        )
    Defendant                     )
13
    ----------------------------------------------------
14                   ORAL DEPOSITION OF
                    JEREMY DE LA GARZA
15                   Volume 1 of 1
                    December 17, 2012
16  ----------------------------------------------------
17          I, Sylvia D. Trevino, Certified Shorthand Reporter
18  in and for the State of Texas, hereby certify to the
19  following:
20          That the witness, JEREMY DE LA GARZA, was duly sworn
21  by the officer and that the transcript of the oral deposition
22  is a true record of the testimony given by the witness;
23          That the deposition transcript was submitted on
24  December 18, 2012, to the witness or to the attorney for the
25  witness for examination, signature and return to Sylvia D.
```

J. DE LA GARZA

Page 27

```
 1    Trevino by January 17, 2013;
 2              That the amount of time used by each party at the
 3    deposition is as follows:
 4              Johnathan Tycko - (0:22)
 5              John Goldmark - (0:08)
 6              That pursuant to information given to the deposition
 7    officer at the time said testimony was taken, the following
 8    includes counsel for all parties of record:
 9    ATTORNEY FOR THE PLAINTIFFS, GORDON MORGAN & JEREMY DE LA
      GARZA
10
              Christopher Bandas
11            THE BANDAS LAW FIRM
              500 N. Shoreline, Ste. 1020
12            Corpus Christi, Tx  78401-0353
              (361) 698-5200
13
14    CLASS ACTION ATTORNEY:
15            Johnathan K. Tycko
              TYCKO & ZAVAREEI
16            2000 L. St. N.W. Ste. 808
              Washington, D.C. 20036
17            (202) 973-0900
              fax (202) 973-0950
18            jtycko@tzlegal.com
19    ATTORNEY FOR DEFENDANT, CLEARWIRE CORPORATION:
      (Telephonically)
20
              John Goldmark
21            DAVIS, WRIGHT, TREMAINE
              1201 Third Avenue
22            Seattle, Washington 98101
              Tel:  (206) 757-8068
23            johngoldmark@dwt.com
24
25
```

Page 28

1        I further certify that I am neither counsel for,

2   related to, nor employed by any of the parties or attorneys in

3   the action in which this proceeding was taken, and further

4   that I am not financially or otherwise interested in the

5   outcome of the action.

6        Further certification requirements pursuant to Rule

7   203 of TRCP will be certified to after they have occurred.

8        Certified to by me on December 18, 2012.

9

10   *Sylvia D. Trevino*

    Sylvia D. Trevino, CSR 2733

11   Expiration Date: 12/31/12

    U.S. Legal Support

12   Firm Registration No. 343

    5910 N. Central Expressway, Ste. 100

13   (214) 741-6001 - (214)741-6824 (f)

14   Job No. 136957

15                      - - -

16        FURTHER CERTIFICATION UNDER RULE 203 TRCP

17   ----------------------------------------------------------------

18        The original deposition was/was not returned to the

19   deposition officer on _____;

20        If returned, the attached Changes and Signature page

21   contains any changes and the reasons therefor;

22        If returned, the original deposition was delivered

23   to _____, Custodial Attorney;

24        That $_____is the deposition officer's charges to

25   the PLAINTIFF for preparing the original deposition transcript

J. DE LA GARZA

Page 29

1    and any copies of exhibits;

2          That the deposition was delivered in accordance with

3    Rule 203.3, and that a copy of this certificate was served on

4    all parties shown herein and filed with the Clerk.

5          Certified to by me this 20th day of December,

6    2012.

7

8                                    Sylvia D. Trevino, CSR 2733

                                     Expiration Date:  12/31/12

9                                    U.S. Legal Support

                                     Firm Registration No. 343

10                                   5910 N. Central Expressway, Ste. 100

                                     (214) 741-6000 (214) 714-6824 (f)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**[& - carancahua]**                                                    Page 1

| & | 3 | actual  16:17 | avenue  2:15 27:21 |
|---|---|---|---|

**&**

**&**  2:2,9 27:9,15

**0**

**0:08**  27:5
**0:22**  27:4

**1**

**1**  1:15,15 3:7 17:13
18:5 24:3,3 26:15
26:15
**10-1859**  1:4 26:4
**100**  28:12 29:10
**1020**  2:5 27:11
**12**  5:2
**12/31/12**  28:11 29:8
**1201**  2:15 27:21
**136957**  28:14
**17**  1:15,19 3:7 26:15
27:1
**18**  3:3,7 26:24 28:8
**1:48**  1:20

**2**

**2**  3:7 18:9,11
**2000**  2:9 27:16
**20036**  2:10 27:16
**2008**  19:21,24
**2012**  1:15,20 26:15
26:24 28:8 29:6
**2013**  27:1
**202**  2:10,11 27:17
27:17
**203**  4:8 7:14 28:7,16
**203.3**  29:3
**206**  2:16 27:22
**21**  4:16
**214**  28:13,13 29:10
29:10
**26**  3:4
**2733**  1:21 28:10
29:8
**2:18**  1:20 23:16

**3**

**343**  28:12 29:9
**361**  2:6 27:12

**4**

**4**  3:3

**5**

**500**  2:5 27:11
**5334**  4:8 7:14
**5910**  28:12 29:10

**6**

**60**  16:19,20 17:2
**6230**  7:17
**698-5200**  2:6 27:12

**7**

**714-6824**  29:10
**741-6000**  29:10
**741-6001**  28:13
**741-6824**  28:13
**74814**  7:18
**757-8068**  2:16 27:22
**78401-0353**  2:5
27:12
**78411**  4:8

**8**

**800**  21:4
**802**  1:22
**808**  2:9 27:16

**9**

**973-0900**  2:10 27:17
**973-0950**  2:11 27:17
**98101**  2:15 27:22

**a**

**able**  7:10 13:24
**account**  19:25 20:1
20:1,4 23:7,8
**acknowledged**
25:19
**act**  4:18
**action**  2:7 15:6,18
27:14 28:3,5

**actual**  16:17
**address**  4:5,7 7:14
**administrator**  8:7
**advertising**  20:14
**advice**  8:16 12:18,24
13:7
**affix**  25:2,9
**agent**  4:19,24,25 5:1
**agents**  6:11 22:11
**agreement**  3:7 10:6
11:15 16:18,21,24
17:16,23 18:6
**ahead**  15:1
**alazazi**  1:7 26:7
**alia**  1:8 26:8
**alyson**  1:4 26:4
**ambiguous**  19:14
**amount**  27:2
**angelo**  1:5 26:5
**answer**  4:21 9:24
10:4,14,24 11:17
13:6,8,9,19,21,23
14:13,15 15:1 17:5
**answered**  12:21,22
19:14
**answering**  15:22
**apart**  16:4
**appeared**  25:17
**appears**  17:18,19
**approximately**  5:2
5:23 6:25 7:1
**area**  21:12
**asked**  12:21 15:15
**asking**  9:1 13:4
14:10,11 16:3,5
**at&t**  21:11,16 22:1
**attached**  28:20
**attorney**  2:2,7,12
8:15,17 10:16,22
12:4 26:24 27:9,14
27:19 28:23
**attorney's**  11:21
12:18,23 13:7
**attorneys**  15:2,4,8
15:12,18,23 28:2

**avenue**  2:15 27:21

**b**

**back**  12:7 21:21
**bandas**  2:4,4 4:20
8:10,17 9:1,23 10:4
10:9,13,17,23 11:4
11:12,17 12:4,21
13:3,9,13,16,17
14:2,9,13,25 15:15
16:2 17:17 18:6
19:13 27:10,11
**based**  5:17 15:17
**basis**  10:11,20 11:8
15:16
**behalf**  1:8 26:8
**believe**  9:6 16:16
17:12 18:13,15 23:2
**best**  16:16 17:5 18:1
**better**  12:16
**big**  20:12
**bit**  15:3 19:10,23
**blinking**  7:8
**bobowski**  1:4 26:4
**box**  6:16 21:19
**brandon**  4:7
**brian**  1:5 26:5
**bring**  7:25
**brings**  8:4
**brockhampton**  7:17
**burn**  1:4 26:4
**business**  5:12 6:13
22:13

**c**

**c**  1:4 2:1 26:4
**cable**  20:18 21:3,5,6
21:8,18,19
**call**  22:9,15,18
**called**  13:19
**calling**  7:9
**cancel**  6:3
**canceled**  6:4,4,9,14
6:17 22:24 23:5
**carancahua**  1:23

**card** 25:18
**careful** 14:14
**case** 1:4 9:2,4 11:16
  11:18,23 12:8 16:25
  17:10 18:7 26:4
**cause** 1:19
**cell** 9:5,6,7
**central** 28:12 29:10
**century** 4:16
**certificate** 3:4 29:3
**certification** 28:6,16
**certified** 26:17 28:7
  28:8 29:5
**certify** 26:18 28:1
**change** 12:16 24:5
**changed** 13:2 14:3
**changes** 24:1 28:20
  28:21
**charge** 21:20
**charged** 22:23 23:1
**charges** 28:24
**cheyenne** 1:6 26:6
**chose** 20:11
**chris** 13:12
**christi** 1:23 2:5 4:8
  7:17 27:12
**christopher** 2:4
  27:10
**civil** 1:24
**claim** 7:25 16:8
  22:18
**claims** 16:24 17:11
**class** 2:7 12:2 15:6
  15:18 27:14
**clear** 16:2 20:3,7,11
  21:8
**clearwire** 1:12 2:12
  5:3,6,9,20,24,25 6:6
  6:7,10,24 7:6,8,20
  7:22 8:1,6 12:8 16:9
  16:25 19:4,6,9,17
  19:18 20:1,21 21:8
  21:23 22:3,15,19
  23:9 26:12 27:19

**clerk** 29:4
**client** 10:10,16,22
**cockayne** 1:5 26:5
**communications**
  14:14
**company** 4:12,14,16
  4:17
**complaint** 22:18
**concluded** 23:16
**confidential** 9:25
  10:5,25 11:3
**confidentiality** 10:7
**consideration** 25:20
**contacted** 8:10,15
**contains** 28:21
**contract** 23:9
**copies** 29:1
**copy** 11:13 29:3
**corporation** 1:12
  2:12 26:12 27:19
**corpus** 1:23 2:5 4:8
  7:17 27:12
**correct** 19:6 23:1
  25:3,10
**cost** 20:19 21:22
**costs** 21:8,10
**counsel** 27:8 28:1
**county** 25:16
**couple** 9:12,13
**court** 1:1 9:14 11:23
  18:24 26:1
**covered** 10:16,21
**crawford** 1:5 26:5
**cross** 3:3
**csr** 1:21 28:10 29:8
**current** 23:7
**currently** 4:9 19:4
  21:11 23:9
**custodial** 28:23
**customer** 5:3,7 19:5
  22:9,20
**cut** 4:21

**d**

**d** 1:20 26:17,25
  28:10 29:8
**d.c.** 2:10 27:16
**dan** 1:5 26:5
**date** 28:11 29:8
**davis** 2:14 27:21
**day** 17:25,25 23:14
  25:17,21 29:5
**dazell** 1:5 26:5
**de** 1:14,17 2:2 4:1,7
  19:4 24:3 25:1,6,8
  25:13,17 26:14,20
  27:9
**deal** 20:6
**december** 1:15,19
  26:15,24 28:8
**decided** 22:14
**defendant** 1:12 2:12
  26:12 27:19
**delivered** 28:22 29:2
**dennings** 1:6 26:6
**deposition** 1:14,17
  3:7 17:14 18:11
  23:16 24:2 25:2,9
  26:14,21,23 27:3,6
  28:18,19,22,24,25
  29:2
**describe** 7:5
**description** 3:6
  25:18
**desk** 7:9
**detail** 19:15
**different** 13:4,19
**direct** 3:3
**disclosing** 14:16
**dissatisfied** 12:20
  13:2
**district** 1:1,2 26:1,2
**document** 16:19,23
  16:25 17:14 18:5
  25:18
**documents** 17:9
  18:17,20

**donegal** 6:16
**dots** 7:8
**drive** 7:17
**duly** 1:18 4:2 26:20
**dwt.com** 2:16 27:23

**e**

**e** 2:1,1 4:3 8:5,6,9,11
  12:7 17:4,7,10 19:2
**earlier** 5:25 6:14
  21:21 22:23
**early** 7:19 22:23
  23:1
**either** 22:7
**elain** 26:7
**elaine** 1:7
**electronically** 16:14
**elena** 1:7 26:7
**employed** 4:9,10
  28:2
**ended** 22:13
**entered** 17:16,22
**entitled** 11:8
**estate** 4:12,14,16,17
  4:18,24,25 5:1
**events** 19:11,12
**everhart** 4:8 7:14
**examination** 13:16
  26:25
**excessive** 21:5
**excuse** 20:7
**executed** 25:19
**exhibit** 17:13 18:5,9
  18:11,12
**exhibits** 3:5 29:1
**exist** 21:19
**expiration** 28:11
  29:8
**explain** 11:8
**expressed** 25:20
**expressway** 28:12
  29:10

J. DE LA GARZA

**[f - method]**

| f | | | |
|---|---|---|---|

**f**  28:13 29:10
**fair**  17:6
**familiarize**  8:13
  12:9
**far**  11:22 12:17
**fax**  2:11 27:17
**federal**  1:23
**fee**  7:19 22:24 23:1
**fegan**  1:6 26:6
**file**  10:23 11:9 16:8
**filed**  8:22 9:9 11:16
  12:1 14:9 29:4
**financially**  28:4
**find**  8:3 13:24 14:8
**finished**  4:21
**firm**  2:4 8:10 17:17
  18:6 27:11 28:12
  29:9
**first**  4:2 5:6 17:3
  19:16 23:4,5
**five**  5:21
**fix**  22:21
**floyd**  1:6 26:6
**follow**  11:19,21 13:7
  18:25
**following**  26:19 27:7
**follows**  4:2 27:3
**foregoing**  25:1,8,19
**form**  17:11
**found**  14:24
**full**  4:5
**further**  28:1,3,6,16

| g | | | |
|---|---|---|---|

**garza**  1:14,17 2:3
  4:1,7 19:4 24:3 25:1
  25:6,8,13,17 26:14
  26:20 27:9
**generally**  15:20,21
**getting**  15:2,8,12,24
  18:14
**give**  17:5
**given**  13:9 25:20
  26:22 27:6

**giving**  4:21 20:16
**glanced**  8:12
**go**  12:7 14:25 21:11
  22:14
**goes**  11:22
**going**  7:8 9:23 10:18
  11:4,9,19,21 12:23
  13:5,7 17:24 19:13
  21:18,21 22:7
**goldmark**  2:14 3:3
  18:24,25 19:3,16
  23:11 27:5,20
**gordon**  2:2 27:9
**grande**  21:12
**great**  20:14 23:14
**gregory**  1:6
**grery**  26:6
**guerrier**  1:6 26:6
**guess**  6:16 7:10
  21:21
**guessing**  16:20

| h | | | |
|---|---|---|---|

**half**  6:11 22:6
**hand**  17:13 18:10
  25:20
**handing**  16:23
**harassing**  13:13,15
**harassment**  13:19
**hard**  21:6
**header**  8:12
**help**  22:20
**hit**  20:23
**hold**  4:20
**home**  5:12,17 7:16
  20:1,22 21:17
**honest**  17:5
**hoping**  13:18
**house**  6:5,6 20:18,19
  21:3,5,7,19,25 22:1

| i | | | |
|---|---|---|---|

**identity**  25:18
**includes**  27:8
**index**  3:1

**indicated**  7:9
**information**  27:6
**instance**  1:18 4:17
**instruct**  9:24
**instructed**  10:9,24
**instruction**  10:14,20
  10:21 11:20 13:11
**instructions**  11:21
**instrument**  25:19
**interested**  28:4
**interfering**  13:16
**internet**  5:11 6:11
  19:16
**issue**  9:4 22:10
**issues**  7:5 20:21
  22:2,4

| j | | | |
|---|---|---|---|

**january**  27:1
**jeremy**  1:14,17 2:2
  4:1,7 14:13 24:3
  25:1,6,8,13,17
  26:14,20 27:9
**jlr**  1:4 26:4
**job**  28:14
**johanna**  1:7 26:7
**john**  2:14 27:5,20
**johnathan**  2:8 27:4
  27:15
**johngoldmark**  2:16
  27:23
**jtycko**  2:11 27:18

| k | | | |
|---|---|---|---|

**k**  2:8 27:15
**kind**  4:11
**know**  9:5,22 11:23
  12:12,17 15:7,10,11
  15:12,14 16:1 17:1
  17:4,8,24,25,25
  18:20 20:11,13,14
  20:24,25 21:1,6
  22:8,11 23:5,7
**knowledgeable**
  22:12

**known**  25:17
**koskinen**  1:7 26:7
**kyle**  1:8 26:8

| l | | | |
|---|---|---|---|

**l**  2:9 27:16
**la**  1:14,17 2:2 4:1,7
  19:4 24:3 25:1,6,8
  25:13,17 26:14,20
  27:9
**law**  2:4 8:10 17:17
  18:6 27:11
**lawsuit**  7:25 12:2
  15:6,18
**lawyer's**  11:20
**leading**  13:11
**legal**  1:22 7:25
  28:11 29:9
**line**  23:4 24:5
**lines**  6:4 20:20 21:3
  21:5,9,11,18,20
**lit**  22:7
**little**  19:10,23
**located**  7:13
**location**  5:15
**long**  5:1,19 6:23
**look**  16:20 18:12
  20:25
**lot**  15:9,19 18:22
  23:12

| m | | | |
|---|---|---|---|

**m**  4:3 19:2
**mail**  8:6,9,11 12:7
  17:4,7,10
**mailed**  8:5
**marked**  17:13 18:5
  18:9,10
**matter**  8:20,22 12:1
  12:5
**matters**  8:18
**mean**  4:15 17:24
  18:19 20:13
**mentioned**  19:9
**method**  1:22

J. DE LA GARZA

**[michael - refund]**

**michael**  1:4 26:4
**midday**  17:25
**mobile**  5:17 6:4 20:2
**modem**  6:17,18,20
  7:8 20:3 22:6,8
**monetary**  21:10
**money**  10:2 15:3
**month**  18:3,4
**morgan**  2:2 27:9
**motion**  10:23 11:9
**moved**  19:18,19,20
  19:23
**munoz**  1:7 26:7

**n**

**n**  1:23 2:1,5 4:3,3
  19:2,2 27:11 28:12
  29:10
**n.w.**  2:9 27:16
**name**  3:2 4:5,7 23:5
  25:19
**nature**  22:19
**necessarily**  21:24
**negative**  22:13
**neither**  28:1
**new**  21:4 23:6
**newer**  6:18,20
**nokia**  8:21,25 9:7
  11:16,23 12:1
**notary**  25:24
**noted**  25:3,10
**notice**  1:24 3:7 12:8
  17:10 18:11,12,19
**numbered**  1:19

**o**

**o**  4:3 19:2
**oath**  25:18
**object**  19:13
**objecting**  9:20
**objection**  8:23 9:10
  10:12,13 11:9,15,24
  12:2,21
**objectionable**  14:8
  14:24

**objections**  9:16,22
  14:25
**occurred**  28:7
**offer**  14:15
**office**  6:10,14,24 7:6
  7:13 19:9,17,18,19
  19:23 21:12,14 22:3
  22:11,24 25:20
**officer**  26:21 27:7
  28:19
**officer's**  28:24
**offices**  1:22
**okay**  10:25 11:9,14
  13:23 14:2,4,13
  15:4,7 16:2 17:6
  18:21 19:8 22:6
**old**  23:7
**online**  16:16
**opinion**  6:2 14:16
  14:17,22 15:16,22
  21:1
**opinions**  15:24 16:4
**oral**  1:14,17 24:2
  26:14,21
**original**  28:18,22,25
**outcome**  28:5
**outside**  17:7

**p**

**p**  2:1,1
**p.m.**  1:20,20 23:16
**page**  3:2,6 16:19
  17:3,20,21 24:5
  28:20
**pages**  16:20 17:2
**paid**  10:2 15:2,8,12
  15:18,19,24
**part**  7:4
**parties**  27:8 28:2
  29:4
**party**  27:2
**pay**  7:19
**people**  4:19
**period**  5:19 6:23

**person**  25:19
**personal**  14:15,17
  14:22 15:15,22,24
  16:4
**personally**  14:10,12
  25:17
**phone**  9:5,6,7
**place**  21:11
**plaintiff**  1:18 28:25
**plaintiffs**  1:10 2:2
  26:10 27:9
**plan**  23:3
**pleadings**  14:10,11
  16:3,5
**please**  14:21
**point**  5:3,16 9:7,23
  11:22 12:9
**position**  11:7,11
**positive**  7:1 19:24
  23:6
**powell**  1:7 26:7
**prepared**  17:11
**preparing**  28:25
**present**  6:7
**previous**  19:19
**previously**  19:15
  21:18 22:4
**price**  20:6
**prior**  1:8 16:20 26:8
**privilege**  10:16,22
**privileged**  9:25 10:5
  10:8,25
**probably**  21:25
**problem**  9:19
**problematic**  13:24
**problems**  7:23
  22:16
**procedure**  1:24
**proceed**  12:24
**proceeding**  28:3
**produce**  18:17
**produced**  1:17
**promotion**  20:7,9,12
**proper**  10:20

**proved**  25:18
**provide**  18:20
**provider**  21:13,15
**provides**  21:13
**provisions**  1:24
**public**  25:24
**purposes**  25:20
**pursuant**  1:23 18:18
  27:6 28:6
**putting**  13:20

**q**

**quality**  9:6
**question**  10:14,17
  11:5 12:22 13:6,14
  13:18,22 14:3,15,20
  15:22 21:21
**questions**  10:4 11:5
  11:17,22 18:22,25
  19:1 23:11
**quite**  15:2

**r**

**r**  2:1
**radio**  20:13
**ran**  21:19
**read**  8:11 11:12 17:2
  17:10 25:1,8
**reading**  17:6
**real**  4:12,14,16,17
  4:18,24,25 5:1
**realtor**  4:12
**reason**  21:6 24:5
**reasons**  28:21
**recall**  5:6,9,23 7:7
  7:24 8:25 9:9,14,16
  9:19 16:11,13 17:6
  17:22,24 18:14 20:8
**received**  8:9 17:11
**record**  1:25 4:6
  11:10,12 13:20
  23:15 26:22 27:8
**refer**  14:11
**refresh**  7:11 22:8
**refund**  7:22 22:15

**regarding**  10:5
  11:18
**registration**  28:12
  29:9
**related**  28:2
**relating**  12:8 17:9
  18:6
**release**  16:24
**reliable**  21:13
**relied**  8:15
**rely**  12:17,23
**remax**  4:16
**remember**  19:22
**repeat**  14:20 19:14
**reported**  1:21
**reporter**  18:24
  26:17
**reporter's**  3:4
**representing**  15:4
**requirements**  28:6
**reset**  22:12
**residence**  6:8,21,22
**resort**  20:24 21:2
**result**  7:23 9:24 10:2
  11:15
**results**  9:22
**return**  26:25
**returned**  28:18,20
  28:22
**reveal**  14:14
**revealed**  10:1
**right**  4:24 6:22
  13:25 17:7 19:5,7
  20:17,25 21:25
  22:25
**road**  4:8 7:14
**roadrunner**  21:7
**robert**  1:7 26:7
**roughly**  19:21
**route**  22:14
**rule**  28:6,16 29:3
**ruled**  11:24
**rules**  1:24
**run**  20:19 21:4,20

**s**

**s**  2:1
**saw**  17:1
**saying**  11:2 20:5
**screwed**  21:4
**seal**  25:20,20
**seattle**  1:3 2:15 26:3
  27:22
**second**  4:20 13:4
**see**  17:2,3 22:8,9
**seeing**  7:7
**seek**  7:22 22:15
**seen**  16:17,23,25
  17:14
**self**  4:10
**send**  7:10
**sent**  17:4
**separate**  5:14 16:4
  19:25
**sequence**  19:10,12
**served**  18:13 29:3
**serves**  21:12
**service**  5:10,11 6:1
  7:6,9,23 20:14,21
  21:13 22:3,9,16,21
  23:5
**set**  21:24
**settlement**  8:3,7,14
  8:21,25 9:10,20,25
  10:3,5,6,8,16,25
  11:2,14,18 12:8,10
  12:13,15,17,18,19
  13:1,25 14:7,23
  15:25 16:9,15,17,21
  16:24
**sharon**  1:6 26:6
**shoreline**  2:5 27:11
**short**  18:19
**shorthand**  26:17
**shot**  20:15,17
**show**  16:22
**shown**  29:4
**sign**  11:14

**signature**  17:19,21
  24:1 25:2,9 26:25
  28:20
**signed**  20:8 23:4,6
**similarly**  1:9 26:9
**simply**  13:19
**sir**  8:2 9:15 18:8,23
  22:17,20 23:13
**sitting**  12:13 14:7
  16:19
**situated**  1:9 26:9
**somebody**  11:15
**somewhat**  20:24
**sort**  7:22
**sought**  22:20
**south**  20:12
**specifically**  15:21
**st**  2:9 27:16
**started**  5:22
**state**  1:21 4:5,13
  25:16,24 26:18
**stated**  1:24 21:18
  22:23
**states**  1:1 26:1
**stay**  21:22
**ste**  2:5,9 27:11,16
  28:12 29:10
**stenographic**  1:22
**steven**  1:5 26:5
**stopped**  5:23,25
**stuff**  20:14
**styled**  1:19
**subject**  10:7 14:25
**submit**  22:18
**submitted**  26:23
**subpoena**  18:13,14
  18:18
**subscribed**  25:19
**subscription**  5:15
  5:16 6:3,14 22:24
**subscriptions**  5:14
**substance**  9:16
  11:24
**suite**  4:8 7:14

**support**  1:22 7:9
  28:11 29:9
**sure**  5:21 17:4 18:4
  18:15 23:2,10
**switch**  21:22
**switched**  6:18 19:19
  21:12,16 23:3
**sworn**  1:18 4:2
  26:20
**sylvia**  1:20 26:17,25
  28:10 29:8

**t**

**t**  4:3 19:2
**take**  11:4,7
**taken**  1:19 27:7 28:3
**talked**  14:16
**tel**  2:16 27:22
**telephonically**  2:13
  27:19
**tell**  12:25 13:24 14:7
  14:17,18 16:3,22
  18:1,3 19:10
**terminated**  23:2,3
**termination**  7:19
  22:24 23:1
**terms**  8:14 9:25 10:7
  10:15 11:2 12:10,12
**testified**  4:2
**testimony**  26:22
  27:7
**texas**  1:21,23 4:8,13
  7:17 20:12 26:18
**thank**  18:23 23:13
**thanks**  18:22 23:12
**therefor**  28:21
**thing**  19:6
**think**  10:20 13:2
  19:21,22,23 20:6
**third**  2:15 27:21
**thought**  21:5
**three**  5:21
**thursday**  18:15,15
**time**  5:4,18,19 6:3,7
  6:11,23 7:3 8:15,19

J. DE LA GARZA

12:7,9 13:4 14:2
22:6 27:2,7
**times**  7:7
**today**  8:4 12:13 14:7
18:17
**today's**  18:11
**told**  10:14 13:3,8
**top**  17:1,2
**tower**  5:17
**transcript**  11:13
26:21,23 28:25
**trcp**  28:7,16
**tremaine**  2:14 27:21
**trevino**  1:20 26:17
27:1 28:10 29:8
**troubles**  7:2
**true**  25:2,9 26:22
**try**  22:21
**trying**  4:23 10:11,19
11:1
**tsang**  1:8 26:8
**two**  5:14 6:4 18:2
20:2,6
**tx**  2:5 27:12
**tycko**  2:8,9 3:3 4:4
4:23 9:3,4 10:2,6,11
10:15,19 11:1,7,14
11:19 12:25 13:6,11
13:15,23 14:4,6,12
14:22 15:4,20 16:6
16:8 18:10,21 23:15
27:4,15,15
**type**  5:10 8:20
**types**  20:14
**tzlegal.com**  2:11
27:18

**u**

**u.s.**  1:22 28:11 29:9
**underlying**  9:1
**understand**  4:23
10:11,19 11:2,10
**understanding**
20:16

**united**  1:1 26:1
**unplug**  22:8
**unreliable**  6:1,12
**usb**  5:17 6:16
**use**  5:19 6:6,23 21:9

**v**

**v**  1:11 26:11
**vague**  19:13
**volume**  1:15 24:3
26:15

**w**

**wait**  14:2 22:8
**walking**  7:7
**want**  11:8 19:14
21:4,4,20
**washington**  1:2 2:10
2:15 26:2 27:16,22
**way**  13:5 20:25
22:13
**we've**  18:5
**website**  16:15
**week**  18:2,13
**weeks**  18:2
**went**  6:5,11
**western**  1:2 26:2
**williams**  1:8 26:8
**wired**  21:6
**wise**  21:10
**withdrawn**  14:4,5
**witness**  1:18 3:2
4:22 9:24 10:9,24
11:6 12:23 13:14,15
13:21 14:20 15:2,17
16:7,24 18:23 23:13
26:20,22,24,25
**words**  13:1,3,4
**work**  4:11 6:1 13:5
**worked**  7:11 22:11
22:21
**worth**  21:22 22:10
**wright**  2:14 27:21

| **x** | | |
| --- | --- | --- |
| **x**  4:3 19:2 | | |
| **y** | | |
| **yeah**  4:22 9:3 22:5 | | |
| **year**  5:25 6:15,25,25 7:1 | | |
| **years**  5:2,21 9:12,13 | | |
| **z** | | |
| **zavareei**  2:9 27:15 | | |

APPENDIX E

# BANDAS LAW FIRM, P.C.
## Attorneys at Law

CHRISTOPHER A. BANDAS

500 N. Shoreline, Suite 1020
Corpus Christi, Texas 78401
(361) 698-5200 Office
(361) 698-5222 Fax

March 20, 2013

*Via Email:* **cliff.cantor@comcast.net**
Clifford A. Cantor
LAW OFFICES OF CLIFFORD CANTOR
627 208th Avenue SE
Sammamish, Washington 98074

*Via Email:* **jkeller@milberg.com**
MILBERG LLP
Joshua Keller
One Pennsylvania Plaza
New York, New York 10119

*Via Email:* **krichman@reeserichman.com**
REESE RICHMAN LLP
Kim E. Richman
875 Avenue of the Americas
18th Floor
New York, New York 10169

*Via Email:* **steverummage@dwt.com**
Davis Wright Tremaine LLP
Stephen M. Rummage
Kenneth E. Payson
John A. Goldmark
1201 Third Avenue
Suite 2200
Seattle, Washington 9810

Re:     Case No. C10-cv-1859JLR; *Michael Bobowski, et. al. v. Clearwire Corporation*

Dear Counsel:

The Court granted the earlier motion for appeal bond based on the theory that our appeal was brought in bad faith, but this is incorrect. My clients' objection is legitimate. It directly invokes the problems with your clients' settlement as addressed in *In re Bluetooth, Dennis v. Kellogg,* and similar cases. No "witch hunt" about "professional objectors" changes the merits of this objection or the shortcomings of the settlement.

So there are no further misunderstandings about my clients' intent, please accept the following proposal: *__My clients will stipulate to an injunction in the trial court precluding them from withdrawing their objection or any appeal of their objection without trial court approval of the terms of any such withdrawal__*.

If you or your clients are truly concerned about the possibility that the Objectors or any lawyer representing them is leveraging anyone with a meritless objection for money, rather than the possibility that their objection would be successful either in the trial court or on appeal, then you would simply agree to this stipulated injunction.

While Fed. R. Civ. Proc. 23(e)(5) precludes an objector from withdrawing his or her objection without court approval, there is no parallel provision in the Federal Rules of Appellate Procedure.

Nevertheless, please understand that my clients will stipulate to the proposed injunction, notwithstanding the fact that there is no appellate rule that requires this.

Please know that I am committed to prosecuting meritorious objections to their appellate conclusion and success, as I have done in other cases:

- In *Dennis v. Kellogg* (9th Cir. Sep. 4, 2012), I was counsel of record in a successful appeal of a court's approval of a class action settlement.

- In *In re Baby Products Antitrust Litig.*, No. 12-1165, No. 12-1166, and No. 12-1167 (3d Cir.), I was counsel of record in reversing the district court's decision.

- In *In re Online DVD Antitrust Rental Litig.*, No. 12-15705 *et al.* (9th Cir.), in which we have filed appeal and are pursuing the case to written opinion.

Please be clear that I am not seeking money for myself or for my clients to withdraw their objection in this case, and that my clients will continue to prosecute their objection on behalf of themselves with the assistance of counsel.

If either class counsel or defense counsel refuses this stipulation, then it will conclusively establish that neither is being disingenuous to the extent of claims of concern that I or my clients are pursuing a meritless objection.

If both class counsel and defense counsel are truly concerned about the possibility of "vexatious" intent, neither would continue to engage in expensive motion practice, but would simply agree to this stipulation.

Your stipulation to an injunction as proposed here would moot the need for any further "witch hunt" into whether the objection is "vexatious" or not. It is patently meritorious, and that cannot be further gainsaid.

Again, your refusal to stipulate to this injunction demonstrates that your fear is not of supposed motives, but of the merits of this objection and protecting a multi-million dollar fee award and unfair class action settlement from Ninth Circuit scrutiny.

Please let me know by close of business Friday, June 6th, whether you will agree to the proposed stipulation. I look forward to your responses.

Best regards,

Christopher Bandas



# UNITED STATES DISTRICT COURT

**WESTERN DISTRICT OF WASHINGTON**
OFFICE OF THE CLERK
U.S. COURTHOUSE, SUITE 2310
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 370-8400

**WILLIAM M. MCCOOL**
District Court Executive
Clerk of Court

**LORI A.LANDIS**
Chief Deputy Clerk

July 11, 2013

Bandas Law Firm, P.C.
Christopher A. Bandas
500 N Shoreline Blvd, Suite 1020
Corpus Christi, TX 78401

Dear Mr. Bandas:

We are returning your check of $2,000.00 received July 11, 2013 by FedEx. We are unable to except any money into the Court Registry without Court Order. I have spoken with Judge Robart's chambers and per Judge Robart the money is to be returned to you.

If you have any question please contact Judge Robart's chambers.

Thank you,

SueLynn Vazquez
Financial Specialist

# BANDAS LAW FIRM, P.C.
### Attorney at Law

CHRISTOPHER A. BANDAS

500 N. Shoreline, Suite 1020
Corpus Christi, Texas 78401
(361) 698-5200 Office
(361) 698-5222 Fax

July 9, 2013

MAIL

JUL 10 2013

United States District Court
Clerk's Office
700 Stewart Street
Suite 2310
Seattle, Washington  98101

DEPUTY

Re:    Case No. 10-cv-1859-JLR
       *Michael Bobowski, et. al. v. Clearwire Corporation*

Dear Clerk:

Enclosed please find a check for $2000 to cover the Rule 39 costs in the court's order of July 8, 2013 (attached). See *Azizian v. Federated Dept. Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007).

Please do not hesitate to contact us if you should have any questions or concerns.

Sincerely,

Christopher A. Bandas

CAB:kra
Enclosures



BANDAS LAW FIRM, P.C.
ATTORNEYS AT LAW
500 N. SHORELINE BLVD, STE. 1020
CORPUS CHRISTI, TX 78401-0353
PH. 361-698-5200

FIRST COMMUNITY BANK
4166 N WATER STREET
CORPUS CHRISTI, TX 78401

9492

88-1180/1149
05

7/9/2013

PAY TO THE
ORDER OF    US District Clerk                                    $ **2,000.00

Two Thousand and 00/100********************************************************************************* DOLLARS

US District Clerk
United States District Court
700 Stewart St., Suite 2310
Seattle, WA 98101

MEMO   Clearwire-court costs Rule 39

⑈009492⑈ ⑉:114911807⑈: 004 109 2⑈

AUTHORIZED SIGNATURE

MP

THIS DOCUMENT MUST HAVE A COLORED BACKGROUND, ULTRAVIOLET FIBERS AND AN ARTIFICIAL WATERMARK ON THE BACK - VERIFY FOR AUTHENTICITY.

Security Features Included   [-D]   Details on Back.

APPENDIX G

# BANDAS LAW FIRM, P.C.
Attorney at Law

CHRISTOPHER A. BANDAS

500 N. Shoreline, Suite 1020
Corpus Christi, Texas 78401
(361) 698-5200 Office
(361) 698-5222 Fax

July 16, 2013

United States District Court
Clerk's Office
700 Stewart Street
Suite 2310
Seattle, Washington  98101

      Re:    Case No. 10-cv-1859-JLR
            *Michael Bobowski, et. al. v. Clearwire Corporation*

Dear Clerk:

      Enclosed please find a check for $2000 to cover the Rule 39 costs in the court's order of July 8, 2013 (attached). See *Azizian v. Federated Dept. Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007). The court issued an order permitting deposit of an appeal bond into the registry of the district court (Dkt. 144). Appellants are attempting to make a good faith deposit of the legitimate $2,000 portion of the bond.

      Please do not hesitate to contact us if you should have any questions or concerns.

           Sincerely,

           Christopher A. Bandas

CAB:kra
Enclosures